# 15-4192-cr

_____

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
_____

UNITED STATES OF AMERICA,

Appellee,

-v-

STEPHEN M. HOWELLS, II,

Defendant-Appellant.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

**BRIEF ON APPEAL FOR DEFENDANT-APPELLANT
STEPHEN M. HOWELLS, II**
_____

LISA A. PEEBLES                          Office of the Federal Public Defender
Federal Public Defender                  4 Clinton Square, 3rd Floor
COURTENAY K. MCKEON, *on brief*          Syracuse, New York 13202
Research & Writing Attorney              315.701.0080

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ ii

JURISDICTIONAL STATEMENT ............................................................1

STATEMENT OF ISSUES FOR APPEAL ...............................................1

STATEMENT OF THE CASE....................................................................2

STATEMENT OF FACTS ...........................................................................2

   A.  Howells' Background ........................................................................2

   B.  The Indicted Conduct ........................................................................6

   C.  Howells' Cooperation with Law Enforcement..................................8

   D.  The Proceedings in District Court .....................................................8

ARGUMENT ...............................................................................................15

   A.  The 580-Year Sentence Imposed on Howells Was Procedurally and
   Substantively Unreasonable.................................................................15

      1.  The Standard of Review is Reasonableness.................................15

      2.  The District Court Imposed a Procedurally Unreasonable Sentence Because
      It Improperly Calculated the Guidelines Range .................................16

      3.  The District Court Imposed a Substantively Unreasonable Sentence ........20

   B.  The 580-Year Sentence Imposed on Howells Violates the Eighth
   Amendment's Prohibition of Excessive Sanctions and Cruel and Unusual
   Punishment.........................................................................................23

CONCLUSION ...........................................................................................24

CERTIFICATE OF COMPLIANCE..........................................................25

CERTIFICATE OF SERVICE ...................................................................26

i

# TABLE OF AUTHORITIES

## CASES

*Atkins v. Virginia*, 536 U.S. 304 (2002)……………………………………………….23
*Gall v. United States*, 552 U.S. 38 (2007)……………………………………...16
*Solem v. Helm*, 463 U.S. 277 (1983)………………………………………………...23
*United States v. Aldeen*, 792 F.3d 247 (2d Cir. 2015)……………………….15, 16
*United States v. Cavera*, 550 F.3d 180 (2d Cir. 2008)……………………………21
*United States v. Chu*, 714 F.3d 742 (2d Cir. 2013)………………………………16
*United States v. Desnoyers*, 708 F.3d 378 (2d Cir. 2013)………………………...15
*United States v. Hardrich*, 707 F.2d 992 (8th Cir. 1983)…………………...…19
*United States v. Huffstatler*, 571 F.3d 620 (7th Cir. 2009)………………...…..23
*United States v. Johnson*, 451 F.3d 1239 (11th Cir. 2006)………………………24
*United States v. Jones*, 531 F.3d 163 (2d Cir. 2008)………………………………21
*United States v. Martinez*, 274 F.3d 897 (5th Cir. 2001)…………………….19
*United States v. McNeil*, 415 F.3d 273 (2d Cir. 2005)………………….......15
*United States v. Park*, 758 F.3d 193 (2d Cir. 2014)………………………………20
*United States v. Villafuerte*, 502 F.3d 204 (2d Cir. 2007)………………………...16
*United States v. Vowell*, 516 F.3d 503 (6th Cir. 2008)……………………….....24

## STATUTES

18 U.S.C. § 2251(a)……………………………………………………...…1
18 U.S.C. § 2252(a)(5)(B)………………………………………………………1
18 U.S.C. § 3231………………………………………………………………...1
18 U.S.C. § 3553(a)………………………………………………15, 16, 20
18 U.S.C. § 3553(a)(1)…………………………………………………...22-23
18 U.S.C. § 3553(a)(2)(A)…………………………………………….....21
18 U.S.C. § 3553(a)(2)(B)………………………………………………...22
18 U.S.C. § 3583(e)(3)………………………………………………16
18 U.S.C. § 3584(a)…………………………………………………19
18 U.S.C. § 3742……………………………………………………………...1
28 U.S.C. § 1291………………………………………………………...1

**UNITED STATES SENTENCING GUIDELINES MANUAL**

U.S. Sentencing Guidelines Manual § 5G1.2(b)
     (U.S. Sentencing Comm'n 2014)……………………………………17, 18

U.S. Sentencing Guidelines Manual § 5G1.2(b) cmt. n.1
     (U.S. Sentencing Comm'n 2014)…………………………………………..17

U.S. Sentencing Guidelines Manual § 5G1.2(d)
 (U.S. Sentencing Comm'n 2014)……………………………………………18, 19

**OTHER SOURCES**

SOCIAL SECURITY ADMINISTRATION, CALCULATORS: LIFE EXPECTANCY,
https://www.ssa.gov/planners/lifeexpectancy.html (last visited May 5, 2016)…...20

UNITED STATES SENTENCING COMM'N, APPENDIX A, DESCRIPTION OF DATAFILES,
VARIABLES, AND FOOTNOTES http://www.ussc.gov/amendment-process/public-
hearings-and-meetings/appendix (last visited May 5, 2016)……………………..19

# JURISDICTIONAL STATEMENT

This appeal is taken from a judgment imposed against Defendant/Appellant Stephen M. Howells, II, ("Howells") by the Honorable Glenn T. Suddaby, Chief United States District Court Judge, in the Northern District of New York. A. 203-09.[1] Judgment was entered on December 22, 2015. *Id.* The district court had subject matter jurisdiction pursuant to 18 U.S.C. § 3231 because this was a criminal case alleging violations of 18 U.S.C. 2251(a) and 2252(a)(5)(B). *Id.* Jurisdiction is invoked in this Court pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742. A notice of appeal was timely filed on December 29, 2015. A. 210.

# STATEMENT OF ISSUES FOR APPEAL

I. WHETHER THE DISTRICT COURT'S CALCUATION OF THE "TOTAL PUNISHMENT" BY A METHOD DIFFERING FROM THAT SET FORTH IN THE GUIDELINES' COMMENTARY AND ITS USE OF THAT CALCULATION TO JUSTIFY IMPOSING CONSECUTIVE SENTENCES TOTALLING 6,960 MONTHS (580 YEARS) WAS PROCEDURALLY REASONABLE.

II. WHETHER THE IMPOSITION OF A 6,960-MONTH TERM OF IMPRISONMENT ON A DEFENDANT WHO HAS BEEN SEPARATELY SENTENCED IN STATE COURT FOR THE CONDUCT UNDERLYING THE FEDERAL CHARGES, RELEASED HIS VICTIMS, COOPERATED FULLY WITH LAW ENFORCEMENT, PLEADED GUILTY WITHOUT THE BENEFIT OF A PLEA AGREEMENT, AND IS AMENABLE TO PSYCHOLOGICAL TREATMENT WAS SUBSTANTIVELY REASONABLE.

---

[1] Citations to the Appendix on Appeal ("A.") are to the page numbers inserted therein.

1

III.   WHETHER THE IMPOSITION OF A TERM OF IMPRISONMENT OF
       6,960 MONTHS (580 YEARS) CONSTITUTES AN EXCESSIVE
       SANCTION AND CRUEL AND UNUSUAL PUNISHMENT.

## STATEMENT OF THE CASE

Howells appeals from a judgment of the Northern District of New York (Suddaby, C.J.) imposing a 6,960-month term of imprisonment after his plea of guilty to sixteen counts of sexual exploitation of children and five counts of possession of child pornography. Appendix on Appeal ("A") 203-09. The Office of the Federal Public Defender was continued by this Court as counsel to Howells on this appeal pursuant to the Criminal Justice Act.

## STATEMENT OF FACTS

### A.   Howells' Background

Howells is forty years old. Presentence Investigation Report ("PSR[2]") at 3. He is the oldest of four sons born to the marital union of Stephen Howells, Sr., and Vera Carpenter. A. 125, 141. Howells' father was abusive.  A. 125. According to Howells' mother, Howells' father had Howells perform oral sex on him when Howells was an infant. A. 126. Howells' mother has also stated that Howells'

---

[2]     The PSR has been filed under seal in this Court. The version filed in this Court and cited herein is the final report, submitted to the district court on December 15, 2015. A. 17.

father would "hold a milk bottle in a suggestive position on his groin when feeding Mr. Howells as a child" and took "an inordinate amount of time manipulating Mr. Howells' penis when changing his diaper . . . . [H]e was deriving pleasure from it." A. 126.

Howells' mother reports that Howells' father frequently kicked her, smashed objects in the house, and used rough sex as a means of control even after the couple divorced. A. 125-26. According to Howells' mother, Howells' father told her that he would engage in sexual behavior with one of their sons if she did not submit. A. 125.

Howells' father denies abusing anyone in the family. A. 126. He does, however, agree that Howells and his three brothers were highly sexualized in their vocabulary and behavior as small children. A. 126.

Howells himself has no specific memories of his father sexually abusing him. A. 126. Howells has very limited memories of his childhood in general. A. 126, 138. Such memory problems are common in people who have suffered childhood abuse. A. 138. However, he believes that the sexual abuse occurred because he had a great deal of sexual knowledge at a young age. PSR ¶ 288. He recalls sleeping in the same bed as his father during visits after his parents' divorce and his father showing him pornographic magazines and movies. PSR ¶ 288.

3

Howells' father left the family to be with another man when Howells was somewhere between five and eight years old. A. 125; PSR ¶¶ 282-83. After his parents' divorce, Howells remained with his mother and brothers. A. 126. Howells' mother became clinically depressed and unable to function. PSR ¶ 283. Howells was forced to become the head of the family and take care of his younger brothers. PSR ¶ 283. He did everything around the house including cooking. PSR ¶ 289. The family moved frequently. A. 126. There was no running water or indoor plumbing in several of the places the family lived. A. 126. As a result, Howells occasionally had to attend school in dirty clothing, including clothes soaked in urine. A. 127. At one point, his school reported that the odor was causing Howells problems with his peers and that Howells had twice been provided with showers and clean clothing because he had arrived in such filthy condition. A. 127.

From ages nine through eleven and thirteen through fifteen, Howells lived with his maternal aunt. A. 126. The second time was as a foster care placement after he was removed from his mother's home due to neglect. A. 126. Howells has vague memories of his older male cousin molesting him while he was living with his aunt. A. 131. Later, while Howells was still living there, the cousin killed himself with a gun. A. 126. After that, Howells went to live with a teacher and her husband. A. 128.

The PSR suggests that Howells has never undergone therapy or treatment for the abuse and neglect he suffered as a child. It states that his mother regrets not seeking help for him when he was a child, but states that the family was extremely poor and that no one ever suggested that her sons seek counseling. PSR ¶ 289. However, a defense psychosexual evaluation quotes Howells' mother as stating that Howells saw "therapists on occasion in the context of the separation, divorce, and accusations of sexual abuse." A. 130. The psychologist who performed the evaluation opines that Howells "is motivated to obtain treatment for his problems, is highly disclosing of his problems, and displays characteristics associated with those who engage in treatment in a meaningful manner." A. 139.

Howells has maintained steady employment throughout his life, starting in elementary school. A. 129. Howells took the GED in lieu of graduating from high school and went to college early. A. 128. He attended college immediately after getting GED and sporadically in the years thereafter, ultimately earning his associate's degree in 2004. PSR ¶¶ 297-98.  He was a member of the Air Force from 1996 through 2001 and was honorably discharged. PSR ¶ 301. He worked in various medical jobs from 2002 through 2006. PSR ¶ 305. His most recent job was as a registered nurse at Claxton-Hepburn Medical Center, where he worked from 2006 until his arrest. PSR ¶ 303.

5

Howells has been married twice. PSR ¶¶ 284-85. He married his high school sweetheart when they were only eighteen years old. PSR ¶ 284. They divorced a year later, concluding that they had gotten married too young. PSR ¶ 284. Howells remarried in 2000 and had three children with his second wife.[3] PSR ¶ 285. Howells' second wife states that before 2011, Howells was "a man with great potential who was very loving, compassionate, and committed to his family." PSR ¶ 290. He "did everything right from furthering his education; getting a good job; and taking good care of her and their children." PSR ¶ 290. However, his behavior changed in 2010 or 2011. PSR ¶ 290. He withdrew from the family and began spending most of his time in front of the computer looking at pornography and engaging in cybersex. PSR ¶ 290. The couple separated in 2012 and divorced in 2013. PSR ¶ 286.

## B.   The Indicted Conduct

The indicted conduct is very disturbing. It is fully detailed in the PSR and will be only briefly summarized here. In 2012, Howells met his co-defendant, Nicole Vaisey, on a social networking site catering to people interested in bondage, dominant/submissive relationships, and fetishes. PSR

---

[3]      There has never been any allegation that Howells abused his own children. PSR ¶ 290. Howells has stated that his children were "completely off limits." PSR ¶ 286.

¶¶ 53, 287. They began an intimate relationship that continued until their arrest. *Id.* ¶ 287. On six occasions between September 2013 and May 2014, they sexually exploited a seven-year-old girl and filmed the abuse with multiple cameras. *Id.* ¶¶ 7-10, 13-15. On two occasions in November 2013 and December 2013, they sexually exploited a ten-year-old girl and filmed the abuse with multiple cameras. *Id.* ¶ 7, 11-12. On three occasions in November 2013, December 2013, and April 2014, Howells—in the presence of Vaisey— sexually exploited the seven-year-old, the ten-year-old, and the ten-year-old's five-year-old sister (separately and in combination) and filmed the abuse. *Id.* ¶¶ 17, 20-21, 23. Without Vaisey's presence, Howells sexually exploited the five-year-old, the seven-year-old, the ten-year-old, and an eight-year-old girl (separately and in combination) and filmed the abuse on three occasions in December 2012, September 2013, and January 2014. *Id.* ¶¶ 17-19, 22. Howells used his employment as a registered nurse to obtain drugs that he used to sedate the children during the abuse. *Id.* ¶ 6(a).

On August 13, 2014, Howells and Vaisey kidnapped two Amish girls, ages six and eleven, from their family's farm stand. PSR. ¶ 30. Over the next twenty-five hours, Howells drugged the girls, sexually exploited both girls with Vaisey, and filmed the abuse. *Id.* ¶¶ 16, 31-34, 37-40.

On August 14, 2014, Howells and Vaisey drove the girls into the woods near a residence and released them. PSR ¶ 34. The occupant of that residence drove the girls home, where they were interviewed by law enforcement and then taken to the hospital. *Id*. Meanwhile, Howells and Vaisey attempted to hide or destroy any evidence that the girls had been at their home. *Id*. ¶ 40.

## C. Howells' Cooperation with Law Enforcement

On August 15, 2014, law enforcement officers located Howells' home. PSR ¶ 35. Howells and Vaisey emerged from the house, signed a form consenting to a search of the property, and cooperated fully. *Id*. Later that day, a federal search warrant was issued and executed. *Id*. ¶ 37. Howells and Vaisey were present during the search. *Id*. Later that day, they each provided voluntary oral and written statements admitting to their conduct with the Amish girls and previous victims. *Id*. ¶¶ 37-43. Howells' statement was eight pages long. A. 123.

## D. The Proceedings in District Court

Howells was indicted on September 17, 2014. A. 8. A superseding indictment was issued on October 8, 2014. A. 11, 27-31. Howells was charged with one count of conspiracy to sexually exploit children in violation of 18 U.S.C. §2251(a) and (e); fifteen counts of sexual exploitation of children in violation of 18 U.S.C. § 2251(a); and five counts of possession of child

8

pornography in violation of 18 U.S.C. § 2252A(b)(2). A. 27-29. Howells was separately charged in state court with kidnapping and sexual abuse. A. 102, 105. He pleaded guilty to the state charges and was sentenced to a twenty-five year prison term. A. 102, 105.

On May 8, 2015, Howells pleaded guilty to all of the federal charges against him. A. 59:25-63:17, 95:18-22. There was no plea agreement. PSR ¶ 315. The district court accepted his plea. A. 98:2-12.

The initial PSR was submitted to the district court on September 11, 2015. A. 15. A revised PSR was submitted on December 4, 2015. A. 16. An amended PSR was submitted on December 15, 2015. A. 17. The PSR calculated the total offense level as 43 and Howells' criminal history score as zero with a criminal history category of I. PSR ¶¶ 278, 281. The PSR calculated the guideline sentencing range as 6,960 months (580 years). *Id*. ¶ 313.

The defense sentencing memorandum argued that the district court should sentence Howells to thirty years of imprisonment followed by a lifetime term of supervised release. A. 102. The defense advanced three arguments. A. 102. First, the defense argued that a thirty-year sentence would account for the fact that Howells would serve a lengthy state court sentence

for the sexual abuse and kidnapping underlying the federal child pornography charges. A. 102. As noted above, Howells pleaded guilty to those charges and anticipated receiving a twenty-five year sentence with twenty years of post-release supervision. A. 105. Second, the defense argued that a thirty-year sentence would properly focus on the particular remaining federal interest in the case. A. 102. Specifically, the defense noted that the only parts of Howells' conduct that implicated a federal (rather than a state) interest were his production, receipt, and possession of child pornography. A. 105. The defense noted that "[w]hile the nature of the federal offense is appalling, it pales in comparison to the underlying state charges." A. 104. Noting that Howells never distributed the images he produced, the defense argued that "[s]tacking the sentences consecutively would be greater than necessary based on the remaining federal interest." A. 105. Third, the defense argued that a thirty-year sentence would place Howells' conduct into relevant context. A. 102. The defense noted Howells' childhood abuse and neglect; the fact that he had never had the opportunity to receive treatment; his stable employment history; his educational history; his military service; and his relationship with his own children. A. 107-111. The defense noted that Howells would be seventy years old when released after a thirty-year sentence and that fewer

than 10% of defendants over the age of fifty commit further crimes after being released. A. 111. Finally, the defense noted that Howells had released the Amish girls; made no attempt to flee despite the girls knowing what he looked like, what kind of car he drove, and where he lived; cooperated fully with law enforcement; pleaded guilty to every charge in the indictment; acknowledged his wrongdoing; and expressed extreme remorse for what he had done. A. 113.

The government argued that Howells should be sentenced to 580 years in prison followed by a lifetime term of supervised release. A. 163. In response to Howells' sentencing memorandum, the government argued that Howells' childhood experiences were insufficiently traumatic to warrant a shorter sentence. A. 177-78.

The district court conducted Howells' sentencing hearing on December 17, 2015. A. 181. Before hearing the parties' argument, the district court inquired whether there was any objection to the PSR's recitation of facts, its offense level calculations, or its criminal history computation. A. 183:7-21. The parties had no objections. The district court did not inquire whether there was any objection to the PSR's conclusion that the Guidelines sentencing range was 6,960 months. PSR ¶ 314. Rather, the district court proceeded to arguments by counsel. A. 183:22.

11

The government argued that "the decision to be made by the Court this afternoon is whether to sentence Stephen Howells to life in prison or not. There is no middle ground. There is either a sentence which may allow Howells to one day reenter society or one that ensures that he never will." A. 183:24-184:3. The defense, noting that Howells had been separately prosecuted in state court for kidnapping and sexual abuse, urged the district court to focus its sentence on the violations of federal law with which Howells was charged. A. 188:24-190:10. The defense noted that Howells had cooperated fully with law enforcement, consented to the search of his home, confessed his guilt, and never minimized his conduct. A. 190:11-18. The defense noted that Howells released the Amish girls despite knowing that they could identify him, his car, and his home. A. 190:19-191:11. The defense argued that if the district court "were to ignore [Howells'] actions in releasing the victims and his cooperation with law enforcement and his timely plea of guilt, it could send a message to others that they're better off not releasing their victims because they'll end up with the same punishment anyhow." A. 191:12-17.

Howells spoke on his own behalf. A. 192. He said:

> I would just like to say that this evil I have done is my own, and that if the victims ever decide to research this further,

> I want them to know that they did nothing wrong. They did nothing to cause this to happen to them. The things that were done to them were my own illness. And I want them to hopefully someday be able to let this go, move on with their lives and have a normal existence, hopefully no memory of me. I would also like to say that I took a young woman who had no experiences with love or relationships and twisted her affections around and made her do things that she would never have done on her own to satisfy my own wishes for sexual gratification, and I hope that someday she can forgive me and hopefully have a normal life herself.

A. 192:21-193:9.

The court adopted the factual information and the guideline calculations in the PSR. A. 193:17-18. Regarding the guideline calculation, the district court stated that:

> the total offense level is 43, the criminal history is I, and the guideline imprisonment range is life. However, since no count of conviction carries a potential life sentence, the guideline sentence becomes 580 years, or 6,960 months, pursuant to U.S.S.G. Section 5G1.2(b). As this is a combined length of the authorized maximum sentences for Counts 1 through 21. As further instructed at 5G1.2(d), the sentence imposed on each count of conviction shall run consecutively to the extent necessary to produce a combined sentence equal to the total punishment, which again in this case is 580 years.

A. 193:19-A. 194:6. Having calculated the guideline sentence at 580 years, the district court stated that it found

> no reason to depart or vary from the applicable guideline
> sentence . . . . In fact, I find a guideline sentence is
> absolutely necessary to reflect the seriousness of your
> numerous crimes against children, to provide just
> punishment for the extent of these crimes against children,
> and to deter others from engaging in the same
> incomprehensible conduct, that being the sexual
> exploitation, drugging, kidnapping, restraining, and raping
> of children. There are few crimes more egregious than
> these, and I find the sentence imposed today is sufficient,
> but not greater than necessary, to achieve the goals of
> sentencing after considering the multitude of aggravating
> factors, including, but not limited to, the number of
> children you harmed by satisfying your deviant sadistic
> sexual desires and personality traits that enabled you to
> carry out your violent fantasies with no apparent guilt or
> remorse.

A. 194:16-195:11. After describing the details of the indicted conduct, the

district court concluded that:

> I find a guideline sentence is warranted, justified and
> reasonable because you are extremely dangerous and a
> violent sex offender. Only a life sentence can ensure the
> safety of the community, provide just punishment for the
> profound crimes against children and afford adequate
> deterrence. I cannot in good conscience impose a sentence
> that will ever allow you to have access to children again.

A. 198:9-16. In addition to the 580-year prison term, the district court imposed

a lifetime term of post-release supervision.

14

Judgment was entered on December 22, 2015. A. 203-09. The district court issued a written Statement of Reasons for its sentence on December 23, 2015.[6] This appeal timely followed. A. 210.

## ARGUMENT

### A. The 580-Year Sentence Imposed on Howells Was Procedurally and Substantively Unreasonable.

#### 1. The Standard of Review is Reasonableness.

In reviewing a district court's sentencing decision, the standard is whether the sentence imposed is reasonable. *United States v. McNeil*, 415 F.3d 273, 277 (2d Cir. 2005). "Reasonableness" has two components: procedural and substantive. *United States v. Aldeen*, 792 F.3d 247, 251 (2d Cir. 2015). Substantive reasonableness is judged in light of the factors listed in 18 U.S.C. § 3553(a). *United States v. Desnoyers*, 708 F.3d 378, 385 (2d Cir. 2013). "[T]he duty of a reviewing court is not to identify the 'right' sentence but, giving due deference to the district court's exercise of judgment, to determine whether the sentence imposed falls within the broad range that can be considered reasonable under the totality of the circumstances." *United States v. Jones*, 531 F.3d 163,174 (2d Cir. 2008).

Generally, this Court reviews sentencing decisions under a "deferential abuse-of-discretion standard." *Gall v. United States*, 552 U.S. 38, 41 (2007).

---

[6]     The Statement of Reasons has been filed under seal in this Court.

Where issues regarding the procedural reasonableness of a sentence are not raised in the trial court, this Court ordinarily reviews the trial court's ruling for plain error. *United States v. Villafuerte*, 502 F.3d 204, 207 (2d Cir. 2007).

> 2. <u>The District Court Imposed a Procedurally Unreasonable Sentence Because It Improperly Calculated the Guidelines Range.</u>

The sentence imposed on Howells was procedurally unreasonable. "A sentence is procedurally unreasonable if the district court 'fails to calculate (or improperly calculates) the Sentencing Guidelines range, treats the Sentencing Guidelines as mandatory, fails to consider the §3553(a) factors, selects a sentence based on clearly erroneous facts, or fails to adequately explain the chosen sentence.'" *Aldeen*, 792 F.3d at 251 (quoting *United States v. Chu*, 714 F.3d 742, 746 (2d Cir. 2013)) (emphasis omitted). Here, the district court imposed a procedurally unreasonable sentence because it improperly calculated the Guidelines range. Because the defense objected to this issue in its sentencing memorandum (A. 105) and was given no opportunity to object to the overall Guidelines calculation at the sentencing hearing (A. 183:12-21), this Court should review the issue under a deferential abuse of discretion standard rather than performing plain error review.[7]

---

[7]     Although Howells is entitled to the more favorable abuse of discretion standard of review, the district court also plainly erred in its Guidelines calculation.

16

The district court repeatedly stated its intention to impose "a Guideline sentence" and its belief that the sentence it imposed was, in fact, within the Guidelines range. (A. 194:16-17, 22; A. 198:9-10; Statement of Reasons ¶ IV(A).) Despite this intention, the district court failed to properly calculate the Guidelines range in two ways. These two errors resulted in the district court imposing a sentence that was more than five hundred years longer than the Guidelines range.

First, the district court miscalculated the "total punishment." Under Guideline § 5G1.2(b), "the court shall determine the total punishment and shall impose that total punishment on each count." U.S. Sentencing Guidelines Manual § 5G1.2(b) (U.S. Sentencing Comm'n 2014). The Guidelines define "total punishment" as the total "determined by the court after determining the adjusted combined offense level and the Criminal History Category and determining the defendant's guideline range on the Sentencing Table in Chapter Five, Part A." U.S. Sentencing Guidelines Manual § 5G1.2 cmt. n.1 (U.S. Sentencing Comm'n 2014). Here, the adjusted combined offense level was 43 (PSR ¶ 313) and the Criminal History Category was I (PSR ¶ 313), resulting in a Sentencing Table range of life. Thus, the "total punishment" for the purposes of Guideline § 5G1.2(b) was life. The district court, however, characterized the "total punishment" for the purposes

17

of Guideline § 5G1.2(b) as 580 years—a sum reached by adding together the statutory maximum term for each count. A. 193:19-A. 194:6. The trial court erred in that characterization. In failing to calculate the "total punishment" properly in the manner clearly set forth in the very first paragraph of the Guidelines commentary, the district court abused its discretion and committed plain error. Accordingly, this Court should vacate the sentence imposed on Howells.

Second, the district court compounded its error when it applied its erroneous "total punishment" calculation to the Guideline governing whether to impose concurrent or consecutive sentences. Guideline § 5G1.2(d) states that:

> [i]f the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment. *In all other respects, sentences on all counts shall run concurrently*.

Sentencing Guidelines Manual § 5G1.2(d) (U.S. Sentencing Comm'n 2014) (emphasis added). The emphasised language expresses the long-standing preference in American courts for concurrent sentences rather than consecutive sentences. *See* 18 U.S.C. § 3584(a) ("Multiple terms of imprisonment imposed at the same time run concurrently unless the court orders or the statute mandates that the terms are to run consecutively."); *United States v. Martinez*, 274 F.3d 897, 903

n.5 (5th Cir. 2001) (characterizing § 5G1.2 as "labeling concurrent sentences as the default"); *United States v. Hardrich*, 707 F.2d 992, 993 n.1 (8th Cir. 1983) (noting that the National Advisory Commission on Criminal Justice Standards and Goals "recommends a presumption in favor of concurrent sentences for multiple offenses"). Here, having erroneously determined that the "total punishment" was 580 years, the district court assumed that, under § 5G1.2(d), it needed to impose the maximum statutory sentence on every count, to be served consecutively, in order to impose "a Guideline sentence." What the district court was actually required to do was to impose consecutive sentences *but only to the extent necessary* to produce a combined sentence of *life*. The United States Sentencing Commission defines a life sentence as 470 months (39.2 years). UNITED STATES SENTENCING COMM'N, APPENDIX A, DESCRIPTION OF DATAFILES, VARIABLES, AND FOOTNOTES http://www.ussc.gov/amendment-process/public-hearings-and-meetings/appendix (last visited May 5, 2016). The Social Security Administration states that a man reaching the age of sixty-five today can expect to live, on average, until age 84.3. SOCIAL SECURITY ADMINISTRATION, CALCULATORS: LIFE EXPECTANCY, https://www.ssa.gov/planners/lifeexpectancy.html (last visited May 5, 2016). Under the Social Security standard, a life sentence for Howells would be 44.3 years. Thus, the Guideline required the district court to impose consecutive

sentences to produce a combined sentence of between 39.2 and 44.3 years. Such a

sentence would have been "a Guideline sentence." The sentence that the district

court imposed was actually 535.7 to 540.8 years longer than the Guideline

sentence. Accordingly, this Court should vacate the sentence imposed on Howells.[8]

### 3. The District Court Imposed a Substantively Unreasonable Sentence.

In addition to being procedurally unreasonable, the sentence imposed on

Howells is substantively unreasonable. In reviewing a sentence for substantive

reasonableness, a reviewing court must "take into account the totality of the

circumstances, giving due deference to the sentencing judge's exercise of

discretion, and bearing in mind the institutional advantages of district courts."

*United States v. Cavera,* 550 F.3d 180, 190 (2d Cir. 2008). Accordingly, this

Court will "set aside a district court's substantive determination only in exceptional

cases where the trial court's decision cannot be located within the range of

permissible decisions." *Id.* at 189. However, "[a]t the substantive stage of

---

[8] The government may argue that the district court's error was harmless because there is no practical difference between a prison sentence of 44.3 years and a prison sentence of 580 years—Howells will still die behind bars. But as a matter of policy, the Guidelines range sets the tone for sentencing. *See United States v. Park*, 758 F.3d 193, 197 (2d Cir. 2014) ("A district court normally begins all sentencing proceedings by calculating the applicable Guidelines range, and will then consider the factors listed in 18 U.S.C. § 3553(a) . . . before imposing a final sentence.") Here, as discussed above, the district court repeatedly stated that it intended to impose "a Guidelines sentence." There is a huge difference conceptually between a starting point of "life" and a starting point of 580 years. There is simply no telling how the district court would have proceeded if it had properly determined the Guidelines range here.

reasonableness review, an appellate court may consider whether a factor relied on by a sentencing court can bear the weight assigned to it." *Id.* at 191. Accordingly, district courts may not impose "whatever sentences suit their fancy." *United States v. Jones*, 531 F.3d 163, 174 (2008). Here, the district court's sentence was substantively unreasonable for three reasons.

First, the district court's sentence failed to account for the fact that Howells will serve a lengthy state court sentence for sexual abuse and kidnapping. Under 18 U.S.C. § 3553(a)(2)(A), the sentencing court is to consider the seriousness of the offense when determining a particular sentence. Howells does not contest the extremely serious nature of his offenses. However, much of the gravity of his offenses was accounted for in his state sentence. The district court failed to give that fact its proper weight. In fact, the district court explicitly stated that it considered its sentence necessary to punish Howells for kidnapping and sexual abuse—charges that he did not face in federal court and for which he will serve time in state prison. Specifically, the district court informed Howells that its sentence was "absolutely necessary to reflect the seriousness of your numerous crimes against children, to provide just punishment for the extent of these crimes against children, and to deter others from engaging in the same incomprehensible conduct, that being the sexual exploitation, drugging, kidnapping, restraining, and

21

raping of children." A. 194:22-195:3. As a result, the federal sentence imposed on Howells was substantively unreasonable. Accordingly, this Court should vacate the sentence imposed on Howells.

Second, the sentence imposed was substantively unreasonable because it will not deter criminal conduct. 18 U.S.C. § 3553(a)(2)(B). Rather, it will encourage more violent conduct. Howells released his victims. He did not flee. He cooperated fully with law enforcement. He pleaded guilty to every charge brought against him without the benefit of a plea agreement. Despite this cooperation, the district court imposed the statutory maximum sentence on all twenty-one counts. The message this sentence sends is clear: there is no reason for people in Howells' position to release their victims, cooperate, or plead guilty because the sentence will be hundreds of years regardless of a defendant's mitigating actions. Accordingly, this Court should vacate the sentence imposed on Howells.

Third, the sentence imposed was substantively unreasonable because it did not take into account the history and characteristics of the defendant. 18 U.S.C. § 3553(a)(1). As set forth above, Howells had an abusive and neglected childhood for which he never received any therapy. He has continuously expressed remorse for his actions and willingness to seek help to overcome his psychological problems. The psychologist who conducted Howells' psychosexual evaluation

22

opined that Howells "displays characteristics associated with those who engage in treatment in a meaningful manner." A. 139. The district court utterly dismissed these facts. Accordingly, this Court should vacate the sentence imposed on Howells.

## B. The 580-Year Sentence Imposed on Howells Violates the Eighth Amendment's Prohibition of Excessive Sanctions and Cruel and Unusual Punishment.

The Eighth Amendment prohibits "excessive" sanctions and cruel and unusual punishments. *Atkins v. Virginia*, 536 U.S. 304, 311 (2002). The Supreme Court has interpreted this provision as prohibiting punishment that is "grossly disproportionate" to the offense of conviction. *Solem v. Helm*, 463 U.S. 277, 288 (1983). Howells does not dispute that his offenses were extremely serious and disturbing. However, the sentence imposed on Howells is far more severe— literally hundreds of years longer—than sentences imposed on other defendants for similar conduct. *See United States v. Huffstatler,* 571 F.3d 620 (7th Cir. 2009) (450-month sentence imposed on repeat sexual offender for sexually abusing and producing pornographic pictures of a fourteen-year-old boy); *United States v. Vowell,* 516 F.3d 503, 511-13 (6th Cir. 2008) (780-month sentence for forty-year-old man who had sexual intercourse with his girlfriend's eight-year-old daughter while being videotaped by his girlfriend); *United States v. Johnson,* 451 F.3d 1239

23

(11th Cir. 2006) (140-year sentence for abusing and photographing three boys between the ages of eight and sixteen). Accordingly, this Court should vacate the sentence imposed on Howells.

## CONCLUSION

For the foregoing reasons, Howells respectfully requests that the Court vacate his sentence and remand the matter for resentencing.

Respectfully submitted,

LISA A. PEEBLES
Federal Public Defender

By:     */s/*
Courtenay K. McKeon, *on brief*
Research and Writing Attorney
4 Clinton Square, 3rd Floor
Syracuse, New York 13202
(315) 701-0080

24

# CERTIFICATE OF COMPLIANCE

Pursuant to Second Circuit Rule 32(a)(7), undersigned counsel certifies that this brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32 (a)(7).

1.    Exclusive of the portions exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii), this brief contains 5,322 words.

2.    This brief has been prepared in proportionally spaced typeface using Microsoft Word 2013 software in Times New Roman 14 point font in text and Times New Roman 12 point font in footnotes.

3.    Undersigned counsel understands that a material misrepresentation in completing this certificate, or circumvention of the type-volume limits in Federal Rule of Appellate Procedure 32 (a)(7), may result in the Court's striking this brief and imposing sanctions against the person using the brief.


*/s/*
COURTENAY K. MCKEON
Research & Writing Attorney

## CERTIFICATE OF SERVICE

I, Valarie Bruni, certify that today, May 13, 2016, one copy of the Appellant's Brief was served upon Mr. Richard Hartunian, United States Attorney, through Steven Clymer, AUSA, 100 South Clinton Street, Syracuse, New York 13261, by hand delivery.

*/s/*
Valarie Bruni