# 15-4192-cr

---

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

---

UNITED STATES OF AMERICA,

-v-                                 Appellee,

STEPHEN M. HOWELLS, II,

Defendant-Appellant.

---

### ON APPEAL FROM THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF NEW YORK

---

## DEFENDANT'S APPENDIX ON APPEAL

---

LISA A. PEEBLES                         Office of the Federal Public Defender
Federal Public Defender                 4 Clinton Square, 3rd Floor
COURTENAY K. MCKEON, *on brief*         Syracuse, New York 13202
Research & Writing Attorney             315.701.0080

# TABLE OF CONTENTS

DOCKET REPORT…………………………………………..………..........A.1

INDICTMENT…………………………………………………..…..A. 21

SUPERSEDING INDICTMENT………………………………....A.27

OFFER OF PROOF…………………………………………………...A.32

TRANSCRIPT OF CHANGE OF PLEA HEARING ……………….....A.54

DEFENDANT'S SENTENCING MEMORANDUM……………….....A.101

GOVERNMENT'S SENTENCING MEMORANDUM…………….....A.163

GOVERNMENT'S RESPONSE TO DEFENDAN'TS SENTENCING
     MEMORANDUM………………………………………………A. 175
.
TRANSCRIPT OF SENTENCING HEARING………………….....A.181

JUDGMENT……… ...................................................... …...A.203

NOTICE OF APPEAL………………………………………..…..A.210

ELECTRONIC RECORD CERTIFICATION………………….…..A.211

Case 15-4192, Document 28, 05/13/2016, 1771725, Page3 of 213

APPEAL,CLOSED

# U.S. District Court
# Northern District of New York - Main Office (Syracuse) [LIVE - Version 6.1] (Syracuse)
# CRIMINAL DOCKET FOR CASE #: 5:14-cr-00340-GTS All Defendants

Case title: USA v. Howells et al

Date Filed: 09/17/2014
Date Terminated: 12/22/2015

Assigned to: Chief Judge Glenn T. Suddaby

## Defendant (1)

**Stephen M. Howells, II**
*TERMINATED: 12/22/2015*

represented by **Randi Juda Bianco**
Office of the Federal Public Defender - Syracuse Office
Districts of Northern New York & Vermont
The Clinton Exchange, 3rd Floor
4 Clinton Square
Syracuse, NY 13202
315-701-0080
Fax: 315-701-0081
Email: randi_bianco@fd.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Public Defender or Community Defender Appointment*

## Pending Counts

18:2251.F SEXUAL EXPLOITATION OF CHILDREN
(1-3)

18:2251.F - CONSPIRACY TO SEXUALLY EXPLOIT CHILDREN
(1s)

## Disposition

Superseded.

Term of imprisonment: 6,960 months (580 years). This sentence consists of 360 months on Counts 1 through 16 and 20 years on Counts 17 through 21, all to be served consecutively. If defendant is released, defendant is sentenced to Supervised Release for LIFE on each count to run concurrently. Special Assessment: $100 on each count for a total of $2,100. Fine: waived. Restitution to be

# A.1

determined.

| | |
|---|---|
| 18:2251.F - SEXUAL EXPLOITATION OF CHILDREN (2s) | Term of imprisonment: 6,960 months (580 years). This sentence consists of 360 months on Counts 1 through 16 and 20 years on Counts 17 through 21, all to be served consecutively. If defendant is released, defendant is sentenced to Supervised Release for LIFE on each count to run concurrently. Special Assessment: $100 on each count for a total of $2,100. Fine: waived. Restitution to be determined. |
| 18:2251.F - SEXUAL EXPLOITATION OF CHILDREN (3s) | Term of imprisonment: 6,960 months (580 years). This sentence consists of 360 months on Counts 1 through 16 and 20 years on Counts 17 through 21, all to be served consecutively. If defendant is released, defendant is sentenced to Supervised Release for LIFE on each count to run concurrently. Special Assessment: $100 on each count for a total of $2,100. Fine: waived. Restitution to be determined. |
| 18:2251.F - SEXUAL EXPLOITATION OF CHILDREN (4s-5s) | Term of imprisonment: 6,960 months (580 years). This sentence consists of 360 months on Counts 1 through 16 and 20 years on Counts 17 through 21, all to be served consecutively. If defendant is released, defendant is sentenced to Supervised Release for LIFE on each count to run concurrently. Special Assessment: $100 on each count for a total of $2,100. Fine: waived. Restitution to be determined. |
| 18:2252A.F ACTIVITIES RE MATERIAL CONSTITUTING/CONTAINING CHILD PORNO (5) | Superseded |
| 18:2251.F - SEXUAL EXPLOITATION OF CHILDREN (6s) | Term of imprisonment: 6,960 months (580 years). This sentence consists of 360 months on Counts 1 through 16 and 20 years on Counts 17 through 21, all to be served consecutively. If defendant is released, defendant is sentenced to |

A.2

Case 15-4192, Document 28, 05/13/2016, 1771725, Page5 of 213

Supervised Release for LIFE on each count to run concurrently. Special Assessment: $100 on each count for a total of $2,100. Fine: waived. Restitution to be determined.

18:2251.F - SEXUAL EXPLOITATION OF CHILDREN
(7s-8s)

Term of imprisonment: 6,960 months (580 years). This sentence consists of 360 months on Counts 1 through 16 and 20 years on Counts 17 through 21, all to be served consecutively. If defendant is released, defendant is sentenced to Supervised Release for LIFE on each count to run concurrently. Special Assessment: $100 on each count for a total of $2,100. Fine: waived. Restitution to be determined.

18:2251.F - SEXUAL EXPLOITATION OF CHILDREN
(9s)

Term of imprisonment: 6,960 months (580 years). This sentence consists of 360 months on Counts 1 through 16 and 20 years on Counts 17 through 21, all to be served consecutively. If defendant is released, defendant is sentenced to Supervised Release for LIFE on each count to run concurrently. Special Assessment: $100 on each count for a total of $2,100. Fine: waived. Restitution to be determined.

18:2251.F - SEXUAL EXPLOITATION OF CHILDREN
(10s-11s)

Term of imprisonment: 6,960 months (580 years). This sentence consists of 360 months on Counts 1 through 16 and 20 years on Counts 17 through 21, all to be served consecutively. If defendant is released, defendant is sentenced to Supervised Release for LIFE on each count to run concurrently. Special Assessment: $100 on each count for a total of $2,100. Fine: waived. Restitution to be determined.

18:2251.F - SEXUAL EXPLOITATION OF CHILDREN
(12s)

Term of imprisonment: 6,960 months (580 years). This sentence consists of 360 months on Counts 1 through 16 and 20 years on Counts 17 through 21, all to be served consecutively. If defendant is released, defendant is sentenced to Supervised Release for LIFE on each count to run concurrently. Special

A.3

Case 15-4192, Document 28, 05/13/2016, 1771725, Page6 of 213

| | |
|---|---|
| | Assessment: $100 on each count for a total of $2,100. Fine: waived. Restitution to be determined. |
| 18:2251.F - SEXUAL EXPLOITATION OF CHILDREN (13s-14s) | Term of imprisonment: 6,960 months (580 years). This sentence consists of 360 months on Counts 1 through 16 and 20 years on Counts 17 through 21, all to be served consecutively. If defendant is released, defendant is sentenced to Supervised Release for LIFE on each count to run concurrently. Special Assessment: $100 on each count for a total of $2,100. Fine: waived. Restitution to be determined. |
| 18:2251.F - SEXUAL EXPLOITATION OF CHILDREN (15s) | Term of imprisonment: 6,960 months (580 years). This sentence consists of 360 months on Counts 1 through 16 and 20 years on Counts 17 through 21, all to be served consecutively. If defendant is released, defendant is sentenced to Supervised Release for LIFE on each count to run concurrently. Special Assessment: $100 on each count for a total of $2,100. Fine: waived. Restitution to be determined. |
| 18:2251.F - SEXUAL EXPLOITATION OF CHILDREN (16s) | Term of imprisonment: 6,960 months (580 years). This sentence consists of 360 months on Counts 1 through 16 and 20 years on Counts 17 through 21, all to be served consecutively. If defendant is released, defendant is sentenced to Supervised Release for LIFE on each count to run concurrently. Special Assessment: $100 on each count for a total of $2,100. Fine: waived. Restitution to be determined. |
| 18:2252A.F - POSSESSION OF CHILD PORNOGRAPHY (17s-18s) | Term of imprisonment: 6,960 months (580 years). This sentence consists of 360 months on Counts 1 through 16 and 20 years on Counts 17 through 21, all to be served consecutively. If defendant is released, defendant is sentenced to Supervised Release for LIFE on each count to run concurrently. Special Assessment: $100 on each count for a total of $2,100. Fine: waived. Restitution to be |

A.4

Case 15-4192, Document 28, 05/13/2016, 1771725, Page7 of 213

determined.

| | |
|---|---|
| 18:2252A.F - POSSESSION OF CHILD PORNOGRAPHY (19s) | Term of imprisonment: 6,960 months (580 years). This sentence consists of 360 months on Counts 1 through 16 and 20 years on Counts 17 through 21, all to be served consecutively. If defendant is released, defendant is sentenced to Supervised Release for LIFE on each count to run concurrently. Special Assessment: $100 on each count for a total of $2,100. Fine: waived. Restitution to be determined. |
| 18:2252A.F - POSSESSION OF CHILD PORNOGRAPHY (20s-21s) | Term of imprisonment: 6,960 months (580 years). This sentence consists of 360 months on Counts 1 through 16 and 20 years on Counts 17 through 21, all to be served consecutively. If defendant is released, defendant is sentenced to Supervised Release for LIFE on each count to run concurrently. Special Assessment: $100 on each count for a total of $2,100. Fine: waived. Restitution to be determined. |

**Highest Offense Level (Opening)**

Felony

**Terminated Counts**                     **Disposition**

None

**Highest Offense Level (Terminated)**

None

**Complaints**                     **Disposition**

None

Assigned to: Chief Judge Glenn T. Suddaby

**Defendant (2)**

**Nicole F. Vaisey**                  represented by  **Bradford C. Riendeau**
*TERMINATED: 12/22/2015*                 Office of Bradford C. Riendeau

A.5

Case 15-4192, Document 28, 05/13/2016, 1771725, Page8 of 213

637 Academy Street
Watertown, NY 13601
315-786-8536
Fax: 315-786-8536
Email: riendeau@northnet.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*

| **Pending Counts** | **Disposition** |
|---|---|
| 18:2251.F - CONSPIRACY TO SEXUALLY EXPLOIT CHILDREN (1s) | Term of imprisonment: 3,600 months (or 300 years). This sentence consists of 360 months on each count to be served consecutively. If the defendant is released, defendant is sentenced to a term of supervised release of LIFE. Special Assessment: $100 on each count for a total of $1,000. No fine. |
| 18:2251.F - SEXUAL EXPLOITATION OF CHILDREN (2s-3s) | Term of imprisonment: 3,600 months (or 300 years). This sentence consists of 360 months on each count to be served consecutively. If the defendant is released, defendant is sentenced to a term of supervised release of LIFE. Special Assessment: $100 on each count for a total of $1,000. No fine. |
| 18:2251.F - SEXUAL EXPLOITATION OF CHILDREN (4s) | Term of imprisonment: 3,600 months (or 300 years). This sentence consists of 360 months on each count to be served consecutively. If the defendant is released, defendant is sentenced to a term of supervised release of LIFE. Special Assessment: $100 on each count for a total of $1,000. No fine. |
| 18:2251.F - SEXUAL EXPLOITATION OF CHILDREN (5s-6s) | Term of imprisonment: 3,600 months (or 300 years). This sentence consists of 360 months on each count to be served consecutively. If the defendant is released, defendant is sentenced to a term of supervised release of LIFE. Special Assessment: $100 on each count for a total of $1,000. No fine. |
| 18:2251.F - SEXUAL EXPLOITATION OF CHILDREN (7s) | Term of imprisonment: 3,600 months (or 300 years). This sentence consists of 360 months on each count to be served |

A.6

Case 15-4192, Document 28, 05/13/2016, 1771725, Page9 of 213

|  |  |
|---|---|
|  | consecutively. If the defendant is released, defendant is sentenced to a term of supervised release of LIFE. Special Assessment: $100 on each count for a total of $1,000. No fine. |
| 18:2251.F - SEXUAL EXPLOITATION OF CHILDREN (8s-9s) | Term of imprisonment: 3,600 months (or 300 years). This sentence consists of 360 months on each count to be served consecutively. If the defendant is released, defendant is sentenced to a term of supervised release of LIFE. Special Assessment: $100 on each count for a total of $1,000. No fine. |
| 18:2251.F - SEXUAL EXPLOITATION OF CHILDREN (10s) | Term of imprisonment: 3,600 months (or 300 years). This sentence consists of 360 months on each count to be served consecutively. If the defendant is released, defendant is sentenced to a term of supervised release of LIFE. Special Assessment: $100 on each count for a total of $1,000. No fine. |

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
|---|---|
| 18:2251.F SEXUAL EXPLOITATION OF CHILDREN (1-2) | Superseded |
| 18:2251.F SEXUAL EXPLOITATION OF CHILDREN (4) | Superseded |

**Highest Offense Level (Terminated)**

Felony

| **Complaints** | **Disposition** |
|---|---|
| None | |

**Plaintiff**

A.7

Case 15-4192, Document 28, 05/13/2016, 1771725, Page10 of 213

**USA**           represented by   **Lisa M. Fletcher**
Office of the United States Attorney -
Syracuse
P.O. Box 7198
100 South Clinton Street
Syracuse, NY 13261-7198
315-448-0672
Fax: 315-448-0658
Email: lisa.fletcher@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant US Attorney*

**Tamara Thomson**
Office of United States Attorney -
Syracuse Office
100 South Clinton Street
P.O. Box 7198
Syracuse, NY 13261
315-448-0672
Fax: 315-448-0658
Email: tamara.thomson@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant US Attorney*

**Geoffrey J.L. Brown**
Office of United States Attorney -
Syracuse Office
100 South Clinton Street
P.O. Box 7198
Syracuse, NY 13261
315-448-0695
Fax: 315-448-0689
Email: geoffrey.brown2@usdoj.gov
*TERMINATED: 12/16/2014*
*Designation: Assistant US Attorney*

| Date Filed | # | Docket Text |
|---|---|---|
| 09/17/2014 | | TEXT Minute Entry for proceedings held before US Magistrate Judge Andrew T. Baxter: GRAND JURY makes a partial report and returns Indictment. Tally Sheet is ordered sealed. Sealing Order and Arrest Warrants to be signed. (Court Reporter Sue Byrne) (rjb, ) (Entered: 09/18/2014) |
| 09/17/2014 | 1 | INDICTMENT as to Stephen M. Howells, II (1) count(s) 1-3, 5, Nicole F. Vaisey (2) count(s) 1-2, 4. (rjb, ) (Entered: 09/18/2014) |

A.8

| | | |
|---|---|---|
| 09/17/2014 | 2 | MOTION to Seal by USA as to Stephen M. Howells, II, Nicole F. Vaisey. (rjb, ) (Entered: 09/18/2014) |
| 09/17/2014 | 3 | ORDER granting 2 Motion to Seal as to Stephen M. Howells II (1), Nicole F. Vaisey (2). Signed by Magistrate Judge Therese Wiley Dancks on 9/17/14. (Attachments: # 1 Public Sealing Order) (rjb, ) (Entered: 09/18/2014) |
| 09/17/2014 | | ORAL MOTION for Writ of Habeas Corpus ad prosequendum by USA as to Stephen M. Howells, II. (rjb, ) (Entered: 09/18/2014) |
| 09/17/2014 | | ORAL MOTION for Writ of Habeas Corpus ad prosequendum by USA as to Nicole F. Vaisey. (rjb, ) (Entered: 09/18/2014) |
| 09/17/2014 | 4 | ORDER granting Motion for Writ of Habeas Corpus ad prosequendum as to Stephen M. Howells II (1). Signed by Magistrate Judge Therese Wiley Dancks on 9/17/14. (rjb, ) (Entered: 09/18/2014) |
| 09/17/2014 | 5 | ORDER granting Motion for Writ of Habeas Corpus ad prosequendum as to Nicole F. Vaisey (2). Signed by Magistrate Judge Therese Wiley Dancks on 9/17/14. (rjb, ) (Entered: 09/18/2014) |
| 09/18/2014 | | TEXT Minute Entry for proceedings held before Magistrate Judge Therese Wiley Dancks:Initial Appearance as to Stephen M. Howells, II, Nicole F. Vaisey held on 9/18/2014. Appearances: Lisa Fletcher, AUSA and Tamara Thomson, AUSA for the United States; USPO Ellen Phillips. Defendants appear without counsel, copies of the Indictment provided. Defendants are advised of the charges and their rights. Maximum penalties are stated on the record. Financial affidavits are submitted, Judge Dancks appoints counsel for both defendants. Gov't. seeks detention. AUSA Fletcher requests that the Court direct Deft. Howells to comply with his requirement to submit a DNA sample. Judge Dancks will consult with Defendant's counsel and issue an order. Arraignments/Detention Hearings set for 9/23/2014 at 11:30 AM in Syracuse before Magistrate Judge Therese Wiley Dancks. Defendants are remanded to the custody of the USMS. (Court Reporter Eileen McDonough; 10:09AM-10:19AM) (rjb, ) (Entered: 09/18/2014) |
| 09/18/2014 | 6 | ORDER APPOINTING FEDERAL PUBLIC DEFENDER as to Stephen M. Howells, II. Signed by Magistrate Judge Therese Wiley Dancks on 9/18/14. (rjb, ) (Entered: 09/18/2014) |
| 09/18/2014 | | TEXT Minute Entry for proceedings held before Magistrate Judge Therese Wiley Dancks:Telephone Conference as to Stephen M. Howells, II held on 9/18/2014. Appearances: Lisa Fletcher, AUSA for the United States; Lisa Peebles, FPD for Deft. Howells. Judge Dancks discusses the issue regarding Deft. Howells DNA sample that was raised at the initial appearance with counsel. FPD Peebles does not contest the sample being taken. Judge Dancks will issue an Order. AUSA Fletcher moves to unseal the case. Request to unseal is granted (Court Reporter Eileen McDonough; 10:38AM-10:45AM) (rjb, ) (Entered: 09/18/2014) |
| 09/18/2014 | 7 | NOTICE OF ATTORNEY APPEARANCE Tamara Thomson appearing for USA as Co-counsel. (rjb, ) (Main Document 7 replaced on 9/18/2014) (rjb, ). (Entered: 09/18/2014) |

A.9

Case 15-4192, Document 28, 05/13/2016, 1771725, Page12 of 213

| | | |
|---|---|---|
| 09/18/2014 | 8 | TEXT ORDER as to Stephen M. Howells, II: Court held a telephone conference on the record with FPD Lisa Peebles and AUSA Lisa Fletcher regarding defendant's refusal to submit a DNA sample. Pursuant to 42 U.S.C. Section 14135a, Defendant is ordered to cooperate in the collection of a DNA sample. SO ORDERED by Magistrate Judge Therese Wiley Dancks on 9/18/14. (rjb, ) (Entered: 09/18/2014) |
| 09/18/2014 | 9 | CJA 20 Appointment of Attorney Bradford C. Riendeau for Nicole F. Vaisey. Refer to the Court's website: http://www.nynd.uscourts.gov/cja.cfm for comprehensive information relating to court appointed representation. Attorneys are reminded that CJA vouchers are to be submitted to the court no later than 45 days after the final disposition of the case, unless good cause is shown. Please refer to Appendix II of the CJA Plan (Guidelines for Submitting Claims for Reimbursement Pursuant to the Criminal Justice Act of the Northern District of New York). Authorized by Magistrate Judge Therese Wiley Dancks on 9/18/14. (rjb, ) (Entered: 09/18/2014) |
| 09/22/2014 | 10 | NOTICE OF ATTORNEY APPEARANCE: Randi Juda Bianco appearing for Stephen M. Howells, II (Bianco, Randi) (Entered: 09/22/2014) |
| 09/22/2014 | 11 | NOTICE OF ATTORNEY APPEARANCE: Bradford C. Riendeau appearing for Nicole F. Vaisey (Riendeau, Bradford) (Entered: 09/22/2014) |
| 09/22/2014 | 12 | WAIVER of Personal Appearance at Arraignment and Entry of Plea of Not Guilty by Stephen M. Howells, II (Bianco, Randi) (Entered: 09/22/2014) |
| 09/22/2014 | 13 | WAIVER of Detention Hearing by Stephen M. Howells, II (Bianco, Randi) (Entered: 09/22/2014) |
| 09/22/2014 | 14 | ORDER approving waiver of appearance at arraignment and entry of not guilty plea as to Stephen M. Howells, II. Signed by Magistrate Judge Therese Wiley Dancks on 9/22/14. (rjb, ) (Entered: 09/22/2014) |
| 09/22/2014 | 15 | ORDER approving waiver of detention hearing as to Stephen M. Howells, II. Signed by Magistrate Judge Therese Wiley Dancks on 9/22/14. (rjb, ) (Entered: 09/22/2014) |
| 09/23/2014 | 16 | NOTICE OF ATTORNEY APPEARANCE Geoffrey J.L. Brown appearing for USA *for the forfeiture aspects of the case.* (Brown, Geoffrey) (Entered: 09/23/2014) |
| 09/23/2014 | | TEXT NOTICE OF HEARING CHANGE as to Nicole F. Vaisey: Arraignment/Detention Hearing rescheduled for 9/24/2014 at 11:30 AM in Syracuse before Magistrate Judge Therese Wiley Dancks. (rjb, ) (Entered: 09/23/2014) |
| 09/24/2014 | | TEXT Minute Entry for proceedings held before Magistrate Judge Therese Wiley Dancks:Arraignment/Detention Hearing as to Nicole F. Vaisey held on 9/24/2014. Appearances: Tamara Thomson, AUSA and John Duncan, AUSA for the United States; Bradford Riendeau, Esq. for Defendant; USPO Ellen Phillips. Defendant appears with counsel and waives a formal reading of the Indictment. Defendant pleads not guilty, a scheduling order will be issued. Defendant waives her right to a detention hearing. Judge Dancks finds the waiver knowing and voluntary. Attorney Riendeau makes a request that Defendant Vaisey be kept separated from her co-defendant, Gov't. does not object. Judge Dancks grants the request and Defendant is remanded to the custody of the USMS. (Court Reporter Diane Martens; 11:43AM-11:47AM) (rjb, ) (Entered: |

A.10

| | | |
|---|---|---|
| | | 09/24/2014) |
| 09/24/2014 | 17 | CRIMINAL PRETRIAL SCHEDULING ORDER as to Stephen M. Howells, II, Nicole F. Vaisey: Motions to be filed by 10/22/2014; Jury Trial set for 11/17/2014 at 09:30 AM in Syracuse before Judge Glenn T. Suddaby. Signed by Magistrate Judge Therese Wiley Dancks on 9/24/14. (rjb, ) (Entered: 09/24/2014) |
| 09/25/2014 | 18 | TEXT ORDER: Counsel for Defendant Vaisey's request that she be kept separated from her co-defendant is granted. Defendant Vaisey to be held and transported separately from co-defendant. SO ORDERED by Magistrate Judge Therese Wiley Dancks on 9/25/14. (rjb, ) (Entered: 09/25/2014) |
| 09/26/2014 | 19 | Warrant of Arrest Returned Executed on 9/18/14 in case as to Stephen M. Howells, II. (sal, ) (Entered: 10/02/2014) |
| 09/26/2014 | 20 | Warrant of Arrest Returned Executed on 9/18/14 in case as to Nicole F. Vaisey. (sal, ) (Entered: 10/02/2014) |
| 10/08/2014 | | Text Minute Entry for proceedings held before U.S. Magistrate Judge Andrew T. Baxter: GRAND JURY makes a partial report and returns Superseding Indictment. Tally Sheet is ordered sealed. No special requests. Appearances: Lisa M. Fletcher, AUSA; Grand Jury Foreperson. (Stenographer: Kevin Callahan) (mae) (Entered: 10/09/2014) |
| 10/08/2014 | 21 | SUPERSEDING INDICTMENT as to Stephen M. Howells, II (1) Counts 1s, 2s-16s, 17s-21s with forfeiture allegation; and Nicole F. Vaisey (2) Counts 1s, 2s-10s with forfeiture allegation. (mae) (Entered: 10/09/2014) |
| 10/09/2014 | 22 | NOTICE OF OPTION TO WAIVE APPEARANCE AT ARRAIGNMENT as to Stephen M. Howells, II and Nicole F. Vaisey re 21 Superseding Indictment. If the court does not receive the attached form by October 23, 2014 an arraignment will immediately be scheduled. (Attachment: # 1 Waiver of Arraignment) (mae) (Entered: 10/09/2014) |
| 10/14/2014 | 23 | WAIVER of Personal Appearance at Arraignment and Entry of Plea of Not Guilty by Stephen M. Howells, II (Bianco, Randi) (Entered: 10/14/2014) |
| 10/16/2014 | 24 | ORDER approving 23 Waiver of Presence at Arraignment filed by Stephen M. Howells, II. A plea of not guilty to the 21 Superseding Indictment is entered on behalf of defendant Howells. Signed by U.S. Magistrate Judge Andrew T. Baxter on 10/16/2014. (mae) (Entered: 10/16/2014) |
| 10/20/2014 | 25 | WAIVER of Personal Appearance at Arraignment and Entry of Plea of Not Guilty by Nicole F. Vaisey (Riendeau, Bradford) (Entered: 10/20/2014) |
| 10/21/2014 | 26 | ORDER approving 25 Waiver of Presence at Arraignment filed by Nicole F. Vaisey. A plea of not guilty to the 21 Superseding Indictment is entered on behalf of defendant Vaisey. Signed by U.S. Magistrate Judge Andrew T. Baxter on 10/21/2014. (mae) (Entered: 10/21/2014) |
| 10/21/2014 | 27 | AMENDED CRIMINAL PRETRIAL SCHEDULING ORDER as to Stephen M. Howells, II and Nicole F. Vaisey. Motions to be filed by 11/18/2014. Jury Trial set for |

A.11

| | | |
|---|---|---|
| | | 12/15/2014 at 9:30 a.m. in Syracuse before Judge Glenn T. Suddaby. Signed by U.S. Magistrate Judge Andrew T. Baxter on 10/21/2014. (mae) (Entered: 10/21/2014) |
| 11/05/2014 | 28 | STIPULATION by USA to 90 Day Extension of Time (Fletcher, Lisa) (Entered: 11/05/2014) |
| 11/06/2014 | 29 | ORDER TO CONTINUE - Ends of Justice as to Stephen M. Howells and II, Nicole F. Vaisey: Time excluded from 11/6/14 until 2/3/15. Government discovery due by 1/12/15. Defendant discovery due by 1/19/15. Motions to be filed by 1/26/15 and shall be made returnable on 2/26/15 on submit before Judge Glenn T. Suddaby. Any change of plea shall be entered by 3/2/15. All pretrial submissions as set forth in the # 27 amended criminal pretrial scheduling order are due by 3/9/15. Jury Trial set for 3/23/2015 at 9:00 AM in Syracuse before Judge Glenn T. Suddaby. Signed by Judge Glenn T. Suddaby on 11/6/14. (lmw) (Entered: 11/06/2014) |
| 12/15/2014 | 30 | NOTICE *terminating AUSA Geoffrey J. L. Brown from the case;* by Stephen M. Howells, II, Nicole F. Vaisey (Thomson, Tamara) (Entered: 12/15/2014) |
| 01/27/2015 | 31 | STIPULATION by USA to 60 Day Extension of Time (Fletcher, Lisa) (Entered: 01/27/2015) |
| 02/03/2015 | 32 | ORDER TO CONTINUE - Ends of Justice as to Stephen M. Howells, II and Nicole F. Vaisey: Time excluded from 2/3/15 until 4/3/15. Government discovery due by 3/9/15. Defendant discovery due by 3/16/15. Motions to be filed by 3/23/15 and shall be made returnable on 4/23/15 on submit before Judge Glenn T. Suddaby. Any change of plea shall be entered by 4/27/15. All pretrial submissions as set forth in the # 27 criminal pretrial scheduling order are due by 5/4/15. Jury Trial set for 5/18/2015 at 9:00 AM in Syracuse before Judge Glenn T. Suddaby. Signed by Judge Glenn T. Suddaby on 2/3/15. (lmw) (Entered: 02/03/2015) |
| 04/02/2015 | 33 | STIPULATION by USA to 95 Day Extension of Time (Fletcher, Lisa) (Entered: 04/02/2015) |
| 04/02/2015 | 34 | ORDER TO CONTINUE - Ends of Justice as to Stephen M. Howells, II and Nicole F. Vaisey: Time excluded from 4/2/15 until 7/5/15. Government discovery due by 4/20/15. Defendant discovery due by 4/27/15. Motions to be filed by 5/4/15 and shall be made returnable on 6/4/15 on submit before Judge Glenn T. Suddaby. Any change of plea shall be entered by 6/8/15. All pretrial submissions as set forth in the # 27 criminal pretrial scheduling order are due by 6/15/15. Jury Trial set for 7/6/2015 at 9:00 AM in Syracuse before Judge Glenn T. Suddaby. Signed by Judge Glenn T. Suddaby on 4/2/15. (lmw) (Entered: 04/02/2015) |
| 04/02/2015 | 35 | TRIAL ORDER as to Stephen M. Howells, II and Nicole F. Vaisey: Jury Trial set for 7/6/2015 at 9:00 AM in Syracuse before Judge Glenn T. Suddaby. Pretrial Conference set for 6/30/2015 at 11:00 AM IN CHAMBERS in Syracuse before Judge Glenn T. Suddaby. Pretrial Submissions, including motions in limine, due by 6/15/2015. Responses to motions in limine due by 6/22/15. Signed by Judge Glenn T. Suddaby on 4/2/15. (lmw) (Entered: 04/02/2015) |
| 04/15/2015 | | TEXT NOTICE OF HEARING as to Stephen M. Howells, II: Change of Plea Hearing set for 5/8/2015 at 10:00 AM in Syracuse before Judge Glenn T. Suddaby. (lmw) |

A.12

| | | |
|---|---|---|
| | | (Entered: 04/15/2015) |
| 04/23/2015 | 36 | AMENDED TRIAL ORDER as to Stephen M. Howells, II and Nicole F. Vaisey: Due to a conflict with the Court's calendar, Jury trial has been RESCHEDULED for 6/22/2015 at 9:00 AM in Syracuse before Judge Glenn T. Suddaby. Final Pretrial Conference set for 6/17/2015 at 12:30 PM to be held in chambers in Syracuse before Judge Glenn T. Suddaby. Pretrial submissions, including motions in limine, due by 6/8/15. Responses to motions in limine due by 6/15/15. Signed by Judge Glenn T. Suddaby on 4/23/15. (lmw) (Entered: 04/23/2015) |
| 05/01/2015 | | TEXT NOTICE OF HEARING as to Nicole F. Vaisey: Pretrial Conference set for 5/14/2014 at 11:00 AM in Syracuse before Judge Glenn T. Suddaby. The Defendant's attendance is required. (lmw) (Entered: 05/01/2015) |
| 05/04/2015 | 37 | STATUS REPORT - *Bill of Particulars setting forth property subject to forfeiture* by USA as to Stephen M. Howells, II, Nicole F. Vaisey (Thomson, Tamara) (Entered: 05/04/2015) |
| 05/04/2015 | 38 | STATUS REPORT - *Amended Bill of Particulars as to property subject to forfeiture* by USA as to Stephen M. Howells, II, Nicole F. Vaisey (Thomson, Tamara) (Entered: 05/04/2015) |
| 05/05/2015 | | TEXT NOTICE OF HEARING as to Nicole F. Vaisey: CORRECTION IN THE YEAR ONLY: Pretrial Conference set for 5/14/2015 at 11:00 AM in Syracuse before Judge Glenn T. Suddaby. (lmw) (Entered: 05/05/2015) |
| 05/08/2015 | | TEXT MINUTE ENTRY for Change of Plea Hearing held on 5/8/15 before Judge Glenn T. Suddaby as to Stephen M. Howells, II (1): Defendant is advised of his constitutional rights and the consequences of pleading guilty. Defendant is sworn and questioned. Defendant waives formal reading of Indictment. Defendant pleads guilty to Counts 1 through 21 of the Indictment and admits to forfeiture allegations. Government states a factual basis for the plea. Maximum possible penalties are stated for the record. Court accepts plea of guilty to Counts 1 through 21 of the Indictment. No plea agreement. Sentencing is scheduled for 9/18/15 at 11:00 a.m. in Syracuse, New York. Court orders a Presentence Report from Probation. Defendant is remanded to USMS. APP: Lisa Fletcher, AUSA and Tamara Thomson, ASUA; Randi Bianco, Esq. for Defendant; CRD: L. Welch (Court Reporter: Jodi Hibbard) (Time: 10:10 am - 11:10 am) (lmw) (Entered: 05/08/2015) |
| 05/08/2015 | 39 | GUIDELINE ORDER as to Stephen M. Howells, II: Sentencing set for 9/18/2015 at 11:00 AM in Syracuse before Judge Glenn T. Suddaby. Government Sentencing Memo Deadline 8/28/2015. Defendant Sentencing Memo Deadline 8/28/2015. Signed by Judge Glenn T. Suddaby on 5/8/15. (lmw) (Entered: 05/08/2015) |
| 05/08/2015 | 40 | STATUS REPORT *Offer of Proof* by USA as to Stephen M. Howells, II (Fletcher, Lisa) (Entered: 05/08/2015) |
| 05/08/2015 | 41 | TRANSCRIPT REQUEST by USA as to Stephen M. Howells, II for proceedings held on 5/8/15 before Judge Hon. Glenn T. Suddaby. (Fletcher, Lisa) (Entered: 05/08/2015) |

A.13

| 05/11/2015 | 42 | MOTION in Limine *to Preclude the Affirmative Defense of Duress* by USA as to Nicole F. Vaisey. (Attachments: # 1 Certificate of Service)(Fletcher, Lisa) (Entered: 05/11/2015) |
| 05/12/2015 | | TEXT NOTICE ON # 42 Government's MOTION in Limine *to Preclude the Affirmative defense of Duress* as to Nicole F. Vaisey (2): Defendant's Response to Motion due by 5/19/2015. (lmw) (Entered: 05/12/2015) |
| 05/13/2015 | | TEXT NOTICE OF HEARING as to Nicole F. Vaisey: CHANGE IN TIME ONLY: Pretrial Conference is RESCHEDULED for 5/14/2015 at 10:00 AM in Syracuse before Judge Glenn T. Suddaby. (lmw) (Entered: 05/13/2015) |
| 05/14/2015 | | TEXT MINUTE ENTRY for Pretrial Conference and Change of Plea Hearing held on 5/14/15 before Judge Glenn T. Suddaby as to Nicole F. Vaisey (2): Judge meets with counsel in chambers with regard to recent motion filed by Government and expectations for upcoming trial. Defendant meets with counsel and decides to enter a guilty plea. Defendant is advised of her constitutional rights and the consequences of pleading guilty. Defendant is sworn and questioned. Defendant pleads guilty to Counts 1 through 10 of the Superseding Indictment. Government states a factual basis for the plea. Maximum possible penalties are stated for the record. Court accepts plea of guilty to Counts 1 through 10 of the Indictment. No plea agreement. Sentencing is scheduled for 9/25/15 at 11:00 a.m. in Syracuse, New York. Court orders a Presentence Report from Probation. Defendant is remanded to USMS. APP: Lisa Fletcher, AUSA;, Esq. for Defendant. CRD: L. Welch (Court Reporter: Jodi Hibbard) (Time: 10:00 am - 11:35 am) (lmw) (Entered: 05/14/2015) |
| 05/14/2015 | 43 | GUIDELINE ORDER as to Nicole F. Vaisey: Sentencing set for 9/25/2015 at 11:00 AM in Syracuse before Judge Glenn T. Suddaby. Government Sentencing Memo Deadline 9/4/2015. Defendant Sentencing Memo Deadline 9/4/2015. Signed by Judge Glenn T. Suddaby on 5/14/15. (lmw) (Entered: 05/14/2015) |
| 05/14/2015 | 44 | STATUS REPORT *OFFER OF PROOF* by USA as to Nicole F. Vaisey (Fletcher, Lisa) (Entered: 05/14/2015) |
| 05/14/2015 | 45 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Stephen M. Howells, II: Change of Plea held on 5/8/2015 before Judge Glenn T. Suddaby, Court Reporter: Jodi L. Hibbard,Telephone number: (315) 234-8547. **IMPORTANT NOTICE - REDACTION OF TRANSCRIPTS:** In order to remove personal identifier data from the transcript, a party must electronically file a Notice of Intent to Request Redaction with the Clerk's Office within 5 business days of this date. The policy governing the redaction of personal information is located on the court website at www.nynd.uscourts.gov. Read this policy carefully. If no Notice of Intent to Redact is filed within 5 business days of this date, the court will assume redaction of personal identifiers is not necessary and the transcript will be made available on the web 90 days from today's date. Transcript may be viewed at the court public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 6/4/2015. Redacted Transcript Deadline set for 6/15/2015. Release of Transcript Restriction set for 8/12/2015. Notice of Intent to Redact due by 5/19/2015 (jlh, ) (Entered: 05/14/2015) |

A.14

| | | |
|---|---|---|
| 07/20/2015 | 46 | Letter from Tamara B. Thomson as to Stephen M. Howells, II requesting that the proposed Preliminary Order of Forfeiture be signed, and filed, with an electronically certified copy returned. (Attachments: # 1 Proposed Order/Judgment)(Thomson, Tamara) (Entered: 07/20/2015) |
| 07/20/2015 | 47 | Letter from Tamara B. Thomson as to Nicole F. Vaisey requesting that the proposed Preliminary Order of Forfeiture be signed, and filed, with an electronically certified copy returned. (Attachments: # 1 Proposed Order/Judgment)(Thomson, Tamara) (Entered: 07/20/2015) |
| 07/22/2015 | | TEXT NOTICE OF HEARING as to Nicole F. Vaisey: Due to a conflict with the Court's calendar, Sentencing is RESCHEDULED for 9/24/2015 at 11:00 AM in Syracuse before Judge Glenn T. Suddaby. Sentencing memorandum are due by 9/3/15.(lmw) (Entered: 07/22/2015) |
| 08/03/2015 | | TEXT NOTICE OF HEARING as to Stephen M. Howells, II: Sentencing is RESCHEDULED for 10/22/2015 at 10:30 AM in Syracuse before Judge Glenn T. Suddaby. Sentencing memorandum are due by 10/1/15. (lmw) (Entered: 08/03/2015) |
| 08/03/2015 | | TEXT NOTICE OF HEARING as to Nicole F. Vaisey: Sentencing is RESCHEDULED for 10/22/2015 at 11:00 AM in Syracuse before Judge Glenn T. Suddaby. Sentencing memorandum are due by 10/1/15.(lmw) (Entered: 08/03/2015) |
| 08/04/2015 | 48 | PRELIMINARY ORDER DIRECTING FORFEITURE OF PROPERTY: as to Stephen M. Howells, II. Signed by Judge Glenn T. Suddaby on 8/4/2015. {Certified copy provided to Tamara B. Thomson electronically} (jmb) (Entered: 08/04/2015) |
| 08/04/2015 | 49 | PRELIMINARY ORDER DIRECTING FORFEITURE OF PROPERTY: as to Nicole F. Vaisey. Signed by Judge Glenn T. Suddaby on 8/4/2015. {Certified copy provided to Tamara B. Thomson electronically} (jmb) (Entered: 08/04/2015) |
| 09/11/2015 | 50 | PRESENTENCE INVESTIGATION REPORT - INITIAL DISCLOSURE [LODGED] as to Stephen M. Howells, II. The Presentence Investigation Report in this matter is now available for review. Any objections to the report shall be served on the Probation Office within 14 days of this notice, by mailing a hard copy to the Probation Officer. Please contact the probation officer who prepared the report if you have any questions.**[This document has been electronically lodged with the Court and is viewable by ONLY the attorney for the government, the attorney for the defendant, and the presiding judge. It is not a filed document, therefore is not available for public inspection. Any further distribution or dissemination is prohibited.]** (bjw, ) (Entered: 09/11/2015) |
| 09/11/2015 | 51 | PRESENTENCE INVESTIGATION REPORT - INITIAL DISCLOSURE [LODGED] as to Nicole F. Vaisey. The Presentence Investigation Report in this matter is now available for review. Any objections to the report shall be served on the Probation Office within 14 days of this notice, by mailing a hard copy to the Probation Officer. Please contact the probation officer who prepared the report if you have any questions.**[This document has been electronically lodged with the Court and is viewable by ONLY the attorney for the government, the attorney for the defendant, and the presiding judge. It is not a filed document, therefore is not available for public inspection. Any further distribution or dissemination is** |

A.15

| | | |
|---|---|---|
| | | **prohibited.]** (bjw, ) (Entered: 09/11/2015) |
| 09/14/2015 | | TEXT NOTICE OF HEARING as to Stephen M. Howells, II: Sentencing is RESCHEDULED for 12/17/2015 at 10:00 AM in Syracuse before Chief Judge Glenn T. Suddaby. Sentencing memorandum are due by 11/25/15.(lmw) (Entered: 09/14/2015) |
| 09/14/2015 | | TEXT NOTICE OF HEARING as to Nicole F. Vaisey: Sentencing is RESCHEDULED for 12/17/2015 at 10:30 AM in Syracuse before Chief Judge Glenn T. Suddaby. Sentencing memorandum are due by 11/25/15. (lmw) (Entered: 09/14/2015) |
| 09/15/2015 | 52 | PROCESS RECEIPT AND RETURN: Type of Process: Notice of Forfeiture. Notice of Forfeiture served upon potential third party claimant Maryann Howells via certified mail on 9/3/2015. Article Number 7011 0470 0003 6293 0151. (mc) (Entered: 09/17/2015) |
| 09/18/2015 | 53 | PROCESS RECEIPT AND RETURN: Type of Process: Arrest of Property. Items 1 and 2 on the attached list in USMS custody as of 9/16/2015. Items 3 through 8 in USMS custody as of 8/27/2015. (mc) (Entered: 09/18/2015) |
| 10/19/2015 | 54 | SERVICE by Publication of Notice of Forfeiture; Last publication date September 25, 2015 in official government internet site www.forfeiture.gov. *The claim deadline is 10/26/2015;* filed by USA (Thomson, Tamara) (Entered: 10/19/2015) |
| 11/24/2015 | 55 | SENTENCING MEMORANDUM by Stephen M. Howells, II (Bianco, Randi) (Additional attachment added on 11/30/2015: # 1 Redacted Exhibits) (lmw). (Entered: 11/24/2015) |
| 11/24/2015 | 56 | SENTENCING MEMORANDUM by USA as to Stephen M. Howells, II (Fletcher, Lisa) (Entered: 11/24/2015) |
| 11/25/2015 | 57 | SENTENCING MEMORANDUM by Nicole F. Vaisey (Riendeau, Bradford) (Entered: 11/25/2015) |
| 11/30/2015 | 58 | SENTENCING MEMORANDUM by USA as to Nicole F. Vaisey (Fletcher, Lisa) (Entered: 11/30/2015) |
| 12/03/2015 | 59 | Supplemental SENTENCING MEMORANDUM by USA as to Stephen M. Howells, II (Fletcher, Lisa) (Entered: 12/03/2015) |
| 12/04/2015 | 60 | PRESENTENCE INVESTIGATION REPORT - FINAL DISCLOSURE [LODGED] as to Stephen M. Howells, II. The final version of the Presentence Investigation Report, including all revisions and the most recent Addendum is now available for review. This version of the report will be used by the Court at the time of sentencing. **[This document has been electronically lodged with the Court and is viewable by ONLY the attorney for the government, the attorney for the defendant, and the presiding judge. Any further distribution or dissemination is prohibited.]** (bjw, ) (Entered: 12/04/2015) |
| 12/04/2015 | 61 | PRESENTENCE INVESTIGATION REPORT - FINAL DISCLOSURE [LODGED] as to Nicole F. Vaisey. The final version of the Presentence Investigation Report, including all revisions and the most recent Addendum is now available for review. This version of the report will be used by the Court at the time of sentencing. **[This document has** |

A.16

| | | |
|---|---|---|
| | | **been electronically lodged with the Court and is viewable by ONLY the attorney for the government, the attorney for the defendant, and the presiding judge. Any further distribution or dissemination is prohibited.]** (bjw, ) (Entered: 12/04/2015) |
| 12/15/2015 | 62 | FINAL PRESENTENCE INVESTIGATION REPORT (AMENDED) [LODGED] as to Nicole F. Vaisey. The Presentence Investigation Report and/or Addendum have been AMENDED and supersede any previously submitted versions. This final version includes all revisions and the most recent Addendum, and will be used by the Court at the time of sentencing. **[This document has been electronically lodged with the Court and is viewable by ONLY the attorney for the government, the attorney for the defendant, and the presiding judge. It is not a filed document, therefore is not available for public inspection. Any further distribution or dissemination is prohibited.]** (bjw, ) (Entered: 12/15/2015) |
| 12/15/2015 | 63 | FINAL PRESENTENCE INVESTIGATION REPORT (AMENDED) [LODGED] as to Stephen M. Howells, II. The Presentence Investigation Report and/or Addendum have been AMENDED and supersede any previously submitted versions. This final version includes all revisions and the most recent Addendum, and will be used by the Court at the time of sentencing. **[This document has been electronically lodged with the Court and is viewable by ONLY the attorney for the government, the attorney for the defendant, and the presiding judge. It is not a filed document, therefore is not available for public inspection. Any further distribution or dissemination is prohibited.]** (bjw, ) (Entered: 12/15/2015) |
| 12/16/2015 | | TEXT NOTICE OF HEARING as to Stephen M. Howells, II: Due to a conflict with the Court's calendar, Sentencing is RESCHEDULED for 12/17/2015 at 1:00 PM in Syracuse before Chief Judge Glenn T. Suddaby. (lmw) (Entered: 12/16/2015) |
| 12/16/2015 | | TEXT NOTICE OF HEARING as to Nicole F. Vaisey: Due to a conflict with the Court's calendar, Sentencing is RESCHEDULED for 12/17/2015 at 1:30 PM in Syracuse before Chief Judge Glenn T. Suddaby. (lmw) (Entered: 12/16/2015) |
| 12/17/2015 | 64 | Letter as to Stephen M. Howells, II requesting That the Court Issue a Briefing Schedule on Restitution Issue (Fletcher, Lisa) (Entered: 12/17/2015) |
| 12/17/2015 | | TEXT Minute Entry for Sentencing held on 12/17/15 before Judge Glenn T. Suddaby for Stephen M. Howells, II (1). No objections to PSR. Defendant sentenced on Counts 1 through 21 of the Superseding Indictment to a term of imprisonment of 6,960 months (or 580 years). This term consists of 360 months on Counts 1 through 16 and 20 years on Counts 17 through 21, all to be served consecutively. If Defendant is released, Defendant is sentenced to a term of supervised release of LIFE on each count with standard and special conditions to run concurrently. Special Assessment: $100 on each count for a total of $2,100; fine waived. Judge recommends to BOP that Defendant be housed in the facility in Tucson, AZ for sex offender treatment. Upon the completion of that sex offender treatment, Judge recommends to BOP that defendant be housed as close to his family in Iowa as possible. Defendant advised of appeal rights. Defendant remanded. Government's brief with regard to restitution due by 3/17/16. Defendant's response due by 4/17/16. Defendant waives personal appearance at any future restitution hearing and requests to be moved to Federal BOP immediately. APP: Lisa Fletcher, AUSA; Randi Bianco, Esq., attorney for Defendant; Janna Kulakowski, |

A.17

| | | |
|---|---|---|
| | | Probation. CRD: L. Welch (Court Reporter: Eileen McDonough) (Time: 1:20 p.m. - 1:49 p.m.) (lmw) (Entered: 12/17/2015) |
| 12/17/2015 | | TEXT Minute Entry for Sentencing held on 12/17/15 before Judge Glenn T. Suddaby for Nicole F. Vaisey (2). No objections to PSR. Defendant sentenced on Counts 1 through 10 of the Superseding Indictment to a term of imprisonment of 3,600 months (or 300 years). The sentence consists of 360 months on each count to be served consecutively. If the Defendant is released, Defendant is sentenced to a term of supervised release of LIFE on each count with standard and special conditions to run concurrently. Special Assessment: $100 on each count for a total of $1,000; fine waived. Defendant advised of appeal rights. Judge recommends to BOP that Defendant participate in sex offender treatment and to be housed in a facility as close to Colton, NY as possible. Defendant is now in Federal Custody and will serve Federal sentence first. Defendant remanded. APP: Lisa Fletcher, AUSA; Bradford Riendeau, Esq., attorney for Defendant; Janna Kulakowski, Probation. CRD: L. Welch (Court Reporter: Eileen McDonough) (Time: 1:52 a.m. - 2:20 pm) (lmw) (Entered: 12/17/2015) |
| 12/18/2015 | 65 | STATUS REPORT *notifying the Court that no ancillary claims have been filed and the Preliminary Order of Forfeiture is now final as to the defendant, and no separate final order will be presented* by USA as to Stephen M. Howells, II (Thomson, Tamara) (Entered: 12/18/2015) |
| 12/18/2015 | 66 | STATUS REPORT *notifying the Court that no ancillary claims have been filed and the Preliminary Order of Forfeiture is now final as to the defendant, and no separate final order will be presented* by USA as to Nicole F. Vaisey (Thomson, Tamara) (Entered: 12/18/2015) |
| 12/22/2015 | 67 | JUDGMENT as to Stephen M. Howells, II (1) on Counts 1 through 21 of the Superseding Indictment: Term of imprisonment: 6,960 months (580 years). This sentence consists of 360 months on each of Counts 1 through 16 and 20 years on each of Counts 17 through 21, all to be served consecutively for a total of 6,960 months (or 580 years). If defendant is released, defendant is sentenced to Supervised Release for LIFE on each count to run concurrently. Special Assessment: $100 on each count for a total of $2,100. Fine: waived. Restitution to be determined. An amended judgment will be issued at that time. Signed by Chief Judge Glenn T. Suddaby on 12/22/15. (lmw) (Entered: 12/22/2015) |
| 12/22/2015 | 68 | JUDGMENT as to Nicole F. Vaisey (2) on Counts 1 through 10 of the Superseding Indictment: Term of imprisonment: 3,600 months (or 300 years). This sentence consists of 360 months on each count to be served consecutively. If the defendant is released, defendant is sentenced to a term of supervised release of LIFE. Special Assessment: $100 on each count for a total of $1,000. No fine. Signed by Chief Judge Glenn T. Suddaby on 12/22/15. (lmw) (Entered: 12/22/2015) |
| 12/23/2015 | 69 | STATEMENT OF REASONS [LODGED] as to Stephen M. Howells, II **[This document has been electronically lodged with the Court and is viewable by ONLY the attorney for the government, the attorney for the defendant, and the presiding judge. It is not a filed document, therefore is not available for public inspection. Any further distribution or dissemination is prohibited.]** (dictplp, ) (Entered: 12/23/2015) |

A.18

| 12/23/2015 | 70 | STATEMENT OF REASONS [LODGED] as to Nicole F. Vaisey **[This document has been electronically lodged with the Court and is viewable by ONLY the attorney for the government, the attorney for the defendant, and the presiding judge. It is not a filed document, therefore is not available for public inspection. Any further distribution or dissemination is prohibited.]** (dictplp, ) (Entered: 12/23/2015) |
| --- | --- | --- |
| 12/29/2015 | 71 | NOTICE OF APPEAL by Stephen M. Howells, II No fee paid. (Bianco, Randi) (Entered: 12/29/2015) |
| 12/30/2015 | 72 | NOTICE OF APPEAL by Nicole F. Vaisey re 68 Judgment, No fee paid. (Riendeau, Bradford) (Entered: 12/30/2015) |
| 01/05/2016 | 73 | ELECTRONIC NOTICE AND CERTIFICATION: as to Stephen M. Howells, II sent to US Court of Appeals regarding the # 71 Notice of Appeal - Final Judgment. (jmb) (Entered: 01/05/2016) |
| 01/05/2016 | 74 | ELECTRONIC NOTICE AND CERTIFICATION: as to Nicole F. Vaisey sent to US Court of Appeals regarding the # 72 Notice of Appeal - Final Judgment. (jmb) (Entered: 01/05/2016) |
| 01/22/2016 | 75 | PROCESS RECEIPT AND RETURN: filed by the USA, Type of Process: Disposal of Property, One Red Pontiac Sunfire and One White Honda Civic were Destroyed on 1/10/2016. (jmb) (Entered: 01/26/2016) |
| 01/29/2016 | 76 | MANDATE of USCA: as to Nicole F. Vaisey regarding the # 72 Notice of Appeal - Final Judgment filed by Nicole F. Vaisey. Appellant Nicole F. Vaisey moves to withdraw her appeal pursuant to FRAP 42(b). The motion is GRANTED. {Mandate issued on 1/29/2016} (jmb) (Entered: 01/29/2016) |
| 02/04/2016 | 77 | TRANSCRIPT REQUEST by Stephen M. Howells, II for proceedings held on 12/17/15 before Judge Suddaby. (Peebles, Lisa) (Entered: 02/04/2016) |
| 02/12/2016 | 78 | Letter as to Stephen M. Howells, II requesting Restitution Order (Fletcher, Lisa) (Entered: 02/12/2016) |
| 02/12/2016 | 79 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Stephen M. Howells, II: Sentencing held on 12/17/2015 before Judge Suddaby, Court Reporter/Transcriber: Eileen McDonough,Telephone number: 315-234-8546. **IMPORTANT NOTICE - REDACTION OF TRANSCRIPTS:** In order to remove personal identifier data from the transcript, a party must electronically file a Notice of Intent to Request Redaction with the Clerk's Office within 5 business days of this date. The policy governing the redaction of personal information is located on the court website at www.nynd.uscourts.gov. Read this policy carefully. If no Notice of Intent to Redact is filed within 5 business days of this date, the court will assume redaction of personal identifiers is not necessary and the transcript will be made available on the web 90 days from today's date. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 3/4/2016. Redacted Transcript Deadline set for 3/14/2016. Release of Transcript Restriction set for 5/12/2016. Notice of Intent to Redact due by 2/17/2016 (etm, ) (Entered: 02/12/2016) |

## A.19

Case 15-4192, Document 28, 05/13/2016, 1771725, Page22 of 213

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 02/12/2016 14:40:18 | | | |
| **PACER Login:** | courtenaymckeon:4575529:0 | **Client Code:** | Howells |
| **Description:** | Docket Report | **Search Criteria:** | 5:14-cr-00340-GTS |
| **Billable Pages:** | 26 | **Cost:** | 2.60 |

A.20

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | Criminal No.   5:14-CR-340 (GTS) |
| | ) | |
| **v.** | ) | **Indictment** |
| | ) | |
| **STEPHEN M. HOWELLS II and** | ) | Violations:   18 U.S.C. § 2251(a) and (e) |
| **NICOLE F. VAISEY,** | ) | [Conspiracy to Sexually |
| | ) | Exploit Children]; |
| | ) | 18 U.S.C. § 2251(a) |
| | ) | [Sexual Exploitation of |
| | ) | Children]; |
| | ) | 18 U.S.C. § 2252A (a)(5)(B) |
| | ) | [Possession of Child |
| | ) | Pornography] |
| | ) | 5 Counts |
| | ) | |
| **Defendants.** | ) | County of Offense:   St. Lawrence |

## THE GRAND JURY CHARGES:

### COUNT 1
### [Conspiracy to Sexually Exploit Children]

From in or about July 2014 through in or about August 15, 2014, in St. Lawrence County in the Northern District of New York, defendants **STEPHEN M. HOWELLS II and NICOLE F. VAISEY** conspired to employ, use, persuade, induce, entice, and coerce one or more minors, that is V-1, a female child born in 2002, and V-2, a female child born in 2007, whose identities are known to the grand jury, to engage in sexually explicit conduct for the purpose of producing visual depictions of such conduct, where the visual depictions were produced using materials that had been mailed, shipped, and transported in and affecting interstate and foreign commerce by any means, including by computer, in violation of Title 18, United States Code, Sections 2251(a) and 2251(e).

A.21

## COUNT 2
### [Sexual Exploitation of Children]

From on or about August 13, 2014 through on or about August 15, 2014, in St. Lawrence County in the Northern District of New York, the defendants, **STEPHEN M. HOWELLS II and NICOLE F. VAISEY**, did employ, use, persuade, induce, entice, and coerce a minor, that is: V-1, a female child born in 2002 whose identity is known to the grand jury, to engage in sexually explicit conduct for the purpose of producing visual depictions of such conduct, where the visual depictions were produced using materials that had been mailed, shipped, and transported in and affecting interstate and foreign commerce by any means, including by computer, in violation of Title 18, United States Code, Section 2251(a).

## COUNT 3
### [Sexual Exploitation of Children]

From in or about 2012 through in or about 2014, in St. Lawrence County in the Northern District of New York, defendant **STEPHEN M. HOWELLS II** did employ, use, persuade, induce, entice, and coerce a minor, that is: V-3, a female child born in 2006 whose identity is known to the grand jury, to engage in sexually explicit conduct for the purpose of producing visual depictions of such conduct, where the visual depictions were produced using materials that had been mailed, shipped, and transported in and affecting interstate and foreign commerce by any means, including by computer, in violation of Title 18, United States Code, Section 2251(a).

## COUNT 4
### [Sexual Exploitation of Children]

From in or about 2012 through in or about 2014, in St. Lawrence County in the Northern District of New York, defendant **NICOLE F. VAISEY** did employ use, persuade, induce,

2

A.22

entice, and coerce a minor, that is: V-3, a female child born in 2006 whose identity is known to the grand jury, to engage in sexually explicit conduct for the purpose of producing visual depictions of such conduct, where the visual depictions were produced using materials that had been mailed, shipped, and transported in and affecting interstate and foreign commerce by any means, including by computer, in violation of Title 18, United States Code, Section 2251(a).

### COUNT 5
### [Possession Of Child Pornography]

On or about August 15, 2014 in St. Lawrence County, in the Northern District of New York, **STEPHEN M. HOWELLS II** did knowingly possess material that contained one or more images of child pornography that had been transported using a means and facility of interstate and foreign commerce, and in and affecting such commerce by any means, including by computer, and that was produced using materials that had been shipped and transported in and affecting such commerce by any means, including by computer, that is: a 500GB Seagate hard drive, S/N 5QM11ZRR, within an Antec homemade desktop computer with no serial number, which contained numerous graphic image files of minors engaged in sexually explicit conduct, in violation of Title 18, United States Code, Sections 2252A(a)(5)(B) and 2256(8)(A).

That violation involved images of child pornography involving prepubescent minors and minors who had not attained 12 years of age, in violation of Title 18, United States Code, Section 2252A(b)(2).

3

A.23

## FORFEITURE ALLEGATION

The allegations contained in Counts 1 through 5 of this Indictment are hereby realleged and incorporated by reference herein for the purposes of alleging forfeiture pursuant to the provisions of Title 18, United States Code, Section 2253.

Pursuant to Title 18, United States Code, Section 2253, upon conviction of the charges alleged in Counts 1 through 5, the defendants, **STEPHEN M. HOWELLS II and NICOLE F. VAISEY**, shall forfeit to the United States of America:

a.      Any visual depiction described in Title 18, United States Code, Sections 2251 and 2252A (incorporating the definition of child pornography in 18 U.S.C. §2256(8)), or any book, magazine, periodical, film, videotape, or other matter which contains any such visual depiction, which was produced, transported, mailed, shipped or received in violation of Title 18, United States Code, Chapter 110;

b.      Any property, real or personal, constituting or traceable to gross profits or other proceeds obtained from the offense, and

c.      Any property, real or personal, used or intended to be used to commit or to promote the commission of the offense; including, but not limited to:

1)      A 2004 red Pontiac, Sunfire, NY registration GCR6443;

2)      A 2001 white Honda, Civic, NY registration BVZ9284;

3)      An Antec homemade desktop computer with no serial number, containing five hard drives, including one 500GB Seagate hard drive, s/n 5QM11ZRR;

4)      A Canon G7 Digital camera s/n #3221205452;

5)      An iPhone model #A1349, EMC#2422, FCC ID: BCG-E2422B; and

6)      An iPhone model #A1387, IC# 579C-E2430A, FCC ID: BCG-E2430A.

A.24

If any of the property described above, as a result of any act or omission of the defendant:

(a)     cannot be located upon the exercise of due diligence;

(b)     has been transferred or sold to, or deposited with, a third party,

(c)     has been placed beyond the jurisdiction of the court;

(d)     has been substantially diminished in value; or

(e)     has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853 (p), as incorporated by Title 18, United States Code, Section 2253(b) and by Title 28, United States Code, Section 2461(c).

Dated:     September 17, 2014

A TRUE BILL,     ***NAME REDACTED***

_____
Grand Jury Foreperson

RICHARD S. HARTUNIAN
United States Attorney

By:  _____
Lisa M. Fletcher
Assistant United States Attorney
Bar Roll No. 510187

5

A.25

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | Criminal No.   5:14-CR-340 (GTS) |
| | ) | |
| v. | ) | **Superseding Indictment** |
| | ) | |
| **STEPHEN M. HOWELLS II and** | ) | Violations: 18 U.S.C. § 2251(a) and (e) |
| **NICOLE F. VAISEY,** | ) | [Conspiracy to Sexually |
| | ) | Exploit Children]; |
| | ) | 18 U.S.C. § 2251(a) |
| | ) | [Sexual Exploitation of |
| | ) | Children]; |
| | ) | 18 U.S.C. § 2252A(a)(5)(B) |
| | ) | [Possession of Child |
| | ) | Pornography] |
| | ) | 21 Counts |
| | ) | |
| **Defendants.** | ) | County of Offense:   St. Lawrence |

U.S. DISTRICT COURT - N.D. OF N.Y.

**FILED**

OCT 0 2 2014

AT_____ O'CLOCK_____
Lawrence K. Baerman, Clerk - Syracuse

## THE GRAND JURY CHARGES:

### COUNT 1
#### [Conspiracy to Sexually Exploit Children]

From in or about September 2013 through on or about August 15, 2014, in St. Lawrence County in the Northern District of New York, defendants **STEPHEN M. HOWELLS II** and **NICOLE F. VAISEY** conspired to employ, use, persuade, induce, entice, and coerce minors, including V-1, V-2, V-3, and V-6, female children born between 2002 and 2007, whose identities are known to the grand jury, to engage in sexually explicit conduct for the purpose of producing visual depictions of such conduct, where the visual depictions were produced using materials that had been mailed, shipped, and transported in and affecting interstate and foreign commerce by any means, including by computer, in violation of Title 18, United States Code, Sections 2251(a) and 2251(e).

A.27

## COUNTS 2 THROUGH 10
### [Sexual Exploitation of Children]

On or about the dates listed below, in St. Lawrence County in the Northern District of New York, defendants **STEPHEN M. HOWELLS II** and **NICOLE F. VAISEY** did employ, use, persuade, induce, entice, and coerce the minors listed below, whose identities are known to the grand jury, to engage in sexually explicit conduct for the purpose of producing visual depictions of such conduct, where the visual depictions were produced using materials that had been mailed, shipped, and transported in and affecting interstate and foreign commerce by any means, including by computer, in violation of Title 18, United States Code, Section 2251(a).

| Count | Date | Victim |
|-------|------|--------|
| 2 | September 7, 2013 | V-3, a female child born in 2006 |
| 3 | October 20, 2013 | V-3, a female child born in 2006 |
| 4 | November 16, 2013 | V-3, a female child born in 2006 |
| 5 | November 17, 2013 | V-6, a female child born in 2003 |
| 6 | December 15, 2013 | V-6, a female child born in 2003 |
| 7 | December 29, 2013 | V-3, a female child born in 2006 |
| 8 | April 18, 2014 | V-3, a female child born in 2006 |
| 9 | May 31, 2014 | V-3, a female child born in 2006 |
| 10 | August 13, 2014 | V-1, a female child born in 2002 |

## COUNTS 11 THROUGH 16
### [Sexual Exploitation of Children]

On or about the dates listed below, in St. Lawrence County in the Northern District of New York, defendant **STEPHEN M. HOWELLS II** did employ, use, persuade, induce, entice, and coerce the minors listed below, whose identities are known to the grand jury, to engage in sexually explicit conduct for the purpose of producing visual depictions of such conduct, where the visual depictions were produced using materials that had been mailed, shipped, and transported in and affecting interstate and foreign commerce by any means, including by computer, in violation of Title 18, United States Code, Section 2251(a).

2

A.28

| Count | Date | Victim(s) |
|-------|------|-----------|
| 11 | December 16, 2012 | V-4, a female child born in 2004 |
| 12 | September 22, 2013 | V-3, a female child born in 2006; V-5, a female child born in 2008; and V-6, a female child born in 2003 |
| 13 | November 16, 2013 | V-5, a female child born in 2008 |
| 14 | December 13, 2013 | V-5, a female child born in 2008; and V-6, a female child born in 2003 |
| 15 | January 24, 2014 | V-3, a female child born in 2006 |
| 16 | April 19, 2014 | V-3, a female child born in 2006 |

## COUNTS 17 THROUGH 21
### [Possession of Child Pornography]

On or about August 15, 2014, in St. Lawrence County, in the Northern District of New York, defendant **STEPHEN M. HOWELLS II** did knowingly possess material that contained one or more images of child pornography that had been transported using a means and facility of interstate and foreign commerce, and in and affecting such commerce by any means, including by computer, and that was produced using materials that had been shipped and transported in and affecting such commerce by any means, including by computer, that is, the computer hard drives described below, each of which contained numerous graphic image and video files of minors engaged in sexually explicit conduct, in violation of Title 18, United States Code, Sections 2252A(a)(5)(B) and 2256(8)(A).

Each violation involved images of child pornography involving prepubescent minors and minors who had not attained 12 years of age, in violation of Title 18, United States Code, Section 2252A(b)(2).

| Count | Material Containing Images of Child Pornography |
|-------|------------------------------------------------|
| 17 | A 500GB Seagate hard drive, S/N 5QM11ZRR |
| 18 | A 1.0 TB Western Digital hard drive, S/N WMATV8440832 |
| 19 | A 500GB Western Digital hard drive, S/N WCAPW2257346 |
| 20 | A 300GB Seagate hard drive, S/N 5NF133W0 |
| 21 | A 3000GB Seagate hard drive, S/N W1F23A2C |

A.29

## FORFEITURE ALLEGATION

The allegations contained in Counts 1 through 21 of this Indictment are hereby realleged and incorporated by reference herein for the purposes of alleging forfeiture pursuant to the provisions of Title 18, United States Code, Section 2253.

Pursuant to Title 18, United States Code, Section 2253, upon conviction of the charges alleged in Counts 1 through 21, the defendants, **STEPHEN M. HOWELLS II and NICOLE F. VAISEY**, shall forfeit to the United States of America:

a. Any visual depiction described in Title 18, United States Code, Sections 2251 and 2252A (incorporating the definition of child pornography in 18 U.S.C. §2256(8)), or any book, magazine, periodical, film, videotape, or other matter which contains any such visual depiction, which was produced, transported, mailed, shipped or received in violation of Title 18, United States Code, Chapter 110;

b. Any property, real or personal, constituting or traceable to gross profits or other proceeds obtained from the offense, and

c. Any property, real or personal, used or intended to be used to commit or to promote the commission of the offense; including, but not limited to:

1) A 2004 red Pontiac, Sunfire, NY registration GCR6443;

2) A 2001 white Honda, Civic, NY registration BVZ9284;

3) An Antec homemade desktop computer with no serial number, containing five hard drives:

  a) one 500GB Seagate hard drive, S/N 5QM11ZRR;
  b) one 1.0 TB Western Digital hard drive, S/N WMATV8440832;
  c) one 500GB Western Digital hard drive, S/N WCAPW2257346;
  d) one 300GB Seagate hard drive, S/N 5NF133W0; and
  e) one 3000GB Seagate hard drive, S/N W1F23A2C;

4

A.30

4)  A Canon G7 Digital camera S/N #3221205452;

5)  An iPhone model #A1349, EMC#2422, FCC ID: BCG-E2422B; and

6)  An iPhone model #A1387, IC# 579C-E2430A, FCC ID: BCG-E2430A.

If any of the property described above, as a result of any act or omission of the defendant:

(a)  cannot be located upon the exercise of due diligence;

(b)  has been transferred or sold to, or deposited with, a third party,

(c)  has been placed beyond the jurisdiction of the court;

(d)  has been substantially diminished in value; or

(e)  has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853 (p), as incorporated by Title 18, United States Code, Section 2253(b) and by Title 28, United States Code, Section 2461(c).

Dated:    October 8, 2014

A TRUE BILL,    *Name Redacted*

Grand Jury Foreperson

RICHARD S. HARTUNIAN
United States Attorney

By:
Lisa M. Fletcher
Assistant United States Attorney
Bar Roll No. 510187

5

A.31

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal Action No. |
| v. | 5:14-CR-340 (GTS) |
| **STEPHEN M. HOWELLS, II** | **OFFER OF PROOF** |
| Defendant. | |

_____

The defendant is scheduled to appear on May 8, 2015 and enter a plea of guilty to all counts charged in Superseding Indictment 5:14-CR-340 (hereinafter the Indictment).

The parties have not entered into a formal plea agreement. The United States submits this Offer of Proof to provide the Court with a summary of the Government's evidence as to each of the charged offenses, and the factual basis for an entry of a guilty plea.

### CLASSIFICATION OF THE OFFENSE AND MAXIMUM POSSIBLE PENALTIES

**Imprisonment**

A violation of 18 U.S.C. § 2251(a), and § 2251(e), as alleged in Counts 1 through 16 of the Indictment, is a Class B felony. Each count carries a statutory mandatory minimum penalty of 15 years imprisonment, and a maximum term of 30 years imprisonment.

A violation of 18 U.S.C. § 2252A (a)(5)(B) and (b)(2), as alleged in Counts 17 through 21 of the Indictment, is a Class C felony with a statutory maximum sentence of 20 years per count.

**Fine**

Each count of conviction carries a maximum fine of $250,000. 18 U.S.C. § 3571.

**Supervised Release**

In addition to imposing any other penalty, the sentencing court must require the defendant to serve a term of supervised release between 5 years and life, to begin after imprisonment. *See* 18 U.S.C. § 3583(k). A violation of the conditions of supervised release during that time period may result in the defendant being sentenced to an additional term of imprisonment of up to 3 years, except as provided below.

**Required Registration for Sex Offenders**

Under the Sex Offender Registration and Notification Act, the defendant, as a result of the conviction in this case, must register as a sex offender, and keep the registration current, in each jurisdiction where the defendant resides, where the defendant is an employee, and where the defendant is a student. For initial registration purposes, the defendant also must register in New York as a result of this conviction, even if the defendant resides in a different jurisdiction. A sex offender who knowingly fails to register or update a required registration may be subject to prosecution under 18 U.S.C. § 2250, and face a penalty of up to ten years imprisonment. Further, notwithstanding the description set out above of the consequences of a violation of the conditions of supervised release, if the defendant, while on supervised release, commits any criminal offense under chapter 109A, 110, or 117, or section 1201 or 1591, of Title 18 for which imprisonment for a term longer than 1 year can be imposed, the court must revoke the term of supervised release and require the defendant to serve a term of imprisonment of not less than 5 years on the violation.

**Restitution**

Pursuant to 18 U.S.C. § 2259(a), the Court is required to order restitution for the full amount of the victims' compensable losses as defined at 18 U.S.C. § 2259(b)(3) and(c).

A.33

In regard to the minor victims depicted in the images and video files involved in the criminal activity charged in Counts 17 – 21 of the Indictment, restitution shall be determined by the Court in "an amount that comports with the defendant's relative role in the causal process that underlies the victims' general losses," and shall be a "reasonable and circumscribed award imposed in recognition of the indisputable role of the [defendant] in the causal process underlying the victim[s'] losses and suited to the relative size of that causal role." *Paroline v. United States*, __U.S.__, 134. S.Ct. 1710, 1727 (2014).

The Court may not decline to award restitution because of the defendant's economic circumstances or the fact that the victims have, or are entitled to receive compensation for their injuries from the proceeds of insurance or any other source.

**Forfeiture**

Pursuant to 18 U.S.C. § 2253 and 21 U.S.C. § 853(p), the defendant will consent to entry of an order directing forfeiture to the United States pursuant to the Forfeiture Allegation in the Indictment, as supplemented by the Bill of Particulars.  This property includes:

      1.      One 2004 red Pontiac Sunfire bearing VIN # 14-FBI-006923, and New York registration GCR6443;

      2.      One 2001 white Honda Civic bearing VIN # 2HGES16571H535401, and New York registration BVZ9284;

      3.      One Antec homemade desktop computer with no serial number, containing the following five hard drives:

            a.      One 500GB Seagate hard drive, S/N 5QM11ZRR;

            b.      One 1.0 TB Western Digital hard drive, S/N WMATV8440832;

            c.      One 500GB Western Digital hard drive, S/N WCAPW2257346;

A.34

    d.    One 300GB Seagate hard drive, S/N 5NF133W0;

    e.    One 3000GB Seagate hard drive, S/N W1F23A2C;

4.    One Canon G7 Digital camera S/N #3221205452 with charger;

5.    One iPhone model #A1349, EMC#2422, FCC ID: BCG-E2422B;

6.    One iPhone model #A1387, IC# 579C-E2430A, FCC ID: BCG-E2430A;

7.    One Logitech HD 1080 Webcam, S/N 1212LZ0AEPM8;

8.    One Rabbit TV Flash Drive;

9.    One Scan Disk 1GB Memory Card;

10.    One Samsung WB100 Digital Camera, S/N A48CC9AD100FSMJ;

11.    One Sony PS3 Playstation with controller and cords, S/N CF765432818;

12.    One Barnes & Noble Nook Tablet;

13.    One Microsoft XBox 360 Console with 2 controllers, cords and Kinect Sensor, S/N 532803714705;

14.    One Toshiba Satellite L655 Laptop;

15.    One HP Pavilion Laptop, S/N TW12920577;

16.    One PNY Optima 8GB Memory Card;

17.    One 100MB Zip Drive;

18.    One Garmin Nuvi GPS;

19.    One Kodak Easyshare Digital Camera, S/N KCGRD12366121;

20.    Assorted VHS Tapes;

21.    Assorted CD and DVD's; and

22.    Assorted 3 ½" Floppy Disks.

A.35

**Special Assessment**

The defendant will be required to pay a special assessment of $100 per count, for a total of $2,100, due and payable at or before sentencing.  18 U.S.C. § 3013.

## ELEMENTS OF THE OFFENSES

The following are the elements of the offense of Conspiracy to Sexually Exploit Children, as charged in **Count 1** of the Indictment:

First:          Two or more persons conspired to employ, use, persuade, induce, entice, or coerce a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct;

Second:          The defendant joined the conspiracy, either at its inception or sometime during its existence, knowing the purpose of the conspiracy and intending to help it succeed;

Third:          The visual depictions that were the object of the conspiracy were produced or intended to be produced using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means.

The following are the elements of the offense Sexual Exploitation of Children, as charged in Counts **2 through 16** of the Indictment:

First:          The defendant employed, used, persuaded, induced, enticed, or coerced a minor to engage in sexually explicit conduct;

Second:          The defendant's actions were for the purpose of producing visual depictions of such conduct; and

Third:          Such visual depictions were produced using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means.

A.36

The following are the elements of the offense Possession of Child Pornography, as charged in **Counts 17 through 21** of the Indictment:

<u>First</u>:              That the defendant knowingly possessed material that contains one or more images of child pornography; and

<u>Second</u>:              That such child pornography was transported using a means and facility of in interstate or foreign commerce, or in and affecting such commerce by any means including by computer, or was produced using materials that had been shipped and transported in and affecting such commerce by any means, including by computer.

## FACTUAL BASIS FOR PLEA

**As to Count 1:**

As to Count 1, the Indictment alleges that the defendant did conspire with NICOLE F. VAISEY to employ, use, persuade, induce, entice, and coerce minors, including: V-1, V-2, V-3 and V-6, female children born between 2002 and 2007, to engage in sexually explicit conduct for the purpose of producing visual depictions of such conduct, where the visual depictions were produced using materials that had been mailed, shipped, and transported in and affecting interstate and foreign commerce by any means, including by computer, in violation of Title 18, United States Code, Sections 2251(a) and 2251(e).

**The Government would prove the following:**

Beginning in or about 2013, in St. Lawrence County, New York, defendant STEPHEN M. HOWELLS, II and NICOLE F. VAISEY conspired with one another to engage minors in sexually explicit conduct for the purpose of producing visual depictions of that conduct.

A.37

In furtherance of the conspiracy, HOWELLS used his position as a registered nurse to obtain medications, including controlled substances, for use in sedating the minor victims, thereby aiding in the commission of the sexual exploitation offenses.

HOWELLS, in fact, administered substances to each of the victims charged in Count 1 of the Indictment as a part of the conspiracy. FBI Toxicology reports confirm the following:

1.  V-1 was drugged with zolpidem (trade name Ambien) and midazolam (trade name Versed);

2.  V-2 was drugged with Ambien;

3.  V-3 was drugged with oxycodone (trade name Oxycontin), oxymorphone (trade name Opana), morphine, methadone, Ambien, Versed, diazepam (trade name Valium), nordiazepam (trade name Nordaz), temazepam (trade name Restoril) and alprazolam (trade name Xanax), with her exposure to these drugs consistent with a time from of June 2013 – August 2014;

4.  V-4 was drugged with Ambien and Oxycontin with her exposure to these drugs consistent with a time from of September 2013 – March 2014.

In furtherance of the conspiracy, co-conspirator NICOLE F. VAISEY arranged for access to V-3, a minor female child born in 2006, and made arrangements throughout the course of the conspiracy for V-3 to spend the night with VAISEY and HOWELLS, during which time the child was used by VAISEY and HOWELLS to engage in sexually explicit conduct for the purpose of producing visual depictions of that conduct, using materials (more fully described below) that had been mailed, shipped, or transported in and affecting interstate and foreign commerce.

A.38

In furtherance of the conspiracy, STEPHEN M. HOWELLS, II arranged for access to V-6, a minor female child born in 2003, and made arrangements, throughout the course of the conspiracy, for V-6 to spend the night with VAISEY and HOWELLS, during which time the child was used by VAISEY and HOWELLS to engage in sexually explicit conduct for the purpose of producing visual depictions of that conduct, using materials (more fully described below) that that had been mailed, shipped, or transported in and affecting interstate and foreign commerce.

In furtherance of the conspiracy, and over the course of several months in 2014, STEPHEN M. HOWELLS and NICOLE F. VAISEY together developed and planned a scheme to kidnap minor children for use in sexually explicit conduct and for the purpose of producing visual depictions of that conduct, using materials that that had been mailed, shipped, or transported in and affecting interstate and foreign commerce.

In furtherance of the conspiracy and the plan to kidnap minor children, together, and separately, HOWELLS and VAISEY made trips to observe and locate possible children to abduct.  In that regard, on or about July 1, 2014 VAISEY sent a text message to HOWELLS indicating that she had seen four "pixies/princesses" (a reference to Amish girls) traveling in a buggy on a deserted road, and that "it would have been perfect."  Additionally, in or about early August, 2014, HOWELLS had observed two Amish girls at a roadside farm stand at their home in St. Lawrence County, after which he and VAISEY discussed a plan to abduct the children from this location.

In furtherance of the conspiracy, on Wednesday, August 13th, 2014, VAISEY and HOWELLS drove to the pre-determined Amish farm stand with the intention of abducting the two girls.  To help accomplish the abduction, HOWELLS and VAISEY tied VAISEY's dog to

8

A.39

the rear driver's side door inside HOWELLS' vehicle as a means to lure the children inside. VAISEY and HOWELLS drove to the farm stand in HOWELLS' vehicle. VAISEY was the driver.

In furtherance of the conspiracy, on August 13, 2014, HOWELLS and VAISEY kidnapped V-1 and V-2, Amish female children ages 11 and 6, respectively, from their family's roadside farm stand in St. Lawrence County. Pretending to be a customer at the farm stand, HOWELLS lured and then forced V-1 and V-2 into the back seat of the vehicle, where he used a syringe to inject V-1 with Versed in an attempt to get her to keep quiet. VAISEY then drove off with the children in the car, taking them to the St. Lawrence County residence shared by VAISEY and HOWELLS.

As a part of the conspiracy, V-1 and V-2 were sexually assaulted by HOWELLS several times over the course of approximately 25 hours for the purpose of producing visual depictions of that conduct. Using materials (more fully described below) that that had been mailed, shipped, or transported in and affecting interstate and foreign commerce, visual depictions of V-1 and V-2, and specifically of HOWELLS engaged in sexually explicit conduct with V-1, were recorded by both VAISEY and HOWELLS at their St. Lawrence County residence.

As a part of the conspiracy, when not being abused, V-1 and V-2 were restrained together at the ankles with handcuffs and chains.

**As to Counts 2 - 10**

On the dates alleged in Counts 2 – 10, STEPHEN M. HOWELLS, II and NICOLE F. VAISEY did employ, use, persuade, induce, entice, and coerce V-1, V-3, and V-6, minor children born in 2002, 2006, and 2003, respectively, to engage in sexually explicit conduct for the purpose of producing visual depictions of such conduct, where the visual depictions were

A.40

produced using materials that had been mailed, shipped, and transported in and affecting interstate and foreign commerce by any means, including by computer. The depictions produced by HOWELLS and VAISEY were all recorded in their St. Lawrence County residence, and were recovered by the FBI from an encrypted drive on HOWELLS' computer after the password was discovered by the FBI in a text message from HOWELLS to VAISEY, wherein VAISEY requested the password, and HOWELLS provided it to her.

**As to each of these substantive counts, the Government would prove the following**:

**Count 2:**

On or about September 7, 2013, HOWELLS and VAISEY, acting together, sexually exploited V-3 and produced depictions of the child engaged in sexually explicit conduct, including the following:

1. A video file bearing part of V-3's name in the title, followed by "**Video 24.wmv**." This is a 9:45 video file depicting STEPHEN HOWELLS removing V-3's panties, exposing her vagina. HOWELLS is then depicted masturbating, fondling V-3's vagina with his hand, and having mouth to vagina contact with her. HOWELLS is then depicted handing a small digital camera to NICOLE VAISEY who records HOWELLS engaging in mouth to vagina contact with V-3, as well as additional activity that is not visible from the camera angle.

2. A video entitled "**MVI_7681.avi**" is a 4:06 video file which appears to be the file created with the digital camera used by VAISEY in the "Video 24" file previously described, and depicts the activity that was not visible due to the camera angle in Video 24 – which is HOWELLS penetrating V-3's vagina with his penis.

**Count 3:**

On or about October 20, 2013, HOWELLS and VAISEY, acting together, sexually exploited V-3 and produced depictions of the child engaged in sexually explicit conduct, including the following:

1.      A video bearing part of V-3's name in the title, followed by "**Video 30.wmv.**" This is a 28:20 video file depicting HOWELLS rubbing his penis on V-3's vagina and anus and engaging in mouth to vagina contact with her. NICOLE VAISEY is depicted in the bed and seen filming the abuse with a small digital camera.

2.      A video file entitled **MVI_7729.avi**: is a 1:18 video file that appears to be the video created by NICOLE VAISEY as depicted in the "Video 30" file described above. It depicts HOWELLS rubbing his penis in and on V-3's vagina, digitally penetrating her, and engaging in mouth to vagina contact with her.

**Count 4:**

On or about November 16, 2013, HOWELLS and VAISEY acting together, sexually exploited V-3 and produced depictions of the child engaged in sexually explicit conduct, including the following:

A video file that includes part of V-3's name in the title along with "**Video 31.wmv.**" This is a 1:17:46 video file that depicts STEPHEN HOWELLS removing V-3's night shirt and panties, leaving her naked.  HOWELLS is depicted digitally penetrating V-3's vagina, and fondling her buttocks and anus while he has intercourse with NICOLE VAISEY.  HOWELLS is then depicted penetrating V-3's vagina with his penis, and VAISEY is depicted using a small digital camera to film HOWELLS rubbing his penis in and on V-3's vagina.

**Count 5:**

On or about November 17, 2013, HOWELLS and VAISEY, acting together, sexually exploited V-6 and produced depictions of the child engaged in sexually explicit conduct, including the following:

A video file that includes part of V-6's name in the title along "**Video 33.wmv.**" This is a 40:16 video file that depicts STEPHEN HOWELLS getting into bed and fondling V-6's breasts, using V-6's hand to stimulate his penis, removing V-6's pants and panties to expose her vagina, and digitally penetrating V-6.  HOWELLS is depicted taking additional photos and videos of V-6 with a hand-held digital camera, and VAISEY is depicted using the same camera to record HOWELLS engaging in mouth to vagina contact with V-6. VAISEY is also depicted licking V-6's breasts.

**Count 6:**

On or about December 15, 2013, HOWELLS and VAISEY, acting together, sexually exploited V-6 and produced depictions of the child engaged in sexually explicit conduct, including the following:

1.      A video file that includes V-6's name in the title, along with "**Video 2.wmv.**" This is an 18:13 video file depicting V-6, STEPHEN HOWELLS, and NICOLE VAISEY in the bed at HOWELLS and VAISEY's residence. VAISEY is depicted fondling V-6's breasts. HOWELLS is depicted fondling V-6's breasts, and using V-6's hand to stimulate his penis. HOWELLS is also depicted pouring a clear liquid from a large syringe into V-6's mouth while she sleeps.

2.      A video file that includes V-6's name in the title, along with "**Video 3.wmv.**" This is a 1:08:33 video file which appears to be a continuation of the activity in the previously described "Video 2."  In this file, HOWELLS is depicted pouring a clear liquid from a test tube

12

A.43

into V-6's mouth, and is later seen pouring a liquid from a large syringe into the test tube and then into V-6's mouth again. VAISEY is depicted with her hand inside V-6's pants, appearing to be fondling V-6's vagina. HOWELLS is depicted masturbating while fondling V-6's breasts, using V-6's hand to stimulate his penis, and rubbing his penis on V-6's buttocks. HOWELLS is also seen shining a flashlight into V-6's eyes. VAISEY is depicted using a small digital camera to record the activity between HOWELLS and V-6.

3.     A video file that includes V-6's name in the title, along with "**cum MVI_7837.AVI.**" This is a 2:41 video file depicting HOWELLS masturbating to ejaculation on V-6's stomach. VAISEY is depicted handing the camera that she was using to record this conduct to HOWELLS who then records VAISEY licking HOWELLS' semen from V-6's stomach and breasts.

**Count 7:**

On or about December 29, 2013, HOWELLS and VAISEY, acting together, sexually exploited V-3 and produced depictions of the child engaged in sexually explicit conduct, including the following:

A file entitled "**Video 8.mp4.**" This is a 31:03 video file depicting V-3, VAISEY and HOWELLS in the bed at their residence. VAISEY is depicted performing oral sex on V-3 and using a vibrator on V-3's vagina while HOWELLS uses a small handheld digital camera to record the abuse.  Both VAISEY and HOWELLS are depicted digitally penetrating V-3's vagina. VAISEY is also depicted engaging in mouth to vagina contact with V-3 while HOWELLS puts his penis in V-3's mouth. VAISEY is then depicted using a handheld digital camera to record HOWELLS masturbating over V-3's vagina. HOWELLS is then depicted

A.44

putting his penis inside V-3's vagina, and ejaculating, after which VAISEY is depicted engaging in mouth to vagina contact with V-3.

**Count 8:**

On or about April 18, 2014, HOWELLS and VAISEY, acting together, sexually exploited V-3 and produced depictions of the child engaged in sexually explicit conduct, including the following:

A video file bearing a part of V-3's name in the title, followed by "**Video 14.wmv.**" This is a 19:10 video file depicting HOWELLS fondling V-3's breasts. HOWELLS is depicted removing the camera from its original location, and handing it to VAISEY, who films HOWELLS rubbing his penis in and on V-3's buttocks, and inserting his finger, and then his penis, into V-3's vagina.

**Count 9:**

On or about May 31, 2014, HOWELLS and VAISEY, acting together, sexually exploited V-3 and produced depictions of the child engaged in sexually explicit conduct, including the following:

A file entitled "**Video 16.wmv.**" This is a 1:00:32 video file, depicting NICOLE VAISEY assisting V-3 to take her shorts and panties off. VAISEY is heard saying "get up" and is depicted putting V-3 on top of STEPHEN HOWELLS, who is lying on his back, so that V-3's head is facing HOWELLS' feet. HOWELLS is depicted engaging in mouth to vagina contact with V-3. VAISEY is then depicted engaging in mouth to penis contact with HOWELLS while at the same time digitally penetrating V-3's vagina. V-3 is then depicted sitting on the bed and manually stimulating HOWELLS' penis while VAISEY is heard saying "kiss it" repeatedly. HOWELLS then penetrates V-3's vagina with his penis while VAISEY is depicted filming the

14

A.45

abuse with a small hand-held digital camera. HOWELLS then ejaculates inside V-3's vagina, after which Vaisey engages in mouth to vagina contact with V-3.

**Count 10:**

On or about August 13, 2014, HOWELLS and VAISEY, acting together, sexually exploited V-1 and produced depictions of the child engaged in sexually explicit conduct, including the following:

A video file entitled "*Video2.mov*" which depicts V-1 and V-2 in the bed at HOWELLS' and VAISEY'S residence. V-2 is asleep during the entirety of the video. VAISEY is depicted in the bed with the children. HOWELLS depicted fondling V-1's breasts and vagina, engaging mouth to vagina contact with her, and digitally penetrating her vagina. HOWELLS is then depicted unhooking handcuffs that were used to secure V-1 and V-2 together by the ankles. He is then depicted re-hooking the handcuffs to V-1's wrists, and securing her to a chain that is attached to the head of the bed. HOWELLS then appears to penetrate V-1 both vaginally and anally. VAISEY is depicted watching the abuse, and then she is seen taking a digital camera from near her in the bed, and is depicted filming the abuse of V-1.

**As to Counts 11 - 16**

On the dates alleged in Counts 11 – 16, STEPHEN M. HOWELLS, II did employ, use, persuade, induce, entice, and coerce V-3, V-4, V-5 and V-6, minor children born in 2006, 2004, 2008, and 2006, respectively, to engage in sexually explicit conduct for the purpose of producing visual depictions of such conduct, where the visual depictions were produced using materials that had been mailed, shipped, and transported in and affecting interstate and foreign commerce by any means, including by computer. The depictions produced by HOWELLS were all recorded in the St. Lawrence County residence he shared with co-defendant NICOLE VAISEY, and were

recovered by the FBI from an encrypted drive on HOWELLS' computer after the password was discovered by the FBI in a text message from HOWELLS to VAISEY, wherein VAISEY requested the password, and HOWELLS provided it to her.

**As to each of these substantive counts, the Government would prove the following:**

**Count 11:**

On or about December 16, 2012, HOWELLS sexually exploited V-4 and produced depictions of the child engaged in sexually explicit conduct, including the following:

Four video files, entitled "**MVI_7312.avi, MVI_7314.avi, MVI_7315.avi,** and **Video 13.wmv.**" These files depict the same conduct from differing camera angles. In the videos, V-4 is asleep on a bed in the living room of HOWELLS' residence. She is wearing a night shirt and no panties. Together, the four video files depict HOWELLS position V-4 to expose her vagina to the camera, fondling her vagina, administering an injection to V-4 in her buttocks, masturbating while watching V-4 on the bed, and masturbating and rubbing his penis on V-4's foot.

**Count 12:**

On or about September 22, 2013, HOWELLS sexually exploited V-3, V-5 and V-6, and produced depictions of the children engaged in sexually explicit conduct, including the following:

A video file containing in its title a part of the first names of each of V-3, V-5 and V-6, followed by "**Video 26.wmv.**" This is a 42:07 video file depicting V-3, V-5 and V-6 all asleep in the bed in the bedroom at HOWELLS' and VAISEY's residence. As it pertains to V-3, HOWELLS is depicted repositioning her several times while he sits on the bed and masturbates. While V-3 is lying on her side, HOWELLS, using a flashlight, appears to insert something into V-3's vagina or anus, until she wakes up. As it pertains to V-5, HOWELLS is depicted removing

A.47

V-5's pants, spreading her legs apart to expose her vagina, and fondling her anus. HOWELLS is also depicted shining a light into V-5's eyes.  As it pertains to V-6, HOWELLS is depicted pulling up V-6's nightshirt, exposing and fondling her breasts, pulling her pants down below her buttocks, and appearing to insert something into her anus.  HOWELLS is also seen shining a light in V-6's eyes.

**Count 13:**

On or about November 16, 2013, HOWELLS sexually exploited V-5, and produced depictions of the child engaged in sexually explicit conduct, including the following:

A video file that contains a part of V-5's name in its title along with "**cock face MVI_7741.AVI**" is a 0:22 video depicting V-5 asleep on HOWELLS' stomach, with her hand holding HOWELLS' penis against her face. NICOLE VAISEY is depicted sitting up in bed next to HOWELLS and V-5, using her laptop computer while the described abuse is happening.

**Count 14:**

On or about December 13, 2013, HOWELLS sexually exploited V-5 and V-6, and produced depictions of the children engaged in sexually explicit conduct, including the following:

1.      A video file with a title that includes a part of the names of V-5 and V-6, along with "**Video 33.mov.**" This is a 1:52:13 depicting HOWELLS, in the bed at his residence, putting his penis on V-5's face, wiping fluids from his penis onto V-5's mouth, and using V-5's hand to stimulate his penis.  Both NICOLE VAISEY and V-6 are also depicted in the bed during this video, and appear to be asleep.

2.      A video file with a title that includes a part of the names of V-5 and V-6, along with the terms "**garters**" and "**2.wmv.**" This is a 1:51:18 video file depicting V-5, V-6, and

NICOLE VAISEY in the bed at HOWELLS and VAISEY'S residence. As it relates to V-6, the video depicts HOWELLS pulling V-6's pants down to expose her anus. He is then depicted getting in bed behind V-6 where he rubs his penis on her buttocks. HOWELLS then removes V-6's pants and panties completely exposing her vagina, and dresses her in thigh-high fish net stockings and a garter, after which he digitally penetrates V-6's anus, and uses a vibrator on her vagina while he masturbates. HOWELLS eventually ejaculates on V-6's buttocks and hip. Again, VAISEY is seen in the bed throughout the duration of the video, and appears to be asleep.

**Count 15:**

On or about January 24, 2014, HOWELLS sexually exploited V-3, and produced depictions of the child engaged in sexually explicit conduct, including the following:

A video file entitled "**Video 12.wmv**." This is a 13:14 video file depicting V-3 in the bed in the bedroom HOWELLS' and VAISEY's residence. V-3 is dressed in a black negligee and fishnet panties. HOWELLS is depicted getting into bed, removing V-3's panties, penetrating her vagina with his penis, and ejaculating inside her vagina.

**Count 16:**

On or about April 19, 2014, HOWELLS sexually exploited V-3, and produced depictions of the child engaged in sexually explicit conduct, including the following:

A video file that contains a part of V-3's name in the title, along with "**video 16.wmv**." This is a 57:48 video file depicting V-3 and NICOLE VAISEY in the bed at HOWELLS' and VAISEY's residence. HOWELLS is depicted getting into bed, removing V-3's pajamas, and dressing her in a black negligee, fishnet panties, a garter, and fishnet thigh high stockings. HOWELLS then puts a black studded collar on V-3. HOWELLS is depicted engaging in mouth to vagina contact with V-3, fondling her vagina, and instructing V-3 to use a vibrator on her

18

A.49

vagina.  HOWELLS is depicted using a small hand held digital camera to filming V-3 using the vibrator, while he masturbates. V-3 is then depicted manually stimulating HOWELLS' penis while he uses the vibrator on her vagina.  V-3 then licks HOWELLS' penis, after which HOWELLS puts V-3 on her stomach and rubs his penis in and on her buttocks.  VAISEY is in the bed throughout the video, and appears to be sleeping.

All of the visual depictions involved in Counts 1 − 16 were produced using materials that had traveled in interstate and foreign commerce and were not manufactured in the state of New York, including a Logitech HD 1080P webcam, a Canon Powershot G7 digital Camera S/N 3221205452, manufactured in Japan, and a Samsung WB100 Digital Camera S/N A48CC9AD100FSMJ, manufactured in China.  Additionally, all depictions involved in Counts 1 − 16 were saved to a Seagate Barracuda 3000GB hard drive S/N W1F23A2C, which was manufactured in China.

### Counts 17 - 21

Counts 17 through 21 of the Indictment allege that on August 15, 2014 the defendant did knowingly possess material that contained one or more images of child pornography that had been transported using a means and facility of interstate and foreign commerce, and in and affecting such commerce by any means, including by computer, and that was produced using materials that had been shipped and transported in and affecting such commerce by any means, including by computer.  Each count charges a separate computer hard drive on which the defendant possessed numerous graphic image and video files of minors engaged in sexually explicit conduct.  All of the files charged in Counts 17 − 21 are of actual children whose images have been transported in interstate and foreign commerce as they are widely traded on the

A.50

Internet.   Many of the children in the files possessed by HOWELLS are known to law enforcement.

**As to these substantive counts the Government would prove the following:**

**Count 17**

On a 500GB Seagate hard drive, S/N 5QM11ZRR, manufactured in China, HOWELLS possessed numerous image and video files depicting minors engaged in sexually explicit conduct, including an image file entitled "**-0000blondsweet(1).jpg.jpg**" which depicts a prepubescent female child on her knees and handcuffed, with an adult male's penis in her mouth. This image is from known child pornography series Jan_Feb.  The child depicted was 7 years old at the time she was rescued by law enforcement.

**Count 18**

A 1.0 TB Western Digital hard drive, S/N WMATV8440832, manufactured in Malaysia, HOWELLS possessed numerous image and video files depicting minors engaged in sexually explicit conduct, including a file entitled "9yo Jenny Nude Sucking A Dog's Dick – **Blowjob Bestiality Underage Lolita R@ygold Pthc Ptsc Ddog Pedo Young Child Sex Preteen Hussyfan Kiddy Ki_xvid.avi**" which is a 48 second video depicting a female child, whose age appears consistent with the 9 yo of the title, engaged in mouth to genital contact with a dog.

**Count 19**

On a A 500GB Western Digital hard drive, S/N WCAPW2257346, manufactured in Thailand, HOWELLS possessed numerous image and video files depicting minors engaged in sexually explicit conduct, including an image file entitled, "_hr_felisha016.jpg" which depicts a nude prepubescent female child lying on her back with her legs spread apart.  An adult male is

A.51

depicted pressing his penis between the lips of the child's vagina and a fluid consistent with ejaculate is depicted on the child's vagina and stomach.

**Count 20**

On a A 300GB Seagate hard drive, S/N 5NF133W0, manufactured in China, HOWELLS possessed numerous image and video files depicting minors engaged in sexually explicit conduct, including an image file entitled, "**tied%20to%20suck.jpg**" that depicts a nude female child approximately 4 years old, whose hands are tied with cord above her head, and who has an adult male's penis pressed against her face.

**Count 21**

On a A 3000GB Seagate hard drive, S/N W1F23A2C, manufactured in China, HOWELLS possessed numerous image and video files depicting minors engaged in sexually explicit conduct, including a file entitled "**Bdsm1.mp4**" which is a 5:43 video file depicting the sexual abuse and torture of a female infant, who, among other things, is held upside down by her feet while hot wax is dripped onto her vagina from a lit candle.

Dated: May 8, 2014                    Respectfully submitted,

                                            RICHARD S. HARTUNIAN
                                            United States Attorney
                                          */s/* **Lisa M. Fletcher**
                        By:    Lisa M. Fletcher
                                            Assistant U. S. Attorney
                                          Bar Roll No. 510187

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA                    Criminal Action No.

                                            5:14-CR-340 (GTS)

            v.

**STEPHEN M. HOWELLS, II**,

                Defendant.

_____

## CERTIFICATE OF SERVICE

I hereby certify that on May 8, 2015 I electronically filed the foregoing document with the Clerk of the District Court using the CM/ECF system, which sent notification of such filing to counsel of record for the defendant.

Randi Juda Bianco, Esq.

_____/s/_____
Paula Briggs
Lead Legal Assistant

22

A.53

```
UNITED STATES  DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
--------------------------------------------x
UNITED STATES OF AMERICA

vs.                              5:14-CR-340

STEPHEN M. HOWELLS, II,

                          Defendant.
--------------------------------------------x
```

Transcript of a Change of Plea Hearing held on

May 8, 2015, at the James Hanley Federal Building,

100 South Clinton Street, Syracuse, New York, the

HONORABLE GLENN T. SUDDABY, United States District

Judge, Presiding.


A P P E A R A N C E S

```
For The Government: UNITED STATES ATTORNEY'S OFFICE
                    P.O. Box 7198
                    100 South Clinton Street
                    Syracuse, New York  13261-7198
                      BY:  LISA FLETCHER, ESQ.
                           TAMARA THOMSON, ESQ.
                           Assistant U.S. Attorneys

For Defendant:      FEDERAL PUBLIC DEFENDER'S OFFICE
                    NORTHERN DISTRICT OF NEW YORK
                    4 Clinton Square
                    Syracuse, New York  13202
                      BY:  RANDI JUDA BIANCO, ESQ.
```


*Jodi L. Hibbard, RPR, CSR, CRR*
*Official United States Court Reporter*
*100 South Clinton Street*
*Syracuse, New York  13261-7367*
*(315) 234-8547*


A.54

Case 15-4108, Document 38, 05/13/2016, 1771735, Page57 of 213
Case 5:14-cr-00340-GTS Document 45 Filed 05/14/15 Page 2 of 47

2

```
 1                    (Open Court, 10:11 a.m.)
 2             THE CLERK:  5:14-CR-340, United States of America
 3    versus Stephen M. Howells, II.  Counsel, please note your
 4    appearance for the record.
 5             MS. FLETCHER:  Lisa Fletcher and Tamara Thomson for
 6    the United States, good morning, Judge.
 7             THE COURT:  Good morning.
 8             MS. BIANCO:  Good morning, your Honor, Randi Bianco
 9    for Stephen Howells who is present with me today.
10             THE COURT:  Ms. Bianco, we're going to do a change
11    of plea this morning?
12             MS. BIANCO:  Yes, we are, your Honor.
13             THE COURT:  Very well.  Mr. Howells, before I
14    accept your plea, I'm going to explain to you the rights
15    you'll be giving up by pleading guilty, the consequences of
16    pleading guilty, and I'm going to ask you some questions.  If
17    I'm satisfied that your plea is knowing and intentional, then
18    I'll accept it.  Before we go any further, can you tell me,
19    have you had an opportunity to review the indictment
20    containing the charges against you?
21             THE DEFENDANT:  Yes, sir.
22             THE COURT:  And have you had adequate time and
23    opportunity to discuss this indictment and all aspects of the
24    charges and your case with Ms. Bianco?
25             THE DEFENDANT:  Yes, I have, sir.
```

1          THE COURT:  Okay, sir.  Since you're pleading

2     guilty, you're really giving up your right to a trial and I

3     want to review with you some of those rights.  You have the

4     right to continue to plead not guilty, you have the right to

5     be represented by an attorney at trial and at every other

6     stage of the proceedings and if you cannot afford an

7     attorney, one will be appointed for you by the court.  You

8     have a right to a speedy and public trial before an impartial

9     jury or trial before this court without a jury if you so

10    consented and waived a jury trial.

11         At such a trial, you would be presumed to be

12    innocent under the law and the burden would be upon the

13    government to establish your guilt beyond a reasonable doubt

14    to the satisfaction of a jury, or to the satisfaction of this

15    court if you waived a jury trial.

16         At such a trial, you would have the right to

17    confront any witnesses against you, the right to see and hear

18    those witnesses, and to cross-examine them.  You would have

19    the right to remain silent or to testify in your own behalf,

20    but you could not be compelled to incriminate yourself or to

21    testify at all and your silence could not be held against you

22    in any way, and no inference of guilt could be drawn from

23    your failure to testify.  You would have the right to use the

24    subpoena or other processes of this court to compel witnesses

25    to attend a trial and to testify.  You would also have the

Case 15-4108 Document 28 05/13/2016 1771725 Page 59 of 213

4

1   ability to obtain other evidence which you might wish to

2   offer in your defense.

3           Sir, if I accept your plea of guilty, you waive,

4   that is you give up each of these rights I've just listed,

5   there will be no trial, and I will have the same power to

6   sentence you as if you had been found guilty after trial on

7   the charges that you admit to today.

8           Do you understand that if your plea is accepted,

9   you will be adjudged guilty of those offenses just as though

10  you had a jury trial and the jury, after hearing all the

11  evidence, found you guilty; you understand that?

12          THE DEFENDANT:  I do understand.

13          THE COURT:  Okay.  After my clerk takes your plea,

14  I'm going to ask you several questions.  I'm going to review

15  some of those questions with you now so that if you want to

16  discuss any of them with Ms. Bianco before you have to answer

17  them, I'll give you an opportunity to do that.  The only

18  thing you need to do now is just listen, these are the

19  questions you'll be asked after your plea.

20          I'm going to ask you whether you're pleading guilty

21  freely and voluntarily.  I'm going to ask you whether any

22  promises of leniency have been made to induce you to plead

23  guilty.  I'm going to ask you whether any threats or force

24  have been used to induce you to plead guilty.  I'll ask you

25  whether, as you stand here today, you're under the influence

A.57

1    of any narcotics, drugs, pills, or medicine which would in

2    any way impair your ability to understand the nature of the

3    charges and the consequences of pleading guilty.  I'm going

4    to ask you if you did in fact commit the crimes charged so

5    that I can determine whether there's a factual basis for your

6    plea, and you're going to answer my questions under oath, on

7    the record, in the presence of your attorney.  It's important

8    that you understand your answers need to be truthful.  Should

9    you fail to be honest in any of your responses, the

10   government could charge you with perjury or making a false

11   statement.

12           Please understand, none of my questions are

13   difficult, but if you're confused about anything at all, take

14   your time, discuss it with Ms. Bianco and -- because it is

15   important that you answer truthfully.  You understand that?

16           THE DEFENDANT:  Yes, sir.

17           THE COURT:  You need to verbally respond.

18           THE DEFENDANT:  Yes, sir.

19           THE COURT:  Okay.  Thank you.  You must also be

20   informed that your guilty plea constitutes a waiver of your

21   right against self-incrimination, and sir, I want to warn

22   you, do not plead guilty unless you are in fact guilty of the

23   charges that you plan to admit to today.  Do you have any

24   questions about anything that I've talked to you about?

25           THE DEFENDANT:  No, sir.

Case 15-4100, Document 28, 05/13/2016, 1771735, Page61 of 213
Case 5:14-cr-00340-GTS   Document 45   Filed 05/14/15   Page 6 of 47

6

```
 1              THE COURT:  Okay.  Would you like to discuss

 2    anything with Ms. Bianco before we have you stand up to be

 3    sworn in?

 4              THE DEFENDANT:  No, sir.

 5              THE COURT:  Okay.  Then please stand up.

 6              THE CLERK:  Can you state your full name for the

 7    record, please.

 8              THE DEFENDANT:  Stephen M. Howells, II.

 9              THE CLERK:  Please raise your right hand.

10                   (The defendant was sworn.)

11              THE COURT:  Sir, do you understand all the rights

12    that you have?

13              THE DEFENDANT:  Yes, sir.

14              THE COURT:  And do you still wish to plead guilty?

15              THE DEFENDANT:  I do.

16              THE COURT:  Go ahead and take his plea.

17    Ms. Bianco, would you waive a reading of each count?  We'll

18    just list the counts.

19              MS. BIANCO:  Yes, your Honor, I would.

20              THE COURT:  That would save us considerable time.

21              MS. BIANCO:  Yes.

22              THE COURT:  Your client agree to that?

23              THE DEFENDANT:  Yes, sir.

24              THE COURT:  Okay, very well.  Go ahead.

25              THE CLERK:  Count 1 of the superseding indictment,
```

1    with regard to conspiracy to sexually exploit children, do

2    you -- how do you plead to Count 1?

3              THE DEFENDANT:  Guilty.

4              THE CLERK:  Count 2, sexual exploitation of

5    children with regard to September 7th, 2013, victim 3, a

6    female child born in 2006, how do you plead?

7              THE DEFENDANT:  Guilty.

8              THE CLERK:  Count 3, sexual exploitation of

9    children on October 20th, 2013, victim 3, a female child born

10   in 2006, how do you plead?

11             THE DEFENDANT:  Guilty.

12             THE CLERK:  Count 4, sexual exploitation of

13   children, November 16th, 2013, victim 3, a female child born

14   in 2006, how do you plead?

15             THE DEFENDANT:  Guilty.

16             THE CLERK:  Count 5, sexual exploitation of

17   children, November 17th, 2013, victim 6, female child born in

18   2000 -- 2003, how do you plead?

19             THE DEFENDANT:  Guilty.

20             THE CLERK:  Count 6, sexual exploitation of

21   children, December 15th, 2013, victim 6, a female child born

22   in 2003, how do you plead?

23             THE DEFENDANT:  Guilty.

24             THE CLERK:  Count 7, December -- sexual

25   exploitation of children, December 29th, 2013, victim 3, a

Case 15-4100 Document 28 05/13/2016 1771735 Page 63 of 213

1    female child born in 2006, how do you plead?

2              THE DEFENDANT:  Guilty.

3              THE CLERK:  Count 8, sexual exploitation of

4    children, April 18th, 2014, victim 3, a female child born in

5    2006, how do you plead?

6              THE DEFENDANT:  Guilty.

7              THE CLERK:  Count 9, sexual exploitation of

8    children, May 31st, 2014, victim 3, a female child born in

9    2006, how do you plead?

10             THE DEFENDANT:  Guilty.

11             THE CLERK:  Count 10, August 13th, 2014, victim 1,

12   a female child born in 2002, how do you plead?

13             THE DEFENDANT:  Guilty.

14             THE CLERK:  Count 11, sexual exploitation of

15   children, December 16th, 2012, victim 4, female child born in

16   2004, how do you plead?

17             THE DEFENDANT:  Guilty.

18             THE CLERK:  Count 12, sexual exploitation of

19   children, September 22nd, 2013, victim 3, a female child born

20   in 2006; victim 5, a female child born in 2008; and victim 6,

21   a female child born in 2003, how do you plead?

22             THE DEFENDANT:  Guilty.

23             THE CLERK:  Count 13, sexual exploitation of

24   children, November 16th, 2013, victim 5, a female child born

25   in 2008, how do you plead?

1          THE DEFENDANT:  Guilty.

2          THE CLERK:  Count 14, sexual exploitation of

3    children, December 13th, 2013, victim 5, a female child born

4    in 2008, and victim 6, a female child born in 2003, how do

5    you plead?

6          THE DEFENDANT:  Guilty.

7          THE CLERK:  Count 15, sexual exploitation of

8    children, January 24th, 2014, victim 3, a female child born

9    in 2006, how do you plead?

10          THE DEFENDANT:  Guilty.

11          THE CLERK:  Count 16, sexual exploitation of

12    children, April 19th, 2014, victim 3, a female child born in

13    2006, how do you plead?

14          THE DEFENDANT:  Guilty.

15          THE CLERK:  Count 17, possession of child

16    pornography, specifically on a 500GB Seagate hard drive S/N

17    5QM11ZRR; how do you plead to Count 17?

18          THE DEFENDANT:  Guilty.

19          THE CLERK:  Count 18, possession of child

20    pornography, a 1.0TB Western Digital hard drive, S/N

21    WMATV8440832, how do you plead?

22          THE DEFENDANT:  Guilty.

23          THE CLERK:  Count 19, possession of child

24    pornography on a 500GB Western Digital hard drive S/N

25    WCAPW2257346, how do you plead?

1          THE DEFENDANT:  Guilty.

2          THE CLERK:  Count 20, possession of child

3    pornography on a 300GB Seagate hard drive, S/N 5NF133W0, how

4    do you plead?

5          THE DEFENDANT:  Guilty.

6          THE CLERK:  Count 21, possession of child

7    pornography on a 300GB Seagate hard drive, S/N W1F23A2C, how

8    do you plead?

9          THE DEFENDANT:  Guilty.

10         THE CLERK:  And with regard to the forfeiture

11   allegations, specifically the 2004 red Pontiac Sunfire, the

12   2001 white Honda Civic, the computers, the hard drives, the

13   camera, the cell phones, do you admit to all those

14   forfeitures?

15              (A discussion was held off the record between

16                Ms. Bianco and the defendant.)

17         THE DEFENDANT:  Yes, I do.

18         THE CLERK:  Thank you, you may be seated.

19         THE COURT:  Okay, sir, you've told us your full

20   name; is that your correct legal name?

21         THE DEFENDANT:  Yes, sir.

22         THE COURT:  How old are you?

23         THE DEFENDANT:  39, sir.

24         THE COURT:  U.S. citizen?

25         THE DEFENDANT:  Yes, sir.

```
 1              THE COURT:  Any citizenships in any other
 2    countries?
 3              THE DEFENDANT:  No, sir.
 4              THE COURT:  What's the highest grade of school you
 5    completed?
 6              THE DEFENDANT:  Um, graduated college.
 7              THE COURT:  Four-year degree?
 8              THE DEFENDANT:  Two-year, sir.
 9              THE COURT:  Okay.  Where were you living prior to
10    being arrested?
11              THE DEFENDANT:  1380 County Route 21, Hermon,
12    New York.
13              THE COURT:  Are you married, sir?
14              THE DEFENDANT:  No.
15              THE COURT:  Do you have any children?
16              THE DEFENDANT:  Yes.
17              THE COURT:  How many children?
18              THE DEFENDANT:  Three.
19              THE COURT:  What type of work do you ordinarily do?
20              THE DEFENDANT:  I was a registered nurse.
21              THE COURT:  And were you employed at the time you
22    were arrested?
23              THE DEFENDANT:  I was.
24              THE COURT:  Do you use narcotics or illegal drugs?
25              THE DEFENDANT:  No, sir.
```

A.64

1          THE COURT:  Have you ever used them?

2          THE DEFENDANT:  No, sir.

3          THE COURT:  Have you taken any narcotics or alcohol

4     within the last 24 hours?

5          THE DEFENDANT:  No, sir.

6          THE COURT:  Are you taking any kind of pills,

7     drugs, or medicine?

8          THE DEFENDANT:  No.

9          THE COURT:  Are you currently under the care or

10    have you recently been under the care of a doctor or

11    psychiatrist?

12          THE DEFENDANT:  No.

13          THE COURT:  Is there any reason why your ability to

14    understand our discussion today is impaired in any way?

15          THE DEFENDANT:  No, sir.

16          THE COURT:  Can you tell me your lawyer's name,

17    please.

18          THE DEFENDANT:  Randi Bianco.

19          THE COURT:  And was she appointed by the court or

20    hired by you?

21          THE DEFENDANT:  Appointed, sir.

22          THE COURT:  Are you satisfied with her

23    representation of you?

24          THE DEFENDANT:  I am.

25          THE COURT:  Has she advised you of your rights?

1          THE DEFENDANT:  Yes.

2          THE COURT:  Has your lawyer, any Assistant United

3   States Attorney, any government agent, or anyone else made

4   any promise that you would be treated leniently or any other

5   kind of promise to induce you to plead guilty?

6          THE DEFENDANT:  No.

7          THE COURT:  Has any force or any threat been used

8   against you to induce you to plead guilty?

9          THE DEFENDANT:  No.

10         THE COURT:  Are you pleading guilty freely and

11  voluntarily?

12         THE DEFENDANT:  I am.

13         THE COURT:  Are you currently on probation from any

14  other court or on parole from any institution?

15         THE DEFENDANT:  No.

16         THE COURT:  Have you ever been arrested before?

17         THE DEFENDANT:  No.

18         THE COURT:  First arrest?

19         THE DEFENDANT:  Yes, sir.

20         THE COURT:  Ms. Fletcher, does the government have

21  sufficient evidence to prove this defendant guilty beyond a

22  reasonable doubt?

23         MS. FLETCHER:  Yes, your Honor, we do.

24         THE COURT:  Would you please state what the

25  government's proof would have been had this case gone to

Case 15-4193, Document 38, 05/13/2016, 1774725, Page69 of 213
Case 5:14-cr-00340-GTS Document 45 Filed 05/14/15 Page 14 of 47

14

1   trial.

2       MS. FLETCHER:  Yes, your Honor.  Had the case gone

3   to trial the government would prove the following elements of

4   the 21 counts of the indictment:  As to Count 1, we would

5   prove the following elements:

6       First, that two or more persons conspired to

7   employ, use, persuade, induce, entice, or coerce a minor to

8   engage in sexually explicit conduct for the purpose of

9   producing a visual depiction of such conduct;

10      Second, that the defendant joined the conspiracy

11  either at its inception or sometime during its existence,

12  knowing the purpose of the conspiracy and intending to help

13  it succeed;

14      And third, that the visual depictions that were the

15  object of the conspiracy were produced or intended to be

16  produced using materials that have been mailed, shipped, or

17  transported in or affecting interstate or foreign commerce by

18  any means.

19      The following elements of Counts 2 through 16 would

20  also be proven by the government.

21      First, that the defendant employed, used,

22  persuaded, induced, enticed, or coerced a minor or minors to

23  engage in sexually explicit conduct;

24      Second, that the defendant's actions were for the

25  purpose of producing visual depictions of such conduct;

Case 15-4102, Document 38, 05/13/2016, 1771705, Page70 of 213

1          And third, that such visual depictions were

2    produced using materials that have been mailed, shipped, or

3    transported in or affecting interstate or foreign commerce by

4    any means.

5          And finally, the following are the elements of

6    possession of child pornography as charged in Counts 17

7    through 21.

8          First, that the defendant knowingly possessed

9    material that contains one or more images of child

10   pornography;

11         And second, that such child pornography was

12   transported using a means and facility of interstate or

13   foreign commerce, or in and affecting such commerce by any

14   means, including by computer, or that were produced using

15   materials that had been shipped and transported in and

16   affecting such commerce by any means, including by computer.

17         The factual basis for the plea and what the

18   government would prove at trial includes the following:  As

19   to Count 1, the indictment alleges the defendant did conspire

20   with Nicole Vaisey to employ, use, persuade, induce, entice,

21   and coerce minors, including V-1, V-2, V-3, and V-6, female

22   children born between 2002 and 2007, to engage in sexually

23   explicit conduct for the purpose of producing visual

24   depictions of such conduct, where the visual depictions were

25   produced using materials that had been mailed, shipped,

 1    transported in and affecting interstate and foreign commerce

 2    by any means, including by computer, in violation of 18

 3    U.S.C. 2251(a) and (e).

 4         And the government would prove that beginning in or

 5    about 2013, in St. Lawrence County, New York, defendant

 6    Stephen Howells, II and Nicole Vaisey conspired with one

 7    another to engage minors in sexually explicit conduct for the

 8    purpose of producing visual depictions of that conduct.

 9         We would prove that in furtherance of the

10    conspiracy, Howells used his position as a registered nurse

11    to obtain medications, including controlled substances, for

12    use in sedating the minor victims, thereby aiding in the

13    commission of the sexual exploitation offenses.

14         Howells in fact, we would prove, administered

15    substances to each of the victims charged in Count 1 of the

16    indictment as a part of the conspiracy.  FBI toxicology

17    reports confirm the following:

18         V-1 was drugged with zolpidem, trade name Ambien;

19    and midazolam, trade name Versed;

20         V-2 was drugged with Ambien;

21         V-3 was drugged with oxycodone, trade name

22    Oxycontin; oxymorphone, trade name Opana; morphine,

23    methadone, Ambien, Versed, diazepam, trade name Valium;

24    nordiazepam, trade name Nordaz; temazepam, trade name

25    Restoril; and alprazolam, trade name Xanax, with her exposure

Case 15-4102, Document 38, 05/13/2016, 1774725, Page72 of 213
Case 8:14-cr-00340-GTS   Document 45   Filed 05/14/15   Page 17 of 47

17

1    to these drugs consistent with the time frame of June 2013 to

2    August 2014;

3              We would prove that V-4 was drugged with Ambien and

4    Oxycontin with her exposure to these drugs consistent with

5    the time frame of September 2013 to March 2014.

6              In furtherance of the conspiracy, co-conspirator

7    Nicole Vaisey arranged for access to V-3, a minor female

8    child born in 2006, and made arrangements throughout the

9    course of the conspiracy for V-3 to spend the night with

10   Vaisey and Howells during which time the child was used by

11   Vaisey and Howells to engage in sexually explicit conduct for

12   the purpose of producing visual depictions of that conduct,

13   using materials that had been mailed, shipped, or transported

14   in and affecting interstate and foreign commerce.

15             We would prove that in furtherance of the

16   conspiracy, Stephen Howells arranged for access to V-6, a

17   minor female child born in 2003, and made arrangements,

18   throughout the course of the conspiracy, for V-6 to spend the

19   night with Vaisey and Howells, during which time the child

20   was used by Vaisey and Howells to engage in sexually explicit

21   conduct for the purpose of producing visual depictions of

22   that conduct, using materials that had been mailed, shipped,

23   or transported in and affecting interstate and foreign

24   commerce.

25             We would prove that in furtherance of the

1   conspiracy and over the course of several months in 2014,

2   Howells and Vaisey together developed and planned a scheme to

3   kidnap minor children for use in sexually explicit conduct

4   and for the purpose of producing visual depictions of that

5   conduct, using materials that had been mailed, shipped, and

6   transported in and affecting interstate and foreign commerce.

7        We would prove that in furtherance of the

8   conspiracy and the plan to kidnap minor children, together

9   and separately, Howells and Vaisey made trips to observe and

10  locate possible children to abduct.  In that regard, we would

11  prove that on or about July 1st, 2014, Vaisey sent a text

12  message to Howells indicating that she had seen four

13  "pixies/princesses" which is a reference to Amish girls,

14  traveling in a buggy on a deserted road and that "it would

15  have been perfect."  Additionally, in or about early

16  August 2014, we would prove that Howells had observed two

17  Amish girls at a roadside farm stand at their home in

18  St. Lawrence County after which he and Vaisey discussed a

19  plan to abduct these children from that location.

20       We would prove that in furtherance of the

21  conspiracy, on Wednesday, August 13th, 2014, Vaisey and

22  Howells drove to the predetermined Amish farm stand with the

23  intention of abducting the two girls.  To help accomplish the

24  abduction, Howells and Vaisey tied Vaisey's dog to the rear

25  driver's side door inside Howells' vehicle as a means to lure

Case 15-1103, Document 38, 05/13/2016, 1771705, Page74 of 213

1    the children inside.  We would prove that Vaisey and Howells

2    drove to the farm stand in Howells' vehicle and that Vaisey

3    was the driver.

4           We would prove that in furtherance of the

5    conspiracy, on August 13th, 2014, Howells and Vaisey

6    kidnapped V-1 and V-2, Amish female children ages 11 and 6,

7    respectively, from their family's roadside farm stand in

8    St. Lawrence County.  Pretending to be a customer at the farm

9    stand, Howells lured and then forced V-1 and V-2 into the

10   back seat of the vehicle where he used a syringe to inject

11   V-1 with Versed in an attempt to keep her quiet.  Vaisey then

12   drove off with the children in the car, taking them to the

13   St. Lawrence County residence shared by Vaisey and Howells.

14          We would prove that as a part of the conspiracy,

15   V-1 and V-2 were sexually assaulted by Howells several times

16   over the course of approximately 25 hours for the purpose of

17   producing visual depictions of that conduct.  Using materials

18   that had been mailed, shipped, or transported in and

19   affecting interstate and foreign commerce, visual depictions

20   of V-1 and V-2, and specifically of Howells engaged in

21   sexually explicit conduct with V-1, were recorded by both

22   Vaisey and Howells at their St. Lawrence County residence.

23          As a part of the conspiracy, when not being abused,

24   V-1 and V-2 were restrained together at the ankles with

25   handcuffs and chains.

Case 15-4102, Document 38, 05/13/2016, 1774705, Page75 of 213
Case 8:14-cr-00340-GTS Document 45 Filed 05/14/15 Page 20 of 47

20

1          In regard to Counts 2 through 10 and on the dates

2     alleged therein, Stephen Howells and Nicole Vaisey did

3     employ, use, persuade, induce, entice, and coerce V-1, V-2,

4     and V-6, minor children born in 2002, 2006, and 2003

5     respectively, to engage in sexually explicit conduct for the

6     purpose of producing visual depictions of such conduct, where

7     the visual depictions were produced using materials that had

8     been mailed, shipped, and transported in and affecting

9     interstate and foreign commerce by any means, including by

10    computer.  The depictions produced by Howells and Vaisey were

11    all recorded in their St. Lawrence County residence, and were

12    recovered by the FBI from an encrypted drive on Howells'

13    computer after the password was discovered by the FBI in a

14    text message from Howells to Vaisey, wherein Vaisey requested

15    the password and Howells provided it to her.

16          As to each of these substantive counts, the

17    government would prove the following:

18          As to Count 2, on or about September 7th, 2013,

19    Howells and Vaisey, acting together, sexually exploited V-3

20    and produced depictions of the child engaged in sexually

21    explicit conduct, including the following:

22          A video bearing part of V-3's name in the title,

23    followed by Video 24.wmv.  This is a 9:45 video file

24    depicting Stephen Howells removing V-3's panties, exposing

25    her vagina.  Howells is then depicted masturbating, fondling

Case 15-4103, Document 38, 05/13/2016, 1774735, Page76 of 213
Case 5:14-cr-00340-GTS   Document 45   Filed 05/14/15   Page 21 of 47

21

1   V-3's vagina with his hand, and having mouth-to-vagina

2   contact with her.  Howells is then depicted handing a small

3   digital camera to Nicole Vaisey who records Howells engaging

4   in mouth-to-vagina contact with V-3, as well as additional

5   activity that is not visible from this camera angle.

6           But also recovered from the September 7th event is

7   a video entitled MVI_7681.avi, which is a 4:06 video which

8   appears to be the file created with the digital camera used

9   by Vaisey in the Video 24 file.  This depicts the activity

10   that was not visible due to the camera angle in Video 24 and

11   this is Howells penetrating V-3's vagina with his penis.

12           As to Count 3, we would prove that on or about

13   October 20th, 2013, Howells and Vaisey, acting together,

14   sexually exploited V-3 and produced depictions of the child

15   engaged in sexually explicit conduct, including the

16   following:

17           A video bearing part of V-3's name in the title,

18   followed by Video 30.wmv.  This is a 28:20 video file

19   depicting Howells rubbing his penis on V-3's vagina and anus

20   and engaging in mouth-to-vagina contact with her.  Nicole

21   Vaisey is depicted in the bed and seen filming the abuse with

22   a small digital camera.

23           Also on this date, a video file entitled

24   MVI_7729.avi which is a one-minute-and-eighteen-second video

25   file that appears to be the video created by Nicole Vaisey as

Case 15-4103, Document 38, 05/13/2016, 1774795, Page77 of 213
Case 8:14-cr-00340-GTS   Document 45   Filed 05/14/15   Page 22 of 47

22

1    depicted in the Video 30 file.  This depicts Howells rubbing

2    his penis in and on V-3's vagina, digitally penetrating her,

3    and engaging in mouth-to-vagina contact with her.

4              In relation to Count 4 we would prove that on or

5    about November 16th, 2013, Howells and Vaisey, acting

6    together, sexually exploited V-3 and produced depictions of

7    the child engaged in sexually explicit conduct, including a

8    video file that includes part of V-3's name in the title,

9    along with Video 31.wmv.  This is a one-hour-seventeen-

10   minute-and-forty-six-second video that depicts Stephen

11   Howells removing V-3's nightshirt and panties, leaving her

12   naked.  Howells is depicted digitally penetrating V-3's

13   vagina and fondling her buttocks and anus while he has

14   intercourse with Nicole Vaisey.  Howells is then depicted

15   penetrating V-3's vagina with his penis, and Vaisey is

16   depicted using a small digital camera to film Howells rubbing

17   his penis in and on V-3's vagina.

18             As to Count 5, we would prove that on or about

19   November 17th, 2013, Howells and Vaisey, acting together,

20   sexually exploited V-6 and produced depictions of the child

21   engaged in sexually explicit conduct, including a video file

22   that includes part of V-6's name in the title along with

23   Video 33.wmv.  This is a forty-minute-and-sixteen-second

24   video file that depicts Stephen Howells getting into bed and

25   fondling V-6's breasts, using V-6's hand to stimulate his

1    penis, removing V-6's pants and panties to expose her vagina,

2    and digitally penetrating V-6.  Howells is depicted taking

3    additional photos and videos of V-6 with a handheld digital

4    camera, and Vaisey is depicted using the same camera to

5    record Howells engaging in mouth-to-vagina contact with V-6.

6    Vaisey is also depicted licking V-6's breasts.

7         As to Count 6, we would prove that on or about

8    December 15th of 2013, Howells and Vaisey, acting together,

9    sexually exploited V-6 and produced depictions of the child

10   engaged in sexually explicit conduct, including the

11   following:

12        First, a video file that includes V-6's name in the

13   title along with Video 2.wmv.  This is an

14   eighteen-minute-and-thirteen-second video file depicting V-6,

15   Stephen Howells, and Nicole Vaisey in the bed at Howells' and

16   Vaisey's residence.  Vaisey is depicted fondling V-6's

17   breasts.  Howells is depicted fondling V-6's breasts and

18   using V-6's hand to stimulate his penis.  Howells is also

19   depicted pouring a clear liquid from a large syringe into

20   V-6's mouth while she sleeps.

21        Additionally, a video file that includes V-6's name

22   in the title, along with Video 3.wmv.  This is a

23   one-hour-eight-minute-thirty-three-second video file which

24   appears to be a continuation of the activity in Video 2.  In

25   this file, Howells is depicted pouring a clear liquid from a

Case 15-1102, Document 38, 05/13/2016, 1774735, Page79 of 213
Case 8:14-cr-00340-GTS    Document 45    Filed 05/14/15    Page 24 of 47

24

1    test tube into V-6's mouth, and is later seen pouring a

2    liquid from a large syringe into the test tube and then into

3    V-6's mouth again.  Vaisey is depicted with her hand inside

4    V-6's pants, appearing to be fondling the child's vagina.

5    Howells is depicted masturbating while fondling V-6's

6    breasts, using the child's hand to stimulate his penis, and

7    rubbing his penis on her buttocks.  Howells is also seen

8    shining a flashlight into V-6's eyes.  Vaisey is depicted

9    using a small digital camera to record the activity between

10   Howells and V-6.

11        Also on this date, a video file that includes V-6's

12   name in the title, along with "cum MVI_7837.AVI."  This is a

13   two-minute-and-forty-one-second video file depicting Howells

14   masturbating to ejaculation on V-6's stomach.  Vaisey is

15   depicted handing the camera that she was using to record this

16   conduct to Howells who then records Vaisey licking Howells'

17   semen from V-6's stomach and breasts.

18        As to Count 7, we would prove that on or about

19   December 29th, 2013, Howells and Vaisey, acting together,

20   sexually exploited V-3 and produced depictions of the child

21   engaged in sexually explicit conduct, including the

22   following:

23        A file entitled Video 8.mp4.  This is a

24   thirty-one-minute-and-three-second video file depicting V-3,

25   Vaisey, and Howells in the bed at their residence.  Vaisey is

25

1    depicted performing oral sex on V-3 and using a vibrator on

2    V-3's vagina while Howells uses a small handheld digital

3    camera to record the abuse.  Both Vaisey and Howells are

4    depicted digitally penetrating V-3's vagina.  Vaisey is also

5    depicted engaging in mouth-to-vagina contact with V-3 while

6    Howells puts his penis in V-3's mouth.  Vaisey is then

7    depicted using a handheld digital camera to record Howells

8    masturbating over V-3's vagina.  Howells is then depicted

9    putting his penis inside V-3's vagina and ejaculating, after

10   which Vaisey is depicted engaging in mouth-to-vagina contact

11   with V-3.

12           As to Count 8, we would prove that on or about

13   April 18th, 2014, Howells and Vaisey, acting together,

14   sexually exploited V-3 and produced depictions of the child

15   engaged in sexually explicit conduct, including the

16   following:

17           A video file bearing a part of V-3's name in the

18   title followed by Video 14.wmv.  This is a

19   nineteen-minute-and-ten-second video file depicting Howells

20   fondling V-3's breasts.  Howells is depicted removing the

21   camera from its original location and handing it to Vaisey,

22   who films Howells rubbing his penis in and on V-3's buttocks,

23   and inserting his finger, and then his penis, into V-3's

24   vagina.

25           As to Count 9, we would prove that on or about

A.78

1   May 31st, 2014, Howells and Vaisey, acting together, sexually

2   exploited V-3 and produced depictions of the child engaged in

3   sexually explicit conduct, including the following:

4           A file entitled Video 16.wmv.  This is a

5   one-hour-thirty-two-second video file depicting Nicole Vaisey

6   assisting V-3 to take her shorts and panties off.  Vaisey is

7   heard saying, "Get up," and is depicted putting V-3 on top of

8   Stephen Howells, who is lying on his back, and V-3 is

9   positioned so that her head is facing Howells' feet.  Howells

10  is depicted engaging in mouth-to-vagina contact with V-3.

11  Vaisey is depicted engaging in mouth-to-penis contact with

12  Howells while at the same time digitally penetrating V-3's

13  vagina.  V-3 is depicted sitting on the bed and manually

14  stimulating Howells' penis while Vaisey is heard saying "kiss

15  it" repeatedly.  Howells then penetrates V-3's vagina with

16  his penis while Vaisey is depicted filming the abuse with a

17  small handheld digital camera.  Howells then ejaculates

18  inside V-3's vagina, after which Vaisey engages in

19  mouth-to-vagina contact with V-3.

20          As to Count 10, we would prove that on or about

21  August 13th, 2014, Howells and Vaisey, acting together,

22  sexually exploited V-1 and produced depictions of the child

23  engaged in sexually explicit conduct, including the

24  following:

25          A video file entitled Video2.mov which depicts V-1

1    and V-2 in the bed at Howells' and Vaisey's residence.  V-2

2    is asleep during the entirety of the video.  Vaisey is

3    depicted in the bed with the children.  Howells is depicted

4    fondling V-1's breasts and vagina, engaging in

5    mouth-to-vagina contact with her, and digitally penetrating

6    her vagina.  Howells is then depicted unhooking handcuffs

7    that were used to secure V-1 and V-2 together by the ankles.

8    He is then depicted rehooking the handcuffs to V-1's wrists

9    and securing her to a chain that is attached to the head of

10    the bed.  Howells then appears to penetrate V-1 both

11    vaginally and anally.  Vaisey is depicted watching the abuse,

12    and then she is seen taking a digital camera from near her in

13    the bed and then filming the depicted abuse of V-1.

14         As to Counts 11 to 16, Howells is charged alone

15    with employing, using, persuading, inducing, enticing, and

16    coercing V-3, V-4, V5, and V-6, minor children born in 2006,

17    2004, 2008, and 2006, respectively, to engage in sexually

18    explicit conduct for the purpose of producing visual

19    depictions of such conduct, where the individual depictions

20    were produced using materials that had been mailed, shipped,

21    transported in and affecting interstate commerce by any

22    means, including by computer.  The depictions produced by

23    Howells were all recorded in the St. Lawrence County

24    residence he shared with co-defendant Nicole Vaisey, and were

25    recovered by the FBI from an encrypted drive on Howells'

1    computer after the password was discovered by the FBI in a

2    text message from Howells to Vaisey, wherein Vaisey requested

3    the password and Howells provided it to her.

4            As to each of the counts, 11 to 16, the government

5    would prove the following:  As to Count 11, we would prove

6    that on or about December 16th, 2012, Howells sexually

7    exploited V-4 and produced depictions of the child engaged in

8    sexually explicit conduct, including the following:

9            Four video files entitled MVI_7312.avi,

10   MVI_7314.avi, MVI_7315.avi, and Video 13.wmv.  These files

11   depicted the same conduct from differing camera angles.  In

12   the videos, V-4 is seen asleep on a bed in a living room of

13   Howells' St. Lawrence County residence.  She is wearing a

14   nightshirt and no panties.  Together, the four video files

15   depict Howells positioning V-4 to expose her vagina to the

16   camera, fondling her vagina, administering an injection to

17   V-4 in her buttocks, masturbating while watching V-4 on the

18   bed, and masturbating and rubbing his penis on V-4's foot.

19           As to Count 12, we would prove that on or about

20   September 22nd, 2013, Howells sexually exploited V-3, V-5,

21   and V-6 and produced depictions of the children engaged in

22   sexually explicit conduct, including a video file containing

23   in its title a part of the first names of the each of V-3,

24   V-5, and V-6, followed by Video 26.wmv.  This is a

25   forty-two-minute-seven-second video file depicting V-3, V-5,

Case 15-4103, Document 28, 05/13/2016, 1774795, Page84 of 213
Case 8:14-cr-00340-GTS   Document 45   Filed 05/14/15   Page 29 of 47

29

1 │ and V-6, all asleep in the bed in the bedroom at Howells' and

2 │ Vaisey's residence.  As it pertains to V-3, Howells is

3 │ depicted repositioning her several times while he sits on the

4 │ bed and masturbates.  While V-3 is lying on her side,

5 │ Howells, using a flashlight, appears to insert something into

6 │ V-3's vagina or anus, until she wakes up.  As it pertains to

7 │ V-5, Howells is depicted removing V-5's pants, spreading her

8 │ legs apart to expose her vagina, and fondling her anus.

9 │ Howells is also depicted shining a light into V-5's eyes.  As

10 │ it pertains to V-6, Howells is depicted pulling up V-6's

11 │ nightshirt, exposing and fondling her breasts, pulling her

12 │ pants down below her buttocks, and appears to insert

13 │ something into her anus.  Howells is also seen shining a

14 │ light into V-6's eyes.

15 │        As to Count 13, we would prove that on or about

16 │ November 16th, 2013, Howells sexually exploited V-5 and

17 │ produced depictions of the child engaged in sexually explicit

18 │ conduct, including a video file that contains a part of V-5's

19 │ name in its title along with "cock face MVI_7741.AVI."  This

20 │ is a 22-second video depicting V-5 asleep on Howells'

21 │ stomach, with her hand holding Howells' penis against her

22 │ face.  Nicole Vaisey is depicted sitting up in bed next to

23 │ Howells and V-5, using her laptop computer while the

24 │ described abuse is happening.

25 │        As to Count 14, we would prove that on or about

Case 15-1182, Document 38, 05/13/2016, 1774725, Page85 of 213
Case 8:14-cr-00340-GTS   Document 45   Filed 05/14/15   Page 30 of 47

30

1    December 13th, 2013, Howells sexually exploited V-5 and V-6

2    and produced depictions of the children engaged in sexually

3    explicit conduct, including the following:

4         First, a video file with a title that includes a

5    part of the names of V-5 and V-6, along with Video 33.mov.

6    This is a one-hour-fifty-two-minute-thirteen-second video

7    depicting Howells, in the bed at his residence, putting his

8    penis on V-5's face, wiping fluids from his penis onto V-5's

9    mouth, and using V-5's hand to stimulate his penis.  Both

10   Nicole Vaisey and V-6 are depicted in the bed during this

11   video and appear to be asleep.

12        Also on this date there's a video file with a title

13   that includes a part of the names of V-5 and V-6, along with

14   the terms garters and 2.wmv.  This is a one-hour-fifty-one-

15   minute-eighteen-second video file depicting V-5, V-6, and

16   Nicole Vaisey in the bed at Howells' and Vaisey's residence.

17   As it relates to V-6, the video depicts Howells pulling V-6's

18   pants down to expose her anus.  He is depicted getting in bed

19   behind V-6 where he rubs his penis on her buttocks.  Howells

20   then removes V-6's pants and panties completely exposing her

21   vagina, and dresses her in thigh-high fishnet stockings and a

22   garter, after which he digitally penetrates V-6's anus, and

23   uses a vibrator on her vagina while he masturbates.  Howells

24   eventually ejaculates on V-6's buttocks and hip.  Again,

25   Vaisey is seen in the bed throughout the duration of the

Case 15-4102, Document 28, 05/13/2016, 1774705, Page86 of 213
Case 8:14-cr-00340-GTS   Document 45   Filed 05/14/15   Page 31 of 47

31

1    video, but appears to be asleep.

2           As to Count 15, we would prove that on or about

3    January 24th, 2014, Howells sexually exploited V-3 and

4    produced depictions of the child engaged in sexually explicit

5    conduct, including a video file entitled Video 12.wmv.  This

6    is thirteen-minute-fourteen-second video file depicting V-3

7    in the bed in the bedroom at Howells' and Vaisey's residence.

8    V-3 is dressed in a black negligee and fishnet panties.

9    Howells is depicted getting into bed, removing V-3's panties,

10   penetrating her vagina with his penis, and ejaculating.

11          As to Count 16, we would prove that on or about

12   April 19th, 2014, Howells sexually exploited V-3 and produced

13   depictions of the child engaged in sexually explicit conduct,

14   including the following:

15          A video file that contains a part of V-3's name in

16   the title, along with video 16.wmv.  This is a

17   fifty-seven-minute-and-forty-eight-second video file

18   depicting V-3 and Nicole Vaisey in the bed at Howells' and

19   Vaisey's residence.  Howells is depicted getting into bed,

20   removing V-3's pajamas and dressing her in a black negligee,

21   fishnet panties, a garter, and fishnet thigh-high stockings.

22   Howells then puts a black studded collar on V-3.  Howells is

23   depicted engaging in mouth-to-vagina contact with V-3,

24   fondling her vagina, and instructing V-3 to use a vibrator on

25   her vagina.  Howells is depicted using a small handheld

1    digital camera to film V-3 using the vibrator while he

2    masturbates.  V-3 is depicted then manually stimulating

3    Howells' penis while he uses the vibrator on her vagina.  V-3

4    then licks Howells' penis, after which Howells puts V-3 on

5    her stomach and rubs his penis in and on her buttocks.

6    Vaisey is in the bed throughout the video, and appears to be

7    sleeping.

8            All of the visual depictions in Counts 1 through 16

9    we would prove were produced using materials that have

10   traveled in interstate and foreign commerce and were not

11   manufactured in the state of New York, including a Logitech

12   HD 1080P webcam, a Canon Powershot G7 digital camera S/N

13   3221205452, manufactured in Japan, and Samsung WB100 digital

14   camera Serial Number A48CC9AD100FSMJ, manufactured in China.

15   Additionally, all depictions involved in Counts 1 through 16

16   were saved to a Seagate Barracuda 3000-gigabyte hard drive,

17   Serial Number W1F23A2C, which was manufactured in China.

18           Counts 17 through 21 of the indictment allege that

19   on August 15th of 2014, the defendant did knowingly possess

20   material that contained one or more images of child

21   pornography that had been transported using a means and

22   facility of interstate and foreign commerce, and in and

23   affecting such commerce by any means, including by computer,

24   and that were produced using materials that had been shipped

25   and transported in and affecting such commerce by any means,

Case 15-4102, Document 38, 05/13/2016, 1774705, Page88 of 213

33

1   including by computer.  Each count charges a separate

2   computer hard drive on which the defendant possessed numerous

3   graphic image and video files of minors engaged in sexually

4   explicit conduct.  All the files charged in Counts 17 through

5   21 are of actual children whose images have been transported

6   in interstate and foreign commerce as they are widely traded

7   on the internet.  Many of the children in the files possessed

8   by Howells are known to law enforcement and each count of

9   conviction includes images and video depictions of children

10  under the age of 12.

11          As to these substantive counts, the government

12  would prove the following:

13          As to Count 17, on a 500-gigabyte Seagate hard

14  drive manufactured in China, Howells possessed numerous image

15  and video files depicting minors engaged in sexually explicit

16  conduct, including an image file entitled

17  0000blondsweet(1).jpg.jpg which depicts a prepubescent female

18  child on her knees handcuffed, with an adult male's penis in

19  her mouth.  This image is from the known child pornography

20  series Jan_Feb.  The child depicted was seven years old at

21  the time she was rescued by law enforcement.

22          As to Count 18, we would prove that on a

23  one-terabyte Western Digital hard drive manufactured in

24  Malaysia, Howells possessed numerous image and video files

25  depicting minors engaged in sexually explicit conduct

1    including a file titled "9yo Jenny Nude Sucking a Dog's Dick

2    - Blowjob Bestiality Underage Lolita R@ygold Pthc Ptsc Ddog

3    Pedo Young Child Sex Preteen Hussyfan Kiddy Ki_xvid.avi.

4    This is a 48-second video depicting a female child whose age

5    is consistent with the nine years old of the title who was

6    engaged in mouth-to-genital contact with a dog.

7              As to Count 19, we would prove that on a

8    500-gigabyte Western Digital hard drive manufactured in

9    Thailand, Howells possessed numerous image and video files

10   depicting minors engaged in sexually explicit conduct,

11   including an image file entitled _hr_felisha016.jpg which

12   depicts a nude prepubescent female child lying on her back

13   with her legs spread apart.  An adult male is depicted

14   pressing his penis between the lips of the child's vagina and

15   a fluid consistent with ejaculate is depicted on the child's

16   vagina and stomach.

17             As to Count 20, we would prove that on a

18   300-gigabyte Seagate hard drive manufactured in China,

19   Howells possessed numerous image and video files depicting

20   minors engaged in sexually explicit conduct, including an

21   image file entitled tied%20to%20suck.jpg.  This depicts a

22   nude female child approximately four years old whose hands

23   are tied with cord above her head, and who has an adult

24   male's penis pressed against her face.

25             And finally, as to Count 21, we would prove that on

Case 15-4102 Document 38 05/13/2016 1774705 Page 90 of 213

1    a 3000-gigabyte Seagate hard drive manufactured in China,

2    Howells possessed numerous image and video files depicting

3    minors engaged in sexually explicit conduct, including a file

4    entitled Bdsm1.mp4 which is a five-minute-forty-three-second

5    video file depicting the sexual abuse and torture of a female

6    infant, who, among other things, is held upside down by her

7    feet while hot wax is dripped onto her vagina from a lit

8    candle.

9             As to all of the possession counts, again, we would

10   prove that each count involved children under the age of 12.

11            THE COURT:  Mr. Howells, you've heard what the

12   government just said they could prove had this case gone to

13   trial, is that what you did, sir, is that what occurred in

14   this case?

15            MS. BIANCO:  May we have a moment, your Honor?

16            THE COURT:  You may.

17                 (A discussion was held off the record between

18                  Ms. Bianco and the defendant.)

19            THE DEFENDANT:  Your Honor, I would not agree with

20   all of the drugs that were listed.

21            THE COURT:  The drugs?

22            THE DEFENDANT:  The drugs that were listed as being

23   used against the children, I'll agree to some of them, but

24   for the most part, the allegations are true.

25            THE COURT:  Okay.  With regard to the abduction of

Case 15-1103 Document 28 05/13/2016 1771705 Page 91 of 213

1    the two children, is that description accurate?

2          THE DEFENDANT:  Given the injection of the

3    medication?

4          THE COURT:  Yes.

5          THE DEFENDANT:  Yes, sir.

6          THE COURT:  And what drugs did you use?

7          THE DEFENDANT:  The sleeping medication, Ambien,

8    and the pain medications, the oxycodone.

9          THE COURT:  Okay.  And with regard to the camera

10   and video equipment, where did you purchase that and where

11   did it come from?

12         THE DEFENDANT:  I believe they came from local

13   computer shops.

14         THE COURT:  Okay.  And how long had you had it?

15         THE DEFENDANT:  Several years.

16         THE COURT:  Several years.  And the laptop as well?

17         THE DEFENDANT:  The laptop, I believe you're

18   referring to one that belonged to Nicole.

19         THE COURT:  Okay.  And the child pornography that

20   was obtained in various files that you had on your computer,

21   how long had you had those?

22         THE DEFENDANT:  For many years.

23         THE COURT:  Okay, sir.  Ms. Bianco, is that your

24   understanding of what occurred here?

25         MS. BIANCO:  Yes, your Honor, it is.

1    THE COURT:  Okay.  Anything else you want to put on

2    the record with regard to the very lengthy description by the

3    government of the crimes here?

4    MS. BIANCO:  Um, um, Mr. Howells is not -- is here

5    today to plead for his own conduct, he can't attest to things

6    that happened outside of his presence by Ms. Vaisey but we

7    have nothing else, your Honor.

8    THE COURT:  Okay.  Well, certainly he's agreed to

9    the fact that, what occurred when Ms. Vaisey was present.

10    MS. BIANCO:  Yes, your Honor, he has.

11    THE COURT:  Okay.  And Ms. Fletcher, if you could,

12    would you inform this defendant of the sentencing

13    possibilities in this case.

14    MS. FLETCHER:  Yes, your Honor.  A violation of

15    Sections 2251(a) and 2251(e) as alleged in Counts 1 through

16    16 of the indictment is a class B felony, each of which

17    carries a statutory mandatory minimum penalty of 15 years

18    imprisonment, and a maximum term of 30 years imprisonment per

19    count.  A violation of Section 2252A(a)(5)(B) and (b)(2), as

20    alleged in Counts 17 through 21 of the indictment, is a Class

21    C felony with statutory maximum sentence of 20 years per

22    count.

23    Each count of conviction carries a maximum fine of

24    $250,000.

25    In addition, the court must require the defendant

Case 15-1183, Document 38, 05/13/2016, 1771705, Page92 of 213

1    to serve a term of supervised release of between five years

2    and life, to begin after imprisonment.  A violation of the

3    conditions of supervised release during that time period may

4    result in the defendant being sentenced to an additional term

5    of imprisonment of up to three years except as will be stated

6    in a minute.

7            Under the Sex Offender Registration and

8    Notification Act, the defendant as a result of his conviction

9    in this case must register as a sex offender and keep the

10   registration current in each jurisdiction where he resides,

11   where he is employed, and where he is a student.  For initial

12   registration purposes the defendant must also register in

13   New York as a result of this conviction, even if he resides

14   in a different jurisdiction.  A sex offender who knowingly

15   fails to register or update a required registration may be

16   subject to prosecution under 18 U.S.C. Section 2250 and face

17   a penalty of up to 10 years imprisonment.  Further,

18   notwithstanding the description previously set forth about

19   the consequences of a violation of the conditions of

20   supervised release, if the defendant, while on supervision,

21   commits any criminal offense under Chapter 109A, 110, or 117,

22   or under Section 1201 or 1591 of Title 18 for which

23   imprisonment of a term longer than one year can be imposed,

24   the court must revoke his term of supervised release and

25   require him to serve a term of imprisonment of not less than

1    five years on the violation.

2            Additionally, pursuant to 18 U.S.C. Section

3    2259(a), the court is required to order full restitution for

4    the amount of the victims' compensable losses as defined in

5    18 U.S.C. Section 2259(b)(3) and (c).

6            In regard to the minor victims depicted in the

7    images and video files involved in the criminal activity

8    charged in Counts 17 through 21 of the indictment, this

9    restitution shall be determined by the court in "an amount

10   that comports with the defendant's relative role in the

11   causal process that underlies the victims' general losses,"

12   and shall be a "reasonable and circumscribed award imposed in

13   recognition of the indisputable role of the [defendant] in

14   the causal process underlying those victim[s'] losses and

15   suited to the relative size of that causal role," pursuant to

16   *Paroline v. United States*.

17           The court may not decline to award restitution

18   because of the defendant's economic circumstances or the fact

19   that the victims have or are entitled to receive compensation

20   for their injuries from the proceeds of insurance or any

21   other source.

22           Additionally, pursuant to Section 2253 of Title 18

23   and Title 21 U.S.C. Section 853(p), the defendant shall

24   forfeit to the United States pursuant to the forfeiture

25   allegation in the indictment as supplemented by the Bill of

1     Particulars filed by the government all property included

2     therein, and that includes the red Pontiac Sunfire, the white

3     Honda Civic, the Antec homemade desktop computer with no

4     serial number containing the five hard drives set forth in

5     the indictment.  Also, a Canon G7 digital camera, an iPhone

6     model A1349, iPhone model A1387, a Logitech HD 1080 webcam, a

7     Rabbit TV flash drive, a Scan Disk one-gigabyte memory card,

8     a Samsung WB100 digital camera, a Sony PS3 Playstation with

9     controller and cords, a Barnes & Noble Nook tablet, a

10    Microsoft XBox 360 console with two controllers, a Toshiba

11    Satellite laptop, HP Pavilion laptop, PNY Optima 8-gigabyte

12    memory card, a 100-megabyte zip drive, a Garmin Nuvi GPS,

13    Kodak Easyshare digital camera, assorted VHS tapes, assorted

14    CDs and DVDs, and assorted 3-1/2-inch floppy disks.

15         Finally, the defendant will be required to pay a

16    special assessment of $100 per count for a total of $2,100

17    due and payable at or before sentencing.

18         THE COURT:  Mr. Howells, do you understand the

19    sentencing possibilities just recited by the government is

20    what you potentially face as a result of your guilty plea

21    here today; you understand that, sir?

22         THE DEFENDANT:  Yes, sir, I do.

23         THE COURT:  Ms. Fletcher, have you projected a

24    Sentencing Guideline range?

25         MS. FLETCHER:  Yes, your Honor.  It is projected

Case 15-4103, Document 38, 05/13/2016, 1774705, Page96 of 213
Case 8:14-cr-00340-GTS   Document 45   Filed 05/14/15   Page 41 of 47

41

1    that the defendant will score at resolved level of 43 which

2    calls for a life imprisonment sentence; however, because each

3    count of conviction has a statutory maximum that is less than

4    life, that sentence resolves back to the maximum amount

5    possible in this case which would be 580 years.

6               THE COURT:  Mr. Howells, has your attorney

7    discussed with you the Sentencing Guidelines and how they

8    apply to your case?

9               THE DEFENDANT:  Yes, sir.

10              THE COURT:  And you understand that I'm required to

11   consider those Sentencing Guidelines in determining your

12   sentence?

13              THE DEFENDANT:  Yes, sir.

14              THE COURT:  Sir, you should further understand that

15   we won't be able to determine exactly what the Guidelines are

16   in your case until after probation's completed a presentence

17   report.  We're going to get information submitted by the

18   government, information submitted by your attorney, and we'll

19   make a determination as to exactly where the Guidelines fall

20   with regard to your case, you understand that?

21              THE DEFENDANT:  Yes, sir.

22              THE COURT:  You should further understand that an

23   adjudication of guilty may deprive you of certain valuable

24   civil rights such as the right to vote, the right to hold

25   public office, the right to serve on a jury, and the right to

1     possess a firearm. You understand that?

2           THE DEFENDANT: Yes, sir.

3           THE COURT: Furthermore, after it's been determined

4     how the Guidelines apply to your case, the court has to

5     consider other factors under Section 3553(a), Title 18, such

6     as the following: The nature and circumstances of the

7     offense and your history and characteristics as a defendant,

8     the seriousness of the offense, the need to promote respect

9     for the law and provide just punishment for the offense, the

10     need to afford adequate deterrence of criminal conduct, the

11     need to protect the public from further crimes, and the need

12     to provide you with appropriate education, vocational,

13     medical, or other treatment in an effective manner, any

14     pertinent policy issues issued by the Sentencing Commission,

15     and the need to avoid unwarranted sentencing disparities, as

16     well as the need to provide restitution to the victims of the

17     offenses.

18           Now that you've been informed of the penalties to

19     the extent that we know them now, the Sentencing Guidelines,

20     and my role under the Guidelines, do you still wish to plead

21     guilty, sir?

22           THE DEFENDANT: Yes, sir.

23           THE COURT: And are you pleading because you are

24     guilty -- excuse me. Are you pleading guilty because you are

25     guilty and for no other reason?

1        THE DEFENDANT:  Yes, sir.

2        THE COURT:  You advised me that you had an

3   opportunity to review the indictment containing the charges

4   against you with your attorney, and that those charges had

5   been reviewed and explained to you; can you assure me you

6   understand these charges?

7        THE DEFENDANT:  Yes, sir.

8        THE COURT:  And do you realize the penalties that

9   could be imposed upon you after pleading guilty?

10       THE DEFENDANT:  I do.

11       THE COURT:  Have any promises been made to you as

12   to what the sentence might be?

13       THE DEFENDANT:  No, sir.

14       THE COURT:  Okay, sir.  Thank you.  Ms. Bianco, if

15   you could for the record, background and experience.

16       MS. BIANCO:  Certainly, your Honor.  I was admitted

17   in New York State court in January of 1989, I was admitted in

18   the Northern District of New York in 1995.  I've spent my

19   entire career doing criminal defense work both in state and

20   federal court, and I've been with the Office of the Federal

21   Public Defender since 2012.

22       THE COURT:  And approximately how much time have

23   you spent with the defendant on this matter?

24       MS. BIANCO:  I visited with, either myself or

25   someone from my office has visited with the defendant

JODI L. HIBBARD, RPR, CRR, CSR
(315) 234-8547

A.96

1    approximately 11 times in the jail, we've spent approximately

2    166 hours on the case.

3              THE COURT:  Have you advised the defendant of his

4    rights, the nature of the charges against him, and the

5    consequences of pleading guilty?

6              MS. BIANCO:  Yes, your Honor.

7              THE COURT:  How much discovery did you get of the

8    government's evidence, either formally or informally?

9              MS. BIANCO:  I believe I've gotten voluminous

10   discovery, your Honor.

11             THE COURT:  Adequate information to appropriately

12   advise your client of a disposition in this matter?

13             MS. BIANCO:  Yes, your Honor.

14             THE COURT:  Have you made any promises or threats

15   to induce him to plead guilty?

16             MS. BIANCO:  No, your Honor.

17             THE COURT:  Are you satisfied that Mr. Howells is

18   pleading guilty freely and voluntarily with an understanding

19   of the nature of the charges and the consequences?

20             MS. BIANCO:  Yes.

21             THE COURT:  And you know of any defenses he may

22   have?

23             MS. BIANCO:  No, your Honor.

24             THE COURT:  Know of any other reason why defendant

25   should not plead guilty?

1    MS. BIANCO:  No, your Honor.

2    THE COURT:  Okay, Mr. Howells, I've taken into

3    consideration the statements made to me by you as well as the

4    statements made to me by your attorney and the assistant

5    United States Attorney, and based on those discussions, it is

6    the finding of this court that you have pled guilty knowingly

7    and voluntarily, that you are competent and capable of

8    entering an informed plea, that you understand the charges

9    against you and the consequences of pleading guilty, that

10   there is a basis in fact for the court accepting this plea

11   into the record.  I accept your plea, and you are now

12   adjudged guilty of those offenses.

13   I'm going to direct the probation department to

14   prepare and submit a presentence report.  I'm scheduling your

15   sentencing for September 18th, 2015, at 11 a.m. here in

16   Syracuse.

17   Counsel, the clerk will electronically file the

18   Northern District uniform presentence order.  Once the

19   presentence report is prepared, it will be lodged with the

20   clerk's office and you will receive it electronically through

21   ECF.  Any objections to the report must be submitted in

22   writing to probation within 14 days of receipt of the report.

23   The defendant will remain in the custody of the

24   United States Marshal.

25   Ms. Fletcher, anything further on behalf of the

1    government?

2              MS. FLETCHER:  No, your Honor, thank you.

3              THE COURT:  Ms. Bianco, anything further?

4              MS. BIANCO:  No, your Honor.

5              THE COURT:  Okay, very well.

6              THE CLERK:  Court is adjourned.

7                   (Court Adjourned, 11:09 a.m.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                  CERTIFICATE OF OFFICIAL REPORTER

 2

 3

 4        I, JODI L. HIBBARD, RPR, CRR, CSR, Federal

 5   Official Realtime Court Reporter, in and for the

 6   United States District Court for the Northern

 7   District of New York, DO HEREBY CERTIFY that

 8   pursuant to Section 753, Title 28, United States

 9   Code, that the foregoing is a true and correct

10   transcript of the stenographically reported

11   proceedings held in the above-entitled matter and

12   that the transcript page format is in conformance

13   with the regulations of the Judicial Conference of

14   the United States.

15

16                      Dated this 14th day of May, 2015.

17

18

19                      /S/ JODI L. HIBBARD

20                      JODI L. HIBBARD, RPR, CRR, CSR
                        Official U.S. Court Reporter
21

22

23

24

25
```

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

       V.

                                   CASE NO.  5:14-CR-340-GTS

STEPHEN M. HOWELLS II,

          Defendant.

_____

### SENTENCING MEMORANDUM

DATED:      November 24, 2015        LISA A. PEEBLES
                                      Federal Public Defender

                         By:
                                  Randi J. Bianco
                                  Assistant Federal Public Defender
                                  Bar Roll No. 507514
                                  Clinton Exchange, 3rd Floor
                                  4 Clinton Street
                                  Syracuse, New York   13202
                                  (315) 701-0080

1

Stephen Howells comes before this Court as a very remorseful man who accepts responsibility for what he has done.  Without any reservation, he understands that his criminal conduct has scarred the victims of his offenses and brought shame on his own family.  Though his conduct is obviously reprehensible, he asks this Court to fashion a sentence that (1) accounts for the fact that he will serve a lengthy sentence in state court for the underlying sexual abuse and kidnapping; (2) focuses on the particular remaining federal interest involved in this case; and (3) places his conduct into relevant context.

## I.   <u>PRELIMINARY STATEMENT</u>

On November 12, 2014, Stephen Howells pled guilty to one count of Conspiracy to Sexually Exploit Children in violation of 18 U.S.C. § 2251(a) and (e); fifteen counts of Sexual Exploitation of Children in violation of 18 U.S.C. § 2251(a); and five counts of Possession of Child Pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) and 2256(8)(A).  None of the images were ever distributed.  Stephen's sentencing is currently scheduled for December 17, 2015.

A Presentence Report ("PSR") was prepared by the United States Probation Department in anticipation of his sentencing.  According to the PSR, his total Offense Level after receiving acceptance of responsibility is 43 and his Criminal History Category is I, resulting in a guideline imprisonment range of life.  Stephen's highest offense, 18 U.S.C. § 2251(a), requires a mandatory minimum sentence of 15 years with a maximum term of 30 years.

Stephen has raised his objections to the factual contents contained in the PSR with probation.  The defense submits that based on the arguments set forth below, a concurrent sentence of a total term of 30 years' imprisonment plus lifetime post-release supervision would

A.102

be "sufficient, but not greater than necessary," to achieve the statutory goals of punishment. U.S.S.G. § 3553(a).

The Supreme Court decision in *United States v. Booker*, 543 U.S. 220 (2005), held the sentencing guideline range to be only advisory. In determining a sentence, a court must not only consider Guideline calculations, but also take into equal account all other statutory concerns regarding the purposes of punishment listed in 18 U.S.C. § 3553(a)(2), as well as the unique circumstances of the Defendant. *See* § 3553(a).

The Sentencing Reform Act provides, in part, that:

The Court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in this subsection. The Court, in determining the particular sentence to be imposed, shall consider-

(1) the nature and circumstances of the offense and the history and characteristics of the defendant; [and]

(2) the need for the sentence imposed-

    (A)      to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B)      to afford adequate deterrence to criminal conduct;
    (C)      to protect the public from further crimes of the defendant; and
    (D)      to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a).

In light of *Booker* and the return of discretion to the Sentencing Courts, the defense respectfully requests that this Court fashion a sentence that (1) accounts for the fact that he will serve a lengthy sentence in state court for the underlying sexual abuse and kidnapping; (2) focuses on the particular remaining federal interest involved in this case; and (3) places his conduct into relevant context.

3

A.103

## II. THE NATURE OF THE OFFENSE, THE NEED FOR THE SENTENCE TO SATISFY THE REMAINING FEDERAL INTERESTS, AND STEPHEN'S HISTORY AND PERSONAL CHARACTERISTICS SUPPORT A COMBINED SENTENCE OF 30 YEARS' IMPRISONMENT.

Several factors support the sentence proposed of 30 years' imprisonment for the crimes for which Stephen is guilty, including the nature of the federal crimes he is to be punished for in this forum as opposed to the state crimes; Stephen's history and characteristics; and the fact that he released the girls, knowing that his capture was almost certain.

### 1. Nature of the federal offense

The nature of the offense involves coercing young minors to engage in sexually explicit conduct for the purpose of producing visual depictions of such conduct and thereafter possessing such visual depictions. While the nature of the federal offense is appalling, it pales in comparison to the underlying state charges. The state clearly has a more significant interest in prosecuting the kidnapping and sexual abuse charges than the federal court does in the filming of the sexual abuse, especially given the fact that the images were not distributed.

After his divorce and the breakup of his family, Stephen's doctor recommended he take time off work due to anxiety and insomnia issues, conditions which may have continued to affect Stephen thereafter.[1] This does not excuse Stephen's actions, but does shed light on factors that may have contributed to his behavior. In fact, Stephen maintains that at the time he committed the crime, he did not understand that he was hurting anyone, as he believed that the girls were "two-dimensional characters of real people." PSR at ¶65. Once Stephen realized the truth, that

---

[1] See Gregory Healy, M.D., *Office Visit Report*, Aug. 28, 2013; Gregory Healy, M.D., *Office Visit Report*, Sept. 5., 2013; Erik N. Schlosser, Ph.D., *Psychosexual Evaluation of Stephen Howells II* at 9 (Feb.18, 2015) submitted to the Court under separate cover.

4

A.104

he was hurting not only the victims, but also the people that he cared about in his own life, he released the girls fully understanding that it would likely lead to his capture. *Id.*

2. **The Need for the Sentence Imposed to Satisfy the Purposes of Punishment**

A sentence in federal court to the maximum of 30 years' imprisonment is significant and would satisfy the purposes of punishment under the Sentencing Reform Act. Such punishment should not take into account Stephen's state offenses, except to focus the issue on the residual federal criminal interest and prosecution. In state court, Stephen will be sentenced to a term of 25 years for the underlying sexual abuse and kidnapping charges with 20 years' post-release supervision. These state charges of sexual abuse and kidnapping do not implicate any federal interest because these acts were not done in or affecting interstate commerce or on federal property. The only federal interest not satisfied by the state sentence is Stephen's production, receipt, and possession of child pornography.[2]

As the produced images of the victims were not distributed to anyone else, the additional harm associated with the federal interest is certainly no more serious than the State's interest in prosecuting Stephen for the sexual abuse and kidnapping charges. Therefore, the remaining federal interest involved in this case would be amply satisfied by a sentence of 30 years' imprisonment. Stacking the sentences consecutively would be greater than necessary based on the remaining federal interest.

---

[2] While four of the victims were not addressed in the underlying state conviction, the District Attorney's office of St. Lawrence County was fully aware of these victims and had the opportunity to bring charges in regards to them. Evidently, however, the District Attorney's office felt that it would be in the interest of justice to offer the underlying state plea and sentence to satisfy all charges.

5

A.105

While the Sexual Exploitation of Children and Possession of Child Pornography statutes do target the actual use of a child to produce sexually explicit images, federal jurisdiction for 18 U.S.C. § 2251 arose from a concern with the spread of the Child Pornography industry across the country and internationally, implicating interstate commerce. S REP. NO. 95-438, at 5 (1977) (stating that "[c]hild pornography and child prostitution have become *highly organized, multimillion dollar industries that operate on a nationwide scale*" and that "because of the vast potential profits involved, it would appear that this sordid enterprise is growing at a rapid rate") (emphasis added).

Much of the focus of the original draft of the bill was on the astounding profitability of the industry, mainly the low cost of production coupled with the high prices these images fetch on the black market, the lack of laws protecting boys, and the connection between the industry and child prostitution. *Id.* at 6. While there was discussion about the need for federal legislation that addresses that actual abuse of the children, much of the focus was on the absence of state laws that prohibit the use of children in the production of child pornography. *Id.* at 10. Today, every single state has some kind of statute designed to protect children from sexual abuse. *Laws in Your State*, RAINN.ORG, https://apps.rainn.org/policy-app/index2.cfm (last visited Aug. 3. 2015). These state laws address child sexual abuse without regard to whether the activities are memorialized. This further focuses the federal scope of power on the interstate transport of children and images as a part of the production and possession of child pornography.

18 U.S.C. § 2251 has not significantly changed since the original law passed in 1978. Protection of Children Against Sexual Exploitation Act of 1977, PL 95-225 Feb. 6, 1978, 92 Stat 7; 18 U.S.C. § 2251. Besides modifications to sentence and terminology, *e.g.* PROTECT Act of 2003, PL 108–21 (S 151), sec. 103; Adam Walsh Child Protection and Safety Act of 2006, PL

6

A.106

109–248, July 27, 2006, 120 Stat 587 sec. 207, the current version of 2251(a) is not substantially different from the original law passed in 1978. *Compare* Protection of Children Against Sexual Exploitation Act of 1977, PL 95-225 Feb. 6, 1978, 92 Stat 7 *with* 18 U.S.C. § 2251.

### 3.  Stephen's History and Characteristics

### i)  <u>Childhood</u>

The essence of Stephen's childhood can be summarized in two words: abuse and neglect. Stephen's very earliest memories were of his father verbally and physically abusing his mother.[3] Stephen was also the victim of sexual abuse at the hands of his father as a child. *Id.* at 6. After leaving the family for a man when Stephen was five or six, Stephen's father occasionally returned to their home and forced his mother to have sex, threatening to engage in this activity with the children if she refused him. *Id.* at 5. Stephen also remembers his father's apparent hatred of women, often referring to them in degrading terms. *Id.* at 10.

Stephen's mother also struggled with debilitating depression for which she received disability benefits throughout Stephen's childhood. *Id.* at 10. With both parents struggling with their own behavioral and mental conditions, the domestic disturbances continued between Stephen's mother and father throughout his childhood and young adult life. Oftentimes the custody and parenting affray would involve the school by requesting social services intervention or preventing one parent or the other from communicating with the children.[4] In addition to the abuse, every single member of the Howells family admits that the conditions in which Stephen lived were extremely neglectful. *Id.* at 6. With Stephen's father gone, the family moved

---

[3] *Schlosser Evaluation* at 5, submitted to the Court under separate cover.
[4] *Note from Vera Carpenter to Colton-Pierrepont Central School*, Feb. 7, 1990; *Letter from Stephen Howells, Sr. to School Nurse*, p. 1 (Nov. 2, 1988); *Letter from Stephen Howells, Sr. to School Principal*, p. 1 (Jan. 31, 1989),submitted to the Court under separate cover

constantly. In several of these childhood homes, Stephen lacked access to running water and indoor plumbing and the family lived in abject poverty throughout his youth. Id at 6. As a child and young man, Stephen remembers waking up freezing on cold winter nights to check on his younger siblings and make sure that they were all right. One of his brothers in particular struggled with bedwetting, and every night Stephen would wake him, help him change and put him back to bed with dry blankets. Because of the bedwetting, Stephen and his siblings often went to school reeking of urine.

Stephen and his siblings were bullied at school due to their unclean appearance and odor.[5] The urine stench caused the children to suffer socially and academically at school to such an extent that the nurse provided boys with showers and clean clothes.[6] Stephen was held back twice, and had a high absenteeism rate throughout his schooling. *Id.* at 1.[7] When Stephen was in his early teens, he went to live with one of his teachers who volunteered to take him into her home, but later Stephen dropped out of school altogether. *Schlosser Evaluation* at 8.

The neglect was so severe that Social Services intervened on several occasions and at one point, the agency sent Stephen to live with his maternal aunt. *Id.* at 6.[8] Stephen also went to live with his aunt at another time, despite his mother's claims that he was mistreated there. *Schlosser Evaluation* at 8. During these stays, Stephen's cousin sexually abused him and later shot and killed himself while Stephen was living in the home. *Id.* at 6.

Despite the tumultuous and violent upbringing that formed the foundation of Stephen's life, he never received any psychological treatment to deal with the traumas he endured as a child

---

[5] *Letter from Stephen Howells, Sr. to School Nurse*, p. 1 (Nov. 2, 1988), submitted to the Court under separate cover.
[6] Kathryn Hayes, Health Report, 1988, submitted under separate cover.
[7] Specific Attendance Report, Norman Whyte High School (1990) submitted to the Court under separate cover.
[8] *Note from Vera Carpenter to Colton-Pierrepont Central School*, Apr. 17, 1990 submitted under separate cover.

and young adult. There is evidence, however, that Stephen is amenable to treatment, which in addition to the fact he would be quite elderly upon release, strongly supports a 30-year sentence as "sufficient, but not greater than necessary," to achieve the statutory goals of punishment.

ii) **The Results of a Psychosexual Evaluation**

The Court has been provided with a Psychosexual Evaluation of Stephen that was conducted by Dr. Erik N. Schlosser over the course of three sessions in November and December of 2014. Dr. Schlosser's evaluation was both comprehensive and thorough, as he reviewed all of the materials in this case, conducted a lengthy interview with Stephen, performed psychological testing, and interviewed Stephen's parents and siblings.

The most compelling aspect of Dr. Schlosser's evaluation is his conclusion that Stephen possesses several positive qualities that indicate "a relatively smooth treatment process and a reasonably good prognosis." *Schlosser Evaluation* at 15. In addition to the remorse Stephen expressed during the evaluation, he also expressed a desire for treatment and an understanding of the pain and harm he had caused. *Id.* at 14. Stephen attempted to stop viewing child porn in the past, but could never do so without the aid of treatment nor did he receive therapy to deal with the violent and neglectful childhood he survived.

Part of the reason he did not seek psychiatric assistance for the trauma of his past was because of a lack of memory of his childhood. *Id.* at 18. Dr. Schlosser examined this phenomenon and found that "[i]t is fairly common for children raised in chaotic homes with violence and/or neglect to experience memory problems due to the interference of anxiety or fear in the brain's process." *Id.* These chronic memory problems were first recognized in Stephen in 2003. *Id.*

9

A.109

In addition to his highly treatable characteristics, Dr. Schlosser also found that Stephen was "very disclosing" and "open." *Id.* at 16. One test designed to assess self-reporting distortions found that Stephen's candor was highly "consistent with individuals honestly reporting their difficulties" and that there was "no evidence of exaggeration or feigning." *Id.*

Dr. Schlosser's evaluation concludes with his opinion, based on test results, that Stephen is "motivated to obtain treatment for his problems, is highly disclosing of his problems, and displays characteristics associated with those who engage in treatment in a meaningful manner." *Id.* at 19.

### iii) **Educational History**

In school, Stephen was diagnosed with a cognitive learning disability. [9] Despite this diagnosis and a turbulent home life, Steven earned his GED and later took advantage of the GI Benefits he was entitled to because of his military service. Stephen attended college, graduated with a nursing degree, and passed state exams to become a Registered Nurse.

### iv) **Employment History**

As a registered nurse, Stephen helped countless people in times of great need and vulnerability. He took his job very seriously and felt that his position allowed him to give back to his community by using the skills he gained in the military and nursing school to heal others. In the United States Air Force, Stephen served as a medic and has since always maintained a strong work history to provide for himself and his family.

---

[9] *Cumulative Health Record, Colton-Pierrepont Central School*, Oct. 1989 submitted under separate cover

v) **Military History**

In addition to recognizing employment history at the sentencing stage, the Second Circuit has also considered military service as supportive of a downward departure. *See United States v. Canova*, 412 F.3d 331 (2d Cir. 2005). In a similar case, the Third Circuit departed downward where the defendant, convicted for inducing a minor to perform illegal sex acts and receiving child pornography, had served in the Navy and had no criminal record. *United States v. Velasquez*, 329 Fed. Appx. 365 (3d Cir. 2009). As mentioned, Stephen served this country in the United States Air Force for four years as a medic and has no criminal record whatsoever.

vi) **Family Life**

Stephen has three children, ages 13, 9, and 6. Stephen cares for his children very much and never abused them. He was very involved in all of his children's lives and was always available to help with homework and educate and enrich their lives through hiking, fishing, and horseback riding.

One of Stephen's greatest regrets is the pain he has caused his family, especially his children. He hopes that someday, even if he is quite elderly at the time, he might be free to start making amends with them for the mistakes he has made.

vii) **Stephen's Age**

Stephen is presently 40 years old and, should the Court sentence him to 30 years, will be elderly when released. The Sentencing Commission has found that advanced age should be considered at sentencing and that there is an inverse correlation between recidivism rates and age. United States Sentencing Commission, *Measuring Recidivism: the Criminal History Computation of Federal Sentencing Guidelines*, (May 2004). The Sentencing Commission found that less than 10% of defendants over 50 years of age committed another crime. *Id.* at 28.

11

A.111

Controlling for criminal history category, only 6.2% of the defendants over age 50 that were in a Criminal History Category of I committed another offense. *Id.* at 28.

While there is some evidence that sex offenders pose a higher risk of recidivism than other criminal defendants, *see, e.g.*, *United States v. Hayes*, 445 F.3d 536, 537 (2d Cir. 2006) (citing H.R.Rep. No. 107-527, at 2 (2002), other studies focusing on sexual offenders found results similar to those found by the Sentencing Commission: recidivism decreases with age for all offender types. *See, e.g.*, R. Karl Hanson, *Age and Sexual Recidivism: A Comparison of Rapists and Child Molesters* (2001).

Even if the recidivism rates of the entire population of sex offenders are generally higher than the population of other criminal defendants, a point Stephen does not concede, studies have demonstrated that sex offenders receiving treatment are less likely to recidivate than sex offenders who remain untreated. *See*, *e.g.*, Karen Kersting, *New Hope for Sex Offender Treatment*, MONITOR ON PSYCHOLOGY (Aug. 2003); John Q. LaFond & Bruce J. Winnick, *Sex Offender Reentry Courts: A Proposal for Managing the Risk of Returning Sex Offenders to the Community*, 34 Seton Hall L. Rev. 1173, 1180-84 (2004).

Here, Stephen will likely participate in sex offender treatment while incarcerated and when released to supervision. As demonstrated by psychological evaluation, Stephen is very amenable to this treatment and will likely gain much from participating. Thus, his age, treatment opportunities, and post-release supervision indicate that the likelihood of his recidivism will significantly diminish and that 30 years would be a sentence sufficient, but not greater than necessary, to satisfy the remaining federal interests involved in this case.

viii)     **Stephen Released the Victims Despite Knowing the Likelihood that He Would Be Apprehended and Thereafter Cooperated Fully with Authorities.**

In imposing a sufficient sentence, we ask this court to consider Stephen's actions in releasing the victims in this case and his subsequent cooperation with law enforcement. Stephen immediately cooperated with law enforcement officers when he was arrested. He confessed his guilt, never minimized his conduct, and continuously accepting responsibility for his offense. In addition to pleading guilty to every offense charged in the indictment, he acknowledged his wrongdoing to the Probation Office and timely notified the government of his intent to enter a plea of guilty. As he states in his letter to the Probation Office, he has extreme remorse and shame for what he has done and is glad he was apprehended.

More significant than his acceptance of responsibility is the fact that Stephen released his last two victims knowing that he would likely be identified and apprehended after doing so. At the time of the offense, Stephen made no attempt to hide his identity. The victims knew what he looked like, what type of car he drove, and where he lived. When Stephen made the decision to release the victims approximately 24 hours after their abduction, he knew he would be arrested and imprisoned.

### III.     CONCLUSION

Based on the foregoing, counsel asks this Court to impose a combined sentence of 30 years' imprisonment plus post-release supervision as such a sentence is sufficient, but not greater than necessary, to satisfy the remaining federal interests involved in this case. Stephen has continued family support despite the nature of his crime.[10] We further ask that that this Court

---

[10] See support letters from family submitted under separate cover.

recommend that Stephen be placed in a facility close to his family in Iowa and placed within a facility that has a sex offender treatment program.


DATED:          November 24, 2015                    LISA A. PEEBLES
                                                     Federal Public Defender

                                                     By:    */s/Randi J. Bianco, Esq.*
                                                     Assistant Federal Public Defender
                                                     Bar Roll No. 507514
                                                     Clinton Exchange, 3rd Floor
                                                     4 Clinton Street
                                                     Syracuse, New York   13202
                                                     (315) 701-0080


TO:    Lisa Fletcher, Esq., AUSA
       Janna Kulakowski, USPO
       Stephen Howells

14

A.114

# FOOTNOTE 1

## Howells, Stephen M. █████████

Office/Outpatient Visit
**Visit Date:** Thu, Sep 5, 2013 01:27 pm
**Provider:** Gregory Healey, MD (Supervisor: Gregory Healey, MD; Assistant: Kristin Backus, LPN)
**Location:** Gregory Healey, MD

Electronically signed by Gregory Healey, MD on 09/08/2013 06:12:43 PM
Printed on 10/22/2014 at 9:46 am

## SUBJECTIVE:

### CC:
Mr. Howells is a 38 year old White male. He presents with insomnia.

### HPI:

Insomnia noted. This has been noted for the past 2 months. Sleep has been disrupted by frequent awakenings. On average, he estimates that he gets 6 hours of sleep per night. Associated symptoms include anxiety. He is improving and feels able to return to work next week.

### ROS:
CONSTITUTIONAL: Negative for chills, fatigue, fever, and weight change.
E/N/T: Negative
RESPIRATORY: Negative
MUSCULOSKELETAL: Negative
PSYCHIATRIC: See HPI

### PMH/FMH/SH:
#### Past Medical History:

Hyperlipidemia: Hypercholesterolemia;
Asthma: mild severity; with infections usually;

#### Family History:
Father:
Positive for Hyperlipidemia,
Mother: Healthy

#### Tobacco/Alcohol/Supplements:
... Last Reviewed on 9/21/2012 11:32:57 AM by Healey, Gregory J
Tobacco: He has never smoked.

Alcohol:
Drinks alcohol on a social basis only ( 1-2 drinks per week on average ).

#### Current Problems:
Acute upper respiratory infection
Asthma
Hypercholesterolemia
Mixed hyperlipidemia
Perianal itch
Situational stress with anxiety

#### Immunizations:
None

#### Allergies:
Last Reviewed on 9/21/2012 11:32:49 AM by Healey, Gregory J
No Known Drug Allergies.

#### Current Medications:
Atorvastatin Calcium 10mg Tablet 1 TAB DAILY
Cialis 5mg Tablet Take 1 tablet by mouth daily.

A.116

Lotrisone 0.05%/1% Cream Apply small amount to affected area bid
Advair Diskus 500mcg/50mcg per 1blister Inhalation Powder Inhale 1 puff(s) bid
Albuterol HFA 90mcg/1actuation Oral Inhaler Inhale 1 to 2 puff(s) by mouth q 4 to 6 hr prn

## OBJECTIVE:

### Exams:

GENERAL: well developed, well nourished, in no apparent distress
MUSCULOSKELETAL: normal gait; normal overall tone
PSYCHIATRIC: Orientation. alert and oriented x 3; ;  Mood/Affect: appropriate demeanor;;  Speech Pattern: normal;;
Thought Processes: normal rate and content of thoughts; good abstract reasoning;;  Abnormal Thoughts: no
hallucinations, delusions, obsessions, or suicidal/homicidal ideation; Insight/Judgment: good insight; good judgment;

## ASSESSMENT:

307.41    Insomnia
300.09    Situational stress with anxiety

## ORDERS:

### Other Orders:
Patient encounter documented using a qualified (non-CCHIT) certified EHR  (In-House)

## PLAN:

### Situational stress with anxiety

RECOMMENDATIONS given include: return to work mext week.  Patient encounter documented using a qualified (non-CCHIT) certified EHR

### Orders:
Patient encounter documented using a qualified (non-CCHIT) certified EHR  (In-House)

CPT @ is a registered trademark of the American Medical Association

A.117

Case 5:14-cr-00340-GTS Document 38 05/13/2016 1771725 Page 120 of 213
Case 5:14-cr-00340-GTS Document 55 16 Filed 11/24/15 Page 4 of 48

## Howells, Stephen M. ▮▮▮▮▮

Office/Outpatient Visit
**Visit Date:** Wed, Aug 28, 2013 06:22 pm
**Provider:** Gregory Healey, MD (Supervisor: Gregory Healey, MD; Assistant: Melissa McIntosh, LPN)
**Location:** Gregory Healey, MD

Electronically signed by Gregory Healey, MD on 08/31/2013 04.20.53 PM
Printed on 10/22/2014 at 9:46 am.

## SUBJECTIVE:

### CC:
Mr. Howells is a 38 year old White male. He presents with cold symptoms and insomnia.

### HPI:
Patient to be evaluated for insomnia. This has been noted for the past 2 months. Sleep has been disrupted by frequent awakenings. On average, he estimates that he gets 6 hours of sleep per night. Associated symptoms include anxiety.

Acute upper respiratory infection details; these have been present for the past 4 days. The symptoms include productive cough and nasal congestion. He denies fever. He has already tried to relieve the symptoms with acetaminophen, O.T.C. cough medication, and ibuprofen.

### ROS:
CONSTITUTIONAL: Negative for chills, fatigue, fever, and weight change.
EYES: Negative for blurred vision, eye pain, and photophobia.
E/N/T: See HPI
CARDIOVASCULAR: Negative for chest pain, palpitations, tachycardia, orthopnea, and edema.
RESPIRATORY: See HPI
GASTROINTESTINAL: Negative for abdominal pain, heartburn, constipation, diarrhea, and stool changes.
GENITOURINARY: Negative for dysuria, genital lesions, hematuria, impotence, polyuria, and changes in urine stream.
MUSCULOSKELETAL. Negative for arthralgias, back pain, and myalgias.
INTEGUMENTARY: Negative for atypical moles, dry skin, pruritis, and rashes.
NEUROLOGICAL: Negative for dizziness, headaches, paresthesias, and weakness.
HEMATOLOGIC/LYMPHATIC: Negative for easy bruising, bleeding, and lymphadenopathy.
ENDOCRINE: Negative for hair loss, heat/cold intolerance, polydipsia, and polyphagia.
ALLERGIC/IMMUNOLOGIC: Negative for allergies, frequent illnesses, HIV exposure, and urticaria.
PSYCHIATRIC: See HPI

### PMH/FMH/SH:
#### Past Medical History:

Hyperlipidemia: Hypercholesterolemia;
Asthma: mild severity; with infections usually;

#### Family History:
Father:
Positive for Hyperlipidemia;
Mother: Healthy

#### Tobacco/Alcohol/Supplements:
... Last Reviewed on 9/21/2012 11:32:57 AM by Healey, Gregory J
Tobacco: He has never smoked.

Alcohol:
Drinks alcohol on a social basis only ( 1-2 drinks per week on average ).

#### Current Problems:
Asthma
Hypercholesterolemia
Mixed hyperlipidemia
Perianal itch

A.118

10 44 54 a m 10-22-2014    20    (315) 379-9604

10/22/2014 11:08 AM FROM: (315) 379-9604 Gregory Healey, MD  TO: +1 (315) 701-0081  PAGE: 020 OF 057

**Immunizations:**
None

**Allergies:**
Last Reviewed on 9/21/2012 11:32:49 AM by Healey, Gregory J
No Known Drug Allergies.

**Current Medications:**
Cialis 5mg Tablet Take 1 tablet by mouth daily.
Vytorin 10mg/40mg Tablet Take 1 tablet(s) by mouth daily in the evening.
Lotrisone 0.05%/1% Cream Apply small amount to affected area bid
Advair Diskus 500mcg/50mcg per 1blister Inhalation Powder Inhale 1 puff(s) bid
Albuterol HFA 90mcg/1actuation Oral Inhaler Inhale 1 to 2 puff(s) by mouth q 4 to 6 hr prn

## OBJECTIVE:

**Vitals:**

Current: 8/28/2013 6:23:21 PM
Ht: 5 ft, 10 in;  Wt: 224 lbs;  BMI: 32.1
BP: 112/72 mm Hg (left arm, sitting);  P: 81 bpm (finger clip, sitting)
O2 Sat: 98 % (room air)

**Exams:**

GENERAL: well developed, well nourished, in no apparent distress
EYES: lids and conjunctiva are normal; pupils and irises are normal;
E/N/T: normal external ears and nose;;  normal external auditory canals and tympanic membranes; Nasal
Septum/Mucosa: **partially obscured by clear drainage; edematous mucosa**, Lips, Teeth and Gums:  normal;
Oropharynx:  normal mucosa, palate, and posterior pharynx;
NECK: Neck is supple with full range of motion; thyroid is normal to palpation;
RESPIRATORY: normal respiratory rate and pattern with no distress; percussion is normal without hyperresonance or
dullness; lung fields normal to palpation; normal breath sounds with no rales, rhonchi, wheezes or rubs;
MUSCULOSKELETAL: normal gait;
SKIN: no ulcerations, lesions or rashes
PSYCHIATRIC: mental status: alert and oriented x 3; Mood/Affect: **anxious**, appropriate;  recent and remote memory are
intact; good insight and judgement;

## ASSESSMENT:

300.09    Situational stress with anxiety
465.8     Acute upper respiratory infection

## ORDERS:

**Other Orders:**
Patient encounter documented using a qualified (non-CCHIT) certified EHR  (In-House)

## PLAN:

**Situational stress with anxiety**

RECOMMENDATIONS given include: take a few days off and work some htings out.
FOLLOW-UP: Advised to call if there is no improvement in 2 week(s).  Patient encounter documented using a qualified
(non-CCHIT) certified EHR

**Orders:**
Patient encounter documented using a qualified (non-CCHIT) certified EHR  (In-House)

A.119

Case 15-4103, Document 38, 05/13/2016, 1771725, Page122 of 218

10 44 54 a m 10-22-2014   21   (315) 379-9804

10/22/2014 11:08 AM  FROM: (315) 379-9804 Gregory Healey, MD  TO: +1 (315) 781-0081   PAGE: 021 OF 057

### Acute upper respiratory infection

RECOMMENDATIONS given include: rest, increase oral fluid intake, and reduce fever with acetaminophen or ibuprofen.
FOLLOW-UP: instructed to call if he develops new or worsening symptoms, including chest pain, dyspnea, earache, and sputum production.

CPT® is a registered trademark of the American Medical Association

# Erik N. Schlosser, Ph. D., ABPP

Licensed Psychologist
Diplomate of the American Board of Professional Psychology
Diplomate of the American Board of Forensic Psychology
Fellow of the American Academy of Forensic Psychology

| Colonial Building | 2 Fountain Street | Suite #205 | Clinton, NY 13323-1725 |

Phone: (315) 853-8080   fax: (315) 853-8011   enschlosser@verizon.net

## PSYCHOSEXUAL EVALUATION

Client: Mr. Stephen Howells II
DOB: ▇▇▇▇
Case #: 5:14-cr-00340-GTS
Attorney: Ms. Randi Bianco
Dates of Evaluation: 11/25/14, 12/05/14, 12/12/14
Date of Report: 2/18/15

## REASON FOR REPORT

Ms. Randi Bianco, Assistant Federal Public Defender from the Federal Public Defender's Office in Syracuse, New York, contacted this evaluator on 10/07/14 on behalf of her client, Mr. Stephen Howells II. Mr. Howells is a 39 year-old (DOB = ▇▇▇▇ Caucasian male who was indicted on 09/17/14 and 10/08/14 by a grand jury in the United Stated District Court Northern District of New York. This evaluation was requested to provide information regarding Mr. Howells's past history, diagnostic clarification and future considerations.

## EVALUATION PROCEDURES

Evaluation of Mr. Howells took place on 11/25/14, 12/05/14, and 12/12/14 at the Cayuga County jail located in Auburn, New York. The evaluation lasted approximately 15 hours and consisted of psychological testing and clinical interviews. No attorneys were present during the interviews.

The following materials were reviewed for this evaluation:

(1) Discovery released by Federal government on 11/05/14 totaling 189 pages including investigation reports, warrants, inventories, St. Lawrence Sheriff's Office documents including voluntary statements from Mr. Howells and Ms. Vaisey, and criminal history search;
(2) *Indictment,* Criminal 5:14-cr-00340-GTS dated 09/17/14;
(3) *Superseding Indictment* 5:14-cr-00340-GTS dated 10/08/14;
(4) SUNY Canton records;
(5) Hermon-Dekalb Central School District records;
(6) Colton-Pierrepont Central School records;
(7) Roberts Wesleyan College records;
(8) Clinton County Sheriff's Office Police Accident Report dated 04/12/07;

Page 1 of 19

A.121

Psychosexual Evaluation     Stephen Howells II     DOB: ████████     Report Date: 02/18/15

(9) VESID Adult Career & Continuing Education Services records;
(10) Medical records from Claxton Hepburn Medical Center, Edward John Noble Hospital, and Gouverneur Hospital; patient records from Dr. Gregory Healey.

The following collateral interviews were conducted by telephone:

(1) Mr. Stephen Howells Sr., Mr. Howells's father, on 12/11/14 for approximately 43 minutes;
(2) Ms. Vera Carpenter, mother of Mr. Howells, on 12/11/14 for approximately one hour and 41 minutes;
(3) Mr. James Howells, brother of Mr. Howells, on 12/11/14 for approximately 25 minutes.
(4) Ms. Mary Ann Howells, Mr. Howells former spouse, on 02/01/15 for approximately 5 minutes.

The following tests were administered to Mr. Howells as part of the evaluation:

1. Multiphasic Sex Inventory II (MSI-II)
2. Wechsler Adult Intelligence Scale-Fourth Edition (WAIS-IV)
3. Trauma Symptom Inventory-2 (TSI-2)
4. Substance Abuse Subtle Screening Inventory-Third Edition (SASSI-3)
5. Structured Interview of Reported Symptoms (SIRS)
6. Personality Assessment Inventory (PAI)

Mr. Howells was given a document entitled *Apprisal of Rights* at the beginning of the evaluation on 11/25/14 which explained the limits of confidentiality and the purpose and conditions of the evaluation. It was reviewed and questions were answered. Mr. Howells expressed his understanding verbally and in writing and he agreed to participate in the evaluation.

## CHARGES

Mr. Howells is currently charged with Conspiracy to Sexually Exploit Children (1 count), Sexual Exploitation of Children (15 counts) and Possession of Child Pornography (5 counts) which reportedly occurred between September 2013 and August 15, 2014. Counts involve six identified victims: 12 year-old female (Victim 1), 7 year-old female (Victim 2), 7 year-old female (Victim 3), 8 year-old female (Victim 4), 5 year-old female (Victim 5) and a 10 year-old female (Victim 6).

Count 1 (Conspiracy to Sexually Exploit Children) involves victims 1, 2, 3 and 6 between September 2013 and August 15, 2014.

Counts 2 through 10 (Sexual Exploitation of Children) involve the following (taken from the *Superseding Indictment*):

Page **2** of **19**

A.122

Psychosexual Evaluation    Stephen Howells II    DOB: ███████    Report Date: 02/18/15

| Count | Date | Victim |
|-------|------|--------|
| 2 | September 7, 2013 | V-3, a female child born in 2006 |
| 3 | October 20, 2013 | V-3, a female child born in 2006 |
| 4 | November 16, 2013 | V-3, a female child born in 2006 |
| 5 | November 17, 2013 | V-6, a female child born in 2003 |
| 6 | December 15, 2013 | V-6, a female child born in 2003 |
| 7 | December 29, 2013 | V-3, a female child born in 2006 |
| 8 | April 18, 2014 | V-3, a female child born in 2006 |
| 9 | May 31, 2014 | V-3, a female child born in 2006 |
| 10 | August 13, 2014 | V-1, a female child born in 2002 |

Counts 11 through 16 (Sexual Exploitation of Children) involve the following (taken from the *Superseding Indictment*):

| Count | Date | Victim(s) |
|-------|------|-----------|
| 11 | December 16, 2012 | V-4, a female child born in 2004 |
| 12 | September 22, 2013 | V-3, a female child born in 2006; V-5, a female child born in 2008; and V-6, a female child born in 2003 |
| 13 | November 16, 2013 | V-5, a female child born in 2008 |
| 14 | December 13, 2013 | V-5, a female child born in 2008; and V-6, a female child born in 2003 |
| 15 | January 24, 2014 | V-3, a female child born in 2006 |
| 16 | April 19, 2014 | V-3, a female child born in 2006 |

Counts 17 through 21 (Possession of Child Pornography) involve possession of images of prepubescent children and children who had not attained the age of 12 on or about August 15, 2014.

All counts involved actions that occurred in St. Lawrence County, New York.

The following information was noted in the discovery materials:

8.    Vaisey and Howells each provided voluntary statements at the St. Lawrence County Sheriff's Office (SLCSO) in Canton, New York. The interview of Vaisey, which resulted in a six page statement, was conducted by a SLCSO Detective Sergeant and a FBI Special Agent. The interview of Howells, which resulted in a 8 page statement, was conducted by a SLCSO Detective Sergeant. In summary, Vaisey and Howells admitted the following:

a.    On Wednesday, August 13th, 2014, Vaisey and Howells kidnapped two young Amish females, ages 6 and 12, from a roadside farm stand on Highway 812 between

A.123

DeKalb and Heuvelton in St. Lawrence County. A scheme to kidnap children had been discussed and planned by Vaisey and Howells for several months before the abduction. Vaisey and Howells drove to the location of the kidnapping in Howells' white four door vehicle. Vaisey was the driver. After Howells forced the victims into the back seat of the vehicle he used a syringe to inject a drug into the older female victim in an attempt to get her to keep quiet. Howells admitted that he injected the older victim with Versed.[1]

    b.    After arriving back at their residence (the location of the August 15th search warrant), Howells bathed and sexually assaulted the victims several times over the course of approximately 25 hours. To facilitate the sexual abuse, which included anal, vaginal, and oral penetration, as well as fondling, Howells admitted that he administered Ambien[2] to the children. When not being abused, the victims were restrained together at the ankles with handcuffs and chains. The sex acts were recorded by use of a camera, webcam, and a laptop computer.

    c.    During the evening of August 14th, Howells and Vaisey decided to release the victims in a rural area of Hermon, New York. As planned by Vaisey and Howells, Vaisey traveled ahead of Howells on a predetermined route to ascertain the presence of law enforcement. Text messages were exchanged between Howells and Vaisey that contained code words designed to indicate whether the route was clear. When Vaisey texted to Howells the predetermined code indicating that the route was clear Howells drove the children to a remote location and released them into a wooded area. (Mobile iPhones belonging to Vaisey and Howells were recovered. Vaisey is the subscriber of mobile telephone number (315) 854-1422 and Howells is the subscriber of mobile telephone number (315) 854-7783. Howells' phone (iPhone model #A1349, EMC#2422, FCC ID: BCG-E2422B) was located in the residence as a part of the search warrant, and Vaisey voluntarily turned hers over to law enforcement. Howells' phone is password protected and locked. Apple has the ability to unlock the phone with an Order from this Court allowing them to assist law enforcement in this way. Vaisey gave her password to law enforcement to enable them to access her phone. Based upon my training and experience, I know that communications between Apple devices may be sent via Apple servers without involving the mobile service provider. This is known as iMessage.)

Page 4 of 19

A.124

    d.    Vaisey stated that after they released the children Howells "hid" the pictures of them on his computer.

    e.    Howells and Vaisey also advised that there are additional victims (minor females) that have been sexually abused by Howells in a similar manner, and that said abuse was also videotaped. Vaisey stated that Howells administered Ambien to one of the additional victims. Howells admitted that he administered Ambien to an additional victim, but not the same victim named by Vaisey. Howells also said he used Benadryl with the additional victims. He also admitted stealing Versed several months ago from the hospital where he is employed.

    f.    Vaisey advised law enforcement that she had entered into a "contract" with Howells by which she was his "slave," meaning "you can do whatever you want to that person." (During the course of the search warrant execution a contract signed by Vaisey was located, as were two similar contracts signed by other individuals.)

## RELEVANT BACKGROUND HISTORY
### (based on interviews and records)

Developmental History

Mr. Howells is the oldest of four sons (Stephen, Carl, Elon and James) born to his biological parents in Saranac Lake, New York. No problems with prenatal health were reported. Significant problems with developmental milestones were denied.

His parents separated and divorced when he was between the ages of 5 and 6. Mr. Howell stated that his earliest memories were "my father yelling and being violent with my mother, breaking my fish tank" and his brother James also spoke about his father's abuse of his mother. Mr. Howells' mother (hereafter referred to as Vera) also reported that her relationship with Mr. Howells' father (hereafter referred to as Stephen Sr.) was marked by verbal and physical abuse. Vera stated that Stephen Sr. would "smash up the house, he would kick me all the time, throw things. I would be getting dinner ready; he would start screaming, yelling 'clear the kitchen table', throw pots at the wall, then sit in the chair as if nothing had happened." She denied that Mr. Howell was physically abused by his father, stating that she had intervened one time and "he never tried it again." She stated that Stephen Sr. would return to their home on occasion after the divorce in order to have sex with her despite having left the family in part due to his desire to live out his same-sex sexual orientation. She stated that it was a control issue in that he would force her to have sex with him; she stated that Stephen Sr. would tell her that she could have sex with him or he would engage in sexual behavior with one of the boys. She stated that while engaging in sexual intercourse with her Stephen Sr. would discontinue if she was expressing pleasure and would continue sexual activity if she expressed pain or discomfort. She stated that her son Elon was born early because Stephen Sr., who had fathered the child, had engaged in

Page 5 of 19

Psychosexual Evaluation     Stephen Howells II     DOB: ████████     Report Date: 02/18/15

violent sexual intercourse with her: "I was 8-9 months pregnant, very pregnant, he said to get ready, he laid on me heavily, I would poke him in the ribs, said he was hurting me, he'd press harder...he'd usually take about four and a half minutes but if it hurt he'd go longer, about 30 minutes...four hours later my water broke." She stated that Stephen Sr. would stop having sex with her once she would become pregnant "unless he was mad". She described her ex-husband as "unpredictable" and a "monster".

She also reported that Stephen Sr. would hold a milk bottle in a suggestive position on his groin when feeding Mr. Howells as a child and that he had Mr. Howells perform oral sex on him when he was an infant. She stated that Stephen Sr. had admitted this to her several months before he left the family. Vera also stated that Stephen Sr. would take an inordinate amount of time manipulating Mr. Howells penis when changing his diaper, "I thought he was being thorough but realized he was deriving pleasure from it."

Stephen Sr. denied any history of abusing any of his family although he admitted some verbal abuse with Vera. He stated that his children had been "brain-washed" against him after the divorce. He did state that all of his children had seemed highly sexualized in their vocabulary and behavior while growing up as indicated by their talking about sex at an early age and one of his children (not Mr. Howells) "running around naked and pressing his genitals against my hand." He stated that Vera's parents were highly sexualized and would fill the Howells children's minds with sexual talk. Stephen Sr. also suggested that some of the men that lived with Vera and the children may have been sexual with the children. He stated that he had been accused by his ex-wife and her family of sexually abusing his children which child protective services had reportedly investigated with no negative findings. Vera stated that CPS did find "inappropriate touching" but "not enough to press charges".

Mr. Howells and his brother stated to this evaluator that they had talked with each other about the sexual abuse allegations against Stephen Sr. and had concluded that they had no memories of any abuse including time spent in the summer with their father in Colorado in their early teens. They also stated that they believed they had fewer memories of their childhood than most other people.

After the divorce Vera and her children moved several times within St. Lawrence County, often to where a current boyfriend of Vera's was living. Some of the places did not have running water or indoor plumbing and the family struggled financially. All parties interviewed for this report indicated that Mr. Howell grew up in situations that were considered neglectful. Mr. Howells lived in Hermon, Dekalb, Canton, Potsdam, Colton, and Parishville, changing residences within each place depending on the financial and social circumstances at the time. Mr. Howells lived with his Aunt Carol on his mother's side on two occasions: from ages 9-11 and again from ages 13-15. On one of these occasions he was placed with his aunt as a foster care placement after being removed from his mother's home due to neglect. During his second stay with his aunt, Mr. Howells' cousin, the son of his aunt, killed himself with a gun after a previous attempt with pills two weeks prior was not successful. Mr. Howells did not witness the event. Vera corroborated the suicide event.

A.126

Psychosexual Evaluation    Stephen Howells II    DOB: ███████    Report Date: 02/18/15

Mr. Howell would attend school at times in dirty clothing including clothes soaked in urine. This occurred due to a sibling who had enuresis and whose clothes and bedding would come in contact with Mr. Howells' clothing. The family did not own a washing machine or much in the way of children's clothing so Mr. Howell would wear his soiled clothes to school. Colton-Pierrepont Central School records included a health report on Mr. Howell dated 11/16/88 that included the following:

> *These boys appear to be in good physical health. However, due to poor personal hygiene they are encountering some problems. Their body odor, particularly of urine, is causing them some difficulties with their peers...This week on two days the boys arrived in such a dirty condition that we provided them with showers and clean clothing.*

The following letter was written by Stephen Sr. to the Colton-Pierrepont Central School District on 01/31/89:

I had a telephone conference yesterday with my attorney, David Garner, and he suggested that I write you again. I have not heard from any of my boys since October and I'm very concerned about how they are faring the winter with living conditions, health and school.

My mother lives in Brushton and last saw the boys in October. She normally has them for the week after Christmas, and this year, since they did not have a phone, she had written their mother, Vera, about the usual visit and to inquire if Vera was bringing them to Brushton or if she should come get them. She received no reply and still has not heard anything from them. In the past, Vera has had a tendency to avoid all family (hers and mine), when there are problems at home, so my mother is also very concerned. She is afraid to try and go back into the woods alone where they live during the winter.

I had sent toys, winter shirts, thermal underwear and socks at Christmas and don't even know for sure if they got them. I had sent checks for school grades and the children did endorse those. Other than that, we don't even know if the children are still in your school district, as Vera has moved from school to school in the past.

Mr. Garner suggested that I ask you if the school nurse could make a home visit. The school nurse at Edwards-Knox in Russell made a home visit the first time they were in that school and found conditions at home deplorable. The school notified Social Services and the caseworker went in and did some parenting and work with Vera.

Social Services did make a home visit last fall to where my boys live now and wrote me that living conditions were adequate, but "minimal". To my knowledge, they have not been back since. They did not indicate that a man was living in the home. Also, Family Intake Services had an appointment with Vera about having the boys keep in touch with me. They wrote me that they were unable to get much cooperation or commitment from her, as her reply was that she would not "force" the boys to call me if they did not wish to. They suggested I should contact my attorney and possibly Family Court. I promised my boys last summer that I would not go back to court unless I had to, as they still had the fear I was trying to take them away from their mother and they would never see her again. This has never been my intention, even though I find it difficult to accept her lifestyle.

Page **7** of **19**

A.127

Mr. Howell went to live with a female teacher and her husband around the age of 15 after living with his maternal aunt for the second time. According to Vera, "My sister was mean to my kids. One of his teachers volunteered to have him move in with her and her husband". They owned a farm and he spent time working there and attending classes. He eventually took the GED test to graduate early in order to attend college.

Mr. Howells was raised as a Southern Baptist and he described himself as very religious growing up. One of the reasons he married so young was to be able to have sex without guilt. He stated that his religious views changed with time and he began to doubt his faith. He stated that he has prayed since his arrest and feels that God exists. He also stated that he was influenced by certain eastern philosophies (Zen, Bushido) while doing martial arts that emphasized self-sufficiency, being a producer in society, and doing the "honorable thing" if humiliated in order to regain your honor.

Educational History
Mr. Howells was held back in pre-kindergarten and in 4th grade due to problems with reading and spelling. He also changed schools several times due to his family moving. Vera stated that she had Mr. Howells change districts one time when he was bullied on the school bus in one district. She also stated that he had been designated to attend special education classes due to his spelling problems even though he was in an advanced science class at the time and was not a behavioral problem in school. No history of suspensions or expulsions was noted. Grades varied from below average to above average depending on the subject.

He left school before the 12th grade to obtain a GED from Parishville-Hopkinton High School and to enroll in college as an early admission in 1994. He attended SUNY Canton College of Technology, Roberts Wesleyan College and Potsdam College before receiving his associate's degree in nursing from SUNY Canton in 2004 after completing his military service. Grades were above average. He was referred to Adult Career and Continuing Education Services-Vocational Rehabilitation (ACCES-VR) at SUNY Canton for assistance due to his learning disability in spelling. A psychological assessment was completed at that time but was not found in records. A note in his ACCES-VR records dated 01/03/03 indicated that "*His academic achievement skills are significantly lower than intellectual abilities and he is particularly weak in spelling. He also showed weaknesses in intermediate auditory memory and short-term memory as well as verbal memory.*" He was determined to be eligible for services and was provided computer programs to assist with spelling.

Medical History
Mr. Howells has been diagnosed with hyperlipidemia, hypercholesterolemia, asthma, heart palpitations, chlamydia, genital warts, and GERD. He is not currently taking any medication. Past surgical history includes an appendectomy in 1985 and a vasectomy in 2009. No history of head injury was reported or found in records. ACCES-VR records indicated a "10% shoulder loss" but no information was available regarding the cause or length of time he had experienced that problem. A leg injury requiring an ER visit on 03/11/87 was noted but neither Mr. Howells nor his family could recall the circumstances of the incident.

Substance Abuse History

No history of substance abuse or loss of work or school due to substance use was reported or found in records. He reported three episodes of blackouts due to alcohol, twice while in the military and once with a brother as an adult. Mr. Howells stated that he first drank alcohol on a regular basis in his 20's. He denied any use of drugs or abuse of prescription drugs. He acknowledged obtaining drugs through theft or fraud (reporting symptoms he did not have) for use in rendering victims unconscious or unable to recall events.

Employment History

Mr. Howells appears to have maintained some form of employment on a regular basis since elementary school according to self-report, his parents and available records. As a child he did yard work and beekeeping when staying with his maternal grandparents. In high school he continued with beekeeping while also participating in an after school work program sponsored by the Job Training Partnership Act. He also worked on a farm after moving out of his family home at age 15 while living with the couple who ran the farm. Other jobs prior to his military experience and nursing career included a cashier, merchandise stocker, laborer, and housekeeper.

Longest job held was in nursing at CHMC for approximately six years with another three to four years of work in a nursing capacity noted (CNA, medical assistant, and registered nurse). Mr. Howells was accused of sexual harassment at work about four years ago and had to undergo training as a result. He stated that he had made sexual innuendos to a female co-worker whom he thought enjoyed the experience but who eventually made a complaint against him.

He also served as a medic in the Air force for five years starting in 1996. He was reportedly honorably discharged from the service and reported one episode of disciplinary problems when he received an Article 15 hearing after going to Mexico from Texas for three days with three female service members without permission. He was fined $100 as a result.

He stated that his worst job was being a nurse because he "hated working for others". He admitted feeling irritated at times when patients from lower socioeconomic situations presented to him. He also reported feeling "burnt out" as a nurse on two occasions.

Social History

Mr. Howells reported having some social activity at school while growing up but was hampered by a lack of transportation given that most of the places in which he lived were far away from neighborhoods and most of the time his family vehicles were unreliable. He described himself as a "loner" who was ostracized due to issues with cleanliness. He stated that he focused on making money in order to buy things like books or cassette tapes. He stated that he did not have new clothes from a department store until high school.

In high school he played soccer and participated in martial arts. Most of his friends were girls whom he described as "other misfits". Mr. Howells considered himself "ugly and painfully shy" with a sarcastic attitude while growing up but stated that he became aware of his intelligence, positive personality features and "reasonably handsome" looks when he became an adult. His mother described him as a kind person who was always helpful to her. Mr. Howells stated that he used to "manipulate" his mother into spending money for pizza or others things even though they

didn't have any extra money. He also stated that his mother would tell him that he was a natural salesperson and could "sell sand to a Saudi". Mr. Howells stated that his father was very short-tempered and appeared to hate women, reportedly referring to women as "bitches" and "whores".

Mr. Howells was married twice. His first marriage to Adrienne in 1992 occurred when he was 19 and she was 18. It was his first dating relationship which started in high school. They were married for about a year before Mr. Howells ended the marriage due to his "wanting more women". His second marriage, to Mary Ann, took place in 2001 and ended in 2012. He was 26 at the start of the marriage and she was 30. They had three children: Alexandra (current age 12), Michel (age 8) and Daniel (age 6). Mr. Howells indicated that he ended the marriage because he "fell out of love, [she] did not let me act out my needs." See *Sexual History* section below for additional details.

### Mental Health History

Vera reported that she has a long history of depression for which she takes medication and receives disability benefits. She also reported that she had Mr. Howells and his siblings seeing therapists on occasion in the context of the separation, divorce, and accusations of sexual abuse. She denied any history of psychotropic use or diagnoses for Mr. Howells while he was growing up. Stephen Sr. stated that he was involved in counseling at this time in the aftermath of his partner's recent death.

Mr. Howells reported being depressed for about six months in 2013 in the context of job dissatisfaction and missing his family. He reported consulting with a doctor who wrote a note to his employer stating that he needed to take some time off. After two weeks he requested an additional two weeks away from work which reportedly was granted. He then changed jobs and reportedly experienced decreased negative moods as a result. He also reported anxiety attacks and depressed mood when first arrested for the instant offense with his last panic attack occurring about two months ago. He also reported one episode of suicidal behavior by trying to induce a heart attack by overexertion after he was incarcerated initially. Mr. Howells reported that he no longer wishes to end his life by his own hand (active suicidal thoughts) but occasionally feels like he would "not mind" passing away suddenly in order to not be a burden to others (passive suicidal thoughts). Part of his thinking is due to his belief that one should be a "producer" in society and not a "burden" and the concern that he will be able to access appropriate treatment while incarcerated.

He has no history of ongoing mental health treatment, use of psychotropics or psychiatric hospitalizations. Mr. Howells did report attending couples counseling for a brief period during his first marriage. He acknowledged that his attempt to obtain medication for mood or sleep problems in the past was to obtain medication for use on his victims. He denied any history of suicidal behavior prior to the instant offense.

### Criminal History

This is Mr. Howells's first arrest. History of viewing child pornography, obtaining prescriptions in a fraudulent manner, and stealing medications from work were reported prior to the activities noted in his current charges. Family history of criminal activity was denied. He reported

Psychosexual Evaluation     Stephen Howells II     DOB: ███████     Report Date: 02/18/15

shoplifting at age 10 (his mother reported it occurred when he was 5) but was not charged although his mother called the police and had Mr. Howells return the item to the store and admit his theft to the store owner.

Sexual History
Mr. Howells stated that he never saw his parents engage in any sexual behaviors. He indicated that his father was gay and had lived in a long-term relationship with another man in Colorado for many years. Mr. Howells stated that he used to be "homophobic" but came to accept his father's lifestyle over time.

Mr. Howells was uncertain if he was sexually abused as a child. As noted earlier, he was told that his father had abused him but Mr. Howells indicated no memories of the abuse. He also indicated uncertainty about an incident involving his cousin who killed himself in which the cousin allegedly went into the shower with Mr. Howells in order to help him bath. Mr. Howells stated that he was uncertain of his age at the time and if it happened more than once. His cousin was a few years older than Mr. Howells. Mr. Howells stated that he felt "embarrassed and confused" at the time and believes that his later fixation with touching his own anus to the point of causing pain may have been rooted in the experience with his older cousin. Mr. Howell stated that he never witnessed anyone being sexually molested when he was a child.

First masturbation reportedly occurred at age 5 with first ejaculation occurring around the age of 9 or 10. Mr. Howells stated that he remembered enjoying the experience despite religious prohibitions against such activity. First sexual feelings about females started at age 5. He reported seeing girls on the school bus when he was age 6 or 7 and would think of them being naked and touching them while masturbating on a nightly basis. He reported masturbating on a nightly basis. First sexual touching of a female occurred when he was age 6 or 7 when he grabbed the breast of his female babysitter who was age 16 or 17 at the time: "[We were] jumping on the bed, [I] remember grabbing [her] breast for my own sexual pleasure, she just laughed…"

When Mr. Howells was age 13 or 14 he had a girl from church age 6 or 7 sit on his lap during which he touched her leg and rubbed her panties with his hand. He also reported pressing up against females in pools or during other activities for sexual pleasure while growing up.

Mr. Howells reported having his first inappropriate sexual fantasies when he was around the age of 12. He would fantasize being on a photo shoot with a woman and a photographer, knocking out the photographer, and tying up the woman until she agreed to have sex. He estimated that 50% of his sexual fantasies by the age of 12 involved similar inappropriate scenarios and tended to involve girls who were mean to him. He reported trying to grab the breasts of female peers in PE class starting at age 12 and having fantasies about putting up cameras in the girls' locker room. He stated that his inappropriate thoughts and fantasies grew with time. Mr. Howells estimated that he engaged in sexual activity including masturbation, sexual fantasies and viewing pornography starting in middle school on a nightly basis.

First sexual intercourse took place when he was age 19 with his 18 year old girlfriend whom he married about six months later. They had dated since he was age 16. He described his first sexual

A.131

Psychosexual Evaluation    Stephen Howells II    DOB:██████    Report Date: 02/18/15

intercourse as follows: "I tried to make it perfect, touching, kissing, laid her down, penetration. She felt she wanted to be more active, she felt I was directing the whole thing." They were married for about a year during which Mr. Howells' sexual fantasies went beyond what she was comfortable with (no oral or anal sex). He reported engaging in sexual activity with his first wife on a regular basis at first which decreased over time. He reported having inappropriate fantasies about 30% of time during the marriage.

Mr. Howells enlisted in the Air force about six months after his first marriage ended. He dated a few women in the service and started to go to strip bars. He had sex with some females whom he dated but nothing "unusual" until he was 22 or 23 when he met a woman who was his age and who stated that she liked sexual activity involving strangulation: "I tried it…freaked me out, worried I would mess up." After they dated a couple of months he met and began a relationship with Mary Anne who would become his second wife and the mother of his children. He stated that bondage and wrestling for sex took place during the first five years of their relationship but then stopped at her request. They separated in 2011 due to financial problems, what he described as her "condescending attitude", and his dissatisfaction with their sexual activities. Mary Anne confirmed to this evaluator that she had discovered child pornography on Mr. Howells computer during their marriage and he had set up his computer to delete all files if his password was attempted unsuccessfully.

During his marriage to Mary Anne, Mr. Howell engaged in sexual activities with a 15 year-old female cousin who babysat for him over the course of a year. He stated that she would babysit the children while he slept (he was working nights at the time). She told him that she had been attracted to him since she was little. He also reported engaging in sexual activities with an adult female in 2011 whom he would meet on weekends by telling his wife that he had to go on business trips or outings with friends. Starting in 2012 he became involved with women he met online using the "FetLife" website which caters to people with interest in BDSM (Bondage, Discipline, Sadomasochism). He would engage in BDSM sexual activities with women met through the website as well as a local BDSM club that meet in the Watertown area. He would spend a great deal of time viewing and collecting online pornography and he estimated that virtually all of his sexual fantasies around that time involved BDSM activities.

Mr. Howells reported first looking at pornography while in middle school. He stated that he found several magazines under his maternal grandfather's bed. He would look at a picture and fantasize about the female in it. He discovered online pornography in his early 20's and reported "hoarding" images. He started to fantasize about pubescent females starting around the age of 20 and reportedly began fantasizing about prepubescent females a few years ago. He stated that he attempted to obtain virtually every type of pornography available due to fear that images would become unavailable at some point. As he collected more and different types of pornography his sexual interests became more varied as well. He reported trying to stop watching pornography on two occasions:

> Once around the age of 25 I deleted my whole computer and tried to stay away from the CP [child pornography] for about 4-5 months before I fell back into it. The next time was around the age of 33-34, once again I fell back into it after a few months. I considered seeking professional help but even if I could find a counselor/psychiatrist I could trust,

A.132

what about the staff, the biller, the records person, the transcriber, any one of them could talk, given my work [nursing] it would spread like wild fire through the region. It was not an option I could trust.

Mr. Howells reported becoming "bored" with internet porn at one point and started to spend time viewing websites with video cameras showing women engaging in live sexual activity. He would record sessions viewed online and download for viewing at a later time.

Mr. Howells reported having 20-30 sexual partners in his lifetime, all females. He denied any history of sexual activity with males and described himself as heterosexual. He stated that he had been too active sexually, that sexual thoughts and fantasies had become an obsession with him, and that he gave in to his fantasies in the instant offense.

He reported meeting Nichole, 14 years younger than him, and his accomplice in the instant offense, in 2012 on the "FetLife" website. He stated that she was "into" bondage, control, humiliation, and rape scenes. He told her to send him a photo to test her ability to submit which she did. They had sex when they first met, and he viewed her as compatible, "She had read a lot about submission and bondage and knew how to behave as a submissive." After a couple of months together he asked her to do some role playing as a young girl. During this time he was also seeing a woman named Amber who had three young daughters.

Mr. Howells had started to develop a fantasy of drugging a young girl and engaging in sexual activity with her a few years prior to meeting Nichole. He described how he planned his activities by having Amber's daughters stay with him and how he obtained medication to have them fall asleep or become so drowsy that they could not remember what had happened to them. He also described how he videotaped the children. He also talked about his relationship at that time with a woman named Melissa who had two daughters ages 12 and 6. He stated that he and Melissa engaged in BDSM activities and eventually he put himself in a position to have her leave her children at his home. Mr. Howells also reported taking underwear from the female children in order to use the items for masturbation and fantasy.

Mr. Howell explained how Nichole fit into his sexual activities at the time including the so-called "slave contract":

> I showed Nichole pictures of [a child victim], told her what I was doing. She was into it. I had made her do some proof to protect myself. [It] Also gave me protection if she wanted to turn on me. She said it awakened some urges that she had repressed.

> Initially it was a 'pet' agreement, [I] call her pet, to us it meant she was something I owned. It was common on the website…BDSM agreements…Had discussed sex slave stuff but not signed specific contract to my knowledge but agreed in principle she was my slave. You're my property. I can do with you as I want. Since I had discovered people who thought like me I had wanted someone to be my sex slave or property for me to be their master. This was probably 50/50. Half was sex slave but half was regular boyfriend-girlfriend stuff.

A.133

Psychosexual Evaluation     Stephen Howells II     DOB:            Report Date: 02/18/15

Mr. Howells reportedly began to experience fantasies involving kidnapping which he discussed with Nichole and starting planning out to the point that it became an obsession by the spring of 2014: "The Amish thing was a fluke, just presented itself, more available, see them walking by themselves. My impression—Amish didn't value female children as much, they would withhold treatment if it was expensive. Made it more justifiable." He reportedly started to steal items from grocery stores to test his nerve. He set up three rules for the kidnapping: he had to have the room for holding the girl(s) completed; the person(s) had to live more than 20 miles from his place; and the girl(s) could not have had any interaction with him or his family at work. He admitted straying from the rules in his haste to commit the offense. He described his fantasy and the reality of the episode as follows:

> They would be sad at first but adapt, I would provide environment, they would learn to enjoy sexual activity, I wouldn't feel the guilt I actually felt…All the stories I read, all the fantasies I developed…Reality was I felt badly. They said they wanted to go home, go to church. I realized if I let them go I'd probably get caught. Went much bigger on the news than I anticipated…We [he and Nichole] both felt guilty, realized it wouldn't work. [The] room wouldn't be effective. We're gonna get caught. If we let them go, we'll get caught. We can't keep them, we can't harm them, harming was a quick discussion but we didn't want to feel more guilty.

Mr. Howell described the instant offense consistent with his confession. Mr. Howells denied engaging in any sexual activity with his own children stating that he would admit it if he did but "I'm just not wired that way [to have sex with his own children]". He reported current masturbation frequency of once a night with fantasies involving sexual experiences with Nichole that do not include children.

## EVALUATION

Behavioral Observations
Mr. Howells presented with inmate apparel and displayed appropriate hygiene and grooming. He looked his chronological age. No distinguishing marks or features were noted. No psychomotor abnormalities were noted. No impairment in cognitive functioning was noted. He denied any current problems with sleep, appetite or energy level. Mr. Howells described his current mood as "okay". He appeared oriented to time, place and person. He reported a past history of suicidal thoughts when first arrested but stated that he no longer has such thoughts and does not wish to die at this time. He denied any hallucinations. He was cooperative, answered all questions, and his self-report corroborated with official records in terms of the instant offense.

Mr. Howells was tearful at times when speaking about his sexual problems, expressed a desire for treatment, and concern that treatment would be available to him. He demonstrated some insight by describing some of his thinking as "wrong" in terms of his criminal activity, for example, the idea that he would select victims who faced almost certain negative futures because it would be "doing them a favor". Surprisingly, he did not attribute his sexual problems to any particular circumstance or person; instead, he described himself as having significant problems for a long time and was unable to implement his fantasies due to his rush to implement his plan before it was ready and the guilt and shame he felt which "surprised" him.

Page 14 of 19

A.134

Psychosexual Evaluation    Stephen Howells II    DOB:     Report Date: 02/18/15

Psychological Testing
The Substance Abuse Subtle Screening Inventory III (SASSI-3) is a screening assessment tool
for substance use disorders that includes validity scales to measure one's test-taking approach.
The SASSI-3 was administered on 11/25/14. Mr. Howell's test profile, which was considered
valid, is associated with a low probability of having a substance dependence disorder.

The Personality Assessment Inventory (PAI) is a test used in the clinical assessment of adults. It
is designed to provide information regarding clinical diagnoses, treatment planning, and general
psychopathology (it does not address sexual problems). It includes scales that gauge the validity
of the test taker's approach to the test. Mr. Howells was administered the test on 11/25/14.

Some inconsistency was noted in item response analysis but not to a degree that would render the
test results invalid. People with similar profiles tend to endorse a greater use of drugs or alcohol
than Mr. Howells but overall results indicated that he did not appear to resort to either a positive
or negative impression management style in approaching the test. His clinical profile indicated
moderate difficulty related to current stressors and life circumstances. While he tends to view
himself as active, outgoing, ambitious and self-confident, others may view him as impatient and
somewhat demanding. He reports a personality style that includes a degree of adventurousness,
risk-taking and a tendency to be impulsive. He may be viewed as pragmatic and unsympathetic
in his relationships. He describes himself as moody and dissatisfied with his more important
relationships and may be viewed by others as overly sensitive. Self-concept includes alternating
between self-confidence and self-satisfaction and pessimism and self-doubt. He reports that
supportive relationships help serve as a buffer to stress.

Mr. Howells denied any significant problems with unusual thoughts or peculiar experiences,
undue suspiciousness or hostility, unhappiness or depression, marked anxiety, problematic
behaviors used to manage anxiety, or difficulties with health or physical functioning. He also
reported no significant problems with drugs or alcohol. He acknowledged suicidal thoughts in
the context or his current predicament.

In terms of treatment, Mr. Howells' test profile is consistent with one who acknowledges
important problems and the perception of a need for help in dealing with these problems. He
reports a positive attitude towards the possibility of personal change, the value of therapy, and
the importance of personal responsibility. He reports a number of other strengths that are positive
indications for a relatively smooth treatment process and a reasonably good prognosis.
Diagnostic possibilities associated with this profile include Adjustment Disorder and Personality
Disorder Not Otherwise Specified (NOS) including features of Borderline, Antisocial,
Narcissistic and Paranoid personality styles.

The Trauma Symptom Inventory-2 (TSI-2) is a test used to assess trauma-related symptoms and
behaviors. Mr. Howells completed the test on 12/05/14. Mr. Howells endorsed clinically
significant levels of the following: anxious arousal, over-activation of the sympathetic nervous
system, depressed mood and/or thoughts in which he sees himself as worthless, intrusive
experiences in which he remembers unpleasant memories, attempts to avoid overwhelming
psychological distress, acknowledgment of dysfunctional and maladaptive sexual behavior

Page 15 of 19

A.135

Psychosexual Evaluation     Stephen Howells II    DOB: █████     Report Date: 02/18/15

experienced as impulsive or compulsive, suicidal thoughts and behaviors within the past six months, insecure attachments to others, and preoccupation or fears of the possibility of abandonment or rejection by others. People with similar profiles tend to endorse some or many symptoms associated with posttraumatic stress disorder (PTSD) along with some symptoms associated with Borderline Personality Disorder.

The Wechsler Adult Intelligence Scale-Fourth Edition (WAIS-IV) is a comprehensive clinical instrument for assessing intelligence. It provides scores representing intellectual functioning in specific cognitive areas and a composite score representing general intellectual ability. The WAIS-IV was administered on 12/05/14. *Percentile Rank* indicates the percentage of scores that fall at or below his score compared to others of his age group in a particular area of functioning; *95% Confidence Interval* indicates the likelihood that Mr. Howells score on a particular test (mean score of 100) falls within the range of scores given; *Qualitative Description* is a way of describing his score relative to others who have taken the test. Mr. Howells scored as follows:

| Scale | Percentile Rank | 95% Confidence Interval | Qualitative Description |
|---|---|---|---|
| Verbal Comprehension | 82 | 108-119 | High Average |
| Perceptual Reasoning | 77 | 104-117 | High Average |
| Working Memory | 13 | 77-91 | Low Average |
| Processing Speed | 5 | 70-87 | Borderline |
| Full Scale IQ | 47 | 95-103 | Average |
| General Ability | 82 | 109-119 | High Average |

*Verbal Comprehension* measures verbal abilities that require reasoning, comprehension, and conceptualization. *Perceptual Reasoning* measures nonverbal reasoning and perceptual organization. *Working Memory* measures simultaneous and sequential processing, attention, and concentration. *Processing Speed* measures the speed of mental and graphomotor (cognitive, perceptual and motor skills which enable a person to write) processing. *Full Scale IQ* is considered the most valid measure of overall cognitive ability. *General Ability* refers to one's overall cognitive ability without as much influence of working memory and processing speed.

Mr. Howell's profile suggests an above average cognitive ability that is somewhat hampered by his memory and processing speed. This comported with his self-report prior to testing in which he indicated a noticeable deficit in recalling past events as compared to others and having above average intelligence compared to others. Problems with working memory and processing speed can be due to issues with attention, concentration, and neurological deficits. Mr. Howells reported a chronic problem with spelling that resulted in him being designated as "learning disabled" and allowed him to utilize specialized technologies in college. Mr. Howell has the ability to do higher level academic work with the appropriate accommodations noted above.

The Structured Interview of Reported Symptoms (SIRS) assesses deliberate distortions in self-reporting in order to evaluate the possibility of feigning. The SIRS was administered on 11/25/14. Mr. Howells endorsed symptoms and psychological problems in a manner which is highly consistent with individuals honestly reporting their difficulties. No evidence of exaggeration or feigning was found.

Psychosexual Evaluation     Stephen Howells II     DOB      Report Date: 02/18/15

The Multiphasic Sex Inventory II (MSI-II) was administered on 11/25/14. "The Multiphasic Sex Inventory II (MSI-II) is a theory based, nationally standardized self-report questionnaire designed to assess the wide range of psychosexual characteristics of the sexual offender." (Multiphasic Sex Inventory II Handbook, p.1) Mr. Howells's test results were considered interpretable and reliable and suggest that he was open and disclosing during testing.

Test results indicated that Mr. Howell was very disclosing of his sexual offending behavior and his sexual problems overall. His responses were consistent with individuals who acknowledge the full range of their sexual problems, identify cognitive distortions present at the time of their offenses, and are aware of the fantasies, thoughts, and planning involved in their offending. His profile was consistent with individuals who are amenable to and do well in treatment.

## DIAGNOSTIC CLARIFICATION

1) <u>Mr. Howell appears to have a long history of sexual disorders called "Paraphilias"</u>. Paraphilias are sexual disorders in which an individual shows sexual interest and arousal to things that are problematic. Mr. Howells' sexual history is consistent with someone who has the paraphilias of Sexual Sadism (sexual arousal to pain, suffering or humiliation), Pedophilic Disorder (sexual thoughts or fantasies involving prepubescent children), Fetishism (arousal to nonliving objects such as female underwear) and Frotteurism (arousal to rubbing up against strangers without their knowledge) although Frotteurism has not been an issue for some time. He does not appear to have paraphilias involving Exhibitionism (arousal to exposing one's self to strangers) or Voyeurism (arousal from watching others, usually strangers, undress or engage in sexual activity). The fact that he engaged in sexual activity with prepubescent children and viewed pornography involving prepubescent children, despite his statement that prepubescent genitalia doesn't arouse him, suggests that he has the paraphilia of Pedophilic Disorder. People with Pedophilic Disorder are differentiated from non-pedophilic child molesters in that those with Pedophilic Disorder are more likely to have boy victims, multiple victims, prepubescent victims and unrelated victims. Mr. Howell has multiple, prepubescent, unrelated victims, and therefore is more like those with Pedophilic Disorder than non-pedophilic child molesters.

2) <u>Mr. Howells appears to have been sexualized during his early years</u>. While his parents disagree over the source of his being sexualized, it appears that Mr. Howells experienced a high degree of sexual information and/or experiences during his childhood. Children do not process and integrate sexual information in the same way adults do; they tend to focus on the sensations which are intense, whether positive or negative, and use them as a filter for future experiences, especially when there is a lack of guidance or help in assimilating such experiences. Mr. Howells' self-report of problematic sexual fantasies and high degree of sexual activity (masturbation, obsession with sexual activity with peers) at such an early age may have roots in earlier sexual experiences suggested but not clarified by his parents.

Page 17 of 19

A.137

Psychosexual Evaluation    Stephen Howells II    DOB: ███████    Report Date: 02/18/15

3) Mr. Howells appears to have difficulty utilizing his working memory. It is fairly common for children raised in chaotic homes with violence and/or neglect to experience memory problems due to the interference of anxiety or fear in the brain's process of integrating new information. His self-reported memory problems, consistent with testing done for this evaluation and in 2003, suggest that his memory problems are chronic in nature. This affects his ability to process new information and to compare it with information previously integrated.

4) Mr. Howells displays significant personality issues consistent with Narcissistic and Antisocial Personality Disorders and to a lesser degree Borderline Personality Disorder. Thinking that others have less value than one's self, manipulating others to satisfy one's desires, and believing that social rules or mores do not apply to one's self are consistent with traits found in Narcissistic and Antisocial personality disorders. While these traits enable one to engage in problematic behavior, in this case, Mr. Howells' paraphilic disorders were the main cause of his behavior, while his problematic personality traits acted as an enabler in the process. While he did not display empathy or guilt in carrying out the instant offense, his behavior in releasing the victims despite the likely outcome of detection and arrest suggests that the guilt he described may have been real. Sometimes people with narcissistic/antisocial personality traits, when confronted with the reality that their fantasies were not attained, hold on to them in a defensive manner. In this case, Mr. Howells acknowledges that his fantasies were disturbed. And while he maintained that his plan may have worked if certain variables had been different, his suggestion that he changed his thinking upon facing the reality of the girls' presentation (wanting to go home, not wanting to be with him) suggests that he does not totally lack empathy.

Borderline personality features include fear of abandonment, disturbances in identity, and mood lability born of disturbances in one's earliest relationships or attachments. People with Borderline personality features often have a history of violence, neglect or sexual abuse, and may develop posttraumatic stress disorder (PTSD) as they age. Mr. Howells displays some characteristics of PTSD in terms of experiencing intrusive thoughts (his sexual fantasies) and compulsive behaviors (viewing pornography) but it is not clear at this time to what degree these symptoms are part and parcel of his paraphilias or an attempt to self-sooth to reduce anxiety which is more in keeping with PTSD.

5) Mr. Howells is susceptible to experiencing mood disordered symptoms in his current situation. Mr. Howells initially experienced suicidal thoughts when first arrested and reported engaging in excessive exercise in order to cause an exacerbation of his heart palpitations. While he denies current suicidal thoughts of an active nature, he continues to experience passive suicidal thoughts (e.g., If a boulder was falling on top of me I wouldn't get out of the way). Part of his depressive reaction to his predicament is due to the fact the he believed there was no effective treatment for his sexual problems and he was fated to live the rest of his life experiencing troubling sexual thoughts and fantasies.

Page 18 of 19

A.138

Psychosexual Evaluation     Stephen Howells II     DOB     Report Date: 02/18/15

## FUTURE CONSIDERATIONS

Mr. Howells is a 39 year-old Caucasian, divorced male who is currently incarcerated and awaiting trial for sexual offenses involving the kidnap and sexual abuse of young girls. He is educated with above-average intellect despite having chronic problems with spelling in the context of issues with working memory and processing speed. He also has chronic problems associated with paraphilias, problematic personality traits, and appears to have current and recent issues with mood management and possibly some symptoms of PTSD.

The Federal Bureau of Prisons currently offers treatment to inmates guilty of sexual offending housed within the federal correctional system. Current treatment modalities in the federal system include cognitive-behavioral therapy to address cognitive distortions associated with sexual offending and pharmacological treatment to address sex drive reduction. Pharmacological treatment, also called Anti-Androgen Therapy (AAT), provides medications that reduce testosterone, which studies have shown to decrease sexual arousal and sexual fantasies including violent fantasies. AAT and other pharmacological treatments for sexual offenders tend to be used with individuals who have multiple paraphilias and can tolerate the significant side effects associated with the medications. Such interventions have been used successfully with individuals who have experienced paraphilias as long-standing and problematic as Mr. Howells; for example, the New York State Office of Mental Health (OMH) utilizes AAT with sex offenders determined to have a "mental abnormality" and considered to be a danger to others during inpatient treatment and released into the community including some with particularly violent sexual histories.

Mr. Howells' presentation during interviews and test results indicate that he is motivated to obtain treatment for his problems, is highly disclosing of his problems, and displays characteristics associated with those who engage in treatment in a meaningful manner.

In the event that Mr. Howells required additional treatment in a secure treatment facility at the conclusion of his sentence, the federal government could file a petition known as a *Certification of a Sexually Dangerous Person.* This would allow the government to commit Mr. Howells to a federal treatment facility on an involuntary basis following his sentence to receive further treatment.

This opinion is based on current available information and is subject to change in the event of additional information becoming available.

Erik N. Schlosser, Ph.D., ABPP
Licensed Psychologist
Board Certified in Forensic Psychology

A.139

# FOOTNOTE 4

Feb. 7, 1990

Mrs. Monroe,

Please do not allow any
of the Howells children to talk
on the phone with Mr. Stephen
Howells, Howard Runck or Mr. Howells
Lawyer (may be David Garner?).
And please do not allow them
to leave the school with any
one except me. If I have to
have someone pick them up
I will send a handwritten
note with the person. Thanks
so much for your cooperation
Sincerly
Vera Carpenter

A.141



November 2, 1988

School Nurse
Colton-Pierrepont Central School
Colton, NY   13625

Dear Ma'am:

I have four sons enrolled there this year; Stephen, Jr., Carl, Elon
and James Howells. Their mother is Vera Carpenter. I have some concerns
about the well-being of my boys and my attorney, David Garner suggested
I write you.

Vera and I separated over six years ago, which ultimately resulted
in divorce. I had a good job opportunity in Colorado and relocated here.
Vera prevented me from having any contact with my children, so I went through
Family Court in Canton in 1985 and was given visitation rights January, 1986.
The boys have spent the last three summers out here with me and I was back
to visit them in New York twice. I had a phone installed where they lived
before moving to the Colton area and was able to keep in contact with them
that way. However, now that they have moved to a remote area where the
telephone company is unable to provide service, I have very little contact
during the school year.

My main concern right now is if the boys are well and in good health.
Vera had a tendency to neglect their personal care and meals, which was a
big factor in our separation. Because of this neglect, I at first felt I
should go for custody and the resulting custody studies by Social Services
here and in Canton agreed I would give them better care. However, my boys
were going through such emotional upheaval about possible permanent separation
from their mother, I felt it in their best interests to stop the custody
proceedings and settle for visitation and continued contact with them. The
Court Order states that Vera is to have them keep in frequent contact with
my by phone and letters, but in their present living situation, this is
not being done and I'm quite frustrated as to how to work this out without
going back to Court. I have promised my boys I will not go back into Court
as long as I am able to have contact with them and they are able to visit
me here in the summers. Since I have infrequent contact with them now, I
plan to visit them during Spring Break back there.

With this background, would you be so kind to let me know if the boys
are doing all right in school and are well. Stephen and Carl have each
failed a grade twice and Elon failed last year. They are intelligent boys,
but are never given any incentive to do their home work. I have set up a
plan of paying them for good grades, which helped Carl improve especially.
Social Services was monitoring Vera's care of the boys for the first two
years following Court, and they sent me copies of the boys grades. They
have discontinued the monitoring, so I no longer know how they are doing
academically during the year. Stephen has always had a tendency to have
high absenteeism from school and Vera and never been too concerned about
that, so hope this is improving.

I pay monthly child support, plus Social Services makes up the difference
with AFDC. They did a home study at my request of the present living conditions
and wrote me that it was minimal, as there is no electricity or running water,

(continued)

A.142

but indicated that they would not take any action at this time. They did not indicate that they had any knowledge that a man was living in the home with Vera. This brings me to my second concern. From what I have been able to determine, no one in the area knows this Guy Wallace that Vera is living with, as he is fairly new to there. This is at least the fourth man she has lived with since my leaving the home and one of those men was quite abusive to the children. In fact, if he had not moved out during my Court hearings, I would have continued pursuing custody, as Social Services had investigated reports of his abusing the children, with counseling and warnings to Vera being the result. I have some real concerns of possible physical, emotional and or sexual abuse, as I am unable to find out anything about this person. James in particular has had something happen to him in the home when he was very small, as he has the idea I was "mean" to him and "hurt" him when he a year or so old, even though I left the home right before he was born.

The only reason I am telling you about these personal things is that they have no guidance at home on hygiene and cleanliness and all four told me last summer that they were not very well liked at school because they were dirty and called "welfare kids". While they are with me, I do what I can to teach them personal hygiene and have clean clothes for them every day. I try to impress the importance of being neat, but they say their mother and grandmother tell them there are more important things in life and not to worry about what others say. James started wetting his pants last year and I can imagine he goes to school smelling quite bad. His bed wetting and pants wetting during the day has some cause, but I don't know why. I know that it lessened a lot while he was here.

I'm enclosing a S.A.S.E. with the hope that you can at least tell me how the boys are doing in school. I realize that you are not in a position to get involved in their lives outside of school hours, but I know they need some counseling and help in school to help them get through the year without too much shame and degradation. I would also appreciate very much a school calendar or the dates of Spring Break and when school is out. I buy their airline tickets right after the first of the year, as I get a very discounted price then, so need to know the last day of school.

I appreciate very much anything you can do to help my boys and would appreciate a reply from you very much.

Sincerely yours,

Stephen Howells, Sr.

P.S. If anything urgent comes up, my work phone is ████ and my home phone ████



January 31, 1989

Joyce J. Monroe, Supt./Principal
Colton-Pierrpont Central School
Colton, New York   13625

Dear Ms. Monroe:

I had a telephone conference yesterday with my attorney, David Garner, and he suggested that I write you again. I have not heard from any of my boys since October and I'm very concerned about how they are faring the winter with living conditions, health and school.

My mother lives in Brushton and last saw the boys in October. She normally has them for the week after Christmas, and this year, since they did not have a phone, she had written their mother, Vera, about the usual visit and to inquire if Vera was bringing them to Brushton or if she should come get them. She received no reply and still has not heard anything from them. In the past, Vera has had a tendency to avoid all family (hers and mine), when there are problems at home, so my mother is also very concerned. She is afraid to try and go back into the woods alone where they live during the winter.

I had sent toys, winter shirts, thermal underwear and socks at Christmas and don't even know for sure if they got them. I had sent checks for school grades and the children did endorse those. Other than that, we don't even know if the children are still in your school district, as Vera has moved from school to school in the past.

Mr. Garner suggested that I ask you if the school nurse could make a home visit. The school nurse at Edwards-Knox in Russell made a home visit the first time they were in that school and found conditions at home deplorable. The school notified Social Services and the caseworker went in and did some parenting and work with Vera.

Social Services did make a home visit last Fall to where my boys live now and wrote me that living conditions were adequate, but "minimal". To my knowledge, they have not been back since. They did not indicate that a man was living in the home. Also, Family Intake Services had an appointment with Vera about having the boys keep in touch with me. They wrote me that they were unable to get much cooperation or commitment from her, as her reply was that she would not "force" the boys to call me if they did not wish to. They suggested I should contact my attorney and possibly Family Court. I promised my boys last summer that I would not go back to court unless I had to, as they still had the fear I was trying to take them away from their mother and they would never see her again. This has never been my intention, even though I find it difficult to accept her lifestyle.

I know my children well enough that I find I am  unable to accept her reply, as when I talked with them frequently last year by phone, our conversations were always open, friendly and warm. James and Elon are not old enough to be making decisions like that and I know they would not refuse to call me unless there was a lot of negative reinforcement as to why they should not. I know for certain that Carl would talk to me readily, as the last time I had talked with him in October at my mother's place, he asked all about things here and said he couldn't wait until next summer's visitation here.

A.144

Stephen Howells                                    Page 2

    Vera has told the boys from the time of our separation that living
conditions at home have been my fault and when things go bad for them at home,
I feel they do build up some resentment. As they grow up, they will see that
Vera's lifestyle has been that way since her childhood.

    I am sure that you have enough problems with administration of the school,
but would you let me know if my boys are well and attending school? Also, is there
any possibility that at some pre-determined time,     I could call Stephen or Carl
at school to just see how they are and let them know how much I care and see if
they need anything?   You may wish to check with Mr. Garner about this first.

    Thanks again very much for your help and cooperation, as I love and care for
my children very much, regardless of the fact that they have sometimes been led
to believe the contrary. If it wasn't for the job opportuniy I have here, I would
not be so far away. I appreciate any help you can give me on this.

                              Sincerely,

                              Stephen M. Howells, Sr.

xc: Attorney
    Family Intake Services-Probation Department
    St. Lawrence Co. Dept. of Social Services

# FOOTNOTE 6

Health Report

Re:   Stephen, Carl, Elon and James Howells
Date: November 16, 1988
From: Kathryn Hayes

These boys appear to be in good physical health. However, due to poor personal hygiene they are encountering some problems. The night poor, particularly of urine, is of particular [...] [...] problems with their peers. The role in accustoming them to proper clothing is also of some importance since in this very cold climate we worry about colds, flu, etc. This week or two days the boys arrived in [...] shirt, [...] that we provided them with showers and clean clothing.

James's wetting is improving and we do keep additional clothes for him to wear on the days he wets. The school physician has examined him and does not perceive at this time that the wetting stems from a physical reason.

A.147

# FOOTNOTE 7

TO

*Mrs. Savells*

NORMAN WHYTE
HIGH SCHOOL PRINCIPAL

POSSIBLE DAYS *117* THROUGH *3/10/90*

FOLD
SUBJECT: ATTENDANCE REPORT TO PARENTS

THIS IS TO INFORM YOUR THAT YOUR SON/DAUGHTER *Steven*_____ EXCEEDS THE ATTENDANCE LIMITS SET
BY THE COLTON-PIERREPONT CENTRAL SCHOOL. IF THIS ABSENTEEISM EXCEEDS 15% IN JUNE OR AT THE END OF A
SUBJECT SHE MUST APPEAR BEFORE THE ATTENDANCE COMMITTEE FOR APPROVAL TO TAKE FINAL EXAMS...... WORK BEING
MADE UP WILL NOT EXCUSE HIM/HER FROM THIS MEETING.

SUBJECT: *Social St. 7*_____ ABSENT *18* %ABSENT *15%* WORK MADE-UP_____

SUBJECT:_____ ABSENT_____ %ABSENT_____ WORK MADE-UP_____

SUBJECT:_____ ABSENT_____ %ABSENT_____ WORK MADE-UP_____

SUBJECT:_____ ABSENT_____ %ABSENT_____ WORK MADE-UP_____

SUBJECT:_____ ABSENT_____ %ABSENT_____ WORK MADE-UP_____

## SPECIFIC ATTENDANCE INFORMATION:

1. Minimum attendance for each class is required as a condition for receiving a
passing grade or for permission to take a final exam (admission to final exams
and/or Regents exams will be granted by the principal to those who have completed
the course of study leading to the exam, this includes attendance).
2. Any student with absenteeism in excess of 15% of the total number of class
periods per subject will not receive credit for that particular course or courses.
3. Periods absent, however, can be made up in two ways: (a) by spending an
equivalent number of 9th periods in relation to the class periods missed, working
on course related material. This may also be interpreted as the teacher certifying
that all missed work has been made up; (b) equivalent time made up will be credited
to the student.
4. The parents of a student who is absent without authorization will be notified
in writing after each absence. A student and his/her parents will also be notified
by the respective attendance office by letter when s/he is at about the midway
point in absenteeism. The student and his/her parents will be advised at that time
that a parent conference is suggested to discuss the student's absenteeism and the
possible ramifications of future absences.
5. A committee will be set up, made up of respective attendance office
administration, a guidance counselor, two teachers, and a parent, which will review
an individual case when a student feels there are special circumstances which
should be taken into account. The committee's recommendation will then be
forwarded to the building principal for action.
6. All absences, legal or illegal, including suspension, will be included in the
total number which may lead to the loss of credit.

## ATTENDANCE REVIEW COMMITTEE:

Miss Katheryn Hayes - Attendance          NORMAN WHYTE - CHAIRMAN, NON-VOTING
Mrs. Arlene McEwen   - Attendance
Mrs. Jackie Pinover  - Attendance
Mrs. Kathi Champney  - Teacher
Mr. Donald Tompkins  - Teacher
Mrs. Mary McKinley   - Parent

Attendance Policy approved by the Board of Education at their regular December 20,
1982 meeting.

A.149

Case 15-4103, Document 28, 05/13/2016, 1771705, Page153 of 213

# FOOTNOTE 8

·1/17/90

Carol wrote          "   . . . sion
to transfer Stephen, Carl, Evan, & James
Howells from Colton-Pierrepont Central
to Hermon-DeKalb Central as the boys
are now living with her.
                    Sincerly,
                    Vera Carpenter



Carol & John Pierce have my
permission to authorize any and
all medical care in my absence for
Stephin, Carl, Elon, and James Howells.
                    Vera Carpenter
                    4/17/90

# FOOTNOTE 9

CUMULATIVE HEALTH RECORD

Name _Howells, Stephen_    Sex _m_

Date and Place of Birth ▓▓▓▓▓▓

Approved As To Content By New York
State Education Department - June 1970

| Parent or Guardian | Address | Phone |
|---|---|---|
| 1 _Vera Carpenter_ | Rt.1, ▓▓▓▓ Russell | |
| 2 | Rd.222 Cotton Wilson N.Y. | |
| 3 | N.Y. | |

| School Name and Location | Family Physician | Phone |
|---|---|---|
| 1 _Edwards-Knox Central S. Glebe (478 Cr.)_ | | |
| 2 | | |
| 3 _Cotton Pierrepont Central School_ | | |

### History

| | Date | | Date | | Date | | Check |
|---|---|---|---|---|---|---|---|
| Anemia | | Heart Disease | | Rheumatic Fever | | Asthma or Allergies | |
| Chicken Pox | | Measles | | Scarlet Fever | | Ear Conditions | |
| Diabetes | | Mumps | | Tuberculosis | | Frequent Colds and Sore Throats | |
| Epilepsy | | Nephritis | | Contact With TBC | | Operations | |
| German Measles | | Pneumonia | | Whooping Cough | | Serious Injuries | |

Any Serious Illness Other Than Above    Details, if pertinent:

_1989-1990_
_Learning disabled_

In Emergency Notify-

### Medical Examination (Use Medical Code)

| Date | 11/6/8 | 10/88 | 10/89 | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Age | 11 | 12 | 113 | | | | | | |
| Grade | 1 | 6 | 7 | | | | | | |
| Eyes | | | | | | | | | |
| Ears (Otoscopic) | | | | | | | | | |
| Lymph Nodes | | | | | | | | | |
| Thyroid | | | | | | | | | |
| Nose | | | | | | | | | |
| Tonsils | | | | | | | | | |
| Teeth | | | | | | | | | |
| Heart | | | | | | | | | |
| Lungs | | | | | | | | | |
| Hernia | | | | | | | | | |
| Genito-Urinary | | | | | | | | | |
| Ortho-pedic Structural | | | | | | | | | |
| Posture | | | | | | | | | |
| Feet | | | | | | | | | |
| Skin (Non-Commun.) | | | | | | | | | |
| Epilepsy | | | | | | | | | |
| Nervous System | | | | | | | | | |
| Speech | | | | | | | | | |
| Nutrition | | | | | | | | | |
| Other | | | | | | | | | |

Signature of Physician

Legal requirements for immunization
waived because of:

A. Parent's religion ☐

B. Physician's certificate ☐

| | Date | Date | Date | |
|---|---|---|---|---|
| Smallpox | | | | |
| Polio | 11/75, 11/76 | 3/78 | 8/80 | 11/83 | etc |
| Measles | 8/78 | | | |
| German Measles | 9/78 | | | 9/83 |
| Diphtheria | | | | |
| Tetanus | | | | |
| Whooping Cough | | (B) 3/90 | | |
| DTP 9/75 | 11/75 | 2/76 | 3/78 | 8/80 |
| Mumps | 8/80 | | | |
| Tuberculin Test | | | | 9/90 |
| Chest X-Ray | | | | |
| Preschool Vision Exam | | Scoliosis Scr | | |
| | | OK 86-87 | | |

---

Howells, Stephen   8758   4 Screening Procedures

| Date | 10/6/86 | 9/87 | 10/88 | 10/89 | | | | |
|---|---|---|---|---|---|---|---|---|
| Height | 54 | 59½ | 62 | 65 | | | | |
| Weight | 80 | 96½ | 103 | 127 | | | | |
| **V I S I O N** | Date | 10/6/86 | 9/87 | 10/88 | 10/89 | | | |
| | With Glasses R | | | | | | | |
| | L | | | | | | | |
| | Without Glasses R | 20/20 | 20/20 | 20/20 | 20/20 | | | |
| | L | 20/20 | 20/20 | 20/20 | 30/20 | | | |

Plus Lens Test:      Color Perception:

| **H E A R I N G** | Date | 10/6/86 | 9/87 | 10/88 | 10/89 | | | |
|---|---|---|---|---|---|---|---|---|
| | Sweep Check Test R | 25 | 25 db at 500-4000 | 25 | 25 | | | |
| | L | 25 | 25 | 25 | 25 | | | |
| | Threshold Acuity R | | | | | | | |
| | L | | | | | | | |

Teeth   Urine -0   pH 5.0

*Medical Code (Use above in recording medical examination findings):

| Blank | -No Defect | I | -Irremediable Defect |
|---|---|---|---|
| X | -Observation (Not Reportable) | SR | -Supplementary Record |
| XX | -Report and Follow-Through | T | -Under Treatment or Treated |
| XXX | -Report and Immediate Follow-Through | | |

**Dental Code: XX - 1-8 Carious Teeth; XXX 8 or More Carious Teeth (Dental Hygiene Teachers Record)

A.153

Medical Recommendations (including Special, Employment, and Athletic Examinations.

### SCHOOL NURSE-TEACHER NOTES

10/30/76 Body not clean, nor
are clothes. Talked 2 pupil
about it. He says he just
doesn't have time to clean
up in the morning.
E.L. Mueller SNT

3/11/03 Injury to rt. leg
at home last night.
Went to ER (Potsdam)
X rays taken - no fractures
Sprain. On crutches. No
gym for 1-2 wks.
E.L. Mueller SNT

A transcript of this record must be forwarded when the pupil moves out of the district.

A.154

# FOOTNOTE 10

Dear Judge Suddaby,

Stephen Howells II is the oldest of four boys raised by our mother Vera Carpenter after being abandoned by our father Stephen Howells Sr., around the time Stephen entered grade school. Stephen was the oldest and as such filled the role of head of the household, second to our mother and he had responsibilities for taking care of his younger brothers. We grew up poor and lived in a number of towns in St. Lawrence County (Potsdam, Canton, Hermon, Russell, Colton/Pierpont, and Parishville) until we graduated school, but we were richer than most kids because we had a strong family bond. We were tested by bullies at school, society and even internal family struggles. We were sons of two families, we grew up interacting with our mother's family the most and of course our upbringing was looked down upon by our father and a few members of his side of the family. We were four independent boys, we fought with each other like cats and dogs, but it was just young men trying to establish ourselves in a pecking order and learn the ways of the world. We drove our mother crazy and at times she felt like she was not doing a good job, but for us boys we did not see it as a problem because deep down we were brothers. I express the bond we share by saying "blood is thicker than water; aunts & uncles, cousins, friends, girl friends and wife's will come and go, but family is forever and no matter what happens in this world nothing can change that...we are blood and we will always have each other." Our childhood was a struggle, but it made us stronger men.

Stephen and I are only two years apart, so naturally we did a lot of things together like bike riding, Boy Scouts, camping, hiking, building forts, horseback riding, doing house & farm chores, hunting, fishing, soccer and looking out for our younger brothers. Stephen and I worked for our Grandfather, Carl Carpenter, for a number of summers, as beekeepers, and our Grandfather taught us the value of a full day's work, patience, manners and how to listen. Our relationship changed the day Stephen went off to Roberts Wesleyan College, because he was no longer my boss and we were equal friends. In 1996 I talked Stephen into joining the United States Air Force, he left for basic training on Christmas Day that year and I followed just over a month later when I graduated high school 6 months early. We ran into each other in basic training when Stephen was assigned as dorm guard for my flight. Then during our technical training schools we were able to visit with one another and go sightseeing in San Antonio, Texas. We both got stationed in Japan, Stephen on Okinawa and me up north at Misawa. During our time in Japan we got to visit each other's bases and interact as adults and friends. Stephen served his country honorably for just over 5 years and separated as a Senior Airman (E-4) at his second duty station, Travis Air Force Base, California. After the military Stephen returned to St. Lawrence County, with his wife and newborn daughter, and went to college for nursing. Stephen spent several years as an ER nurse and filled several other nursing positions in Governor, New York. While I have continued on with my Air Force career, achieving the rank of Master Sergeant (E-7) and serving in Delaware and overseas in Afghanistan, Qatar, Japan, Korea, and Germany. Out of my 19 years in service I have spent 15 years as a supervisor and leader while serving as a Non-Commissioned Officer and leading a couple hundred men and women.

A.156

Stephen was known to me as being a hard worker, a good father, a leader and a professional. He was a respectable member of the community who had changed his station in the world though education and hard work. From the outside he had a good life, was building a future for himself and Nicole and had become successful. Stephen has three wonderful children who will now grow up without a father, three brothers who will grow old without our family anchor connecting us to our roots in St. Lawrence County and a mother that will more than likely pass away before Stephen is even close to be eligible to leave prison. With the minimum sentencing laws Stephen faces at least 30 years to an unimaginable multiple life sentences if given the maximum. Judge Suddaby I am asking you to be lenient and allow Stephen to serve concurrent terms, so that he will have a possibility of leaving prison someday. I do not ask for leniency for Stephen himself, but for his family, and his kids who will have families of their own 30 years from now.

Stephen's family and especially his three children, suffer more by having him in prison. I ask that you think about his kids growing up without their father and how that will affect their lives. It is obvious that Stephen did not take them into account, so I ask you to on their behalf.

Very respectfully,

Carl Edward Howells

A.157

Dear Judge Suddaby,

Stephen M Howells II, is my oldest brother, being that he is seven years older than myself, I have known him my entire life. Growing up he was forced to help care for us after our father, Stephen Mirl Howells I, abandoned our family, a task that he took to passionately, teaching us everything a father normally would have. Stephen taught me how to ride a bike, shoot a gun, archery, and how to fish, as well as many other things. He was also more of a father to me because he was seven years older than myself and was our primary babysitter when my mother was working.

Growing up Stephen always did everything he could to protect us from anyone else harming us like bullies at school, the aunt we lived with for two and a half years, Carol, who was viciously verbally abusive the entire time we lived with and our father, who has a very violent temper and beat our mother while they were married, and while we visited him at his house in Colorado, sexually abused me on numerous occasions, and I believe my other brothers as well. When it was discovered that my father had molested me, my bother Stephen did what he could to keep me from having to be alone with him when he could while we were continued to be forced to visit him against our will.

Throughout the year I worked with my grandfather, Carl Carpenter, beekeeping with all of my brothers. During the summer we would work the bee yards and the Honey House. When I was younger, Stephen was in charge of the Honey House when my grandparents weren't there, Stephen reinforced my Grandfather's lessons about the proper method to beekeeping, teaching me until, eventually, I was left in charge of the Honey House when my grandfather left. In the winter when we visited we would build frames and hive boxes as well as wiring and setting wax foundation into new frames to be used in the Spring.

Since growing up Stephen has thrown himself into providing for and raising his children, working to raise them with the same rural experiences I had growing up from him to have the knowledge to provide for themselves when they are adults. Your Honor, I am asking for leniency for my brother so that he has an opportunity to be present in his children's life and my family's as well in a more tangible manner. Through Stephen's recent actions he has shown his remorse regarding his crimes, taking responsibility by pleading guilty and sparing the state and others involved from having to have a drawn out trial. He has thrown himself onto the mercy of the court and I ask that you show him that mercy by giving his family an opportunity to known him again outside of prison.

Thank you for your consideration in this matter,

A.158

08/12/15

To whom this may concern:

I have been asked to write a letter describing Stephen M. Howells II as I knew him. When I met Steve, he was a medical technician in the US Air force. He told me parts of his hardship growing up with his mother. He told me how his mother dropped him and his three brothers at his aunt's house and a year later they were still there. He told me how he went and stayed at a teacher's house for a while and how finally when he was able to get a hold of his mother, convinced her to get all his brothers back together and live together. I saw commitment to family. He spoke highly of his grandparents on his mother's side. I saw a man with potential, a loving heart, and smart, compassionate. He wanted to improve himself. He was honorably discharged from the Air Force. Once out of the air force, he wanted to get a good job and start a family with me. We married in Okinawa. We moved to California while in the Air force. He was very supportive, and loving. He was getting out of the Air force and wanted to find a job to help support our new family. He left for St. Lawrence, NY. He came back to California to be with me when I delivered our first born child. He was there for all three of our children. He made me feel safe and secure throughout our marriage. We drove from California to St. Lawrence County, NY to raise our family in a safe area. He went to college and succeeded in getting his nursing degree. Along the way, he worked in different healthcare jobs so that he could support our family.

After our third child was born, he started changing, not listening to me, became angry over anything. He was playing on his computer more often, interacting with other people through the internet. Slowly, his inhibitions starting going out the window. He would come out from the office for five minutes, show his presence, and then go back into the office. After an episode where he was aggressive with our youngest son, I confronted him. He said he had been cheating and had found someone else.

Throughout the separation and finally divorce process, he would look at me with hatred. Our child custody agreement changed to every other week with our children. I was hurt and happy for our children that they were able to spend time with their father. Then the complaints began from our children, they were surviving there, safety concerns over supervision surfaced. They went back and forth for a year. The two youngest ended up having to repeat their grade. Our oldest became depressed. Steve was not taking care of our children properly, was unwilling to work cooperatively with me to make sure our children succeeded in school, or home.

After he was taken to jail, it took close to a year until he decided to own up to his crime. He wrote a few times. Once he owned up to his crimes, we went to visit him in jail. My children needed some type of assurance that their father was alright. They also needed to know that he was in jail for a crime. He was upfront that he committed a crime and needed to pay for his crime. After a month or two, he wrote that he had found God and was reading the bible. When we visited him again, I saw the man that I knew a long time ago. The one that had a fear of God. The one that was caring, and loving, and honest with himself and with our children.

He had an addiction with computers which slowly led to his loss of knowing right from wrong. He committed crimes that he needs to pay for.

Steve has been in jail close to a year, I have seen a change in him since my children and I first visited him beginning in May 2015. I feel he needs counseling for his addiction because it led him down a self-

A.159

destructive path that hurt a lot of people. He had a lot of potential and chose to disregard the people that loved him and cared for him, his family. I feel that after a lot of self-reflection, he may have come to realize the true loss of his actions. Does he have the potential to become a viable member in the community again after serving jail time? That will be determined with the choices he makes and the actions he takes. All I can hope for is that this time he considers how his actions will affect our children and act accordingly.

Sincerely,

Maryann Howells

08/12/15

Dear Judge Suddaby,

Stephen is the oldest of my four sons. I separated and divorced their father when Stephen was young, early elementary school. Stephen was my "right hand man" and was very responsible for his age. He helped supervise his three younger brothers, and helped to manage the household, as I often had bouts of exhaustion and depression. I have recently ( in the last five years) been diagnosed with anxiety/depression disorder and PTSD brought on by the violence and emotional torture during my marriage, and the years of stress from fighting through the courts to keep my sons away from their abusive father. I relied on Stephen the most to help around the house and to keep track of his younger brothers. He willingly took on these responsibilities and did a great job. Later in life his brothers have all expressed gratitude for the things he did for them.

Stephen struggled through school until he was diagnosed with a spelling disorder, (he spells phonetically). When the teachers stopped grading his spelling and only considered the content of his papers, his grades skyrocketed. Stephen rode horses, enjoyed hunting, fishing, camping, worked in the vegetable gardens and for his grandfather as a beekeeper. He was also in Boy Scouts, and played on the soccer team at school.

Stephen attended college for a year then joined the Air Force, becoming an Aero medic. After five years in the Air Force he was honorably discharged and went back to college, first for his LPN, then his RN. He worked as a nurse in both Gouveneur and Ogdensburg hospitals, where he spent the majority of his years in the emergency room.

Stephen married and had three children; Alexandra, Michael and Daniel, he was a good father and fought to stay in their lives. He taught them gardening and beekeeping. When I lived in Hermon Stephen would often come over to help me to get hay, shovel off my roof, and rototill my garden. When I moved to Texas, he took his vacation days from work to drive me and my truck to Dallas.

The thought that he will miss his children growing up, may never be able to walk in the woods or have a garden again breaks my heart. He is my son, I raised him, his successes are my successes, and his failures are my failures. I have nothing to show for my life, except my children. I beg you for leniency and concurrent sentences, so that I might be able to hug him again.

Most Sincerely,

Vera C. Carpenter

Dear Judge Suddaby,

        Stephen is my oldest brother and we are six years apart, so growing up he was like a father figure for me. Due to our age difference we did not hang out together or anything like that, but he was nice to me and I have fond memories of him. I remember him taking us hiking, fishing, riding four wheelers, and building my younger brother James and I a bike out of old spare parts. During our court ordered visitation, Stephen would keep us safe as we flew from New York to Colorado, and then keep track of us during our month long visits with our father and his partner Howard Runk. Stephen would also watch us after school when our mother was attending college or out of the house. I remember that he was a good cook and would make us special dinners from time to time and would surprise mom when she got home.

        Due to our age difference and Stephen moving out to attend Roberts Wesleyan College, while I was in junior high school, and him going off on a career in the United States Air Force a year or so later, I ended up having limited contact with him after that. My mother, brother James and I moved to Montana and I have spent these years doing various jobs in landscaping and construction across several western states, and I have been a certified crane operator for the last five years. Our contact after Stephen left home was mostly just a few phone calls and a visit or two over the years. I also kept up with him and my other brothers on social media, but each of us have lead separate lives.

        Stephen was a hard worker, he went to college and became a Registered Nurse, a profession that I hold in high esteem. To me he looked to have a good life, a bright future and three wonderful kids. Your Honor, I ask you for leniency in the sentencing you impose by granting concurrent sentences. I do not ask this for my brother Stephen, but for his children who will be middle aged adults with families of their own, 30 years from now. I ask you to think about Alexandra, Michael, and Daniel when you make your sentencing decision. Please give his children hope that they may be able to see their father outside of prison someday.

Very respectfully,

Elon Robert Howells

A.162

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

************************************     Case No.    5:14-CR-340 (GTS)

UNITED STATES OF AMERICA

                                        GOVERNMENT'S SENTENCING
              v.                        MEMORANDUM

STEPHEN M. HOWELLS, II,

                Defendant.
************************************

The United States of America, by and through its counsel of record, the United States Attorney for the Northern District of New York, hereby files its sentencing memorandum requesting, for the reasons set forth below, that the Court impose a Guidelines sentence of 580 years imprisonment and lifetime supervised release.

## INTRODUCTION

On May 8, 2015, defendant Stephen M. Howells, II entered a plea of guilty to all counts of a twenty-one-count Superseding Indictment charging him with one count of conspiracy to sexually exploit minors in violation of Title 18, United States Code, Sections 2251(a) and (e) (Count 1); fifteen counts of sexually exploiting six different minors, in violation of Title 18, United States Code, Section 2251(a) (Counts 2 - 16); and five counts of possessing material that contains one or more images of child pornography, in violation of Title 18, United States Code, Section 2252A(a)(5)(B) (Counts 17 - 21).

Howells is scheduled to be sentenced on December 17, 2015.

## APPLICABLE STATUTORY AND GUIDELINES PROVISIONS

**1.     Statutory Maximum and Minimum Sentences**

The defendant's convictions on Counts 1 - 16 of the Superseding Indictment subject him to

a mandatory minimum of 15 years, and a maximum sentence of 30 years imprisonment, per count. 18 U.S.C. § 2251(e); PSR ¶ 312.   His convictions on Counts 17 - 21 carry a maximum term of 20 years imprisonment per count. 18 U.S.C. § 2252A(b)(2); PSR ¶ 312.

In addition, each count of conviction carries with it a mandatory term of supervised release of at least 5 years, and up to life, 18 U.S.C. § 3583(k), PSR ¶ 316, and a fine of up to $250,000. 18 U.S.C. § 3571; PSR ¶¶ 321.[1]

## 2.      Guidelines Provisions

### a.      Offense Level

The Government agrees with the Guidelines computations of the Probation Officer, and that the defendant's Total Offense Level is 43.   PSR ¶¶ 66 – 278.

### b.      Acceptance of Responsibility

The Government moves for an additional one-level downward adjustment pursuant to U.S.S.G. § 3E1.1(b) to credit the defendant for having "timely notified authorities of his intention to enter a plea of guilty, thereby permitting the U.S. Attorney's Office to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently."   PSR ¶ 274.

### c.      Criminal History Category

According to the presentence report, the defendant's criminal history category is I.   PSR ¶ 281.   The Government agrees with the Probation Officer's determination of the defendant's criminal history category.   While this designation "does not adequately reflect the seriousness of the defendant's past conduct or the likelihood of recidivism," because the Guidelines call for a life sentence in any event, the Government is not seeking an upward departure from this criminal

---

[1]      The Government agrees with the assessment of the Probation Officer that the defendant does not have the ability to pay a fine.   PSR ¶¶ 307 - 311.

history category. *See* U.S.S.G. § 4A1.3.

####        d.        Guidelines Range and Sentence

As described above, the defendant's total offense level is 43 and his criminal history category is I. As a result, the Sentencing Guidelines advise that the defendant receive a sentence of life. PSR ¶ 313. However, since no count of conviction carries a potential life sentence, U.S.S.G. § 5G1.2(d) provides that the sentences imposed on each count of conviction shall run consecutively "to the extent necessary to produce a combined sentence equal to the total punishment." Here, the total punishment available to the defendant is 580 years, representing consecutive maximum sentences on each count of conviction. PSR ¶¶ 313 - 314; s*ee United States v. Ketcham*, 507 F. App'x 42, 44 (2d Cir. 2013); *United States v. Petrie*, 542 F. App'x 746, 747-48 (2d Cir. 2013). For all of the reasons set forth below, the Government maintains that this Guidelines sentence is fair, just, and warranted.

The Guidelines term of supervised release each count of conviction is no less than 5 years and up to life, PSR ¶ 318. The Guidelines recommend lifetime supervision. *Id.*; U.S.S.G. § 5D1.2(b)(2).

### 3.        Forfeiture

As set forth in the Forfeiture Allegation of the Superseding Indictment, the defendant shall forfeit to the United States all of his right, title and interest of any nature in any and all assets that are subject to forfeiture, pursuant to 18 U.S.C. § 2253. That forfeiture includes the following:

1)        A 2004 red Pontiac, Sunfire, NY registration GCR6443;
2)        A 2001 white Honda, Civic, NY registration BVZ9284;
3)        An Antec homemade desktop computer with no serial number, containing five hard drives:
     a)        one 500GB Seagate hard drive, S/N 5QM11ZRR;
     b)        one 1.0 TB Western Digital hard drive, S/N WMATV8440832;
     c)        one 500GB Western Digital hard drive, S/N WCAPW2257346;

3

A.165

        d)     one 300GB Seagate hard drive, S/N 5NF133W0; and

        e)     one 3000GB Seagate hard drive, S/N W1F23A2C;

    4)     A Canon G7 Digital camera S/N #3221205452;

    5)     An iPhone model #A1349, EMC#2422, FCC ID: BCG-E2422B; and

    6)     An iPhone model #A1387, IC# 579C-E2430A, FCC ID: BCG-E2430A.

## 4.    Restitution

In addition to the six minor victims involved in Counts 1 – 16, the minors depicted in the images and videos involved in the defendant's child pornography possession crimes, Counts 17 – 21, are victims of his offenses. Restitution to the victims is mandatory, and the Court may not decline to award restitution because of the defendant's economic circumstances or the fact that the victims have, or are entitled to, receive compensation for their injuries from the proceeds of insurance or any other source. 18 U.S.C. §§ 2259(b)(3) and (c).

While there have been no restitution requests from the minors charged in Counts 1 – 16, as it applies to the victims of the defendant's possession offenses, he is responsible for restitution in "an amount that comports with the defendant's relative role in the causal process that underlies the victims' general losses," which shall be calculated by the Court to be a "reasonable and circumscribed award imposed in recognition of the indisputable role of the [defendant] in the causal process underlying the victim[s'] losses and suited to the relative size of that causal role." *Paroline v. United States*, __U.S.__, 134. S. Ct. 1710, 1727 (2014). Five of these victims have filed requests for restitution as Howells' crimes involve their images. PSR ¶ 63. The parties are in the process of determining whether the victims will continue to pursue restitution given the assessment that the defendant has no ability to pay,[2] or whether there is an amount of restitution that can be agreed upon to satisfy the restitution claims. Should negotiations fail, the Government

---

      [2]     While ability to pay is not a consideration in whether restitution shall be ordered, it is often a consideration to the victims, as they assess whether an uncollectable judgment is in their best interest.

4

will brief the issue of restitution and what amounts should be awarded to the victims as a result of Howells' crimes.

<b>GOVERNMENT'S SENTENCING RECOMMENDATION[3]</b>

For all of the reasons set forth herein, the Government maintains that a Guidelines sentence of 580 years imprisonment and lifetime supervised release is just, warranted, and not greater than necessary to comply with the purposes of sentencing.   18 U.S.C. § 3553(a).   The record reveals no mitigating factor that would suggest that anything but a Guidelines sentence is appropriate in this case.   Moreover, such a sentence is reasonably designed to achieve the total punishment, and takes into account the nature and seriousness of the defendant's crimes, the harm done to the child victims - not only the six victims whose exploitation came directly at the hands of the defendant, but also the hundreds of child victims whose images he collected from the Internet - and each of the relevant considerations required under 18 U.S.C. § 3553(a).

**<u>18 U.S.C. § 3553(a)(1)</u>**

The first factor to be considered under § 3553(a) is the "nature and circumstances of the offense and the history and characteristics of the defendant."   18 U.S.C. § 3553(a)(1).

The nature and circumstances of the defendant's offenses are in many ways too horrible

---

[3]   The Government reserves the right to respond to defense arguments.   Similarly, if the Court is considering a *sua sponte* departure from the applicable sentencing guidelines range on a ground not previously identified by the parties or in the Presentence Investigation Report, the parties are entitled to notice and an opportunity to respond.   *See* Fed R. Crim. P. 32(i)(1)(c), 32 (h).

Further, the United States respectfully requests that the Court provide the parties with any *ex parte* communications received by the Court in connection with sentencing, with the exception of the confidential sentencing recommendations submitted by the United States Probation Office.

5

A.167

to recount. The extensive and perverse abuse of four little girls whose safety was entrusted to the defendant by their parents, followed by the vicious kidnapping and sexual abuse of two vulnerable little girls, taken from their family's roadside vegetable stand, are crimes that demand a stiff and sure penalty.

Howells began his offenses by specifically putting himself in a position of trust with the mothers of V-3, V-4, V-5, and V-6, and used that trust to gain access the girls. *See* PSR ¶¶ 5, 6, 42. He not only abused each of these children, both alone and together with his co-defendant and co-conspirator Nicole Vaisey, but exploiting his status as a registered nurse, he also obtained and administered an alarming number of medications and controlled substances to these very young children, creating further peril to their well-being. Howells admitted to law enforcement that he used both Benadryl and Ambien on the children, PSR ¶ 41, and he knew how dangerous these substances were. Forensic review of his Internet search histories found queries for such things as signs of overdose, withdrawal symptoms, and, from a laptop used by Vaisey, a question that specifically asked: "Will I die if I take Ambien and Benadryl together?" PSR ¶¶ 46, 48.

While Ambien was the drug he used with all of his victims, Howells also used other dangerous drugs, including Versed, morphine, and oxycodone. V-3 alone was found to have ten different substances in her system. PSR ¶ 6a.

When drugging and sexually exploiting known children became insufficient to quell their appetite, Howells and Vaisey hatched a plan, several months in the making, to abduct young girls for use as "slaves." PSR ¶¶ 6d – 6g; 37. While neither conspirator has explained why they targeted the Amish, it seems quite clear that in doing so they were gaining an advantage: vulnerable children in a community that does not possess a car to follow the kidnappers, or a phone to summon for help. It is overwhelming to imagine the sheer terror inflicted on these

6

A.168

young girls, taken from their family and their community, held captive for more than 24 hours, drugged, and subjected to degrading and unspeakable brutalities.   PSR ¶¶ 30 – 39.

In addition to the acts of drugging and sexually abusing of each of his victims, Howells' depravity is further revealed by his commission of the crimes for which he is being sentenced – exploiting the children for the purpose of producing images of the abuse.   Here, too, Howells' actions were out of the ordinary.   He and Vaisey did more than "just" produce depictions of their sexual abuse of the children, instead their narcissistic filming often included recording the abuse by using multiple video devices and still photography - simultaneously capturing the abuse from multiple angles.   *See*, e.g., PSR ¶ 7.

In addition to the horrors inflicted upon all six of the named victims, Howells spent years victimizing hundreds of other young children by collecting images of their abuse from the Internet, again bringing to the forefront the very close association between on-line child pornography offenses and hands-on abuse.   Forensic review shows that Howells collected child pornography from the Internet beginning at least as far back as 1999, and maintained a collection of tens of thousands of image and video files depicting the sexual abuse of children, PSR ¶ 45, including depictions of bondage and the sadistic abuse and torture of the very young. *See*, e.g. PSR ¶ 28 (describing image depicting approximately 4 year old child, her hands bound by a cord above her head, and adult's penis pressed against her face); PSR ¶ 29 (describing a video file depicting the sexual abuse and torture of an infant).   Howells also possessed 180,753 images and 912 video files of sexually explicit conduct with children whose ages are not readily apparent, and over one million images of child and teen erotica.   PSR ¶ 45.

Within the thousands of files in Howells' collection, the National Center for Missing and Exploited Children has identified *389* individual children whose identities are known to law

enforcement as actual child victims identified in investigations worldwide.   PSR ¶ 49.   All of these children, as well as those whose images he collected but who have yet to be rescued and identified, are victims of Stephen Howells' offenses.

Howells describes his offenses as an obsession with a "fantasy situation" where he considered the "girl(s)" to be "two dimensional characters," and did not think he was hurting a real person, since he saw them as "objects."   PSR ¶ 65.[4]   This is really all one needs to know in order to truly assess "the history and characteristics of the defendant."   18 U.S.C. § 3553(a).

While in many cases there may be facts and circumstances that provide a mitigating counter-point to a defendant's criminal acts, this is not such a case.   There is simply nothing about Howells that lessens the evil of his actions.   If "[t]he true test of a man's character is what he does when no one is watching,"[5] Stephen Howells is the basest among us.   He poses a real and substantial threat to children, and to young girls in particular.   He is a violent and dangerous sex offender for whom the Guidelines range and recommended sentence of 580 years is not only appropriate but necessary, ensuring, as V-3 told her mother, that he will "never hurt another child again."   PSR ¶ 61.

### 18 U.S.C. § 3553(a)(2)

The next set of factors to be considered in imposing sentence include:

the need for the sentence imposed--(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;(B) to afford adequate deterrence to criminal conduct;(C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

---

[4]     Notably, even in his role as a registered nurse, Howells looked at the children he cared for in a sexual way.   *See*, e.g. PSR ¶ 55.

[5]     Quote by John Wooden, author and retired basketball player and coach.

8

18 U.S.C. § 3553(a)(2).

Certainly the recommended sentence achieves all of the relevant objectives.[6] Few offenses are more serious, and the recommended sentence acknowledges that, while at the same time affording adequate deterrence to others, for to impose a lesser sentence in a case with so many aggravating factors provides little deterrence to those whose serious crimes do not include drugging, kidnapping, and the exploitation of multiple victims.

Given the nature and extent of the defendant's crimes, the number of victims, the act of kidnapping to obtain additional victims, the dangerous drugging of children to facilitate their sexual exploitation, and the years of on-line activity leading to the accumulation of an enormous collection of images depicting the sadistic abuse of children, a 580 year sentence will justly ensure public safety by forever removing Howells'access to children.

### 18 U.S.C. §3553(a)(3), (4), (5), and (6)

The final set of factors to be considered in imposing sentence, pertinent to this matter, are:

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for--
(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines--
(i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

       *     *     *

(5) any pertinent policy statement--

---

[6] The defendant does not appear to be in need of educational or vocational training, or medical care.

(A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

\*     \*     \*

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

18 U.S.C. §3553(a)(3)-(6).

First, the only kind of sentence available is incarceration, and the sentencing range as established by the Guidelines is 580 years.  PSR ¶ 313.  It is also noteworthy that the Guidelines offense levels go only as high as 43, while Howells scores 55 – **twelve levels higher**. PSR ¶¶ 66 - 278.

Second, the policy statement issued by the Sentencing Commission at U.S.S.G. § 5K2.0(b) advises against a departure from the Guidelines in child crimes and sexual offenses except in explicitly numerated circumstances, none of which, the Government submits, are present here.

Finally, adherence to the Guideline sentence is the best way to ensure against sentencing disparity "among defendants with similar records who have been found guilty of similar conduct."  18 U.S.C. § 3553(a)(6).

## CONCLUSION

For all of the reasons set forth above, the Government maintains that consecutive sentences totaling the maximum available sentence of 580 years, designed to ensure that the defendant spends the rest of his life in prison, is the outcome warranted by his crimes.  Such a sentence is not greater than necessary, and is sufficient to comply with and accomplish the many

goals of sentencing.    18 U.S.C. § 3553(a).


Respectfully submitted this 24th day of November, 2015,

RICHARD S. HARTUNIAN
United States Attorney


By:  /s/  **Lisa M. Fletcher**

Lisa M. Fletcher
Assistant United States Attorney
Bar Roll No. 510187

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF NEW YORK

*******************************

UNITED STATES OF AMERICA

              Case No.: 5:14-CR-340 (GTS)

      v.

STEPHEN M. HOWELLS, II,

          Defendant.

*******************************

## CERTIFICATE OF SERVICE

I hereby certify that on November 24, 2015 I filed the **Government's Sentencing Memorandum** with the Clerk of the District Court and sent copies of said documents via ECF to the following:

Randi Juda Bianco, Esq.

            /s/
            Deanna Lieberman

A.174

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

UNITED STATES OF AMERICA

Case No. 5:14-CR-340 (GTS)

v.

GOVERNMENT'S RESPONSE TO
DEFENDANT'S SENTENCING
MEMORANDUM

STEPHEN M. HOWELLS, II,

Defendant.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

On November 24, 2015, pursuant to the Uniform Presentence Order issued by the Court, the United States filed a sentencing memorandum in the above-captioned matter. The Sentencing Memorandum of the United States addressed the Presentence Investigation Report (PSR) only as we had not yet received the defendant's sentencing arguments. The Government reserved its right to respond in writing to any sentencing objections and arguments raised by the defendant after the filing of our Memorandum. That same day, the defendant filed a sentencing memorandum. This response is filed in answer to arguments raised in the Defendant's Sentencing Memorandum.

**GOVERNMENT'S RESPONSE TO DEFENDANT'S SENTENCING MEMORANDUM**

1.      **18 U.S.C. § 2251(a) Is Not Limited Or Intended To Be Limited To Those Who Transport The Pornography They Produce**

While the defendant does not, and cannot, argue that he was improperly charged with violating § 2251(a), he suggests that his actions are not those contemplated by Congress in enacting the statute. Defendant's Sentencing Memorandum, pp. 6-7. The defendant argues that state laws addressing the hands-on abuse of children "focuses the federal scope of power on

A.175

the interstate transport of children and images as a part of the production and possession of child pornography," *id*. at 6.    He could not be more off the mark.

While it has become commonplace to refer to § 2251(a) as the "production" statute, in actuality it is captioned (as it is in the Indictment) "Sexual Exploitation of Children," for it is the *use of the child* for the purpose of producing visual depictions which is the gravamen of the offense -- whether or not depictions are ever even produced.  *See United States v. Esch*, 832 F.2d 531 (10th Cir. 1987) (each use of a child to create a depiction is the correct unit of prosecution as "the legislative history … indicates an unequivocal intent to protect children from the abuse inherent in the production of sexually explicit materials.")[1]; *see also United States v. Fee*, 491 Fed. App'x. 151 (11th Cir. 2012).

Moreover, it is well established that the entirely intrastate use of a child for the purpose of producing visual depictions for one's own gratification, with no intent to further profit from or distribute images, is well within the meaning of the statute. *United States v. Holston*, 343 F.3d 83, 90 (2d Cir. 2003) ("As we are satisfied that § 2251(a) lies within Congress's powers under the Commerce Clause, the fact that Holston neither shipped the materials interstate nor intended to benefit commercially from his conduct is of no moment."); *see also United States v. Ramos*,

---

[1]    Quoting the Senate Report as follows:

Current Federal laws dealing with pornography focus almost exclusively on the sale, distribution and importation of obscene materials, and, do not directly address the abuse of children inherent in their participation in the production of such materials ... the Committee intends to fill the existing gap in Federal law by declaring that the use of children in the production of such materials is a form of child abuse. S.Rep. No. 95–438, reprinted in 1978 U.S.Code Cong. & Admin. News at 53.

*Esch*, 832 F.2d at 542, n.10.

2

685 F.3d 120 (2d Cir.), cert. denied 133 S.Ct. 567 (2012)

## 2.   The Defendant's Childhood Circumstances Are Not A Reason To Depart From The Guidelines.

Howells goes into great detail about his unfortunate upbringing as an argument in favor of a more lenient sentence than that recommended by the Guidelines.   He goes so far as to provide school documentation from 1988, 1989, and 1990.

While the Guidelines are now advisory, their policy statements are a factor to be considered by the Court in fashioning a sentence.   18 U.S.C. § 3553(a)(5)(A).   U.S.S.G. § 5H1.3 provides: "Mental and emotional conditions may be relevant in determining whether a departure is warranted, if such conditions, individually or in combination with other offender characteristics, are present to an unusual degree and distinguish the case from the typical cases covered by the guidelines."   While "any instance of childhood abuse is extraordinary in common parlance; yet, in this context, the abuse must be judged against that suffered by the typical defendant, many of whom have unfortunately suffered severe abuse in their early lives." *United States v. Brady,* 417 F.3d 326, 333 (2d Cir. 2005).   Accordingly, "because it is the sad fact that so many defendants have unfortunate pasts," there is a high standard of what constitutes an atypical case.   *Id.* at 334.

The Government maintains that Howells' history does not stand out as extraordinary in the universe of other defendants this Court, the courts in this District, and the other courts in this country, sentence on a daily basis.   *United States v. Vela*, 927 F.2d 197, 199 (5th Cir. 1991) ("Childhood abuse and neglect are often present in the lives of criminals. They always affect their mental and emotional condition. 'We simply cannot agree, therefore, that these are the kinds of considerations which warrant substantial reductions in guidelines sentences.'") quoting

3

A.177

*United States v. Daly*, 883 F.2d 313, 319 (4th Cir. 1989)(internal citation omitted).

Many child pornography offenders report having been abused themselves as children. While the Government does not contest that Howells' upbringing may have been deplorable, so too is the case with many other defendants similarly situated. To merit a departure, therefore, a defendant need show more than extreme and atypical abuse. There must also be a causal connection between the abuse and the commission of the offense. While Howells details facts about his unfortunate upbringing, he does not connect those circumstances to his offenses. Even his psychosexual evaluation, noting that Howells has no memories of abuse, does not equate his "paraphilias and problematic personality traits" with his childhood experiences, or his childhood experiences with his crimes. Without such a causal connection, a departure is unwarranted. *See Brady*, 417 F.3d at 334 ("We have recently explained that the requirement of a causal nexus restricts the circumstances in which a departure on the grounds of abuse is permitted only to cases where the abuse brings about a mental condition that leads to or causes the criminal conduct."); *United States v. Reinoso*, 350 F.3d 51, 58 (2d Cir. 2003)(Circuit law "explicitly limits the situations in which a departure based on abuse is warranted to those in which the abuse creates to a mental condition that in turn leads to or causes the criminal conduct.")

## III.  CONCLUSION

The Government maintains that the defendant has raised no meaningful fact or reasons to depart or vary from the sentence recommended by the Guidelines. The fact that he "will likely" participate in treatment, that he is "amenable" to it, and "will likely gain much from participating" falls far short of mitigation for his horrific crimes. Defendant's Sentencing

Memorandum, p. 12.   Accordingly, for all of the reasons outlined above, and as set forth in our

original sentencing memorandum, the Government maintains that a Guidelines sentence is fair,

just, and warranted.

Respectfully submitted this 3rd day of December, 2015

RICHARD S. HARTUNIAN
United States Attorney

*/s/ Lisa M. Fletcher*

Lisa M. Fletcher
Assistant United States Attorney
Bar Roll No. 510187

5

A.179

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

*******************************************

UNITED STATES OF AMERICA,                    Criminal Action No.
                                                      5:14-CR-340 (GTS)

            v.

STEPHEN M. HOWELLS, II,

            Defendant.

*******************************************

CERTIFICATE OF SERVICE

I hereby certify that on December 3, 2015, I electronically filed the GOVERNMENT'S

RESPONSE TO DEFENDANT'S SENTENCING MEMORANDUM with the Clerk of the

District Court using the CM/ECF system.


            Randi Juda Bianco, AFPD


                                    /s/
                                    Paula Briggs


6

A.180

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------x
UNITED STATES OF AMERICA

vs.                              5:14-cr-340

STEPHEN M. HOWELLS, II,

                         Defendant.
-------------------------------------------x

*Sentencing* – December 17, 2015

James Hanley Federal Building, Syracuse, New York

HONORABLE GLENN T. SUDDABY

United States District Judge, Presiding


A P P E A R A N C E S

For Government:      OFFICE OF THE UNITED STATES ATTORNEY
                     P.O. Box 7198
                     100 South Clinton Street
                     Syracuse, New York  13261-7198
                       BY:  LISA M. FLETCHER,
                            Assistant U.S. Attorney

For Defendant:       OFFICE OF THE FEDERAL PUBLIC DEFENDER
                     4 Clinton Square
                     Syracuse, New York 13202
                       BY:  RANDI JUDA BIANCO, ESQ.


*Eileen McDonough, RPR, CRR*
*Official United States Court Reporter*
*P.O. Box 7367*
*Syracuse, New York 13261*
*(315)234-8546*

1          THE CLERK:  Case 5:14-cr-340; United States of

2    America versus Steven M. Howells, II.  Counsel, please note

3    your appearance for the record.

4          MS. FLETCHER:  Lisa Fletcher for the United States.

5    Good afternoon, Judge.

6          THE COURT:  Good afternoon.

7          MS. BIANCO:  Good afternoon, Your Honor.  Randi

8    Bianco for Mr. Stephen Howells, who is seated at my right.

9          THE COURT:  Good afternoon.  We're here for

10   sentencing.  Both parties prepared to proceed?

11         MS. FLETCHER:  Yes, Your Honor.

12         MS. BIANCO:  Yes, Your Honor.

13         THE COURT:  Counsel, have you received the

14   Presentence Report dated September 11, 2015, and the addendum

15   dated December 15th of 2015?  The government?

16         MS. FLETCHER:  Yes.

17         THE COURT:  Ms. Bianco?

18         MS. BIANCO:  Yes, Your Honor.

19         THE COURT:  Ms. Bianco, did you have an opportunity

20   to review those reports with your client?

21         MS. BIANCO:  I was just reviewing the one from the

22   15th with him now.  I believe he understands.  There is only

23   three minor changes and he understands the charges.

24         THE COURT:  Is that right?  Have you had sufficient

25   time, Mr. Howells, to review that latest addendum with your

1   attorney and are you comfortable in proceeding?

2          THE DEFENDANT:  I am, sir.

3          THE COURT:  Okay, very well.

4          There were a number of character letters which were

5   attached to the sentencing memorandum which have been filed

6   on the docket, so I'm not going to recite those.

7          We'll move right on to any objections to the facts

8   as stated in the Presentence Report?  For the government?

9          MS. FLETCHER:  No objection.

10          THE COURT:  Ms. Bianco?

11          MS. BIANCO:  No objection.

12          THE COURT:  Any objections to the offense level

13   calculations in the Presentence Report?  For the government?

14          MS. FLETCHER:  No objection.

15          THE COURT:  Ms. Bianco?

16          MS. BIANCO:  No objection.

17          THE COURT:  And do you agree with the criminal

18   history computation as set forth in the Presentence Report?

19   The government?

20          MS. FLETCHER:  Yes.

21          MS. BIANCO:  Yes, Your Honor.

22          THE COURT:  Very well.  Ms. Fletcher, go ahead.

23          MS. FLETCHER:  Thank you, Your Honor.  Your Honor,

24   the decision to be made by the Court this afternoon is

25   whether to sentence Stephen Howells to life in prison or not.

Case 15-4192, Document 28, 05/13/2016, 1771725, Page186 of 213

1  There is no middle ground.  There is either a sentence which

2  may allow Howells to one day reenter society or one that

3  ensures he never will.

4       The level of depravity inherent in the defendant's

5  use of children to satisfy his abhorrent sexual fantasies

6  answers that question decisively.  Stephen Howells has earned

7  every day of the 580 year sentence he faces.

8       While in 2012 he alone filmed his drugging and

9  abuse of V4, the eight-year-old daughter of a friend who

10  entrusted her to his care, it was after he met Nicole Vaisey

11  that their toxic pairing exploded this behavior into more and

12  more shocking crimes, involving multiple victims, sometimes

13  abusing two or three children at once, including V5 and V6,

14  the five and ten-year-old sisters who were also entrusted to

15  Howells' care by their mother.

16       The grooming and pervasive abuse of V3, the

17  seven-year-old child Vaisey brought into the relationship,

18  and the kidnapping and abuse of the Amish sisters, six and

19  eleven years old.  Within all of these horrific crimes it was

20  V3, the child entrusted to Vaisey, who suffered the most

21  abuse.  Ten different drugs were found in her system,

22  including dangerous controlled substances, nine separate

23  dates of abuse.  The video history of the exploitation of V3

24  shows the chilling progression of over an eight-month time

25  span from a child resistant to the abuse, to one drugged and

Case 15-4192, Document 28, 05/13/2016, 1771725, Page187 of 213

1  groomed into compliance, to one who finally succumbed to her

2  role as participant.

3          If the case were only these four victims, if it

4  were only this vile and extensive abuse, Stephen Howells

5  would merit a life sentence, for the horrors these children

6  were subjected to, for the breach of trust and for the

7  emotional trauma they and their families will deal with for a

8  lifetime.  Stephen Howells robbed these children of their

9  innocence, of their right as children to feel safe and secure

10  around the adults in their lives.

11          As V3 wrote to the Court, for these acts the

12  defendant should go to jail for life.  Isolate them for life,

13  she wrote.  If the abuse of V3, V4, V5 and V6 were the extent

14  of this defendant's horrors, it would still be too horrible

15  to quantify, but it is not.  The diabolical acts were not

16  enough to quell the defendant's pedophilic appetite.

17          Howells and Vaisey next took their twisted

18  relationship to a shocking new level; they plotted and

19  planned to kidnap children for use as sex slaves.  To

20  conceive the idea is shocking enough.  To conspire to commit

21  it is unthinkable.  But to carry it out is beyond terrifying.

22  Imagine the 25 hours of sheer terror endured by the young

23  Amish sisters, only six and eleven years old.

24          First, the realization that the kindly looking

25  customer with the cute puppy in his car is abducting you from

1    your home, from your family, from your community, and then

2    the drugging, and then the degradation and abuse much too

3    graphic to repeat here.  Not knowing what was happening, not

4    knowing what was going to happen, not knowing what the next

5    hour would hold.  How long will you be here?  When will he

6    abuse you again?  What is he doing to your sister?  Will she

7    be okay?  Will you be okay?  Will you ever see your family

8    again?  Twenty-five hours must have seemed an eternity to

9    those young girls.

10          The defense suggests that these acts are state

11    crimes more appropriately addressed in state court.  Not so.

12    The kidnapping was the vehicle used to commit the federal

13    offenses.  The Court cannot put that aside.  The extent to

14    which these defendants would go to satisfy their own wicked

15    and selfish needs takes the meaning of aggravated

16    circumstance to a whole new level.

17          The flaw in the defendant's plan at long last, the

18    flaw that ultimately saved the Amish girls was Stephen

19    Howells' impatience.  He and Vaisey jumped the gun.  They

20    kidnapped the girls before the makeshift soundproof cell they

21    were constructing was finished or even soundproof.  It was

22    only the realization that they could not adequately muffle

23    the cries of the sisters that Howells and Vaisey released

24    them.  The one and the only thing to be said for Stephen

25    Howells is that he did not compound his crimes with murder.

Case 15-4192, Document 28, 05/13/2016, 1771725, Page189 of 213

1   But while the entire community is thankful for the girls'

2   rescue, Howells deserves no medals for releasing them, nor

3   does he deserve a reduced sentence.

4           The argument he makes that he released them knowing

5   he would be caught is not a factor mitigating his crime.  Nor

6   does it recognize two important facts.  First, he did not

7   return them.  With Vaisey scouting for police, Howells

8   surreptitiously drove to a remote wooded location where the

9   girls were left on the side of the road.  Second, he made

10  serious and significant efforts to disguise his crimes.  He

11  hid the video evidence on an encrypted drive.  He burned an

12  apron left behind by one of the Amish girls.  He bleached the

13  handcuffs he used on the girls and discarded other evidence

14  that could contain traces of their presence in his house.

15  And he staged the cell he had been building to look like just

16  another room in the house.

17          Howells may have later confessed, but that is not

18  the grand act of contrition the defense characterizes it to

19  be.  Words are insufficient to convey what evil Stephen

20  Howells and Nicole Vaisey brought into this world.  Using

21  children as their personal sex objects, they perpetrated evil

22  that will live on in the memories of the children, their

23  families and the community.  And when words fail us, actions

24  can be a more compelling response.  Here where words are

25  indeed inadequate, the actions of the defendants' former

1    neighbors expressed most powerfully how vile these crimes

2    were and what impact they had on an entire community.  The

3    neighbors purchased the house where these unspeakable acts

4    occurred and burned it to the ground.  No words can form a

5    better response.  No words could more eloquently capture the

6    essence of the evils committed in that place.

7         Society has no place for those who use their power

8    and influence over the vulnerable, who see children as

9    objects available to them to exploit at will for whatever

10   vile desires they seek to satisfy.  Life sentences are

11   reserved for the most dangerous criminals and the most

12   heinous crimes.  With every child he abused, with every drug

13   he administered, with every video he produced, with every

14   vile idea he put into action, Stephen Howells wrote his own

15   sentence; 580 years and not a minute less.  Thank you.

16        THE COURT:  Ms. Bianco.

17        MS. BIANCO:  Yes, thank you, Judge.  Stephen

18   understands that his criminal conduct has scarred the victims

19   and no one's trying to minimize what they went through.  He

20   is extremely remorseful for what he has done.  During my

21   course of representation of him, he has expressed nothing but

22   remorse, he has accepted responsibility for what he did, and

23   he never tried to minimize his own conduct.

24        And though his conduct is obviously reprehensible,

25   he asks this Court to fashion a sentence that accounts for

A.188

1  the fact that he will serve 25 years in state court for the

2  kidnapping.  And we ask this Court to focus on the particular

3  remaining federal interests involved in this case.

4        The nature of the federal interest here involves

5  coercing young minors to engage in sexually explicit conduct

6  for the purpose of producing visual depictions of such

7  conduct and thereafter possessing those visual depictions.

8  While the nature of the federal offense is appalling, it

9  pales in comparison to the underlying state charges where the

10  actual sexual assaults took place.

11        The state clearly has a more significant interest

12  in prosecuting the kidnapping and sexual abuse charges than

13  the federal court does, especially in light of the fact that

14  the actual acts, actual sexual abuse acts, are punishable in

15  state court, and here what we're talking about is the filming

16  of the sexual abuse, not the acts themselves.  And I would

17  like to point out that the videos themselves, they were never

18  distributed, never.

19        We submit that a federal sentence in this case to

20  be thirty years, a combined sentence, followed by lifetime

21  supervision.  And that would serve to satisfy the purposes of

22  punishment under the Sentencing Reform Act.  The Federal

23  Court, this Court should take into account Stephen's state

24  offenses and focus solely on the remaining residual federal

25  interest.

Case 15-4192, Document 28, 05/13/2016, 1771725, Page192 of 213

1      As I stated, Stephen is going to be sentenced to 25

2  years in state court with 20 years post-release supervision.

3  And those state charges don't implicate any of the federal

4  interests because the acts were not done in or affecting

5  interstate commerce or federal property.  The only federal

6  interest not satisfied by the state sentence is his

7  production, receipt and possession of child pornography.  And

8  since those images were not distributed, we would submit that

9  while the harm is certainly great, it could have been much

10 worse.

11      I would also like this Court to consider Stephen's

12 actions in releasing the victims in this case and his

13 subsequent cooperation with law enforcement.  When the police

14 arrived at Stephen's house, he immediately cooperated with

15 them.  He consented to the search of his house.  He confessed

16 to his guilt.  And he never minimized his conduct,

17 continuously accepting responsibility for what he had done

18 and what he said he forced Nicole Vaisey to do.

19      Now more significant than his accepting

20 responsibility is obviously the fact that he released his

21 last two victims.  And while the prosecution said that he

22 didn't release them to their home, he released them a few

23 blocks from where there were -- where there was a

24 neighborhood where he knew that they could go and get some

25 help.

Case 15-4192, Document 28, 05/13/2016, 1771725, Page193 of 213

1          At the time of the offense Stephen made no attempt

2    to hide his identity.  The victims knew what he looked like.

3    They knew the car that he drove.  They knew the description

4    of the inside of the house.  And when Stephen made a decision

5    to release the victims, approximately 24 hours after the

6    abduction, it wasn't because of their cries or because of his

7    inability to finish the soundproof room; it was because he

8    had genuine remorse for what he had done and he didn't want

9    to continue this.  He knew that when he let those children

10   go, he would likely be arrested and imprisoned.  And had he

11   not released the victims, he may never have been apprehended.

12         If this Court were to ignore Stephen's actions in

13   releasing the victims and his cooperation with law

14   enforcement and his timely plea of guilt, it could send a

15   message to others that they're better off not releasing their

16   victims because they'll end up with the same punishment

17   anyhow.  While Stephen made some horrible, horrible mistakes

18   and he regrets them, he tried to turn it around by letting

19   them go, confessing, consenting to the search and allowing

20   the victims to have some type of life afterward, scarred as

21   they may be.

22         In conclusion, we'd ask this Court to consider a

23   thirty-year sentence with a lifetime supervised release.  We

24   submit that that's sufficient, but not greater than

25   necessary, to satisfy the remaining federal interests

Case 15-4192, Document 28, 05/13/2016, 1771725, Page194 of 213

1   involved in this case.  He is forty years old now.  If this

2   Court were to give him a thirty-year sentence, he would be

3   seventy upon his release.  Stephen would really like to get

4   some help and he has expressed some interest in going to sex

5   offender counseling and he would ask this Court to place him

6   in a facility where there is sex offender counseling such as

7   USP Tucson where he has heard they have an excellent sex

8   offender counseling program.

9            THE COURT:  Ms. Bianco, is it your request that

10  that take priority to his request that he be placed in a

11  facility close to his family in Iowa?

12           MS. BIANCO:  Yes, Your Honor.  He has discussed

13  this with me and he found out about the nature of the program

14  in Tucson and he really wants to be in that.

15           THE COURT:  He would rather be in Tucson?

16           MS. BIANCO:  Yes.

17           THE COURT:  Very well.  Mr. Howells, would you like

18  to be heard before I impose sentence?

19           THE DEFENDANT:  Yes, sir.

20           THE COURT:  Go ahead, sir.

21           THE DEFENDANT:  I would just like to say that this

22  evil that I have done is my own, and that if the victims ever

23  decide to research this further, I want them to know that

24  they did nothing wrong.  They did nothing to cause this to

25  happen to them.  The things that were done to them were my

1    own illness.  And I want them to hopefully some day be able

2    to let this go, move on with their lives and have a normal

3    existence, hopefully no memory of me.

4          I would also like to say that I took a young woman

5    who had no experiences with love or relationships and twisted

6    her affections around and made her do things that she would

7    never have done on her own to satisfy my own wishes for

8    sexual gratification, and I hope that some day she can

9    forgive me and hopefully have a normal life herself.

10          THE COURT:  Okay, Mr. Howells.  Thank you.

11          The Court's prepared to impose sentence.  The Court

12   has reviewed and considered all the pertinent information,

13   including, but not limited to, the Presentence Investigation

14   Report, the addendum, submissions by counsel, and the

15   Sentencing Guideline Manual, as well as the factors outlined

16   in 18 U.S.C. Section 3553(a).

17          The Court adopts the factual information and the

18   guideline applications contained in the Presentence

19   Investigation Report.  The Court finds the total offense

20   level is 43, the criminal history category is I, and the

21   guideline imprisonment range is life.  However, since no

22   count of conviction carries a potential life sentence, the

23   guideline sentence becomes 580 years, or 6,960 months,

24   pursuant to U.S.S.G. Section 5G1.2(b).  As this is a combined

25   length of the authorized maximum of sentences for Counts 1

Case 15-4192, Document 28, 05/13/2016, 1771725, Page196 of 213

1  through 21.

2          As further instructed at 5G1.2(d), the sentence

3  imposed on each count of conviction shall run consecutively

4  to the extent necessary to produce a combined sentence equal

5  to the total punishment, which again in this case is 580

6  years.

7          Upon your plea of guilty to Counts 1 through 21 of

8  the superseding indictment, it is the judgment of this Court

9  that you are hereby committed to the custody of the Bureau of

10  Prisons to be imprisoned for a term of 6,960 months, or 580

11  years.  This term consists of 360 months on Counts 1 through

12  16, and twenty years on counts 17 through 21, all to be

13  served consecutively.

14          After reviewing all the facts in this case and

15  considering the submissions by counsel, including your

16  psychosexual evaluation and your background, I find no reason

17  to depart or vary from the applicable guideline sentence

18  given this Court's responsibility to impose a sentence that

19  is sufficient, but not greater than necessary, to comply with

20  the purpose of sentencing set forth in 18 U.S.C. Section

21  3553(a).

22          In fact, I find a guideline sentence is absolutely

23  necessary to reflect the seriousness of your numerous crimes

24  against children, to provide just punishment for the extent

25  of these crimes against children, and to deter others from

Case 15-4192, Document 28, 05/13/2016, 1771725, Page197 of 213

1    engaging in the same incomprehensible conduct, that being the

2    sexual exploitation, drugging, kidnapping, restraining and

3    raping of children.  There are few crimes more egregious than

4    these, and I find the sentence imposed today is sufficient,

5    but not greater than necessary, to achieve the goals of

6    sentencing after considering the multitude of aggravating

7    factors, including, but not limited to, the number of

8    children you harmed by satisfying your deviant sadistic

9    sexual desires and the personality traits that enabled you to

10   carry out your violent fantasies with no apparent guilt or

11   remorse.

12            Indeed, as you indicated, you saw them as objects

13   and nothing more but to be there for your own pleasure, the

14   recording of such perverse abuse on numerous occasions over

15   an extended period of time, and the extent of these

16   recordings, which often involved multiple devices set up to

17   capture the abuse from multiple angles, your position as a

18   registered nurse and the use of this position to drug your

19   child victims, some over and over again.  As the records

20   reflect, Victim 3 was found to have ten different drugs in

21   her system.  Notwithstanding your knowledge as a registered

22   nurse, you were aware of the dangers of drugging the children

23   given the internet searches found on your computer and on the

24   computer of your co-defendant, such as researching overdoses,

25   will I die if I take Ambien and Benadryl together.  Moreover,

A.195

1    you are captured on the video administering additional drugs

2    to already sedated children and shining a light into their

3    eyes of these incapacitated children to evaluate the degree

4    of their unconsciousness.  And again, that demonstrates that

5    you are fully aware of the dangerous consequences of you

6    drugging these children, including the possibility of

7    overdose and death.

8          When the victims known to you could no longer

9    satisfy your deviant desires, you and your co-defendant spent

10   months planning to kidnap children to be used as sex slaves.

11   This plan included hours upon hours of driving around looking

12   for children and building a soundproof room in order to

13   imprison them, children, for an indefinite period of time.

14   You and your co-defendant ultimately followed through with

15   this reprehensible plan by kidnapping two Amish children.

16   The Amish people, a symbol of simple and pure life, a life,

17   two lives and many more affected that you destroyed.  They

18   are among the most vulnerable children in our society.  The

19   immense fear and harm you caused to the two victims is

20   unfathomable.  And what you subjected them to is unspeakable.

21   There is absolutely no evidence in the record that supports

22   your current contention that you released these victims

23   knowing you were going to be captured.  To even suggest their

24   release was out of guilt or remorse is incredible.

25          The record before this Court, including your own

1  post-arrest statements, clearly demonstrates that the only

2  reason you released these children was the realization that

3  your room, your cell which was meant to imprison them was not

4  soundproof.  It was only after this realization that you and

5  your co-defendant discussed your options and took steps to

6  cover your tracks by scouting out a remote location ensuring

7  the absence of law enforcement and getting rid of the

8  evidence of your crimes after releasing the children in a

9  wooded area.  I put no merit in your attorney's argument that

10 you released them in an area where you thought they would be

11 discovered.

12         I've also considered the approximately 15 years you

13 spent victimizing hundreds of other children by amassing an

14 enormous collection of internet child pornography, including

15 bondage, sadistic abuse and torture of very young children.

16 Your collection consisted of tens of thousands of files

17 depicting sexual abuse of children, more than 180,000

18 sexually explicit files involving children whose ages are not

19 readily apparent, and over 1 million files of child and teen

20 erotica.  Of these additional victims 389 children have been

21 identified by law enforcement officials worldwide.  All of

22 these children, including those who haven't yet -- have yet

23 to be identified, are victims of your offense.

24         Finally, this Court has considered the significant

25 impact of your crimes on the community, including the immense

A.197

Case 15-4192, Document 28, 05/13/2016, 1771725, Page200 of 213

1  fear and alarm caused by child abductions.  You are, quite

2  frankly, the threat parents worry about every day who have

3  young children.  You are the predator.  You are the

4  nightmares that never go away for young children.  And most

5  importantly, the unmeasurable harm and trauma that you have

6  caused to each of your child victims and to their families.

7  The lifelong devastation caused by your actions to so many is

8  deserving of the sentence imposed today.

9          For all of these reasons, I find a guideline

10 sentence is warranted, justified and reasonable because you

11 are extremely dangerous and a violent sex offender.  Only a

12 life sentence can ensure the safety of the community, provide

13 just punishment for the profound crimes against children and

14 afford adequate deterrence.  I cannot in good conscience

15 impose a sentence that will ever allow you to have access to

16 children again.

17          As you have requested, I will recommend that you be

18 placed in the federal Bureau of Prisons facility in Tucson,

19 Arizona, which has a sex offender treatment program.  I will

20 also request that when and if you successfully complete that

21 program, that you be placed in a facility in Iowa as close to

22 your family as possible.

23          This Court has imposed a sentence with the

24 understanding that you will not be released from prison.

25 However, in the event that you are released for some reason

1  that would be unknown to this Court, I'm going to impose a

2  term of life on each count to run concurrently, a term of

3  life of supervised release.  If applicable, you shall not

4  commit another federal, state or local crime, and you shall

5  comply with the standard conditions that have been adopted by

6  this Court.  Due to the unlikely nature of the fact that you

7  would be released, no special conditions have been imposed at

8  this time.

9         You shall pay to the Clerk of the Court a special

10  assessment of $2,100, which is due and payable immediately.

11  The Court finds you do not have the ability to pay a fine,

12  and therefore no fine is imposed.  You shall also forfeit to

13  the United States all right, title and interest in the items

14  listed in the preliminary order of forfeiture which was

15  signed by this Court on August 4th, 2015.

16         Both parties have a right to appeal this sentence

17  in certain limited circumstances.  You are advised to consult

18  with your attorney to determine whether or not an appeal is

19  warranted.  Any appeal must be filed within 14 days of the

20  judgment being filed in this case.

21         The defendant will be remanded to the custody of

22  the United States Marshal in accordance with the terms of

23  this sentence.

24         Ms. Fletcher, anything further on behalf of the

25  government?

1        MS. FLETCHER:  Your Honor, only as to the

2   outstanding restitution issue in regard to the internet

3   victims, we ask that the Court issue a scheduling order for

4   briefing on that.

5        THE COURT:  It's my understanding that there was no

6   agreement made between the parties with regard to any amount

7   of restitution, is that right?

8        MS. FLETCHER:  That's correct, Your Honor.

9        THE COURT:  We will set a briefing schedule.

10  Ninety days.

11        THE CLERK:  March 17th.

12        THE COURT:  St. Patricks Day.  I'm not sure you'll

13  find me here.  Ninety days, Ms. Bianco?

14        MS. BIANCO:  That's fine, Your Honor.

15        THE COURT:  That works?  Okay.  Ms. Bianco, is it

16  your wish that your client remain here until this issue is

17  resolved, or do you want him -- I'll give you an opportunity

18  to talk to him if you would like.  I know sometimes it's

19  better to get out of the local facility and get to the

20  Federal Bureau of Prisons.  I'm not sure how long this is

21  going to take beyond the ninety days.  We'll give you an

22  opportunity to brief it and we'll make a determination

23  whether a hearing is necessary.  I don't expect that that

24  would be the case.  But please discuss it with your client

25  and make a determination of what he would like to do.  If he

A.200

1   is not going to remain, we're going to have to see some sort

2   of waiver of appearance from you on his behalf.

3           MS. BIANCO:  He would be willing to waive his

4   appearance at any future restitution hearings, if there need

5   be, and he would like to go on his way now.

6           THE COURT:  Mr. Howells, is that true?  You

7   understand that we have to make a determination.  Restitution

8   to the victims of your crimes is a mandatory thing required

9   by this Court.  Your attorney and the U.S. Attorney's Office

10  have not been able to resolve that, so we're going to resolve

11  that through briefing and a possible hearing on the issues.

12  And what your attorney's just indicated to me is that you

13  don't desire to be here for that.  Is that true?

14          THE DEFENDANT:  That's correct.

15          THE COURT:  And you want to be moved out to the

16  Federal Bureau of Prisons?

17          THE DEFENDANT:  Yes.

18          THE COURT:  Okay.  Anything further?

19          MS. FLETCHER:  No, Your Honor.

20          THE COURT:  Ms. Bianco?

21          MS. BIANCO:  No, Your Honor.  Thank you.

22          THE COURT:  Very well.

23          THE CLERK:  Court is adjourned.

24                  *           *           *

25

C E R T I F I C A T I O N

      I, EILEEN MCDONOUGH, RPR, CRR, Federal Official
Realtime Court Reporter, in and for the United States
District Court for the Northern District of New York,
do hereby certify that pursuant to Section 753, Title 28,
United States Code, that the foregoing is a true and correct
transcript of the stenographically reported proceedings held
in the above-entitled matter and that the transcript page
format is in conformance with the regulations of the
Judicial Conference of the United States.

_____

EILEEN MCDONOUGH, RPR, CRR
Federal Official Court Reporter

A.202

🖉AO 245B    NNY(Rev. 09/12) Judgment in a Criminal Case
Sheet 1

# UNITED STATES DISTRICT COURT

| | Northern | District of | New York |

| UNITED STATES OF AMERICA | **JUDGMENT IN A CRIMINAL CASE** |

**V.**

STEPHEN M. HOWELLS II

Case Number:          DNYN514CR000340-001

USM Number:          21618-052

Randi Juda Bianco, OFPD
4 Clinton Square, Third Floor
Syracuse, New York 13202
315-701-0080
_____
Defendant's Attorney

## THE DEFENDANT:

X pleaded guilty to count(s)    1 through 21 of the Superseding Indictment on May 8, 2015.

☐ pleaded nolo contendere to count(s) _____
   which was accepted by the court.

☐ was found guilty on count(s) _____
   after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| **Title & Section** | **Nature of Offense** | **Offense Ended** | **Count** |
| --- | --- | --- | --- |
| 18 U.S.C. § 2251(a) | Conspiracy to Sexually Exploit Children | 08/15/2014 | 1 |
| 18 U.S.C. § 2251(a) | Sexual Exploitation of Children | 09/07/2013 | 2 |
| 18 U.S.C. § 2251(a) | Sexual Exploitation of Children | 10/20/2013 | 3 |
| 18 U.S.C. § 2251(a) | Sexual Exploitation of Children | 11/16/2013 | 4 |

The defendant is sentenced as provided in pages 2 through ____7____ of this judgment. The sentence is imposed in accordance with 18 U.S.C. § 3553 and the Sentencing Guidelines.

☐ The defendant has been found not guilty on count(s) _____

☐ Count(s) _____ ☐ is ☐ are  dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

December 17, 2015
_____
Date of Imposition of Judgment

_____
Hon. Glenn T. Suddaby
Chief U.S. District Judge

December 22, 2015
Date

JAK

## A.203

AO 245B    NNY(Rev. 10/05) Judgment in a Criminal Case
           Sheet 1A

Judgment—Page    2    of     7

DEFENDANT:      Stephen M. Howells II
CASE NUMBER:    DNYN514CR000340-001

## ADDITIONAL COUNTS OF CONVICTION

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. § 2251(a) | Sexual Exploitation of Children | 11/17/2013 | 5 |
| 18 U.S.C. § 2251(a) | Sexual Exploitation of Children | 12/15/2013 | 6 |
| 18 U.S.C. § 2251(a) | Sexual Exploitation of Children | 12/29/2013 | 7 |
| 18 U.S.C. § 2251(a) | Sexual Exploitation of Children | 04/18/2014 | 8 |
| 18 U.S.C. § 2251(a) | Sexual Exploitation of Children | 05/31/2014 | 9 |
| 18 U.S.C. § 2251(a) | Sexual Exploitation of Children | 08/13/2014 | 10 |
| 18 U.S.C. § 2251(a) | Sexual Exploitation of Children | 12/16/2012 | 11 |
| 18 U.S.C. § 2251(a) | Sexual Exploitation of Children | 09/22/2013 | 12 |
| 18 U.S.C. § 2251(a) | Sexual Exploitation of Children | 11/16/2013 | 13 |
| 18 U.S.C. § 2251(a) | Sexual Exploitation of Children | 12/13/2013 | 14 |
| 18 U.S.C. § 2251(a) | Sexual Exploitation of Children | 01/24/2014 | 15 |
| 18 U.S.C. § 2251(a) | Sexual Exploitation of Children | 04/19/2014 | 16 |
| 18 U.S.C. § 2252A(a)(5)(B) | Possession of Child Pornography | 08/15/2014 | 17-21 |

A.204

AO 245B    NNY(Rev. 10/05) Judgment in a Criminal Case
            Sheet 2 — Imprisonment

Judgment — Page    3    of    7

DEFENDANT:          Stephen M. Howells II
CASE NUMBER:        DNYN514CR000340-001

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of:

**6,960 months (or 580 years).  This term consists of 360 months on each of Counts 1 through 16 and 20 years on each of Counts 17 through 21; all to be served consecutively.**

X    The court makes the following recommendations to the Bureau of Prisons:

**The defendant be designated to USP Tucson, where he can participate in a sex offender treatment program.  Upon completion of sex offender treatment, the Court recommends the defendant be placed in a facility close to his family in Iowa.**

X    The defendant is remanded to the custody of the United States Marshal.

☐    The defendant shall surrender to the United States Marshal for this district:

☐    at _____ ☐ a.m.  ☐ p.m.    on _____ .

☐    as notified by the United States Marshal.

☐    The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

☐    before 2 p.m. on _____ .

☐    as notified by the United States Marshal.

☐    as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

at _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

A.205

DEFENDANT: Stephen M. Howells II
CASE NUMBER: DNYN514CR000340-001

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of:

## LIFE on each count to run concurrently.

The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The defendant shall not unlawfully possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

☐ The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse. (Check, if applicable.)

x The defendant shall not possess a firearm, destructive device, or any other dangerous weapon.

x The defendant shall cooperate in the collection of DNA as directed by the probation officer. (Deselect, if inapplicable.)

x The defendant shall register with the state sex offender registration agency in the state where the defendant resides, works, or is a student, as directed by the probation officer. (Check, if applicable.)

☐ The defendant shall participate in an approved program for domestic violence. (Check, if applicable.)

If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

## STANDARD CONDITIONS OF SUPERVISION

1) the defendant shall not leave the judicial district without the permission of the court or probation officer;

2) the defendant shall report to the probation officer in a manner and frequency directed by the court or probation officer;

3) the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4) the defendant shall support his or her dependents and meet other family responsibilities;

5) the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;

6) the defendant shall notify the probation officer at least ten days prior to any change in residence or employment, or if such prior notification is not possible, then within five days after such change;

7) the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, import, or manufacture any and all controlled substance and all controlled substance analogues, as defined in 21 U.S.C. § 802, and any paraphernalia related to any controlled substances, except that possession and use of a controlled substance properly prescribed by a licensed medical practitioner is permitted;

8) the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9) the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;

10) the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;

11) the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

12) the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;

13) as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement;

14) the defendant shall not possess a firearm, destructive device, or any other dangerous weapon;

15) the defendant shall provide the probation officer with access to any requested financial information; and

16) the defendant shall submit his or her person, and any property, house, residence, vehicle, papers, effects, computer, electronic communications devices, and any data storage devices or media, to search at any time, with or without a warrant, by any federal probation officer, or any other law enforcement officer from whom the Probation Office has requested assistance, with reasonable suspicion concerning a violation of a condition of probation or supervised release or unlawful conduct by the defendant. Any items seized may be removed to the Probation Office or to the office of their designee for a more thorough examination.

DEFENDANT:          Stephen M. Howells II
CASE NUMBER:    DNYN514CR000340-001

Judgment—Page    5    of    7

## SPECIAL CONDITIONS OF SUPERVISION

**The Court has imposed a sentence with the understanding that the defendant will not be released from prison. Accordingly, no special conditions have been imposed.**

## DEFENDANT'S ACKNOWLEDGMENTOF APPLICABLE CONDITIONS OF SUPERVISION

Upon a finding of a violation of probation or supervised release, I understand that the court may (1) revoke supervision, (2) extend the term of supervision, and/or (3) modify the conditions of supervision.

The conditions of supervision have been read to me. I fully understand the conditions and have been provided a copy of them.

_____          _____
Defendant                                              Date

_____          _____
U.S. Probation Officer/Designated Witness          Date

A.207

Case 1:14-cr-00340-GTS   Document 67   Filed 12/22/15   Page 6 of 7

Judgment — Page ___6___ of ___7___

DEFENDANT: Stephen M. Howells II
CASE NUMBER: DNYN514CR000340-001

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | **Assessment** | **Fine** | **Restitution** |
|---|---|---|---|
| **TOTALS** | $  2,100 | $  Waived | $  Deferred |

X   The determination of restitution is deferred for ___90 days___. An *Amended Judgment in a Criminal Case* (AO 245C) will be entered after such determination.

☐   The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| **Name of Payee** | **Total Loss\*** | **Restitution Ordered** | **Priority or Percentage** |
|---|---|---|---|
| | | | |

**TOTALS**        $ _____        $ _____

☐   Restitution amount ordered pursuant to plea agreement  $ _____

☐   The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐   The court determined that the defendant does not have the ability to pay interest and it is ordered that:

☐   the interest requirement is waived for the    ☐ fine    ☐ restitution.

☐   the interest requirement for the    ☐ fine    ☐ restitution is modified as follows:

\* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

A.208

AO 245B    NNY(Rev. 10/05)Judgment in a Criminal Case
Sheet 6 — Schedule of Payments

Judgment — Page   7   of   7

DEFENDANT:       Stephen M. Howells II
CASE NUMBER:    DNYN514CR000340-001

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties are due as follows:

**A**  X  In full immediately; or

**B**  ☐  Lump sum payment of $ _____ due immediately, balance due

     ☐  not later than _____ , or
     ☐  in accordance with  ☐ D,  ☐ E,  ☐ F, or  ☐ G below; or

**C**  ☐  Payment to begin immediately (may be combined with  ☐ D,  ☐ E, or  ☐ G below); or

**D**  ☐  Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after the date of this judgment; or

**E**  ☐  Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after release from imprisonment to a term of supervision; or

**F**  ☐  Payment during the term of supervised release will commence within _____ (e.g., 30 or 60 days) after release from imprisonment.  The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**G**  ☐  Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment.  All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to **Clerk, U.S. District Court, Federal Bldg., 100 S. Clinton Street, P.O. Box 7367, Syracuse, N.Y. 13261-7367**, unless otherwise directed by the court, the probation officer, or the United States attorney.  If a victim cannot be located, the restitution paid to the Clerk of the Court for that victim shall be sent to the Treasury, to be retrieved if and when the victim is located.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐  Joint and Several

     ☐  Defendant and Co-Defendant Names and Case Numbers (including defendant number), Total Amount, Joint and Several Amount, and corresponding payee, if appropriate.

     ☐  The Court gives notice that this case involves other defendants who may be held jointly and severally liable for payment of all or part of the restitution ordered herein and may order such payment in the future.

☐  The defendant shall pay the cost of prosecution.

☐  The defendant shall pay the following court cost(s):

X  The defendant shall forfeit the defendant's interest in the following property to the United States:

**All right, title, and interest in the items listed in the Preliminary Order of Forfeiture signed by the Court on August 4, 2015.**

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal,(5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

# A.209

Local Criminal Notice of Appeal Form.

## NOTICE OF APPEAL
**United States District Court**

**Northern District of New York**

UNITED STATES OF AMERICA

-v.-

STEPHEN M. HOWELLS, II

Docket No.: _____ 14-CR-340 (GTS)

HON. GLENN T SUDDABY

(District Court Judge)

Notice is hereby given that _____ STEPHEN M. HOWELLS, II _____ appeals to the United States Court of Appeals for the Second

Circuit from the judgment [ X ] other [ _____ ] _____

(specify)

entered in this action on _____ DECEMBER 22, 2015 _____ (date)

Offense occurred after November 1, 1987    Yes [☒]    No [ ]

This appeal concerns: Conviction only [ ]    Sentence only [ ]    No [ ]

Date _____ DECEMBER 29, 2015 _____

TO _____ LISA M. FLETCHER , ESQ. _____

Address    OFFICE OF THE UNITED STATES  ATTORNEY

U.S. COURTHOUSE & FEDERAL BLDG.

SYRACUSE, NEW YORK   13261

ADD ADDITIONAL PAGE (IF NECESSARY)

RANDI J. BIANCO,  ESQ.

(Counsel for Appellant)

Address    OFFICE OF THE FEDERAL PUBLIC DEFENDER

4 CLINTON SQUARE, 3RD FLOOR

SYRACUSE, NEW YORK 13202

Telephone Number: _____ 315-701-0080

| TO BE COMPLETED BY ATTORNEY | TRANSCRIPT INFORMATION -FORM B |
|---|---|
| ▶ **QUESTIONNAIRE** | ▶ **TRANSCRIPT ORDER**    ▶ DESCRIPTION OF PROCEEDINGS FOR WHICH TRANSCRIPT IS REQUIRED (INCLUDE DATE) |

|  |  | Dates |
|---|---|---|
| [ ] I am ordering a transcript | Prepare transcript of |  |
| [☒] I am not ordering a transcript | [ ] Prepare proceedings |  |
| Reason | [ ] Trial |  |
| [ ] Daily copy is available | [ ] Sentencing |  |
| [ ] U.S. Attorney has placed order | [ ] Post-trial proceedings |  |
| [ ] Other. Attach explanation |  |  |

The attorney certifies that he/she will make satisfactory arrangements with the court reporter for payment of the cost of the transcript. (FRAP 10(b)).    ▶

Method of payment    [ _____ ] Funds

| ATTORNEY'S SIGNATURE    S/RANDI J. BIANCO, ESQ. | DATE    DECEMBER 29, 2015 |
|---|---|

| ▶ **COURT REPORTER ACKNOWLEDGMENT** | To be completed by Court Reporter and forwarded to Court of Appeals, |
|---|---|

| Date order received | Estimated completion date | Estimated number of pages |
|---|---|---|
|  | Date _____    Signature _____ (Court Reporter) |  |

### DISTRIBUTE COPIES TO THE FOLLOWING:

1. Original to U.S. District Court (Appeals Clerk).
2. Copy U.S. Attorney's Office.
3. Copy to Defendant's Attorney

4.  U.S. Court of Appeals
5.  Court Reporter (District Court)

USCA-2
FORM A Rev. 10-02

A.210

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

## ELECTRONIC NOTICE OF CRIMINAL APPEAL & CLERK'S CERTIFICATION

Dear Clerk of the Court,

Please take notice that on December 29, 2016 the court received a notice of appeal.  This notice serves to inform you of the pending appeal and provides you with the information needed to process the appeal.

I, LAWRENCE K. BAERMAN, CLERK, U.S. District Court for the Northern District of New York, DO, HEREBY CERTIFY that all the foregoing docket entries, are maintained electronically on the court's CM/ECF system and constitute the Record on Appeal in the below listed action.

IN TESTIMONY WHEREOF, I have hereunto set my hand and caused the Seal of said Court to be hereto affixed at the City of Syracuse, New York, this 5th day of January, 2016.

Lawrence K. Baerman, Clerk
U.S. District Court

s/

By:      Joanne Bleskoski
         Deputy Clerk

## Case Information

| | |
|---|---|
| Case Name & Case No. | USA vs. Stephen M. Howells, II  5:14-CR-340-001 |
| Docket No. of Appeal: | 71 - Notice of Appeal |
| Document Appealed: | 67 - Judgment |
| Fee Status: | Waived (OFPD)  X |
| Counsel: | OFPD  X |
| Time Status: | Timely  X |

A.211