# 15-4192

*To be Argued by:* STEVEN D. CLYMER

## United States Court of Appeals
### FOR THE SECOND CIRCUIT
### Docket No. 15-4192

UNITED STATES OF AMERICA,
*Appellee,*
v.
STEPHEN M. HOWELLS, II, NICOLE F. VAISEY,
*Defendants-Appellants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

## BRIEF FOR APPELLEE UNITED STATES OF AMERICA

Richard S. Hartunian
*United States Attorney for the*
  *Northern District of New York*
100 South Clinton Street
Syracuse, NY 13261-7198
Tele: 315-448-0672
Email: Steven.D.Clymer@usdoj.gov

LISA M. FLETCHER
STEVEN D. CLYMER
*Assistant United States Attorneys*
  *of Counsel*

# TABLE OF CONTENTS

PAGE

STATEMENT OF THE ISSUES PRESENTED .......1

STATEMENT OF THE CASE ..................................2

    A.  Introduction.................................................2

    B.  Procedural History ......................................3

STATEMENT OF FACTS .......................................5

    A.  Offense Conduct ........................................5

        1.  The Kidnapping and Sexual Abuse of Victim #1, Age Eleven, and Victim #2, Age Six ........................5

        2.  The Efforts to Destroy and Conceal Evidence, Questioning of Howells and Vaisey, and the Execution of a Federal Search Warrant .................................9

        3.  The Other Children Whom Howells and Vaisey Sexually Exploited.............................................10

          a.  Victim #4, Age Eight ...................11

          b.  Victim #3, Age Seven ...................12

          c.  Victim #5, Age Five, and Victim #6, Age Ten.......................15

ii

    4. Other Forensic Evidence ...................15

B.   Sentencing Guidelines
    Calculations ...............................17

C.   Sentencing.................................19

SUMMARY OF ARGUMENT .............................26

ARGUMENT .........................................28

POINT I:

    The District Court Did Not Commit Error,
    Plain or Otherwise, By Implementing
    Howells' "Total Punishment" by Imposing
    Consecutive Statutory Maximum Terms of
    Imprisonment on Each Count of
    Conviction. ......................................28

A.   Background............................28

B.   Governing Law ........................29

C.   Standard of Review...................33

D.   Discussion.............................35

    1. Despite Howells' assertions to
    the contrary, he failed to raise his
    claim of procedural error below
    despite opportunities to do so. .............35

iii

2.  The district court did not commit error, plain or otherwise, by imposing a 6,960-month term of imprisonment in order to implement a guidelines life term. ........37

Point II:

Howells' Within-Guidelines 6,960-Month Term of Imprisonment Was Not Substantively Unreasonable and Not Unconstitutionally Cruel or Unusual...............44

A.  Governing Law .........................................44

B.  Standard of Review...................................45

C.  Discussion................................................46

1.  Anticipated State Sentence .................49

2.  Post-Crime Conduct ..........................52

3.  Personal Characteristics......................55

4.  Eighth Amendment Claim...................56

CONCLUSION ......................................................59

iv

TABLE OF AUTHORITIES

CASES:

*Harmelin v. Michigan*,
  501 U.S. 957 (1991) ...........................................44

*Puckett v. United States*,
  556 U.S. 129 (2009) ...........................................34

*Rivera v. United States*,
  2012 WL 3043110
  (D. Conn. July 25, 2012) ....................................33

*United States v. Adams*,
  768 F.3d 219 (2d Cir. 2014),
  *cert. denied*, 135 S. Ct. 1726 (2015) ..................45

*United States v. Angle*,
  254 F.3d 514 (4th Cir. 2001)..............................30

*United States v. Broxmeyer*,
  699 F.3d 265 (2d Cir. 2012)...............................45

*United States v. Bullock*,
  550 F.3d 247 (2d Cir. 2008)...............................44

*United States v. Carter*,
  110 F. App'x 165 (2d Cir. 2004)..................46, 51

*United States v. Cavera*,
  550 F.3d 180 (2d Cir. 2008)........................44, 45

v

*United States v. Craig*,
703 F.3d 1001 (7th Cir. 2012)............................31

*United States v. Dominguez Benitez*,
542 U.S. 74 (2004) .............................................34

*United States v. Elgabrowny*,
10 F. App'x 23 (2d Cir. 2001).......................32, 42

*United States v. Fernandez*,
443 F.3d 19 (2d Cir. 2006)..................................46

*United States v. Florez*,
447 F.3d 145 (2d Cir. 2006)................................56

*United States v. Frady*,
456 U.S. 152 (1982) ...........................................35

*United States v. Gonzalez*,
529 F.3d 94 (2d Cir. 2008)..................................44

*United States v. Hamilton*,
548 F. App'x 728 (2d Cir. 2013)..................40, 42

*United States v. Huffstatler*,
571 F.3d 620 (7th Cir. 2009)..............................56

*United States v. Ivory*,
532 F.3d 1095 (10th Cir. 2008).........................41

*United States v. Johnson*,
451 F.3d 1239 (11th Cir. 2006).........................57

*United States v. Labbe*,
588 F.3d 139 (2d Cir. 2009)................................33

vi

*United States v. Lewis*,
626 F. App'x 896 (11th Cir. 2015) ....................51

*United States v. Lott*,
310 F.3d 1231 (10th Cir. 2002)...........................41

*United States v. Marcus*,
560 U.S. 258 (2010) ...........................................34

*United States v. Matta*,
777 F.3d 116 (2d Cir. 2015)...............................44

*United States v. McLean*,
287 F.3d 127 (2d Cir. 2002).........................30, 34

*United States v. McLeod*,
251 F.3d 78 (2d Cir. 2001)..................................30

*United States v. Rahman*,
189 F.3d 88 (2d Cir. 1999).....................30, 32, 37

*United States v. Rigas*,
490 F.3d 208 (2d Cir. 2007)................................45

*United States v. Rigas*,
583 F.3d 108 (2d Cir. 2009)................................45

*United States v. Rivera*,
546 F.3d 245 (2d Cir. 2008)................................46

*United States v. Selioutsky*,
409 F.3d 114 (2d Cir. 2005)................................33

*United States v. Thavaraja*,
740 F.3d 253 (2d Cir. 2014)................................46

vii

*United States v. Thompson*,
   523 F.3d 806 (7th Cir. 2008)...............................41

*United States v. Turner*,
   720 F.3d 411 (2d Cir. 2013)................................34

*United States v. Veysey*,
   334 F.3d 600 (7th Cir. 2003).............................41

*United States v. Villafuerte*,
   502 F.3d 204 (2d Cir. 2007)..............................34

*United States v. Vowell*,
   516 F.3d 503 (6th Cir. 2008).............................57

*United States v. Yousef*,
   327 F.3d 56 (2d Cir. 2003)...........................44, 58

FEDERAL STATUTES, RULES AND OTHER
AUTHORITIES:

18 U.S.C. § 1201(a)(1)...........................................53

18 U.S.C. § 3553(a)...............................20, 21, 44, 56

18 U.S.C. § 3553(a)(1)..........................................55

18 U.S.C. § 3553(e)..............................................56

18 U.S.C. § 2251(a)...........................................3, 29

18 U.S.C. § 2251(e)...........................................3, 29

18 U.S.C. § 2252A(a)(5)(B)................................3, 29

viii

18 U.S.C. § 2252A(b)(2) ....................................... 3, 29

18 U.S.C. § 2256(8)(A) ........................................... 3

Fed. R. Crim. P. 52(a) ............................................ 42

U.S.S.G. § 2G2.1(d)(1) ........................................... 17

U.S.S.G. § 2G2.1 cmt. n.5 ....................................... 17

U.S.S.G. § 3A1.3 ................................................... 50

U.S.S.G. § 3D1.4 ................................................... 17

U.S.S.G. § 4B1.5(b) ........................................... 17, 18

U.S.S.G. § 5G1.2 ............................................. passim

U.S.S.G. § 5G1.2(a) ............................................... 31

U.S.S.G. § 5G1.2(b) ............................................... 31

U.S.S.G. § 5G1.2(c) ............................................... 31

U.S.S.G. § 5G1.2(d) ......................................... passim

U.S.S.G. § 5G1.2 cmt. n.1 ....................................... 30

U.S.S.G. § 5G1.3(c) ............................................... 51

STATE STATUTES, RULES AND OTHER AUTHORITIES:

NYS Penal Law § 135.2 ........................................... 18

# United States Court of Appeals
## FOR THE SECOND CIRCUIT
## Docket No. 15-4192

---

UNITED STATES OF AMERICA,
*Appellee,*

v.

STEPHEN M. HOWELLS, II, NICOLE F. VAISEY,
*Defendants-Appellants.*

---

## BRIEF FOR THE UNITED STATES OF AMERICA

---

## STATEMENT OF THE ISSUES PRESENTED

1. Whether the district court committed error, plain or otherwise, when, to implement a sentence of life imprisonment and comply with the guidelines' mandate that terms of imprisonment on multiple counts of conviction be consecutive if necessary to achieve the total punishment, it imposed the maximum term of imprisonment for each of the defendant's multiple counts of conviction and made those terms consecutive, resulting in a 6,960-month term of imprisonment.

2. Whether the defendant's within-guidelines 6,960-month term of imprisonment is substantively unreasonable or unconstitutionally cruel and unusual punishment when the defendant (a) conspired to and

2

did forcibly kidnap, drug, and hold captive in chains and handcuffs two sisters, ages six and eleven, enabling the defendant to repeatedly sexually exploit them and produce pornographic images of some of that abuse; (b) gained access to four other females, ages five to ten, by abusing their parents' trust, thereby enabling the defendant, sometimes acting with his co-conspirator, to drug and sexually exploit them over a course of several months and produce pornographic images of that abuse; and (c) possessed a massive collection of child pornography that included depictions of torture and bestiality involving prepubescent females.

## STATEMENT OF THE CASE

### A. Introduction

Defendant-appellant Stephen M. Howells, II, appeals from the sentence imposed by the United States District Court for the Northern District of New York (Suddaby, *C.J.*) following his conviction by guilty plea for conspiracy to sexually exploit children for the purpose of producing child pornography, fifteen counts of sexual exploitation for the purpose of producing child pornography, and five counts of possession of child pornography. Howells contends that the district court committed procedural sentencing error by imposing the maximum sentence on each of his counts of conviction and running those terms of imprisonment consecutively to achieve the guidelines sentence of life imprisonment. He also

3

argues that the resulting 6,960-month term of imprisonment is substantively unreasonable and unconstitutionally cruel and unusual.

## B. Procedural History

On October 8, 2014, a federal grand jury in the Northern District of New York returned a superseding indictment charging Howells and codefendant Nicole Vaisey with conspiracy to sexually exploit children for the purpose of producing child pornography, in violation of 18 U.S.C. § 2251(a) and (e) [Count One]; and nine substantive counts of sexual exploitation for the purpose of producing child pornography, in violation of 18 U.S.C. § 2251(a) [Counts Two though Ten]. The superseding indictment also charged Howells alone with six additional counts of sexual exploitation for the purpose of producing child pornography, in violation of 18 U.S.C. § 2251(a) [Counts Eleven though Sixteen]; and five counts of possession of child pornography, with each violation involving prepubescent minors and minors who had not attained 12 years of age, in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and (b)(2) and 2256(8)(A) [Counts Seventeen through Twenty-One]. A. 27-29; Dkt. #21.[1]

---

[1] References to pages of the appendix that Howells filed are preceded by "A." References to entries in the district court's docket report in NDNY

4

On May 8, 2015, Howells pled guilty to all counts in the indictment without a plea agreement. A. 54-99. On December 17, 2015, the district court sentenced Howells principally to a 360-month term of imprisonment per count on Counts One through Sixteen and a 240-month term of imprisonment on each of Counts Seventeen through Twenty-One, all to be served consecutively, for a total term of 6,960-months, A. 194, to be followed by a life term of supervised release. A. 198-99. Judgment was entered on December 22, 2015. A. 203-09; Dkt. #67. Howells filed a timely notice of appeal on December 29, 2015. A. 210; Dkt. #71.

Howells is serving his term of imprisonment.

---

Case No. 5:14-CR-340-GTS are preceded by "Dkt." The docket report appears at A. 1-20.

5

## STATEMENT OF FACTS[2]

### A. Offense Conduct

#### 1. The Kidnapping and Sexual Abuse of Victim #1, Age Eleven, and Victim #2, Age Six

On August 13, 2014, Howells and Vaisey forcibly kidnapped two girls, ages 11 ("V-1") and 6 ("V-2"), from an Amish farm stand in front of their residence in Huevelton, New York in St. Lawrence County. PSR ¶ 30. Howells and Vaisey had a dominant/submissive sexual relationship in which he played the role of the "master" and she the "slave." PSR ¶¶ 53-54. They had been planning to kidnap children for several months as a means to acquire sex slaves for Howells. PSR ¶¶ 37, 59. In text messages they discussed having seen possible abduction victims ("pixies/princesses"); Vaisey having to "drive [Howells] around all day so you can look for someone to bring home that you want more than me"; "shopping" for children; and soundproofing the house that they shared. PSR ¶ 59. Howells selected V-1 and V-2 as intended victims when he saw them

---

[2] The facts set out in the text are based on the presentence investigation report ("PSR"), which has been filed with this Court. Howells did not object to the account of his conduct in the PSR. PSR at p. 60; (noting no objections to the report); A. 183.

6

at the farm stand a week before the abduction. PSR ¶ 37.

On the day of the kidnapping, Howells and Vaisey approached the farm stand at about 7:00 p.m. in Howells' four-door white vehicle with Vaisey driving. PSR ¶¶ 30, 37. They had a dog in the car that they used to lure the girls. PSR ¶ 30. Howells forced both victims into the back seat of the vehicle, put them on the floor to prevent them from seeing out of the windows, and made efforts to silence them as they attempted to scream. PSR ¶ 31. Howell, who had been a registered nurse since 2004, PSR ¶¶ 303, 305, used a syringe to inject the older of the victims, V-1, with a drug known as "Versed" or "Midazolam." PSR ¶¶ 31, 37 & n.1. Versed causes drowsiness and forgetfulness. PSR ¶ 37 n.1. As explained below, Howells had experience administering controlled substances and other drugs to children in order to facilitate sexual abuse.

When the vehicle reached Howells' residence, the victims were hurried inside so they would not be seen. PSR ¶ 31. Howells gave them a bath together, shaved V-1's pubic hair, told them to brush their teeth, and provided them with different clothes, a black negligee for V-1 and a night shirt for V-2. PSR ¶¶ 31, 38. He put them into a bed, handcuffed their legs together, chained them to the bed, and undressed them. PSR ¶ 32. Howells and Vaisey got into the bed and had sex with each other. PSR ¶ 32.

7

Howells then ███████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████ To facilitate the sexual abuse, Howells administered a sleep-inducing medication called Ambien to the victims.  PSR ¶ 38 & n.2.  Howells sexually assaulted the victims multiple times in the bedroom and bathroom over the course of approximately 25 hours.  PSR ¶ 38.  Vaisey photographed the sexual abuse.  PSR ¶ 32.  Howells also had a webcam and a laptop computer recording the abuse.  PSR ¶ 38.  When Howells was not sexually abusing the victims, he kept them handcuffed together by the ankles and chained them to the bed or in the attic.  PSR ¶ 38.

Howells and Vaisey moved the girls to the attic after Vaisey saw a news account about the kidnapping.  They were chained to the floor and given a bucket to use as a toilet.  PSR ¶ 39.  In the morning, Howells took the six-year-old victim to the bathroom to clean her up because she had gotten sick from the Ambien.  PSR ¶ 39.  ████████████
████████████████████████████████████
████████████████████████████████████

After feeding breakfast to the victims, PSR ¶¶ 33, 39, Howells started soundproofing a room off the master bedroom, a task he needed to complete before

8

his own children came to visit. PSR ¶ 39. The soundproofing was necessary to keep the victims captive without detection. PSR ¶ 6(l). Howells again bathed the younger victim, who still smelled from having been sick.

Howells told Vaisey that he was not able to soundproof the room. They discussed options, rejecting the idea of killing the victims. PSR ¶ 40. They decided to release the girls in a rural area, using two cars so that Vaisey could travel ahead on a pre-determined route and communicate with Howells by text message to avoid detection by law enforcement. PSR ¶ 40. They wiped the victims down with vinegar and water, PSR ¶ 40, gave them their original clothing back, PSR ¶ 33, had them get into a red car, PSR ¶ 34, drove them to a wooded area, dropped them off, commanded them to go into the woods, and drove away. PSR ¶ 34, 40.

9

## 2. The Efforts to Destroy and Conceal Evidence, Questioning of Howells and Vaisey, and the Execution of a Federal Search Warrant

Howells and Vaisey used water, Comet soap, and Clorox bleach to clean items associated with the abduction and sexual abuse of V-1 and V-2, including the chains and handcuffs. They threw the toothbrushes in the garbage and washed bathrobes, clothes, and towels they had used. They burned an apron that one of the victims had left behind. PSR ¶ 40. They also hid the handcuffs and chains in a duffle bag and hid the videos they had produced on an encrypted computer hard drive. PSR ¶ 40, 44. They moved furniture and other items that they thought the victims could describe. PSR ¶ 40.

After they were released, the victims sought assistance from the occupant of a nearby house. The occupant took them home. They were interviewed by law enforcement officials and taken to the hospital. PSR ¶ 34.

Based on V-1's description of the house and vehicles used in the kidnapping, law enforcement officials located Howells' residence, which matched V-1's description. Howells and Vaisey met them outside the house, signed a consent-to-search form, and permitted them to enter the house. Once inside, the law enforcement officials took photographs, which V-1 later identified. PSR ¶¶ 35-36.

10

Federal agents obtained a warrant to search the residence, vehicles, and related property. While agents were obtaining the warrant, Howells and Vaisey were questioned by law enforcement officials and made statements admitting kidnapping, drugging, and sexually abusing V-1 and V-2, and producing images of the sexual exploitation. PSR ¶¶ 37-40.

Among the items seized during execution of the federal search warrant at the residence was digital storage media, including five encrypted internal hard drives on Howells' homemade computer. PSR ¶ 45. Law enforcement officials were able to decrypt the hard drives and view their contents when a special agent of the Federal Bureau of Investigation ["FBI"] located the encryption key in a text message that Howells had sent to Vaisey. PSR ¶ 6(n). Among the evidence found on the hard drives were images and videos of V-1 and V-2 in bed with Howells and Vaisey, with both victims bound by chains and Howells sexually abusing V-1. PSR ¶ 45.

### 3. The Other Children Whom Howells and Vaisey Sexually Exploited

Based on the forensic evidence located on Howells' encrypted computer hard drives and statements that Howells and Vaisey made to law enforcement, law enforcement officials were able to determine that Howells, on multiple occasions, sometimes alone and sometimes with Vaisey's

11

involvement, sexually abused four other young girls whom he had drugged, and produced video images of the exploitation.

### a. Victim #4, Age Eight

On December 16, 2012, Howells, acting alone, sexually abused V-4, ██████████████████ ██████████. Howells, who believed that V-4 was seven years old, told authorities that he injected her with Benadryl.[3] PSR ¶ 42. There was evidence that this victim also had been exposed to oxycodone (trade name Oxycontin), a schedule II painkiller, and Ambien. PSR ¶ 6(a).

Investigators located twelve images and twelve videos of Howells' sexual abuse of V-4 on one of the encrypted hard drives. Four of the videos depict the abuse on December 16, 2012, from different angles. They show Howells "expose [V-4's] vagina to the camera, fondle her vagina, administer an injection into V-4's buttocks, masturbate while watching V-4 on the bed, and masturbate and rub his penis on V-4's foot." PSR ¶ 18. Howells told investigators that he had to terminate his abuse of V-4 because she "really wasn't out enough" despite the drug injection. PSR ¶ 42.

---

[3] Benadryl is the brand name for diphenhydramine, a prescription antihistamine that has, as one of its side effects, drowsiness. *See* https://www.drugs.com/benadryl.html.

12

### b. Victim #3, Age Seven

Victim #3, ███████████████, was the child whom Howells sexually abused and videotaped most frequently. In September 2013, Howells and Vaisey began to discuss through text messages a plan to sexually abuse children, including V-3. The plan included inviting V-3 to sleep at their house and giving V-3 a "special drink" to help her sleep. PSR ¶ 56.

The initial abuse of V-3 occurred on September 7, 2013. The abuse continued well into 2014 as Vaisey used her relationship with V-3 to have her frequently stay overnight at the house with Howells and Vaisey. PSR ¶¶ 6(b), 56. Law enforcement located video files on Howells' encrypted hard drives showing sexual abuse of V-3 on the following days:

- September 7, 2013: the sexual abuse, which Vaisey filmed, included Howells vaginally raping V-3, putting his mouth on her vagina, and fondling her vagina. PSR ¶ 8.

- September 22, 2013: the abuse, which involved V-3, V-5, and V-6, included Howells inserting an object into V-3's vagina or anus until she woke up. PSR ¶ 19.

13

- October 20, 2013: the sexual abuse, which Vaisey filmed, included Howells vaginally raping V-3, putting his mouth on her vagina, and rubbing his penis on her vagina and anus. PSR ¶ 9.

- November 16, 2013: the sexual abuse, which Vaisey filmed, included Howells vaginally raping V-3 and digitally penetrating her vagina. PSR ¶ 10.

- December 29, 2013: the sexual abuse, portions of which both Howells and Vaisey filmed, included Vaisey performing oral sex on V-3 and using a vibrator on her vagina; Howells and Vaisey both digitally penetrating V-3's vagina, and Howells vaginally raping V-3 and ejaculating. PSR ¶ 13.

- January 24, 2014: the sexual abuse included Howells vaginally raping V-3 and ejaculating inside her vagina. PSR ¶ 22.

- April 18, 2014: the sexual abuse, which Vaisey filmed, included Howells vaginally raping V-3. PSR ¶ 14.

- April 19, 2014: the sexual abuse included Howells removing V-3's pajamas and dressing her in a black negligee, fishnet panties, a garter, fishnet stockings, and a black studded collar. Howells put his mouth on V-3's vagina and had her use a

14

vibrator on her vagina, and manually stimulate and then lick his penis. PSR ¶ 23.

- May 31, 2014: the sexual abuse, which Vaisey filmed and in which she participated, included Howells vaginally raping V-3. During the abuse, Vaisey repeatedly commanded V-3 to kiss Howells' penis. PSR ¶ 19.

In February 2014, Howells and Vaisey had a conversation by text message about Howells having contracted a venereal disease and the need to treat V-3, who may have caught it from Howells. PSR ¶ 57. They also discussed the need to have Howells refrain from "playing" with V-3 in the meantime, which Howells stated would be "a challenge." Five days later, Vaisey told Howells that she no longer wanted V-3 as a "playmate" because "she brings a lot of drama with her and she's not mentally prepared for the situation." PSR ¶ 57. Nonetheless, the abuse continued. In advance of the sexual abuse on April 18 and 19, 2014, described above, Howells, by text message, commanded Vaisey, who already had given V-3 "two of each" kind of sleeping pill, to give her two to three more of the "10mg" to put her to sleep. PSR ¶ 58.

Investigators located 111 images and 62 videos of the sexual abuse of V-3. PSR ¶ 45. There was evidence that Howells drugged this child with oxycodone, oxymorphone (trade name Opana),

15

morphine, methadone, Ambien, Versed, diazepam (trade name Valium), nordiazepam (trade name Nordaz), temazepam (trade name Restoril), and alprazolam (trade name Xanax).  PSR ¶ 6(a).

### c.  Victim #5, Age Five, and Victim #6, Age Ten

Howells also sexually abused ███████, V-5 and V-6, ████████████████████████, and produced pornographic videos of the exploitation. Vaisey participated in some of the exploitation and filming of V-6.  Howells drugged these victims with Ambien and also used oxycodone to drug V-6.  PSR ¶ 6(a).  Investigators located on Howells' encrypted hard drives videos of this abuse occurring on September 22, 2013 (V-5 and V-6, as well as V-3); November 16, 2013 (V-5); November 17, 2013 (V-6); December 13, 2016 (V-5 and V-6); and December 15, 2013 (V-6).  Investigators located seven video files depicting the abuse of V-5 and sixteen images and 22 videos depicting the abuse of V-6.  PSR ¶ 45.

### 4. Other Forensic Evidence

On Howells' encrypted hard drives, investigators located a total of 3,540,445 images and 28,356 videos.  They reviewed all of the videos and 2.4 million of the images and identified "thousands, if not over a hundred thousand" images and videos that depicted child pornography, with creation dates between 1999 and 2014.  Hundreds of the images and

16

29 videos on the hard drives were child pornography of infants or toddlers. PSR ¶ 45. The images included one of a prepubescent female, later determined to be seven years old, on her knees and handcuffed with an adult male's penis in her mouth, PSR ¶ 25; and an image showing a minor female, approximately nine years old, engaged in mouth-to-genital contact with a dog, PSR ¶ 26. One of the hard drives contained a video of the sexual torture of an infant female. PSR ¶ 29. Investigators also identified over 250 files of child pornography produced by digital devices (an IPhone and a Canon digital camera) that Howells owned. PSR ¶ 45.

The hard drives also contained erotic stories of rape and abuse that Howells wrote and lists of websites related to the exploitation of children. PSR ¶ 45. The internet history of Howells' computer revealed search engine queries about the administration and effect of various drugs, including signs of overdose, and stun guns and tasers. There also were word searches on www.thepiratebay.sx for "bondage"; "molesting"; "assault"; "rape"; "ripping"; "rough sex"; "sleep assault"; "the maiden rape assault"; and "tween." PSR ¶ 46.

17

## B. Sentencing Guidelines Calculations[4]

For Counts One through Sixteen in the superseding indictment, each charging either sexual exploitation for the purpose of producing child pornography or conspiracy to do so, the Probation Office, relying on U.S.S.G. § 2G2.1(d)(1) and U.S.S.G. § 2G2.1 cmt. n.5, created a separate "group" for each victim named in each count, for a total of 22 groups. PSR ¶¶ 67-69. It then calculated an adjusted offense level for each group by determining the base offense level and adding levels for applicable specific offense characteristics and adjustments. PSR ¶¶ 71-258. The Probation Office then created a single group for the remaining counts in the superseding indictment – each charging possession of child pornography and pertaining to one of the five internal hard drives on Howells' computer – and determined an adjusted offense level for that group. PSR ¶ 259-268.

Applying the multiple count grouping rules in U.S.S.G. § 3D1.4, the Probation Office calculated a combined adjusted offense level of 53. PSR ¶ 269-272. This level was reduced by three levels for Howells' prompt acceptance of responsibility and a government motion. PSR ¶¶ 273-275. It was, however, increased five levels under U.S.S.G.

---

[4] The 2015 United States Sentencing Guidelines Manual was used to determine Howells' guidelines sentencing range. PSR ¶ 66.

18

§ 4B1.5(b) because Howells qualified as a "repeat and dangerous sex offender against minors." PSR ¶ 276. This resulted in an offense level of 55. PSR ¶ 277. Under the guidelines, this offense level was treated as a total offense level of 43, which is the highest offense level on the sentencing table. PSR ¶ 278.

The PSR noted that Howells had pled guilty in St. Lawrence County court to two counts of kidnapping in connection with the abduction of V-1 and V-2 and was awaiting sentencing. PSR ¶ 280.[5] Because he had no other criminal convictions, his criminal history category was I. PSR ¶ 281.

The PSR explained that, for Counts One through Sixteen, the statutory minimum sentence per count was fifteen years and the statutory maximum sentence was thirty years. For Counts Seventeen though Twenty-One, the statutory maximum sentence per count was twenty years. PSR ¶ 312. The PSR also explained that the sentencing guidelines provide for a life term of imprisonment for an offender with

---

[5] The PSR states that Howells was convicted by guilty plea of two counts of first degree kidnapping. In fact, as reflected by the redacted information and certificate of conviction included in an addendum to this brief, Howells was convicted of two counts of second degree kidnapping, in violation of NYS Penal Law § 135.20.

19

an offense level of 43 and a criminal history category of I.  PSR ¶ 313.

Because no count of conviction permitted imposition of a life term of imprisonment, the PSR, relying on U.S.S.G. § 5G1.2, determined that the guidelines range was 6,960 months or 580 years. PSR ¶ 313-314.  This is the term that results from imposing the statutory maximum sentence on each count of conviction and making those sentences run consecutively to each other.

## C. Sentencing

Howells did not object to either the guidelines calculations in the PSR or the recommended 6,960-month term of imprisonment. PSR at p. 60. Similarly, although Howells' sentencing memorandum requested a downward variance to a thirty-year sentence, it did not contest that the guidelines recommended life imprisonment or dispute that, under the circumstances present in this case, U.S.S.G. § 5G1.2 mandated that the district court achieve that outcome by imposing the maximum statutory term of imprisonment on each count of conviction and running those terms consecutive to each other.  A. 101-14.

At the sentencing hearing, defense counsel told the district court that she had no objections to the offense level and criminal history calculations in the PSR.  A. 183.  The defense again requested a

20

variance to a thirty-year sentence but did not contend that the PSR's recommended term of imprisonment was erroneous. A. 188-92.

After hearing from defense counsel and Howells, the district court explained that it had "reviewed and considered all the pertinent information, including, but not limited to, the Presentence Investigation Report, the addendum, submissions by counsel, and the Sentencing Guideline Manual, as well as the factors outlined in 18 U.S.C. Section 3553(a)," A. 193, and imposed a 6,960-month term of imprisonment:

> The Court adopts the factual information and the guideline applications contained in the Presentence Investigation Report. The Court finds the total offense level is 43, the criminal history category is I, and the guideline imprisonment range is life. However, since no count of conviction carries a potential life sentence, the guideline sentence becomes 580 years, or 6,960 months, pursuant to U.S.S.G. Section 5G1.2(b). As this is a combined length of the authorized maximum of sentences for Counts 1 through 21. As further instructed at 5G1.2(d), the sentence imposed on each count of conviction shall run consecutively to the extent necessary to produce a combined sentence equal to the total punishment, which again in this case is 580 years.

21

Upon your plea of guilty to Counts 1 through 21 of the superseding indictment, it is the judgment of this Court that you are hereby committed to the custody of the Bureau of Prisons to be imprisoned for a term of 6,960 months, or 580 years. This term consists of 360 months on Counts 1 through 16, and twenty years on counts 17 through 21, all to be served consecutively.

A. 193-94.

The district court explained its rationale for refusing to depart or vary downward from the guidelines as Howells had requested:

After reviewing all the facts in this case and considering the submissions by counsel, including your psychosexual evaluation and your background, I find no reason to depart or vary from the applicable guideline sentence given this Court's responsibility to impose a sentence that is sufficient, but not greater than necessary, to comply with the purpose of sentencing set forth in 18 U.S.C. Section 3553(a).

In fact, I find a guideline sentence is absolutely necessary to reflect the seriousness of your numerous crimes against children, to provide

22

just punishment for the extent of these crimes against children, and to deter others from engaging in the same incomprehensible conduct, that being the sexual exploitation, drugging, kidnapping, restraining and raping of children. There are few crimes more egregious than these, and I find the sentence imposed today is sufficient, but not greater than necessary, to achieve the goals of sentencing after considering the multitude of aggravating factors, including, but not limited to, the number of children you harmed by satisfying your deviant sadistic sexual desires and the personality traits that enabled you to carry out your violent fantasies with no apparent guilt or remorse.

Indeed, as you indicated, you saw them as objects and nothing more but to be there for your own pleasure, the recording of such perverse abuse on numerous occasions over an extended period of time, and the extent of these recordings, which often involved multiple devices set up to capture the abuse from multiple angles, your position as a registered nurse and the use of this position to drug your child victims, some over and over again. As the records reflect, Victim 3 was found to have ten different drugs in her system. Notwithstanding your knowledge as a registered nurse, you were aware of the

23

dangers of drugging the children given the internet searches found on your computer and on the computer of your co-defendant, such as researching overdoses, will I die if I take Ambien and Benadryl together. Moreover, you are captured on the video administering additional drugs to already sedated children and shining a light into their [sic] eyes of these incapacitated children to evaluate the degree of their unconsciousness. And again, that demonstrates that you are fully aware of the dangerous consequences of you drugging these children, including the possibility of overdose and death.

When the victims known to you could no longer satisfy your deviant desires, you and your co-defendant spent months planning to kidnap children to be used as sex slaves. This plan included hours upon hours of driving around looking for children and building a soundproof room in order to imprison them, children, for an indefinite period of time. You and your co-defendant ultimately followed through with this reprehensible plan by kidnapping two Amish children. The Amish people, a symbol of simple and pure life, a life, two lives and many more affected that you destroyed. They are among the most vulnerable children in our society. The immense fear and harm you caused to the two victims is

24

unfathomable. And what you subjected them to is unspeakable. There is absolutely no evidence in the record that supports your current contention that you released these victims knowing you were going to be captured. To even suggest their release was out of guilt or remorse is incredible.

The record before this Court, including your own post-arrest statements, clearly demonstrates that the only reason you released these children was the realization that your room, your cell which was meant to imprison them was not soundproof. It was only after this realization that you and your co-defendant discussed your options and took steps to cover your tracks by scouting out a remote location ensuring the absence of law enforcement and getting rid of the evidence of your crimes after releasing the children in a wooded area. I put no merit in your attorney's argument that you released them in an area where you thought they would be discovered.

I've also considered the approximately 15 years you spent victimizing hundreds of other children by amassing an enormous collection of internet child pornography, including bondage, sadistic abuse and torture of very young children. Your collection consisted of tens of thousands of files depicting sexual

25

abuse of children, more than 180,000 sexually explicit files involving children whose ages are not readily apparent, and over 1 million files of child and teen erotica. Of these additional victims 389 children have been identified by law enforcement officials worldwide. All of these children, including those who haven't yet -- have yet to be identified, are victims of your offense.

Finally, this Court has considered the significant impact of your crimes on the community, including the immense fear and alarm caused by child abductions. You are, quite frankly, the threat parents worry about every day who have young children. You are the predator. You are the nightmares that never go away for young children. And most importantly, the unmeasurable harm and trauma that you have caused to each of your child victims and to their families. The lifelong devastation caused by your actions to so many is deserving of the sentence imposed today.

For all of these reasons, I find a guideline sentence is warranted, justified and reasonable because you are extremely dangerous and a violent sex offender. Only a life sentence can ensure the safety of the community, provide just punishment for the profound crimes

26

against children and afford adequate deterrence. I cannot in good conscience impose a sentence that will ever allow you to have access to children again.

A. 194-98.[6]

In the event that Howells was ever released, the district court also imposed a life term of supervised release. A. 198-99.

When asked by the district court if there was anything further, defense counsel voiced no objection to the length of the sentence, the district court's articulated rationale, or any other aspect of the sentence. A. 201.

## SUMMARY OF ARGUMENT

Because Howells had opportunities to object to the district court's stacking of the statutory maximum terms of imprisonment on each count of conviction to achieve the guidelines-recommended total punishment of life imprisonment and did not do so, his appellate challenge to this aspect of the sentence is subject to plain error review. Under any standard of appellate review, there was no procedural

---

[6] The district court reiterated its rationale for imposing a within-guidelines sentence in the written statement of reasons, which has been filed with this Court.

27

sentencing error. The district court employed the method that the guidelines mandate for achieving a total punishment of life imprisonment when, in a case in which there are multiple counts of conviction, no single count permits a life sentence. The alternative approach that Howells proposes finds no support in the law or common sense.

Under the circumstances present here, the within-guidelines 6,960-month term of imprisonment is reasonable and neither cruel nor unusual. Howells' conduct amply demonstrated that he is a dangerous, sadistic, amoral, and predatory pedophile. It was eminently reasonable and constitutional for the district court to exercise its considerable sentencing discretion to fully punish Howells for his horrific criminal conduct, deter like-minded pedophiles, and ensure that Howells will spend the remainder of his life in prison where he will not have access to children.

28

**ARGUMENT**

**POINT I:** **The District Court Did Not Commit Error, Plain or Otherwise, By Implementing Howells' "Total Punishment" by Imposing Consecutive Statutory Maximum Terms of Imprisonment on Each Count of Conviction.**

Howells argues that the district court committed procedural sentencing error by improperly determining that his "total punishment" was 580 years in prison when, according to Howells, the guidelines required an imprisonment term of 39.2 to 44.3 years. Howells' Opening Brief at 16-20. Howells further contends that because he objected to this alleged error in his sentencing memorandum and was not given an opportunity to raise it again at sentencing, his claim should be reviewed under the abuse of discretion standard, not for plain error. *Id*. at 16.

All of these contentions lack merit. Howells had multiple opportunities to raise this procedural claim below and never did so. In any event, his claim fails under any standard of review.

**A. Background**

As noted above, *see supra* at pp. 18-19, the advisory guidelines provided for a sentence of life

29

imprisonment. Howells does not dispute this. Howells' Opening Brief at 17 ("the 'total punishment' . . . was life"). But, none of the counts of conviction permitted imposition of a life term of imprisonment. Each of Counts One through Sixteen, charging violations of 18 U.S.C. § 2251(a), required an imprisonment term between fifteen and thirty years. *Id*. at § 2251(e). Each of Counts Seventeen through Twenty-One, charging violations of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2), required an imprisonment term of no more than twenty years.

**B. Governing Law**

Section 5G1.2(d) of the United States Sentencing Guidelines governs imposition of sentence in cases involving multiple counts of conviction when no single count provides for a term of imprisonment as long as the guidelines recommend. It provides that:

> If the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment. In all other respects, sentences on all counts shall run concurrently, except to the extent otherwise required by law.

The Commentary to this guideline provision reiterates the point: "If no count carries an adequate

30

statutory maximum, consecutive sentences are to be imposed to the extent necessary to achieve the total punishment." U.S.S.G. § 5G1.2 cmt. n.1; *see also United States v. McLean*, 287 F.3d 127, 136 (2d Cir. 2002) ("In other words, '[i]n the case of multiple counts of conviction, [section 5G1.2(d) of] the sentencing guidelines instruct[s] that if the total punishment mandated by the guidelines exceeds the statutory maximum of the most serious offense of conviction, the district court *must* impose consecutive terms of imprisonment to the extent necessary to achieve the total punishment.'" (quoting *United States v. Angle*, 254 F.3d 514, 518 (4th Cir. 2001) (en banc) (emphasis added)) (brackets in *McLean*).

The commentary further provides that "the combined length of the sentences ('total punishment') is determined by the court after determining the adjusted combined offense level and the Criminal History Category and determining the defendant's guideline range on the Sentencing Table in Chapter Five, Part A (Sentencing Table)." *Id.* Thus, "[t]otal punishment" means "the punishment determined after all relevant Guidelines' calculations have been made." *United States v. McLeod*, 251 F.3d 78, 82 (2d Cir. 2001).

In *United States v. Rahman*, 189 F.3d 88 (2d Cir. 1999), this Court described the process a district court should employ to implement section 5G1.2:

31

the Guidelines prescribe a precise regime for the decision as to consecutiveness of terms imposed on multiple counts. Unless the offense statute requires consecutiveness, *see* U.S.S.G. § 5G1.2(a), the sentencing judge first calculates the total punishment called for by the Guidelines. *See id*. § 5G1.2(b). Next, the sentencing judge notices whether that total punishment called for by the Guidelines is within or above the statutory maximum for the count carrying the highest maximum. *See id*. § 5G1.2(c). . . . If the total punishment called for by the Guidelines exceeds the statutory maximum for the count carrying the highest maximum, the judge imposes consecutive sentences, but only to the extent necessary to make the combined sentences on all counts equal to the targeted total punishment.

*Id*. at 155; *see also United States v. Craig*, 703 F.3d 1001, 1002 (7th Cir. 2012) ("Indeed, the guidelines tell the judge to sentence consecutively when necessary to bring the total sentence into the guidelines range, even though the sentence would exceed the statutory maximum sentence for any count of which the defendant was convicted, U.S.S.G. § 5G1.2(d), though as the guidelines are no longer mandatory the judge doesn't have to sentence consecutively in that circumstance.").

32

*Rahman* also explained that in a case in which the "total punishment" is life imprisonment and no count of conviction permits a life sentence, a district court faithfully applies U.S.S.G. § 5G1.2 by imposing the statutory maximum term of imprisonment on each count of conviction and running those terms consecutive to each other.

> In our case, Judge Mukasey faithfully applied section 5G1.2. For example, as to defendant El–Gabrowny, Judge Mukasey first determined that the total punishment called for by the Guidelines was life imprisonment. Since the count with the highest statutory maximum (Count One) carried a maximum of 20 years, he imposed sentences of 20 years on Count One, maximum sentences of 3 years on each of Counts Twenty to Twenty–Three (total, 12 years), and 5 years on each of Counts Twenty–Four to Twenty–Eight (total, 25 years). He then ran all sentences consecutively to approach the targeted total punishment of life, resulting in a sentence of 57 years.

189 F.3d at 155-56;[7] *see also United States v. Elgabrowny*, 10 F. App'x 23, 25 (2d Cir. 2001)

----

[7] *Rahman*, which was decided before the Supreme Court interpreted the guidelines to be advisory, also held that a district court, employing its discretion to depart from the guidelines, could impose concurrent

33

("Having determined that the treason guideline applied (carrying a base offense level of 43), the court properly applied U.S.S.G. § 5G1.2(d) and the grouping rules to determine that the aggregate 'total punishment' for all counts resulting in conviction was life imprisonment. The jury's guilty verdicts on each of the ten separate offenses authorized the court to sentence Elgabrowny to a term of imprisonment of up to 57 years – 20 years for the seditious conspiracy conviction plus 37 years for the additional offenses."); *Rivera v. United States*, No. 3:10–CV–1970, 2012 WL 3043110 at *5 (D. Conn. July 25, 2012) ("In light of the Guideline range of life imprisonment, the Guideline sentence would have been 70 years with every count running consecutively pursuant to section 5G1.2(d).").

## C. Standard of Review

This Court has explained that "[w]ith respect to Guidelines calculations generally . . . '[w]e review issues of law *de novo*, issues of fact under the clearly erroneous standard, mixed questions of law and fact either *de novo* or under the clearly erroneous standard depending on whether the question is predominantly legal or factual, and exercises of discretion for abuse of discretion.'" *United States v. Labbe*, 588 F.3d 139, 145 n.2 (2d Cir. 2009) (quoting *United States v.*

---

sentences despite U.S.S.G. § 5G1.2(d). *Id.* at 156-57. This aspect of *Rahman* has no application here.

34

*Selioutsky*, 409 F.3d 114, 119 (2d Cir. 2005) (internal citations omitted)).

But, where a defendant has failed to raise in the district court a challenge he makes on appeal to the lower court's computation of his guidelines' sentence, appellate review is for plain error only. *McLean*, 287 F.3d at 135.

Under the plain error standard, an appellate court may, in its discretion, correct an error not raised below, but only when the defendant has shown that: (1) there is an "error"; (2) the error is "clear or obvious, rather than subject to reasonable dispute"; (3) the error "affected the [defendant's] substantial rights, which in the ordinary case means" it "affected the outcome of the district court proceedings"; and (4) "the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *United States v. Marcus*, 560 U.S. 258, 262 (2010) (quoting *Puckett v. United States,* 556 U.S. 129, 135 (2009)). The defendant bears the burden of showing plain error. *See United States v. Dominguez Benitez*, 542 U.S. 74, 82 (2004); *United States v. Turner*, 720 F.3d 411, 427 (2d Cir. 2013).

This Court "keep[s] in mind the Supreme Court's guidance that reversal for plain error should 'be used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result.'" *United States v. Villafuerte*, 502 F.3d 204, 209 (2d

35

Cir. 2007) (quoting *United States v. Frady*, 456 U.S. 152, 163 n.14 (1982)).

**D. Discussion**

> **1. Despite Howells' assertions to the contrary, he failed to raise his claim of procedural error below despite opportunities to do so.**

Howells asserts that "the defense objected to [the calculation of his guidelines sentence] in its sentencing memorandum and was given no opportunity to object to the overall Guidelines calculation at the sentencing hearing." Howells' Opening Brief at 16 (citation omitted). These assertions are not true. Howells had ample notice in the district court that he faced a guidelines-recommended 6,960-month term of imprisonment and multiple opportunities to raise his present objection. He never did so.

At the change of plea hearing, the district court asked government counsel to describe the "projected Sentencing Guideline range." A. 93. The Assistant United States Attorney explained "that the defendant will score at resolved level 43 which calls for a life imprisonment sentence; however, because each count of conviction has a statutory maximum that is less than life, that sentence resolves back to the maximum amount possible in this case which would be 580 years." A. 94.

36

The PSR also explained that U.S.S.G. § 5G1.2 mandated a 6,960-month (580-year) term of imprisonment. PSR ¶¶ 313-14. A draft PSR was disclosed to the parties on September 11, 2015. Howells voiced no objections to the guidelines calculations in the PSR. PSR at p. 60.

On November 24, 2015, Howells filed his sentencing memorandum. A. 101-14; Dkt. #55. That memorandum referred to previously-made "objections to the factual contents contained in the PSR with probation," A. 102, but did not assert any claim that application of U.S.S.G. § 5G1.2 should result in a term of imprisonment different than that which the PSR recommended. The page of the sentencing memorandum that Howells cites in his appellate brief as the locus of the supposed objection preserving his sentencing claim for appeal – A. 105, *see* Howells' Opening Brief at 16 – argues for a 30-year term of imprisonment because "[s]tacking the sentences consecutively would be greater than necessary based on the . . . federal interest [remaining after Howells' anticipated twenty-five year sentence in state court for state offenses]." It does not, however, articulate any challenge to the determination under U.S.S.G. § 5G1.2 that Howells' guidelines' term of imprisonment was 6,960 months.

At the sentencing hearing, the district court first asked if there were objections to the facts, offense

37

level computations, or criminal history computations in the PSR. Howells' counsel voiced no objections. A. 183. Although not specifically asked at that point whether Howells objected to the guidelines' calculation of the term of imprisonment in the PSR, there was nothing preventing Howells's counsel from raising that objection. Further, the district court later provided defense counsel with an open-ended opportunity to address the court, during which she articulated a number of sentencing-related arguments but did not raise the claim now presented on appeal. A. 188-92. After it had imposed sentence, the district court again provided defense counsel an opportunity to speak. She told the court that there was nothing further to address. A. 201.

Under these circumstances Howells cannot credibly claim either that he raised his present procedural sentencing claim in the district court or was denied an opportunity to do so. Accordingly, his procedural claim should be reviewed for plain error only.

**2. The district court did not commit error, plain or otherwise, by imposing a 6,960-month term of imprisonment in order to implement a guidelines life term.**

The district court here fashioned Howells' life term of imprisonment using the approach this Court endorsed in *Rahman*, imposing the statutory

38

maximum term of imprisonment for each count of
conviction and stacking those sentences. *See* 189
F.3d at 155-56. It is true that the full sentence here –
6,960 months or 580 years – was not strictly
necessary to ensure that Howells would remain
imprisoned for the remainder of his life. Obviously,
a shorter sentence could have achieved the same
result. But, when a district court is advised by the
guidelines to impose a life sentence but is permitted
by statute to imprison the offender only for a term of
years, it cannot accurately predict how long the
offender will live. Thus, in a case like this one,
where there are multiple counts of conviction, each of
which can bear a consecutive sentence, the
sentencing court can best ensure the offender will
serve a full life sentence by stacking the statutory
maximum sentences for each count rather than by
employing some artificial limitation on the total term
of imprisonment.

Howells advances two arguments to support his
claim that the district court erred. First, he argues
that the court mistakenly determined that 580 years
imprisonment, not life imprisonment, was the "total
punishment." Howells' Opening Brief at 17-18. The
record does not support this claim. The district court
adopted "the guideline applications contained in the
Presentence Investigation Report." A. 193. The PSR
explained that "the guideline imprisonment range is
life." PSR ¶ 313. The district court also reiterated
that "the guideline imprisonment range is life."

39

A. 193.  It further made clear that the term of 580 years or 6,960 months became the guideline sentence "since no count of conviction carries a potential life sentence."  *Id*.  The court also explained that, "[a]s further instructed at 5G1.2(d), the sentence imposed on each count of conviction shall run consecutively to the extent necessary to produce a combined sentence equal to the total punishment, which again in this case is 580 years."  A. 194.  From all of the district court's remarks, it is clear that its closing reference to "which again in this case is 580 years" correctly described its "combined sentence," and not "the total punishment."  There is no reason to believe that the district court misapplied section 5G1.2 or its application notes or otherwise misunderstood that the total punishment was life imprisonment.

Second, Howells argues that the district court, when fashioning a life sentence from counts of conviction that permitted imprisonment only for terms of years was required to equate "life" with "life expectancy."  Identifying a figure that the United States Sentencing Commission uses as a variable to reflect a "life sentence" for purposes of its data analysis (470 months or 39.2 years) and another that reflects approximate life expectancy according to the Social Security Administration (84.3 years), Howells argues that the district court was legally bound to determine his life expectancy and use that figure, along with his age, to calculate his sentence. Howells' Opening Brief at 18-20.  Howells offers no

40

legal support for this proposed approach and government counsel is aware of none.

Indeed, this Court rejected a similar contention in *United States v. Hamilton*, 548 F. App'x 728 (2d Cir. 2013) (summary order). Hamilton was convicted of five counts of production of child pornography, each of which carried a statutory maximum thirty-year term of imprisonment; one count of receipt of child pornography, which has a twenty-year statutory maximum; and one count of possession of child pornography, which has a ten-year statutory maximum. The district court imposed consecutive maximum terms on the five production counts and concurrent maximum terms on the receipt and possession counts, for a combined 1,800-month (150-year) term of imprisonment to achieve the guidelines sentence of life. *Id*. at 729.

On appeal, Hamilton argued "that a cumulative sentence of 1,800 months is substantively unreasonable because given his age and life expectancy, the sentence amounts to 'multiple life sentences.'" This Court disagreed. "But of course, no prisoner can serve more than a life sentence. Any sentence that extends beyond Hamilton's maximum conceivable life expectancy has no practical effect on him. Thus, the sentence imposed on Hamilton (like any sentence a third its length) is simply equivalent to a life sentence." *Id*. at 730.

41

Similarly, other federal appellate courts have equated a guidelines sentence of life imprisonment with a term of years consisting of consecutive maximum terms of imprisonment on each count of conviction, even when the resulting total term of years well exceeds a defendant's life expectancy. *See, e.g., United States v. Ivory*, 532 F.3d 1095, 1107 (10th Cir. 2008) (rejecting challenge to imposition of sixty-year term of imprisonment consisting of consecutive twenty-year maximum statutory terms of imprisonment on three counts of conviction when the guidelines sentence was life); *United States v. Thompson*, 523 F.3d 806, 809, 814 (7th Cir. 2008) (upholding a 190-year term of imprisonment resulting from stacking the maximum statutory terms of imprisonment for multiple counts of conviction to best achieve a guidelines sentence of life); *United States v. Veysey*, 334 F.3d 600, 602 (7th Cir. 2003) (upholding a 110-year term of imprisonment consisting of the stacking of the maximum statutory terms on 16 counts of mail and wire fraud, arson, and using fire to commit a felony when guidelines sentence was life); *United States v. Lott*, 310 F.3d 1231, 1244 (10th Cir. 2002) (explaining that a 125-year sentence resulting from stacking of multiple drug convictions under U.S.S.G. § 5G1.2(d) was "the effective equivalent of a life sentence").

Even had it been error for the district court to apply U.S.S.G. § 5G1.2 as it did, instead of employing the novel "life expectancy" approach that

42

Howells proposes, that error was not "clear or obvious" and thus not "plain" because there is no authority suggesting, much less holding, that stacking the maximum terms of imprisonment for each count of conviction is erroneous or that a sentencing court must take an offender's life expectancy into account when applying section 5G1.2.

Further, any error here would have been harmless, *see* Fed. R. Crim. P. 52(a), and certainly did not affect Howells' substantial rights, *see id.* at 52(b), because the 580-year term of imprisonment will not require that he be incarcerated any longer than the life sentence that he concedes was mandated by the guidelines. *See Hamilton*, 548 F. App'x at 730-31 ("While it could be argued that consecutive sentences on two counts [resulting in a 720-month term of imprisonment] would be sufficient to guarantee an effective life sentence, any potential error in imposing additional consecutive sentences is necessarily harmless, since any sentence in excess of Hamilton's actual lifespan cannot add so much as a day to his term of imprisonment.").[8]  For the same

---

[8] Howells contends that he was prejudiced by the district court's failure to interpret the guidelines as recommending a "life sentence" calibrated to his life expectancy because the guidelines range "sets the tone for sentencing" and "[t]here is simply no telling how the district court would have proceeded if it had properly determined the Guidelines range here."

43

reason, Howells cannot establish that such an error would adversely affect the fairness, integrity or public reputation of judicial proceedings or be a miscarriage of justice necessary to demonstrate plain error.

---

Howells' Opening Brief at 20 n.8. This contention ignores the record below. The sentencing court made clear its intent to ensure that Howells spend the remainder of his life in prison. "Only a life sentence can ensure the safety of the community, provide just punishment for the profound crimes against children and afford adequate deterrence. I cannot in good conscience impose a sentence that will ever allow you to have access to children again." A. 198. Because a life expectancy-based sentence would leave open the possibility of a windfall – release from prison (and renewed access to children) if Howells outlived that expectancy – it is obvious that the district court would have sentenced Howells to a considerably longer imprisonment term even if doing so required an upward departure or variance.

44

**Point II:    Howells' Within-Guidelines 6,960-Month Term of Imprisonment Was Not Substantively Unreasonable and Not Unconstitutionally Cruel or Unusual.**

## A. Governing Law

"A sentencing judge has very wide latitude to decide the proper degree of punishment for an individual offender and a particular crime." *United States v. Cavera*, 550 F.3d 180, 188 (2d Cir. 2008) (*en banc*). "Substantive reasonableness 'focuses on a district court's explanation of its sentence in light of the factors contained in 18 U.S.C. § 3553(a).'" *United States v. Matta*, 777 F.3d 116, 124 (2d Cir. 2015) (quoting *United States v. Gonzalez*, 529 F.3d 94, 98 (2d Cir. 2008)).

"[T]he Eighth Amendment does not require strict proportionality between crime and sentence, but rather forbids only extreme sentences that are grossly disproportionate to the crime." *United States v. Bullock*, 550 F.3d 247, 252 (2d Cir. 2008) (quoting *Harmelin v. Michigan*, 501 U.S. 957, 960 (1991) (Kennedy, *J.*, plurality opinion)). "Lengthy prison sentences, even those that exceed any conceivable life expectancy of a convicted defendant, do not violate the Eighth Amendment's prohibition against cruel and unusual punishment when based on a proper application of the Sentencing Guidelines or statutorily mandated consecutive terms." *United*

45

*States v. Yousef*, 327 F.3d 56, 163 (2d Cir. 2003); *see also United States v. Adams*, 768 F.3d 219, 225 (2d Cir. 2014), *cert. denied*, 135 S. Ct. 1726 (2015) (quoting *Yousef* with approval).

## B. Standard of Review

This Court's "review of a sentence for substantive reasonableness is particularly deferential." *United States v. Broxmeyer*, 699 F.3d 265, 289 (2d Cir. 2012). Under such review, district court sentences will be vacated on appeal only when they are "so 'shockingly high, shockingly low, or otherwise unsupportable as a matter of law' that allowing them to stand would 'damage the administration of justice.'" *Id*. (quoting *United States v. Rigas*, 583 F.3d 108, 123 (2d Cir. 2009)).

In determining whether a sentence is substantively unreasonable, an appellate court must "take into account the totality of the circumstances, giving due deference to the sentencing judge's exercise of discretion, and bearing in mind the institutional advantages of district courts." *Cavera*, 550 F.3d at 190. Ultimately, this Court will set aside a sentence "only in exceptional cases where the trial court's decision 'cannot be located within the range of permissible decisions.'" *Id*. at 189 (quoting *United States v. Rigas*, 490 F.3d 208, 238 (2d Cir. 2007)). While this Court does not presume that a within-Guidelines sentence is substantively reasonable, in "the overwhelming majority of cases, a Guidelines

46

sentence will fall comfortably within the broad range of sentences that would be reasonable in the particular circumstances." *United States v. Fernandez*, 443 F.3d 19, 27 (2d Cir. 2006).

This Court has not decided "whether plain error review applies to an unpreserved challenge to the substantive reasonableness of a sentence." *United States v. Thavaraja*, 740 F.3d 253, 258 n.4 (2d Cir. 2014).

A defendant who fails in the district court to raise an Eighth Amendment claim that his sentence is "cruel and unusual" forfeits it. *United States v. Rivera*, 546 F.3d 245, 254 (2d Cir. 2008) ("Rivera challenges his sentence as cruel and unusual, in violation of the Eighth Amendment. Since Rivera failed to raise this claim in the District Court, we deem it forfeited."). This Court reviews such forfeited claims for plain error only. *United States v. Carter*, 110 F. App'x 165, 166 (2d Cir. 2004) ("He did not raise the issue of Eighth Amendment proportionality below, and so we review for plain error.").

## C. Discussion

Howells deserved the most severe sentence that Congress permits for his crimes. He repeatedly engaged in horrific sexual abuse of very young girls to whom he gained access by either forcibly kidnapping them or abusing the trust of their parents.

47

He incapacitated his young victims by injecting them with or otherwise giving them powerful and dangerous drugs, including highly addictive schedule II controlled substances, and, in the case of the kidnap victims, by chaining and handcuffing them. Howells not only repeatedly sexually abused his victims, he and Vaisey created permanent records of that degradation, using several devices to video-record and photograph the exploitation of the child victims from multiple angles and store those images on encrypted computer hard drives. Remarkably, Howells' conspiratorial objective – to hold his young kidnap victims captive over the long term so that he could use them as sex slaves, a plan thwarted only by his inability to sound-proof the room where he was going to hold them hostage – was even more evil than his despicable acts.

Howells' crimes not only caused substantial and permanent harm to the many children who were his immediate victims, along with their families, they also indelibly scarred the rural community where the kidnapping and sexual abuse occurred. One indication of the local impact of Howells' offenses was that a neighbor saw fit to purchase the residence where Howells abused his victims so that members of the community could join together and burn it down. PSR ¶ 287.

Nor was Howells' victimization of children limited to the six young girls whom he and Vaisey

48

repeatedly drugged, sexually molested, and filmed. He also amassed an enormous collection of videos and images of sadistic sexual abuse of many other child victims by other pedophiles, including, for example, a video depicting sexual torture of an infant and bestiality involving a prepubescent victim.

The district court acted well within its discretion by fashioning a sentence that addresses the depravity of the crimes Howells committed and the harm that he caused to the victims, their families, and the community. The district court's sentence also properly serves as a warning to other pedophiles who may contemplate committing similar atrocities and ensures that Howells never again will have access to a child.

Howells contends that his term of imprisonment is substantively unreasonable for three reasons: (a) it does not account for his anticipated sentence in state court; (b) it will not encourage similarly-situated kidnappers and pedophiles to refrain from harmful conduct because it does not reward him for releasing his kidnap victims, not fleeing, "cooperating fully" with law enforcement, and pleading guilty and (c) it does not take into account his history and characteristics. Howells' Opening Brief at 21-23. He also argues that his sentence is "grossly disproportionate" to his offenses of conviction and thus a violation of the Eighth Amendment prohibition on "cruel and unusual punishment." *Id*. at 23-24.

49

Because the district court was not legally obligated to vary downward, these claims are meritless.

### 1. Anticipated State Sentence

At the time of his federal sentencing, Howells was awaiting sentencing on two counts of kidnapping in St. Lawrence County Court for his abduction of V-1 and V-2. According to the PSR, he was "facing 25 years imprisonment based on his plea agreement." PSR ¶ 280; *see also* A. 190 (defense attorney assertion that Howells "is going to be sentenced to 25 years in state court with 20 years post-release supervision").[9] Howells argues that the federal district court failed to give adequate weight at sentencing to the purported fact that "much of the gravity of [Howells'] offenses was accounted for in

_____

[9] As explained above, *see supra* note 5, Howells was convicted of two counts of second degree kidnapping in state court, not first degree kidnapping as stated in the PSR at ¶ 280. *See* Addendum. And, contrary to the defense prediction at sentencing, he was placed on five, not twenty years of post-release parole supervision. Addendum at p. 3. On appeal, Howells claims that he was facing "a lengthy state court sentence for *sexual abuse* and kidnapping." Howells' Opening Brief at 21 (emphasis added). This is not true. Howells was not charged with or convicted of "sexual abuse" in state court, only second degree kidnapping, which does not have "sexual abuse" as an element.

50

his state sentence." Howells' Opening Brief at 21. This claim is factually inaccurate and legally meritless.

Howells' claim is inaccurate because the state kidnapping charges addressed criminal conduct distinct from the conduct that resulted in his federal offenses of conviction and sentence. The state kidnapping charges were based on his abduction of V-1 and V-2. In contrast, the federal offenses of conviction related to V-1 and V-2 arose from Howells' sexual exploitation of those two victims for the purpose of producing child pornography. The federal sentence also was based on other conduct wholly unaddressed by the state conviction: Howells' sexual exploitation of four other minors for the purpose of producing child pornography and his possession of pornographic images of hundreds of other minor victims. The only overlap was that the state kidnapping charges required proof that the victims were restrained, *see* NYS Penal Law § 135.25(2), and there was an applicable federal sentencing enhancement for restraint of a victim. *See* U.S.S.G. § 3A1.3; PSR ¶¶ 75, 83, 180. Because Howells' offense level scored well above level 43, the highest possible guidelines offense level, the restraint-of-victims enhancement had no effect on his final offense level or the guidelines-recommended life term of imprisonment.

51

Howells' argument that it was unreasonable for the district court not to vary downward to account for his anticipated state sentence is also legally flawed. The advisory guidelines take into account the possibility that a federally-convicted defendant will face an anticipated state sentence for related conduct. The relevant guideline provision provides that, under those circumstances, at most "the sentence for the instant [federal] offense shall be imposed to run concurrently to the anticipated [state] term of imprisonment." U.S.S.G. § 5G1.3(c); *see also id.*, cmt. n.3. Here, even assuming that Howells was entitled to concurrent sentencing under Section 5G1.3(c),[10] it would have been meaningless for the district court to order the federal sentence – requiring imprisonment for the rest of Howells' life – to be concurrent to the state sentence. *Cf. United States v. Lewis*, 626 F. App'x 896, 899 (11th Cir. 2015) (holding that district court did not abuse its discretion by ordering that federal sentence be served consecutively to an anticipated state sentence based on "the nature and circumstances of the offense, Lewis's history and characteristics, and the need to promote respect for the law.").

---

[10] Howells did not request concurrent sentencing under U.S.S.G. § 5G1.3(c) in the district court and does not do so on appeal. Rather, he argues, without legal support, that he was entitled to a downward variance.

52

Because the sentencing guidelines recommended life imprisonment based on Howells' convictions and associated conduct wholly independent of the conduct required to prove the state kidnapping charges, and, in any event, Howells was legally entitled, at most, to have his federal and state sentences run concurrently, it was not substantively unreasonable for the district court to impose a within-guidelines term of imprisonment that was functionally equivalent to a life sentence rather than vary downward.

## 2. Post-Crime Conduct

Howells next argues that the district court's failure to vary downward to reward him for what he claims was laudable conduct following his commission of crimes – releasing instead of killing his victims, not fleeing, cooperating with authorities, and pleading guilty – was substantively unreasonable because it will prompt others like him to refrain from such beneficial conduct. Howells' Opening Brief at 22. This contention is meritless.

Preliminarily, it bears mention that there is reason to doubt that Howells' conduct following his sexual exploitation of the kidnapping victims was motivated by a desire to benefit his victims or aid law enforcement. That Howells, after realizing his plan to hold V-1 and V-2 hostage as sex slaves was not feasible, chose to release rather than kill them may have had more to do with his assessment of his

53

chances of avoiding detection than concern for their well-being. Killing the victims in his residence would have generated forensic evidence, an outcome that concerned him, as shown by his later actions of sanitizing the residence and destroying and concealing evidence, and presented the problem of disposing of the bodies. Attempting to kill them elsewhere would have risked detection, particularly in light of the publicity following the kidnapping. Howells may have hoped that the victims would be unwilling to cooperate with police because of shame or cultural norms. Alternatively, he may have feared that murdering them would subject him to more severe penalties. *See* 18 U.S.C. § 1201(a)(1) (providing for the death penalty if death results from kidnapping). There is nothing in Howells' criminal conduct to suggest that he was motivated by concern for his victims.[11]

It is true that Howells did not flee but, as shown by his and Vaisey's efforts to sanitize their residence and conceal and destroy evidence, this decision was not intended to make it easier for law enforcement to locate and capture them. Rather, they merely chose a

---

[11] The district court concluded that "[t]here is absolutely no evidence in the record that supports your current contention that you released these victims knowing you were going to be captured. To even suggest their release was out of guilt or remorse is incredible." A. 196.

54

different plan to try to avoid arrest. Similarly, Howells' supposed "cooperation" with law enforcement – consenting to a search of the residence after it had been scrubbed clean and evidence removed, discarded or destroyed – was likely an effort to appear innocent. Making an incriminating statement only when it had become clear that police knew he was the kidnapper was an attempt to curry favor, not a genuine effort to assist authorities. Indeed, it is significant that it was good detective work – the location by an FBI agent of the encryption key for Howells' hard drives in a text message – not Howells' purported cooperation that provided law enforcement with access to the most critical evidence in this case. Further, it was hardly altruistic for Howells to plead guilty when the government's evidence included videotaped evidence of his abuse of six minors, his own confession, and testimony from the victims of his sexual exploitation.

Even if Howells' post-crime actions could be perceived as helpful to the victims or law enforcement, whether Howells intended that outcome or not, the district court was not bound to conclude that a downward variance for Howells would prompt others like him to act similarly. Howells offered no evidence at sentencing showing that a reduction in his sentence would encourage other pedophiles to release kidnap victims, cooperate with authorities, or plead guilty after committing similar crimes. And, in any event, the district court did not abuse its

55

discretion or impose a substantively unreasonable sentence if it concluded that deterring others from committing offenses like Howells in the first instance by imposing a within-guidelines life sentence was preferable to a speculative effort to promote some modicum of post-crime decency by other predatory pedophiles, especially if that effort required rewarding Howells when he did not deserve it.

### 3. Personal Characteristics

Howells argues that the within-guidelines sentence was substantively unreasonable because the district court failed to take into account his history and personal characteristics as required by 18 U.S.C. § 3553(a)(1), specifically, his "abusive and neglected childhood," his remorse, his willingness to seek help, and his amenability to treatment. Howells' Opening Brief at 22-23. This contention fails. Even if the defense claims concerning these characteristics were true, it would not entitle Howells to relief.[12]

There is no doubt that the district court considered this information. A. 193-94 (district court describing its review of the PSR and addendum, submissions by

---

[12] Although this Court need not delve into Howells' allegations that he was an abused child to reject his appeal, it bears mention that whatever abuse he claims to have suffered as a child, *see* PSR ¶ 283, pales in comparison to that which he inflicted on the victims in this case.

56

counsel, the Sentencing Guidelines Manual, and factors set out in 18 U.S.C. § 3553(e)).  But, "the requirement that a sentencing judge consider an 18 U.S.C. § 3553(a) factor is not synonymous with a requirement [that] the factor be given determinative or dispositive weight in the particular case."  *United States v. Florez*, 447 F.3d 145, 157 (2d Cir. 2006) (internal quotation marks, citation, and emphasis omitted).  This Court has made clear that "the weight to be given any § 3553(a) factor[ ] is a matter firmly committed to the discretion of the sentencing judge and is beyond our [appellate] review, as long as the sentence ultimately imposed is reasonable in light of all the circumstances presented."  *Id*. at 158 (internal quotation marks and citation omitted).  Accordingly, Howells' claim that his sentence should be vacated as substantively unreasonable because the district court did not vary downward after considering his personal characteristics should be rejected.

### 4. Eighth Amendment Claim

Citing out-of-circuit cases in which shorter terms of imprisonment were imposed following convictions for sexual abuse that is horrific but less troubling than the criminal conduct here, Howells argues that his sentence violates the Eighth Amendment's proscription on "cruel and unusual punishment."  Howells' Opening Brief at 23-24.[13]  None of those

---

[13] Howells cites *United States v. Huffstatler*, 571 F.3d 620 (7th Cir. 2009), in which the appellate court

57

cases remotely suggests that the sentence here was grossly disproportionate. Indeed, any sentence to a term of years, no matter how long, would be proportionate to Howells' criminal conduct. *See*

---

determined that an above-guidelines 450-month term of imprisonment was substantively reasonable when the defendant, a recidivist sex offender, on a single occasion, removed a 14-year-old boy's pants, manipulated his penis, and took 16 photographs; *United States v. Vowell*, 516 F.3d 503 (6th Cir. 2008), in which the appellate court upheld as substantively reasonable a 65-year term of imprisonment for a 40-year-old offender who, on three occasions, sexually molested an eight-year-old girl while the victim's mother videotaped the abuse and the offender admitted abusing the victim on other occasions; and *United States v. Johnson*, 451 F.3d 1239 (11th Cir. 2006), in which the appellate court rejected Eighth Amendment and substantive reasonableness challenges to a 140-year term of imprisonment for an offender who repeatedly molested three underage male victims, produced pornographic images of the abuse, and transmitted the images over the internet. Although the sentences in *Vowell* and *Johnson* were shorter than the term imposed here, in those cases, like this one, the district court imposed what was effectively a life sentence.

58

*Yousef*, 327 F.3d at 163 (2d Cir. 2003) ("We and other courts have universally upheld sentences where the term of years is greater than the defendant's expected natural life for less serious crimes.").  And, in any event, any constitutional error here is not "plain," both because there is no authority making clear that the sentence is grossly disproportionate and Howells, who will not serve a term of imprisonment beyond a within-guidelines life sentence, cannot show that he is prejudiced by the 6,960-month term.

59

## CONCLUSION

For the reasons explained above, the sentence should be affirmed.

Dated:  Syracuse, New York
August 8, 2016

Respectfully submitted,

Richard S. Hartunian
*United States Attorney for the*
 *Northern District of New York*
*Attorney for Appellee*

/s/ *Steven D. Clymer*
By:  STEVEN D. CLYMER
*Assistant United States Attorney*

LISA M. FLETCHER
*Assistant United States Attorney*
*of Counsel*

ADDENDUM

CASE#: 22793 07/17/2015 SUPERIOR COURT INFORMATION Image: 1 of 4

**ORIGINAL**

STATE OF NEW YORK

COUNTY COURT: COUNTY OF ST. LAWRENCE

THE PEOPLE OF THE STATE OF NEW YORK,

      -against-

STEPHEN M. HOWELLS, II,
                 Defendant.

SUPERIOR COURT
INFORMATION

No. 2015-129
Index No. 22793

### FIRST COUNT

I, MARY E. RAIN, St. Lawrence County District Attorney, by this Superior Court Information, accuse the above defendant of the crime of KIDNAPPING IN THE SECOND DEGREE, in violation of Penal Law §§20.00 and 135.20, a Class B Felony, committed as follows:

The defendant, in concert with NICOLE VAISEY, at or about the Town of Oswegatchie, County of St. Lawrence and State of New York, on or about August, 13, 2014 did abduct another person to wit: at the aforesaid date and place, the defendant, did abduct ▮▮▮▮▮▮▮.

### SECOND COUNT

I, MARY E. RAIN, St. Lawrence County District Attorney, by this Superior Court Information, accuse the above defendant of the crime of KIDNAPPING IN THE SECOND DEGREE, in violation of Penal Law §§20.00 and 135.20, a Class B Felony, committed as follows:

OFFICE OF THE DISTRICT ATTORNEY – ST. LAWRENCE COUNTY

The defendant, in concert with NICOLE VAISEY, at or about the Town of Oswegatchie, County of St. Lawrence and State of New York, on or about August, 13, 2014 did abduct another person to wit: at the aforesaid date and place, the defendant, did abduct ███████.

DATED: July 17, 2015

MARY E. RAIN
St. Lawrence County District Attorney

OFFICE OF THE DISTRICT ATTORNEY – ST. LAWRENCE COUNTY

RECEIVED AT
ST. LAW. CO.
CLERKS OFC.

2015 JUL 17 P 12: 18

CASE#: 22793  01/05/2016  STATEMENT OF CONVICTION  Image: 1 of 1

22793

UNIFORM SENTENCE & COMMITMENT                                        UCS-854 (8/2011)

| | |
|---|---|
| STATE OF NEW YORK | Court Part: COUNTY |
| COUNTY COURT, COUNTY OF ST.LAWRENCE | Court Reporter: BETH B BARRETT |
| PRESENT: HON. JEROME J. RICHARDS | Superior Ct. Case #: 2015-129 |

|  | |
|---|---|
| The People of the State of New York | Accusatory Instrument Charge(s): |

The People of the State of New York

| | Accusatory Instrument Charge(s): | Law/Section & Subdivision: |
|---|---|---|
| -vs- | 1  2-KIDNAPPING 2ND | PL-135.20  -BF- |
| STEPHEN M HOWELLS II | 2  2-KIDNAPPING 2ND | PL-135.20  -BF- |
| Defendant | 3 | |

| M | 07-01-1975 | 07058848Z | 66760141H | 4 |
|---|---|---|---|---|
| SEX | D.O.B. | NYSID NUMBER | CRIMINAL JUSTICE | 5 |
| | | | TRACKING NUMBER | Date(s) of Offense: 08-13-2014 |
| | | | | To |

THE ABOVE NAMED DEFENDANT HAVING BEEN CONVICTED BY ([X] PLEA OR [ ] VERDICT), THE MOST SERIOUS OFFENSE BEING A [X] FELONY OR

[ ] MISDEMEANOR OR [ ] VIOLATION), IS HEREBY SENTENCED TO:

| | Crime | Count Number | Law/Section & Subdivision | SMF,Hate or Terror | Minimum Term | Maximum Term | [ ]Definite(circle:D,M,Y) Post-Rel [X]Determinate(in years)** Superv. |
|---|---|---|---|---|---|---|---|
| 1 | 2-KIDNAPPING 2ND | 1 | PL-135.20 | -BF- | ___ | | 25Y | 5YRS. |
| 2 | 2-KIDNAPPING 2ND | 2 | PL-135.20 | -BF- | ___ | | 25Y | 5YRS. |
| 3 | | | | | | | |
| 4 | | | | | | | |
| 5 | | | | | | | |

** NOTE:  For each DETERMINATE SENTENCE imposed, a corresponding period of POST-RELEASE SUPERVISION MUST be indicated [PL 70.45]

[X] Counts SEE REMARKS shall run CONCURRENTLY with each other [ ] Count(s) _____ shall run CONSECUTIVELY to count(s)

[X] Sentence imposed herein shall run CONCURRENTLY with SEE REMARKS and/or CONSECUTIVELY to

[ ] Sentence imposed herein shall include a CONSECUTIVE _____ term of ([ ] PROBATION or [ ] CONDITIONAL DISCHARGE),with an
     Ignition Interlock Device condition, that shall commence upon defendants release from imprisonment PL 60.21

[ ] Conviction includes: WEAPON TYPE: _____                    and/or DRUG TYPE:

[ ] Charged as a JUVENILE OFFENDER-age at time crime committed: 0

[ ] Adjudicated a YOUTHFUL OFFENDER (CPL 720.20)                   [X] Court certified Defendant a SEX OFFENDER(Cor. L.168-d)

[ ] Execute as a sentence of PAROLE SUPERVISION (CPL 410.91)       [ ] CASAT ordered (PL 60.04(6))

[ ] Re-Sentenced as a PROBATION VIOLATOR (CPL 410.70)              [ ] SHOCK INCARCERATION Ordered (PL 60.04(7))

As a [ ] second  [ ] second violent  [ ] second drug  [ ] second drug/prior VFO  [ ] predicate sex offender

    [ ] predicate sex offender/prior VFO  [ ] second child sexual assault  [ ] persistent  [ ] persistent violent    FELONY OFFENDER

| Paid | Not Pd | Dfrd-court must file written order[CPL 420.40(5)] | | Paid | Not Pd | Dfrd-court must file written order[CPL 420.40(5)] | | |
|---|---|---|---|---|---|---|---|---|
| [ ] | [X] | [ ] | Mandatory Surcharge | $ 300.00 | [ ] | [X] | [ ] | Crime Victim Assistance Fee | $ 25.00 |
| [ ] | [ ] | [ ] | Fine | $ .00 | [ ] | [ ] | [ ] | Restitution | $ .00 |
| [ ] | [X] | [ ] | DNA Fee | $ 50.00 | [ ] | [X] | [ ] | Sex Offender Registration Fee | $ 50.00 |
| [ ] | [ ] | [ ] | DWI/Other:____ | $ .00 | [ ] | [ ] | [ ] | Supplemental Sex Off. Victim Fee | $ .00 |

THE SAID DEFENDANT BE AND HEREBY IS COMMITTED TO THE CUSTODY OF THE:

[X] NYS Department of Correctional Services (NYSDOCS) until released in accordance with the law, and being a person sixteen (16)years
     or older not presently in the custody of NYSDOCS, the ([X] COUNTY SHERIFF or [ ] NEW YORK CITY DEPARTMENT OF CORRECTION) is
     directed to deliver the defendant to the custody of NYSDOCS as provided in 7 NYCRR Part 103.

[ ] NYS Department of Correctional Services (NYSDOCS) until released in accordance with the law, and being a person sixteen (16)years
     or older presently in the custody of NYSDOCS, said defendant shall remain in the custody of NYSDOCS.

[ ] NYS Office of Children and Family Services in accordance with the law, being a person less than sixteen (16) years of age at the
     time the crime was committed.

[ ] ST LAWRENCE COUNTY  Jail/Correctional Facility

TO BE HELD UNTIL THE JUDGMENT OF THIS COURT IS SATISFIED.

REMARKS: DETERMINATE CUSTODY 25 YEARS IMPRISONMENT; POST RELEASE PAROLE 5 YEARS CONCURRENTLY; &
         CONCURRENTLY WITH ANY SENTENCE OWED THE FEDERAL PENAL SYSTEM; SURCHARGE $300/CVAF $25;
         DNA DATABANK W/$50 FEE; SEX OFFENDER REGISTRATION FEE $50 (SURCHARGES & FEES FROM
         EARNINGS).

Commitment, Order of
Protection & Pre-Sentence
Report rec'd by Correctional
Authority as indicated:

Official Name _____

| | | |
|---|---|---|
| Pre-Sentence Investigation Report Attached: | [ ]YES [ ]NO | [ ] Amended Commitment: |
| Order of Protection Issued: | [X]YES [ ]NO | [X] Original Sentence Date 01-05-2016 | Shield No. _____ |
| Order of Protection Attached: | [ ]YES [ ]NO | | |

01-05-2016
Date

MARY B CURRAN
Clerk of the Court

by: _____ Signature

_____ Title

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(a)(7)(C) of the Federal Rules of Appellant Procedure, the undersigned counsel for the United States hereby certifies that this brief complies with the type volume limitation of Rule 32(a)(7)(B). As measured by the word-processing system used to prepare this brief, there are approximately 11,848 words in the brief.

RICHARD S. HARTUNIAN
*United States Attorney for the*
 *Northern District of New York*

/s/ *Steven D. Clymer*
By:   STEVEN D. CLYMER
*Assistant United States Attorney*

**CERTIFICATE OF SERVICE
BY NEXTGEN CM/ECF**

UNITED STATES OF AMERICA
v.
HOWELLS

Docket No. 15-4192

The undersigned hereby certifies that she is an employee of the Office of the United States Attorney for the Northern District of New York, and is a person of such age and discretion as to be competent to serve papers.

She further certifies that on August 8, 2016, she served a copy of the appellee's Brief on the United States Court of Appeals for the Second Circuit and counsel for appellant, Randi J. Bianco, AFPD and Courtenay McKeon, Esq., by uploading to the Second Circuit's ECF system a Portable Document Format (PDF) version of the Brief.

/s/ *Deanna Lieberman*
Deanna Lieberman